Todd M. Schneider (SBN 158253)
Carolyn Hunt Cottrell (SBN 166977)
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
ncoon@schneiderwallace.com

Attorneys for Plaintiffs, the Collective and
Putative Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OLIVIA GUILBAUD, MARQUES LILLY, AND MICHAEL WONG, and all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>SPRINT NEXTEL CORPORATION AND SPRINT/UNITED MANAGEMENT CO., INC.,<br><br>                Defendants. | **Lead Case**<br>CASE NO. 3:13-CV-04357-VC<br><br>Hon. Vince Chhabria |
| MICHAEL SMITH, on behalf of himself and all others similarly situated,<br><br>                Plaintiff,<br><br>        vs.<br><br>SPRINT/UNITED MANAGEMENT COMPANY,<br><br>                Defendant. | *Consolidated with*<br><br>CASE NO. 3:14-CV-02642-VC<br><br>Hon. Vince Chhabria<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS AND APPROVAL OF SETTLEMENT AS TO COLLECTIVE** |

[ADDITIONAL COUNSEL ON FOLLOWING PAGE]

1   Matthew Righetti (SBN 121012)
    John Glugoski (SBN 191551)
2   Michael Righetti (SBN 258541)
    RIGHETTI GLUGOSKI, P.C.
3   456 Montgomery Street, Suite 1400
    San Francisco, California 94101
4   Telephone: (415) 983-0900
    Facsimile: (415) 397-9005
5   matt@righettilaw.com
    jglugoski@righettilaw.com
6   mike@righettilaw.com

7   Richard Hoyer (SBN 151931)
    Ryan L. Hicks (SBN 260284)
8   HOYER & ASSOCIATES
    Four Embarcadero Center, Suite 1400
9   San Francisco, California 94111
    Telephone: (415) 766-3536
10  Facsimile: (415) 276-1738
    rhoyer@hoyerlaw.com
11  rhicks@hoyerlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Thursday January 14, 2016, at 10:00 a.m. in Courtroom 4 before Hon. Vince Chhabria of the United States District Court, Northern District of California, Plaintiffs Olivia Guilbaud, Marques Lilly, Michael Wong, and Michael Smith ("Plaintiffs") in the consolidated[1] matters of lead case *Guilbaud, et al. v. Sprint Nextel Corporation, et al.*, Case No. 3:13-CV-04357-VC, and *Smith, et al. v. Sprint/United Management Company*, Case No. 3:14-CV-02642-VC, move the Court for preliminary approval of the Joint Stipulation for Class and Collective Action Settlement and Release of Claims (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to this motion) as to the California Class and approval of the Settlement as to the Collective. In particular, Plaintiffs move for orders:

***As to the California Class:***

(1) granting preliminary approval of the Settlement Agreement  as to the California Class;

(2) conditionally certifying the California Class for settlement purposes;

(3) approving the proposed schedule and procedure for completing the final approval process of the settlement as to the California Class, including scheduling the final fairness hearing date;

(4) approving the Notice of Pendency of Class Action, Proposed Settlement and Final Fairness Hearing Date ("Class Notice") (attached as **Exhibit A** to the Settlement Agreement);

(5) preliminarily appointing and approving Schneider Wallace Cottrell Konecky Wotkyns LLP, Hoyer & Associates, and Righetti Glugoski, P.C. as Counsel for the Class;

(6) preliminarily approving Class and Collective Counsel's request for attorneys' fees and costs;

(7) preliminarily appointing and approving the named Plaintiffs as Class Representative for the

---

[1] Plaintiffs Guilbaud, Lilly, and Wong filed *Guilbaud, et al. v. Sprint Nextel Corporation, et al.*, Case No. 3:13-CV-04357-VC in the United States District Court for the Northern District on September 19, 2013. Plaintiff Smith filed *Smith, et al. v. Sprint/United Mgmt. Company*, Case No. 3:14-CV-02642-EDL in the U.S. District Court for the Eastern District of California on January 31, 2014, which was assigned to District Judge Lawrence Karlton under the original case number of 2:14-CV-00327-LKK-AC. The Parties agreed in the interest of avoiding conflicts, conserving resources, and promoting an efficient determination of the actions to transfer *Smith* to the Northern District and relate and consolidate the actions before District Judge Vince Chhabria, before whom *Guilbaud* proceeds. *Smith* was transferred to the Northern District on June 9, 2014. On July 8, 2014, Judge Chhabria ordered the cases related and consolidated.

1    California Class;

2    (8)   preliminarily appointing and approving Heffler Claims Group as the Settlement

3    Administrator for the California Class; and

4    (9)   authorizing the Settlement Administrator to mail the approved Class Notice to the California

5    Class.

6    ***As to the Collective:***

7    (1) granting approval of the Settlement Agreement as to the Collective;

8    (2) approving the Notice of Collective Action Settlement ("Collective Notice") (attached as

9    **Exhibit B** to the Settlement Agreement);

10   (3) approving the proposed schedule for completing the settlement process as to the Collective;

11   (4) approving and appointing Schneider Wallace Cottrell Konecky Wotkyns LLP, Hoyer &

12   Associates, and Righetti Glugoski, P.C. as Counsel for the Collective for purposes of the

13   Settlement;

14   (5) appointing and approving the named Plaintiffs as Collective Representatives for the

15   Collective for purposes of the Settlement;

16   (6) appointing and approving Heffler Claims Group as the Settlement Administrator for the

17   Collective;  and

18   (7) authorizing the Settlement Administrator to mail the approved Collective Notice to the

19   Collective as set forth in the Settlement Agreement.

20   This Motion is based on this notice, the following attached Memorandum of Points and

21   Authorities, the Declaration of Carolyn Hunt Cottrell ("Cottrell Decl."), and all other records,

22   pleadings, and papers on file in this action and such other evidence or argument as may be

23   presented to the Court at the hearing on this Motion.  Accompanying this Motion is also Plaintiffs'

24   Proposed Order Granting Preliminary Approval of Settlement as to California Class and Approval

25   of Settlement as to Collective.

26

27

28

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION…………………………………………………………………1

II.    FACTUAL BACKGROUND ………………………………………………1

III.   PROCEDURAL HISTORY ……………………………………………..1

      A.    Plaintiffs' Claims.................................................................1

      B.    FLSA Conditional Certification ...........................................2

      C.    Discovery.............................................................................2

      D.    Damages Analysis ...............................................................2

      E.    Mediation ............................................................................4

IV.   TERMS OF THE SETTLEMENT……………………………………5

      A.    Basic Terms ........................................................................5

      B.    Class and Collective Definitions .........................................5

      C.    Allocation and Awards ........................................................6

      D.    Scope of Release and Final Judgment ..................................7

      E.    Settlement Administration ...................................................7

V.    ARGUMENT ........................................................................8

      A.    The Court Should Grant Preliminary Approval of the Settlement as to the California Class under Rule 23. ................8

      B.    The Court Should Conditionally Certify the California Class. .........................9

            1.    The Class is numerous and ascertainable................................9

            2.    Plaintiffs' claims raise common issues of fact or law.....................9

            3.    Plaintiffs' claims are typical of the claims of the Class. ..........................10

            4.    Plaintiffs and Class Counsel will adequately represent the Class………….. ..........................10

            5.    The Rule 23(b)(3) requirements for class certification are also met………………….. .........................11

      C.    The Court Has Already Conditionally Certified the Collective, Warranting Approval of the Settlement as to the Collective. ...........................12

            1.    The employment settings of the 1,947 Collective members are similar…………..........................................13

i

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AS TO
CALIFORNIA CLASS AND APPROVAL OF SETTLEMENT AS TO COLLECTIVE
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

2.      No individualized defenses exist to defeat certification. ..........................13

3.      Fairness and procedural factors favor certification. ...............................14

D.      The Settlement Should Be Preliminarily Approved as to the Class
        and Approved as to the Collective Because It Is Fair, Reasonable,
        and Adequate............................................................................................14

        1.      The terms of the Settlement are fair, reasonable, and adequate. ...........15

        2.      The Parties have agreed to distribute settlement proceeds
                tailored to the Class and Collective and their respective claims. ...........16

        3.      The extensive informal discovery exchange between the parties
                enabled them to make informed decisions regarding settlement ..........16

        4.      Litigating this action not only would delay recovery, but would
                be expensive, time consuming, and involve substantial risk. .................17

        5.      The settlement is the product of informed, non-collusive, and
                arm's-length negotiations between experienced counsel.......................17

E.      The Class Representative Enhancement Payments are Reasonable................18

F.      The Requested Attorneys' Fees and Costs are Reasonable. ..........................19

G.      The Proposed Notices and Claims Process Are Reasonable............................21

H.      The Court Should Approve the Proposed Schedule. .........................................23

VI.     CONCLUSION.........................................................................................................25

1

### <u>TABLE OF AUTHORITIES</u>

2

<u>**Federal Cases**</u>

3

*Amchem Prod., Inc. v. Windsor,* 521 U.S. 591 (1997) …………………………………………… 12

4

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D. Cal. 1979)................................................16

5

*Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695

6

 (N.D. Cal. Nov. 12, 2014)................................................................................................9

7

*Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164 (D. Kan.) .............................................3

8

*Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)....................... 15, 21

9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................................21

10

*Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002)........19

11

*Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 CV 7350, 2009 WL 7311383

12

 (S.D.N.Y. Nov. 13, 2009) ................................................................................................3

13

*Entin v. Barg*, 412 F.Supp. 508 (E.D. Pa. 1976)...................................................... 15, 23

14

*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ................................ 10, 11

15

*Guifi Li v. A Perfect Day Franchise Inc.*, 2012 WL 2236752 (N.D. Cal. 2012). ...............3

16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................... 8, 10, 15, 17, 19

17

*Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014) ............................................3

18

*Hoffmann-LaRoche, Inc., v. Sperling*, 493 U.S. 165 (1989)..................................... 12, 14

19

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir.1983) ...................................16

20

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)..................................9

21

*In Re Activision Sec. Litig.*, 723 F.Supp. 1373 (N.D. Cal. 1989) ...................................19

22

*In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357 (N.D. Ga. 1979) .........................15

23

*In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19 (W.D. Okla. 1972) ........................15

24

*In re Mego Fin. Corp. Sec. Litig.,*213 F.3d 454 (9th Cir. 2000)............................... 15, 22

25

*In Re Sunrise Secs. Litig.*, 131 F.R.D. 450 (E.D. Pa. 1990)...........................................15

26

*In re Syncor ERISA Litig.,* 516 F.3d 1095 (9th Cir. 2008) .............................................15

27

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002)..........................15

28

iii

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AS TO
CALIFORNIA CLASS AND APPROVAL OF SETTLEMENT AS TO COLLECTIVE
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

*Knight v. Red Door Salons, Inc.,* 2009 WL248367 (N.D. Cal. 2009) .............................................19

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690

 (E.D. Cal. Sept. 11, 2008) ............................................................................................16

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443 (E.D. Cal. 2013) ........................16

*Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007)............................18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)................................21

*Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-CMK, 2008 WL 3154681

 (E.D. Cal. Aug. 4, 2008) ...............................................................................................20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...........14, 15, 16

*Osorio, et al. v. Sprint/United Mgmt. Co.*, No. 08-cv-03228 (N.D. Cal. Feb. 28, 2011)....................3

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ..................................................21

*Ramirez v. Ghilotti Bros., Inc., et al.*, 941 F.Supp.2d 1197 (N.D. Cal. 2013) ……………………12

*Reed v. County of Orange*, 266 F.R.D. 446 (C.D. Cal. Jan. 8, 2010) ...............................14

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.,*

 No. CV F 10-1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ................................19

*Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ............15

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006)........................9

*Sibley v. Sprint Nextel Corp., et al.*, Case No. 08-cv-2063 KHV/JPO (D. Kan.) .............10

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)...............................................................21

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...............................................18, 19

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)............................18

*Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010)................................19

*Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043 (9th Cir. 2002)..........................................20

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013)...............................10, 11

*Webster, et al. v. Sprint PCS, Inc., et al.*, Case No. 06-cv-04623-GW-FMO

 (C.D. Cal. June 12, 2008) ...............................................................................................3

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AS TO
CALIFORNIA CLASS AND APPROVAL OF SETTLEMENT AS TO COLLECTIVE
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

(N.D. Cal. Apr. 1, 2011) ......................................................................... 15, 18, 19

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010)................................... 11, 14

**State Cases**

*Barela v. Ralph's Grocery Co.*,  No. BC070061 (Los Angeles Super. Ct., June 5, 1998) ................ 19

*Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014)................ 13

*Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004) .... 19

*Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684

   (Alameda Super Ct., Mar. 11, 2010)......................................................................... 18

*Contreras v. Bank of America*, No. CGC-07-467749

   (San Francisco Super. Ct., Sept. 3, 2010) .......................................................... 18

*Davis v. The Money Store, Inc.*, No. 99AS01716, (Sacramento Super. Ct., Dec. 26, 2000)............. 19

*Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006)........................ 18

*Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) ................. 18

*Miskell v. Auto. Club of S. Cal.* (Orange County Super. Ct., No. 01CC09035, May 27, 2003)........ 19

*Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) .... 18

*Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085

   (Los Angeles Super. Ct., Mar. 24, 1992) ................................................................... 19

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (Cal. App. Ct. 2012)................... 3

**Federal Statutes**

Fair Labor Standards Act, 29 U.S.C. § 216……………………………………...………...3, 6, 12, 13

Federal Rule of Civil Procedure 23 .....................................................................*passim*

**State Statutes**

California Business and Professions Code §§ 17200, *et seq*……………………………..……...2

California Labor Code § 2699 ..................................................................................... 2, 3

**Other Authorities**

Conte, Newberg on Class Actions (3rd Ed. 1992) ……………………………………………… 22, 23

Manual for Complex Litigation, *Class Actions,* § 21 (4th Ed. 2004)……………………8, 22, 23

Posner, Economic Analysis of the Law (4th ed. 1992) ……………………………………..… 20

vi

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AS TO
CALIFORNIA CLASS AND APPROVAL OF SETTLEMENT AS TO COLLECTIVE
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

1

## I.      INTRODUCTION

2

This class and collective action is pursued on behalf of Retail Consultants, Lead Retail

3

Consultants, and Assistant Store Managers working at Sprint retail stores throughout the United

4

States, including in California. It is based on Sprint's alleged violations of federal and California

5

labor laws. Following extensive, informal discovery, a mediation with Hon. Edward A. Infante

6

(Ret.), and extensive arm's-length negotiations between counsel, the Parties have reached a

7

settlement of this dispute. Plaintiffs seek preliminary approval of the Settlement as to the California

8

Class and approval of the Settlement as to the Collective. The Parties are resolving numerous wage

9

and hour claims unlikely to have been prosecuted as individual actions, and in doing so provide

10

substantial benefit to the Class and Collective. Specifically, the Parties have resolved the claims of

11

1,947 Sprint employees, 702 of whom worked in California, for a total settlement of $3,370,000.00.

12

This favorable Settlement is fair, reasonable, and adequate in all respects.

## II.      FACTUAL BACKGROUND

13

Sprint is a nationwide retailer of cellular telephone services and devices, operating

14

approximately 1,000 retail stores throughout the U.S. Plaintiffs and Class and Collective members

15

(collectively, "CMs") are former and current non-exempt, hourly employees of Sprint. Plaintiffs

16

allege that each Sprint store performs similar services and is subject to the same policies and

17

procedures. Plaintiffs further allege that Sprint's compensation practices and break policies violated

18

federal and California law. In particular, Plaintiffs allege that Sprint requires employees to work

19

off-the-clock, during meal and rest breaks, all without proper compensation including payment of

20

the minimum wage, overtime compensation and premium pay. Plaintiffs also allege that Sprint fails

21

to reimburse employees for uniform expenses. Plaintiffs claim that these alleged violations cause

22

derivative issues, including failing to pay premium pay for these missed breaks, failing to provide

23

accurate, itemized wage statements, and failing to pay all wages owed after termination of

24

employment.  Sprint has at all times denied, and continues to deny, all of these allegations.

## III.      PROCEDURAL HISTORY

25

### A.  Plaintiffs' Claims

26

27

Plaintiffs allege ten causes of action under the federal Fair Labor Standards Act, 29 U.S.C.

28

§§ 201, *et seq.* ("FLSA"), the California Labor Code, applicable Industrial Welfare Commission

("IWC") Wage Orders, and Business and Professions Code §§ 17200, *et seq.* ("UCL"). Cottrell Decl. at ¶ 9. Plaintiffs assert the first cause of action under the FLSA on behalf of themselves and the Collective for Sprint's alleged failure to compensate for all hours worked, including legally mandated overtime premiums and/or minimum wages. *Id.* Plaintiffs assert their nine other causes of action under California law on behalf of themselves and the California class: (1) failure to authorize, permit, and/or make available meal and rest periods; (2) failure to compensate for all hours worked; (3) failure to pay overtime wages; (4) failure to reimburse for necessary business expenditures (namely, the distinctive uniforms that Defendant requires); (5) waiting time penalties; (6) failure to provide itemized wage statements; (7) violation of the UCL for unlawful, unfair, and/or fraudulent business acts or practices; (8) penalties pursuant to § 2699(a) of the California Private Attorney General Act ("PAGA"); and (9) penalties pursuant to § 2699(f) of the PAGA. *Id.*

### B.  FLSA Conditional Certification

On October 3, 2014, the Court conditionally certified a Collective of certain of Sprint's hourly-paid retail store employees. Cottrell Decl. at ¶ 10. The Administrator disseminated the Notice to the Collective members on December 17, 2014, with an opt-in deadline of March 17, 2015. *Id.* Over 1,900 Sprint employees opted into the Collective, over 700 of which worked in California. *Id.* Following the lapse of the opt-in deadline, the Parties agreed to participate in mediation to try to settle the claims of these employees. *Id.*

### C.  Discovery

The Parties have engaged in extensive discovery, including written discovery and exchanging over 2,000 pages of documents including: policies and procedures regarding timekeeping, overtime, compensation, and meal and rest breaks, payroll documents, and personnel files. Cottrell Decl. at ¶ 11.  Defendant also produced 18 excel files with payroll and timekeeping data of the Opt-in and named Plaintiffs. *Id.* Plaintiffs' Counsel have also interviewed over 300 CMs and collected declarations from the named Plaintiffs, several Opt-in Plaintiffs, and Sprint District Managers. *Id.* Class Counsel also made a thorough study of the legal principles applicable to the claims asserted against Defendant. *Id.*

### D.  Damages Analysis

Class Counsel based their damages analysis and settlement negotiations on the formal and

informal discovery, interviews and declarations discussed above, including the payroll and timekeeping data of all 1,947 Opt-in Plaintiffs (including the 702 employees who make up the California Class) produced by Defendant. Cottrell Decl. at ¶ 12. Plaintiffs' Counsel made several assumptions about and derived averages from the discovery: the average wage reported was $12.74; the average number of days worked each week was 5.04; the average number of hours worked each day was 8.11; the average number of hours worked each week was 41.31. *Id.* Plaintiffs also assumed that no employee worked more than 12 hours per day or 60 hours per week. *Id.* In reviewing the discovery, Plaintiffs' recognized that alleged violations were not corroborated by all CMs. *Id.* Only a percentage of CMs corroborate working off-the-clock. *Id.* Likewise, for the California Class members, the estimated missed rest breaks and meals breaks varied. *Id.*

Using these averages and assumptions and further assuming that Plaintiffs and the CMs would certify all of their claims and prevail at trial, Plaintiffs' Counsel calculated total damages, including all penalties[2], to be $14,464,382.15[3]. Cottrell Decl. at ¶ 13. The total amount of damages is further broken down as follows: the amount owing to CMs for their uncompensated, off-the-clock work is $6,117,457.35; the amount owing in premium pay for missed meal and rest breaks to the Class is $1,132,722.95; the amount owing for unreimbursed uniform costs to the Class is

---

[2] The damages figures included Sprint's additional exposure to PAGA penalties. But note, because Labor Code §§ 1194.2, 203, and 226 already incorporate their own penalty provisions, an award of additional PAGA penalties – or an award of the maximum penalty amount provided by PAGA – is uncertain. *See* Cal. Lab. Code § 2699(f); *see also Guifi Li v. A Perfect Day Franchise Inc.*, 2012 WL 2236752 at *17 (N.D. Cal. 2012). Moreover, even assuming Plaintiffs' remaining claims qualify for PAGA penalties, any such award is not automatic. Cal. Lab. Code § 2699(e)(2); *see also Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135-36 (Cal. App. Ct. 2012).

[3] This figure does not include liquidated damages for unpaid overtime under the FLSA, which would increase Defendant's total exposure (assuming 100% liability) to $20,581,839.00. 29 U.S.C. § 216(b) (Liquidated damages for unpaid overtime is in an amount equal to the unpaid overtime.); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014). If an employer's conduct constitutes a "knowing violation" of the statute, the FLSA's standard two-year statute of limitations may be extended to three years. 29 U.S.C. § 255(a). Plaintiffs would argue that Sprint was on notice of these wage and hour issues in light of previous litigation. *See Osorio, et al. v. Sprint/United Mgmt. Co.*, No. 08-cv-03228 (N.D. Cal. Feb. 28, 2011); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 CV 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009); *Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164 (D. Kan.); *Webster, et al. v. Sprint PCS, Inc., et al.*, Case No. 06-cv-04623-GW-FMO (C.D. Cal. June 12, 2008); *Sibley v. Sprint Nextel Corp., et al.*, Case No. 08-cv-2063 KHV/JPO (D. Kan.).

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS AND APPROVAL OF SETTLEMENT AS TO COLLECTIVE
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

$166,000.00. Cottrell Decl. at ¶ 14. As derivative damages, Plaintiffs' Counsel assumed maximum statutory penalties of $4,000.00 for every California employees for improper wage statements, which totaled $2,440,000.00. *Id.* Plaintiffs' Counsel also included derivative damages for waiting time penalties for 30 days for Defendant's 529 former employees in the amount of $1,777,898.00. *Id.*

The net amount being disbursed to CMs is $1,979,166.67, which is approximately 14% of the total damages and penalties estimated by Plaintiffs. Cottrell Decl. at ¶ 15. The settlement amount is fair, reasonable, and adequate. Cottrell Decl. at ¶ 16. The settlement amount takes into account the substantial risks inherent in any class and collective action wage-and-hour case (including that certification of off-the-clock work is complicated by the lack of documentary evidence and reliance on employee testimony), the status of the litigation (including the pendency of *Bui*[4]), and the specific defenses asserted by Sprint. *Id.*

**E.   Mediation**

The Parties mediated this dispute on July 27, 2015 before Judge Infante, a respected and experienced wage and hour mediator. Cottrell Decl. at ¶ 17. The Parties engaged in arm's-length negotiations, culminated by the execution of a memorandum of understanding which set forth settlement terms resolving the matter. *Id.* After the mediation, counsel for the Parties worked to finalize the settlement for the CMs and corresponding notice documents, subject to the Court's approval. *Id.* The Settlement Agreement was fully-executed on November 30, 2015. *Id.*

---

[4] On July 10, 2014, Plaintiff Viet Bui filed the action *Bui v. Sprint Corporation, et al.* in California Superior Court, Sacramento County. Cottrell Decl. at ¶ 17. Defendant removed *Bui* to the Eastern District of California on October 17, 2014, and the case is assigned to District Judge Nunley as Case No. 2:14-cv-02461-TLN-AC. *Id.* Bui asserts claims under California law similar to those in this action. *Id.* On March 9, 2015, the *Bui* parties filed a notice of settlement and a subsequent motion for preliminary approval of the class action settlement. *Id.* That motion remains under submission. *Id.* Two points are important here: (1) the California Class members in this action will be receiving a greater settlement award than the class members in *Bui*; and (2) the pendency of *Bui* impacts and significantly narrows the size of the California Class in this action. *Id.* The *Bui* parties state that 5,021 individuals fall within their proposed putative class – 1,650 current and 3,371 former employees. *Id.* As a result, the Parties in this case agreed to limit the California Class members to those Opt-in Plaintiffs who worked in California and are excluded from the proposed *Bui* settlement class. *Id.*

## IV.   TERMS OF THE SETTLEMENT

### A.  Basic Terms

Sprint has agreed to pay a total of $3,370,000.00 to settle all aspects of the case.  Cottrell Decl. at ¶ 20. The "Net Settlement Amount," which is the amount available to pay settlement awards to the CMs, is defined as the Gross Settlement Amount less: any attorneys' fees and costs awarded to Class Counsel (fees of up to one-third of the Gross Settlement Amount, $1,123.333.33, plus costs are not to exceed $125,000.00), any enhancement payment awarded to the Class Representatives (up to $10,000.00 each), the payment made to the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA ($7,500.00)[5], and the Settlement Administrator's fees and costs (up to $95,000.00[6]). *Id.*

### B.  Class and Collective Definitions

An individual is a member of the Collective or Class if he or she belongs to one or both of the following:

▪ The "**California Class**" is a certified class for settlement purposes only under Federal Rule of Civil Procedure 23, which includes the Class Representatives and all Opt-in Plaintiffs who are or were employed by Defendant in California at any time from and including September 19, 2009 through and including the date of preliminary approval, and who do not validly exclude themselves from this settlement.

▪ The "**Collective**" is a certified collective action for settlement purposes only pursuant to 29 U.S.C. § 216(b), which includes all Opt-in Plaintiffs who are or were employed by Defendant

---

[5] The LWDA has requested that it be provided a copy of the settlement agreement, once it is approved by the Court. Cottrell Decl. at ¶ 20, fn. 2. The Parties will comply with the LWDA's request once the settlement agreement is approved. *Id.* The Parties also agree to allocate $10,000.00 of the Gross Settlement Fund to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. *Id.* The Settlement Administrator shall pay 75%, or $7,500.00, of this amount to the LWDA, and allocate 25%, or $2,500.00, of this amount to the California Class Net Settlement Fund.  *Id.*

[6] The Settlement Administrator's estimate is $87,377.00. Cottrell Decl. at ¶ 20, fn. 3. The estimate of $95,000.00 includes possible, but unanticipated additional costs. *Id.* If these unanticipated costs are not incurred, the costs reserved for the Settlement Administrator will return to the Net Settlement Fund and be distributed to the CMs. *Id.*

5

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS AND APPROVAL OF SETTLEMENT AS TO COLLECTIVE

Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

inside and outside of California at any time from and including September 19, 2010 through and including the date of preliminary approval. Cottrell Decl. at ¶ 21.

### C.  Allocation and Awards

The Net Settlement Amount to be paid to CMs is $1,979,166.67. Cottrell Decl. at ¶ 22. 27% of the Net Settlement Amount is allocated to the Class, and 73% is allocated to the Collective. *Id.* Only those Class members who do not opt-out of the Settlement will receive payment from the California Class Net Settlement Fund. *Id.* Each Class member's settlement share will be determined based on the total number of weeks that the respective Class member worked for Defendant from September 19, 2009 through the date of preliminary approval of this Settlement Agreement. *Id.* Class Settlement Awards will be paid to Class members by the Settlement Administrator 15 days after the occurrence of the "Effective Date". *Id.* The amount of the Class Settlement Award to be paid to California Class Members will be paid in a check separate from a check for the amount to be paid to the California Class Members for their membership in the Collective (as discussed below). *Id.* All eligibility and Class Settlement Award determinations shall be based on employee workweek information that Defendant will provide to the Settlement Administrator. *Id.* Class members will have the opportunity should they disagree with Defendant's records, to provide documentation and/or an explanation to show a contrary number of weeks worked.  *Id.* For any Class member that does not timely opt out of the Settlement and receives a payment, but does not timely cash his or her settlement check within 90 days after its issuance by the Settlement Administrator, the Settlement Administrator will immediately stop payment on the check and such funds from the California Class Net Settlement Fund for each such Class member will be transmitted by the Settlement Administrator to the State of California's Unclaimed Property Fund pursuant to governing law to be held there for the benefit of such Class Members under California's escheatment laws. *Id.*

Collective members' settlement shares will be calculated and awarded in a similar fashion to the process described above with respect to Class members. Cottrell Decl. at ¶ 23. There are two distinctions. *Id.* First, each Collective member's settlement share will be determined based on the total number of weeks that the respective Collective member worked for Defendant during the

FLSA collective action period, from September 19, 2010 through the date of preliminary approval of this Settlement Agreement. *Id.* Second, the settlement shares will be distributed to Collective members without challenge to the number of workweeks worked.[7] *Id.* For any Collective member that does not cash a settlement check within 90 days after issuance by the Settlement Administrator, the Settlement Administrator will immediately stop payment on the check and such settlement payment shall become void, and the gross amount of such payment (before deductions and withholdings for any employee-paid payroll taxes) plus any associated employer-paid payroll taxes shall remain the property of and be returned by the Settlement Administrator to Defendant within 30 days after the stop payment order is made. *Id.*

### D.  Scope of Release and Final Judgment

The release contemplated by the proposed Settlement will release all claims in connection with the lawsuit, that have been filed in any of the consolidated and/or related actions and all violations asserted in any notice sent to the LWDA, as well as the same or any similar claims that could have been alleged in the pleadings under the laws of any state outside California where Opt-in Plaintiffs worked for Sprint, from the beginning of any applicable statute of limitations period through the date of final approval of this Settlement. Cottrell Decl. at ¶ 24. Only those Collective Members who cash their settlement checks will release their FLSA claims; and only those Class Members who do not opt out will release their California Claims. *Id.*

### E.  Settlement Administration

The Parties have agreed to use Heffler to administer the Settlement, for total fees and costs it has agreed will not exceed $95,000.00.[8] Cottrell Decl. at ¶ 25. Heffler will distribute the Class Notice and the Collective Notice which shall accompany the Collective members' settlement checks, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, preparing and issuing all disbursements to be paid to Class members,

---

[7] Collective members have already had the opportunity to confirm their workweeks when filing out the dates of their employment on their opt-in consent forms filed with the Court.

[8] About $25,000.00 of Heffler's estimated costs are generated from tax reporting for the 47 states in which Opt-in Plaintiffs worked.

Collective members, the Class Representatives, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities, and handling inquiries and/or disputes from CMs. *Id.* Heffler is also responsible for the timely preparation and filing of all tax returns, and making the timely and accurate payment of any and all necessary taxes and withholdings. *Id.* Heffler will also establish a mailing address and toll-free telephone number to direct inquiries regarding the Notices and determination of individual settlement payments. *Id.*

## V.   ARGUMENT

### A.  The Court Should Grant Preliminary Approval of the Settlement as to the California Class under Rule 23.

A certified class action may not be settled without Court approval. *See* FED.R.CIV.P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (FED.R.CIV. P. 23(a),(b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (FED.R.CIV.P. 23(e)(2)).

This class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair, reasonable, and adequate in accordance with Rule 23(e)(2). Cottrell Decl. at ¶ 26. Accordingly, the Court should preliminary approve the settlement as to the Class.[9]

---

[9] Plaintiffs acknowledge that while this Motion is unopposed because the Parties agree to certification for settlement purposes, in the event that the Settlement Agreement is not approved by the Court, class and collective certification would be contested by Defendants, and that

### B. The Court Should Conditionally Certify the California Class.

A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) questions of law or fact are common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the person representing the class is able to fairly and adequately protect the interests of all members of the class. FED. R. CIV. P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Applying this standard, numerous cases similar to this case have certified classes of retail employees who have suffered wage and hour violations under California law. *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 WL 5877695 (N.D. Cal. Nov. 12, 2014) (certifying California Rule 23 class in a case asserting similar wage and hour violations for non-exempt, hourly employee working as Sales Associates and Assistant Managers). Likewise, the California Class meets all of these requirements.

### 1. The Class is numerous and ascertainable.

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. FED.R.CIV.P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The 702 members of the California class make the class so large as to make joinder impracticable. Cottrell Decl. at ¶ 27.

### 2. Plaintiffs' claims raise common issues of fact or law.

The commonality requirement of FED.R.CIV.P. 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa.

---

Defendant fully reserves and does not waive its arguments and challenges regarding the propriety of class and collective action certification.

2000). Rule 23(a)(2) has been construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Plaintiff "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution . . . a single common question" satisfies commonality. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013)). Common questions of law and fact predominate thereby satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaint. Cottrell Decl. at ¶ 28. Defendant has uniform policies applicable to all non-exempt hourly employees. *Id*. Specifically, Plaintiffs allege that non-exempt Retail Consultants, Lead Retail Consultants, and Assistant Store Managers are subject to the same: hiring and training process; timekeeping, payroll, and compensation policies; meal and rest period policies and practices; and uniform requirements and reimbursement policies. *Id*. Plaintiffs' other derivative claims will rise or fall with the primary claims. *Id*. Because these questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement is satisfied for the Class. *Id*.

### 3.   Plaintiffs' claims are typical of the claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' claims are typical of those of all other hourly employees.  Cottrell Decl. at ¶ 29. They were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *Id.* Interviews with Class members and review of timekeeping and payroll data confirm that the employees throughout California were apparently subjected to the same alleged illegal policies and practices to which Plaintiffs were subjected. *Id.* Thus, this requirement is also satisfied. *Id.*

### 4.   Plaintiffs and Class Counsel will adequately represent the Class.

To meet the adequacy of representation requirement in FED.R.CIV.P. 23(a)(4), Plaintiffs must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there

is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiffs' claims are not antagonistic to the claims of members of the putative Class. Cottrell Decl. at ¶ 30. Plaintiffs' claims are in line with the claims of the class. *Id.* Plaintiffs have prosecuted this case with the interests of the CMs in mind. *Id.* Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the class, as the Court recognized when conditionally certifying the FLSA Collective. *Id.*

### 5. The Rule 23(b)(3) requirements for class certification are also met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545 (9th Cir. 2013).

Here, Plaintiffs contend the common questions raised in this action predominate over any individualized questions concerning the California Class. Cottrell Decl. at ¶ 31. The Class is entirely cohesive because resolution of Plaintiffs' claims all hinge on the uniform policies and practices of Sprint, rather than any treatment the Class members experienced on an individual level. *Id.* As a result, the resolution of these alleged class claims will be resolved through the use of common forms of proof, such as Sprint's uniform policies, and will not require inquiries specific to individual class members.[10] *Id.*

Further, Plaintiffs contend the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. Cottrell Decl. at ¶ 32. To determine whether the class

---

[10] Although the amount of time worked off-the-clock and number of missed meal and rest periods may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the defendant's allegedly unlawful policy is not a proper basis for denying certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014).

1    approach is superior, courts are to consider: (A) the class members' interests in individually

2    controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

3    concerning the controversy already begun by or against class members; (C) the desirability or

4    undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely

5    difficulties in managing a class action. FED.R.CIV.P. 23(b)(3)(A)-(D). Here, the Class members do

6    not have a strong interest in controlling their individual claims. Cottrell Decl. at ¶ 32. If the Class

7    members proceeded on these claims as individuals, their many individual suits would require

8    duplicative discovery and duplicative litigation. *Id.* In contrast, the class action mechanism would

9    efficiently resolve numerous substantially identical claims at the same time while avoiding a waste

10   of judicial resources and eliminating the possibility of conflicting decisions from repetitious

11   litigation. *Id.* Manageability is not a concern in the settlement context, *Amchem Prod., Inc. v.*

12   *Windsor*, 521 U.S. 591, 593 (1997). Accordingly, class treatment is superior.

### C. The Court Has Already Conditionally Certified the Collective, Warranting Approval of the Settlement as to the Collective.

14        The FLSA permits employees to bring a collective action on "behalf of himself or

15   themselves and other employees similarly situated." 29 U.S.C. § 216(b). District courts have broad

16   discretion to allow a party asserting FLSA claims on behalf of others to notify potential "similarly

17   situated" plaintiffs that they may choose to "opt in" to the suit. *Hoffman-La Roche, Inc., v. Sperling*,

18   493 U.S. 165, 169 (1989). Courts in this District have employed the now well-established, two-

19   tiered approach to these cases. *See Ramirez v. Ghilotti Bros., Inc., et al.*, 941 F.Supp.2d 1197, 1203-

20   06 (N.D. Cal. 2013). First, the court makes an initial, conditional determination of whether

21   plaintiffs are similarly situated, "deciding whether a collective action should be certified for the

22   purpose of sending notice to potential class members." *Id.* Then, "prompted by a defendant's

23   motion for decertification, the court makes a second determination, using a stricter standard." *Id.*

24   "At that point, the court 'must make a factual determination' as to the "propriety and scope of the

25   class,' considering '(1) the disparate factual and employment settings of the individual plaintiffs;

26   (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3)

27   fairness and procedural considerations.'" *Id.* "Even at that second stage, the showing that must be

28

made for collective actions is less stringent than what is required under Federal Rule of Civil Procedure Rule 23 —'[a]ll that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.'" *Id.* The Court has already conditionally certified a collective under § 216(b) for Plaintiffs' FLSA claims. Cottrell Decl. at ¶ 33. Sprint has not moved for decertification of the FLSA claim. *Id.* Accordingly, the Court should approve the Settlement as to the Collective. *Id.*

### 1. The employment settings of the 1,947 Collective members are similar.

All of the Opt-in Plaintiffs worked at Sprint retail stores and were subject to certain uniform policies and practices concerning: scheduling, timekeeping, compensation, uniform requirements, termination, and wage statements. Cottrell Decl. at ¶ 34. The Court has already concluded that Plaintiffs "have satisfied their burden of making 'substantial allegations' and a 'modest factual showing' that Sprint retail store sales staff were subject to a common practice or policy that violated the FLSA." Dkt. No. 79, p. 2 (Court's Conditional Certification Order). Moreover, these practices and policies raise common issues of law and fact. Cottrell Decl. at ¶ 34. Because the Opt-in Plaintiffs are similarly situated, their factual settings are common and similar. *Id.* For these reasons, the collective action has been properly conditionally certified by the Court, and the Settlement should now be approved.

### 2. No individualized defenses exist to defeat certification.

Because Sprint maintains various common policies and practices as to what time it compensates and what time it does not compensate, and applies these policies and practices to its Retail Consultants, Lead Retail Consultants, and Assistant Store Managers who work at its retail stores, Plaintiffs contend that there are no individual defenses available to Defendant. Cottrell Decl. at ¶ 35.  The Opt-in Plaintiffs' claims rise and fall together, and depend on an analysis of the common facts they share. *Id.* Any differences between Collective members relate to the ***amount of time*** they spent working off-the-clock; but these are issues of damages, not liability. *Id.*  Here, where the legality of the common policies and practices is at issue, individual damage variables are

1   limited and easily managed. *Id.*; *Yokoyama*, 594 F.3d at 1094.

2              **3.   Fairness and procedural factors favor certification.**

3          Finally, the fairness and procedural factors direct the Court to consider "the primary

4   objectives of a collective action: (1) to lower costs to the plaintiffs through the pooling of resources;

5   and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law

6   and fact that arose from the same alleged activity." *Reed v. County of Orange*, 266 F.R.D. 446, 462

7   (C.D. Cal. Jan. 8, 2010); *see also Hoffmann-LaRoche, Inc.*, 493 U.S. at 170 (noting a collective

8   action affords plaintiffs the "advantage of lower individual costs to vindicate rights by the pooling

9   of resources" and "[t]he judicial system benefits by efficient resolution in one proceeding of

10  common issues of law and fact"). Here, considerations of fairness and procedural efficiency also

11  militate in favor of maintaining this case as a collective action and approving the Settlement.

12  Cottrell Decl. at ¶ 36. It involves thousands of individuals with very similar, but relatively small,

13  claims for monetary injury. *Id.* The large number of Opt-in Plaintiffs reflects the strong employee

14  interest in this case. *Id.* It also shows the very realistic alternative that, if this settlement is not

15  approved, nearly two thousand workers will potentially sue in this Court to enforce their rights. *Id.*

16  The issues raised by the present case are much better handled collectively by way of a settlement.

17  *Id.* The Settlement presented by the Parties provides more finality, ensures that workers receive

18  redress for their relatively modest claims, and avoids clogging the court system with cases that

19  could easily be kept in this consolidated proceeding. *Id.*

20          **D.   The Settlement Should Be Preliminarily Approved as to the Class and
21                 Approved as to the Collective Because It Is Fair, Reasonable, and Adequate.**

22          In deciding whether to approve a proposed class action settlement, the Court must find that

23  the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for

24  Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Included in this analysis are

25  considerations of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and

26  likely duration of further litigation; (3) the risk of maintaining class action status throughout the

27  trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

28  proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate.

### 1. The terms of the Settlement are fair, reasonable, and adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).[11] A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. Cottrell Decl. at ¶ 37.  The Net Settlement Amount of $1,979,166.67, derived from a Gross Settlement Amount of $3,370,000.00, will result in fair and just relief to CMs. *Id.* Payments to the Collective and Class members are roughly 14% of the maximum total damages, penalties and interest attainable in this case. *Id.* The result is well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id.* Furthermore, the final settlement amount takes into account the substantial risks inherent in any class action wage-and-hour case, as well as the specific defenses asserted by Defendant, many of which were supported by the declarations gathered and produced by Defendant.

---

[11] *Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving 30% of damages); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (approving 33% of damages); *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages).

1   *Id.; See Officers for Justice*, 688 F.2d at 623.

2   ### 2. The Parties have agreed to distribute settlement proceeds tailored to the Class and Collective and their respective claims.

3   In an effort to further ensure fairness for the employees, the Parties have agreed to allocate

4   the settlement proceeds amongst CMs that track each of the substantive violations and some of the

5   penalty claims, including the limitations period for each claims. Cottrell Decl. at ¶ 38. The

6   allocation was made based on Class Counsel's assessment of the risk of continued litigation and

7   risk on certification and merits. *Id.* Once allocating the proceeds, the Parties further agreed on

8   distribution formulas specifically tailored to each claim, and each claims limitations period, to

9   further ensure that employees are compensated accordingly and in the most equitable manner. *Id.*

10   A class action settlement need not benefit all class members equally. *Holmes v. Continental*

11   *Can Co.,* 706 F.2d 1144, 1148 (11th Cir.1983); *In re AT & T Mobility Wireless Data Services Sales*

12   *Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D.Ill.2011). Rather,

13   although disparities in the treatment of class and collective members may raise an inference of

14   unfairness and/or inadequate representation, this inference can be rebutted by showing that the

15   unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,*

16   789 F.Supp.2d at 979–80, 2011 WL 2204584 at *42.

17   ### 3. The extensive informal discovery exchange between the parties enabled them to make informed decisions regarding settlement.

18   The amount of discovery completed prior to reaching a settlement is important because it

19   bears on whether the Parties and the Court have sufficient information before them to assess the

20   merits of the claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL

21   4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal.

22   1979). Informal discovery is a strong factor in favor of settlement approval so long as the Parties

23   had an opportunity to "form a clear view of the strengths and weaknesses of their cases."

24   *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

25   The Parties engaged in an extensive informal information exchange and discovery to enable

26   both sides to assess the claims and potential defenses in this action. Cottrell Decl. at ¶¶ 11, 39. The

27   Parties were able to accurately assess the legal and factual issues that would arise if the case

28

proceeded to trial. Cottrell Decl. at ¶ 39. In addition, in reaching this settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. Cottrell Decl. at ¶¶ 4-6, 39. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on CMs' pay. Cottrell Decl. at ¶¶ 12-16, 39. Ultimately, facilitated by Judge Infante, the Parties used this information and discovery to fairly resolve the litigation. Cottrell Decl. at ¶¶ 18, 39.

### 4. Litigating this action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

The monetary value of the proposed Settlement represents a fair compromise given the litigation risks and uncertainties posed by continued litigation. Cottrell Decl. at ¶ 40. If this case were to go to trial as a class and collective action (which Defendant would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that fees and costs would exceed $2,000,000.00. *Id.* Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.* Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiff's claims, a questionable feat in light of recent developments in wage and hour and class and collective action law as well as the legal and factual grounds that Sprint has asserted to defend this action. *Id.* In contrast, resolving this case by means of an early settlement will yield a prompt, certain, and very substantial recovery for the CMs. *Id.* Such a result will benefit the Parties and the court system. *Id.*

### 5. The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL

1    1230826, at *10; *Carter*, 2010 WL 1946784, at *8 ("Counsel's opinion is accorded considerable

2    weight."). Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell

3    Decl. at ¶ 41. The Parties participated in a full-day mediation before Judge Infante, who is a skilled

4    mediator with many years of experience mediating employment matters. *Id.* In addition, the

5    adversarial mediation resulted in a written memorandum of understanding that memorialized the

6    core terms of the proposed settlement. *Id.* Subsequently, the Parties spent months negotiating the

7    long form settlement agreement, with several rounds of correspondence related to the details of the

8    settlement. *Id.*

9    ### E.  The Class Representative Enhancement Payments are Reasonable.

10          Named plaintiffs in class action litigation are eligible for reasonable service awards. *See*

11   *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[12]  The enhancement payments of

12   $10,000.00 for each of the four Plaintiffs are intended to compensate Plaintiffs for the critical role

13   they played in this case, and the time, effort, and risks undertaken in helping secure the result

14   obtained on behalf of the CMs. Cottrell Decl. at ¶ 42. In agreeing to serve as Class and Collective

15   representatives, Plaintiffs formally agreed to accept the responsibilities of representing the interests

16   of all CMs. *Id.* Sprint does not oppose payment of up to $10,000.00 per Plaintiff as reasonable

17   service awards. *Id.* Moreover, the service awards are fair when compared to the payments approved

18   in similar cases. *See, e.g.*, *Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco

19   Super. Ct., Sept. 3, 2010) (approving $10,000 service payment for each class representative).[13]

20

21

---

22   [12] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they
     provided and the risks they incurred during the course of the class action litigation." *Van Vranken v.*

23   *Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for

24   work in class action).
     [13] *Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684 (Alameda Super Ct., Mar. 11, 2010)

25   (approving award of $12,500); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda
     Super. Ct., Sept. 22, 2009) (approving award of $12,500); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821

26   (San Mateo Super. Ct., Sept. 22, 2006) (approving award of $30,000); *Meewes v. ICI Dulux Paints*,
     No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) (approving service awards of $50,000,

27   $25,000 and $10,000 to the named plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D.
     Cal. May 30, 2007) (approving service award of $20,000).

28

1

### F.  The Requested Attorneys' Fees and Costs are Reasonable.

2       In their fee motion to be submitted with the final approval papers, Class Counsel will

3   request up to thirty-three percent (33%) of the Gross Settlement Amount, $1,123.333.33) plus

4   reimbursement of costs not to exceed $125,000.00. Cottrell Decl. at ¶ 43. The typical range of

5   acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with

6   25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-492 (E.D.

7   Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Hanlon*, 150 F.3d at

8   1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the

9   case, and in "most common fund cases, the award exceeds that benchmark." *Id.* (citing *Knight v.*

10  *Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re Activision Sec. Litig.*, 723 F.Supp.

11  1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")). In

12  California, federal and state courts have customarily approved payments of attorneys' fees

13  amounting to one-third of the common fund in comparable wage and hour class actions. *See Regino*

14  *Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL

15  5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to 45% of the settlement fund).[14]

16       In this case, given the results achieved, the effort expended litigating the case, and the

17  difficulties attendant to litigating this case, such an upward adjustment is warranted. Cottrell Decl.

18  at ¶ 43. There was no guarantee of compensation or reimbursement. *Id.* Rather, counsel undertook

19  all the risks of this litigation on a completely contingent fee basis. *Id.* These risks were front and

20  center. *Id.* Defendant's vigorous and skillful defense further confronted Class Counsel with the

21  prospect of recovering nothing or close to nothing for their commitment to and investment in the

22

---

23  [14] *Wren v. RGIS Inventory Specialists,* WL 1230826, (N.D.Cal.,2011) (approving attorneys' fee

24  award of just under 42% of common fund); *Big Lots Overtime Cases*, JCC Proceeding No. 4283
    (San Bernardino Super. Ct., Feb.cas 4, 2004) (approving award of attorneys' fees of 33% of the

25  recovery); *Barela v. Ralph's Grocery Co.*, No. BC070061 (Los Angeles Super. Ct., June 5, 1998)
    (same); *Davis v. The Money Store, Inc.*, No. 99AS01716, (Sacramento Super. Ct., Dec. 26, 2000)

26  (same); *Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) (same);

27  *Miskell v. Auto. Club of S. Cal.* (Orange County Super. Ct., No. 01CC09035, May 27, 2003)
    (same); *Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, (Los Angeles Super. Ct., Mar.

28  24, 1992) (same).

1  case. *Id.*

2  Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and

3  pressing Plaintiffs' legal claims to enforce the employees' rights and maximize the class and

4  collective recovery. *Id.* During the litigation, counsel had to turn away other less risky cases to

5  remain sufficiently resourced for this one. *Id.* The challenges that Class Counsel had to confront and

6  the risks they had to fully absorb on behalf of the class and collective here are precisely the reasons

7  for multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-2685-GEB-

8  CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the Law, 534,

9  567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal services paid as

10  they are performed… because the risk of default (the loss of the case, which cancels the debt of the

11  client to the lawyer) is much higher than that of conventional loans").

12  Attorneys who litigate on a wholly or partially contingent basis expect to receive

13  significantly higher effective hourly rates in cases where compensation is contingent on success,

14  particularly in hard-fought cases where, like in the case at bar, the result is uncertain. This does not

15  result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant

16  financial risk on behalf of a client rightfully expects that his or her compensation will be

17  significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis),

18  and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward

19  in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of

20  hours of labor simply makes those fee awards consistent with the legal marketplace, and in so

21  doing, helps to ensure that meritorious cases will be brought to enforce important public interest

22  policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

23  The requested attorneys' fees and expense award is also reasonable when compared to

24  Class Counsel's lodestar amount. Cottrell Decl. at ¶ 44. *See, e.g., Vizcaino v. Microsoft Corp.*, 290

25  F. 3d 1043, 1050-51 (9th Cir. 2002)("Calculation of the lodestar, which measures the lawyers'

26  investment of time in the litigation, provides a check on the reasonableness of the percentage

27  award"). Here, Class Counsel's current cumulative lodestar is $1,786,750.00. Cottrell Decl. at ¶ 44.

28  This amount will increase for preparation of the final approval papers, preparation and attendance at

1    any remaining hearings, correspondence with CMs, and settlement administration and oversight. *Id.*

2    Class Counsel incurred these fees performing the work described herein and in the accompanying

3    declaration of Class Counsel. *Id.* Class Counsel's litigation costs to date total $96,050.23. *Id.* Class

4    Counsel also requests reimbursement for these expenses. *Id.* Class Counsel respectfully submits that

5    a one-third recovery for fees is modest and appropriate and should be preliminarily approved as fair

6    and reasonable. *Id.*

7                    **G.  The Proposed Notices and Claims Process Are Reasonable.**

8            The Court must ensure that CMs receive the best notice practicable under the circumstances

9    of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle &*

10   *Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee any particular

11   procedure but rather requires only notice reasonably calculated "to apprise interested parties of the

12   pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent.*

13   *Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th

14   Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement

15   in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

16   heard.'" *Churchill Village LLC*, 361 F.3d at 575.

17           The Class and Collective Notices, attached respectively as **Exhibits A and B** to the

18   Settlement Agreement, and manner of distribution negotiated and agreed upon by the Parties is "the

19   best notice practicable." Cottrell Decl. at ¶ 45. FED.R.CIV.P. 23(c)(2)(B). All CMs have been

20   identified and the Class and Collective Notices will be mailed directly to each Class and Collective

21   member. Cottrell Decl. at ¶ 46. In addition, the proposed Notices are clear and straightforward, and

22   provide information on the meaning and nature of the Class and Collective definitions, the class and

23   collective action, the terms and provisions of the Settlement Agreement, and the monetary awards

24   that the Settlement will provide CMs. *Id.*

25           The proposed Notices also fulfill the requirement of neutrality in class notices. Cottrell Decl.

26   at ¶ 47. *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). They summarize the

27   proceedings necessary to provide context for the Settlement Agreement and summarize the terms

28   and conditions of the settlement, including an explanation of how the settlement amount will be

1   allocated between the named Plaintiffs, Class Counsel, the Settlement Administrator, and the CMs,

2   in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for

3   Complex Litigation's recommendation that "the notice contain a clear, accurate description of the

4   terms of the settlement." Cottrell Decl. at ¶ 47. Manual for Complex Litigation, *Settlement Notice*, §

5   21.312 (4th ed. 2004).

6          The Class Notice clearly explains the procedures and deadlines for requesting exclusion

7   from the Settlement, objecting to the estimated award, the consequences of taking or foregoing the

8   various options available to Class members, and the date, time and place of the final settlement

9   approval hearing. Cottrell Decl. at ¶ 48. Pursuant to Rule 23(h), the proposed Class Notice also sets

10  forth the amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the

11  procedure by which Class Counsel will apply for them. *Id.* In addition, the Class Notice explains

12  that Class members have the opportunity to object to Class Counsel's motion for attorneys' fees and

13  costs. *Id.* The Class Notice clearly states that the settlement does not constitute an admission of

14  liability by Defendant. *Id.* It makes clear that the final settlement approval decision has yet to be

15  made. *Id.* Accordingly, the Class Notice complies with the standards of fairness, completeness, and

16  neutrality required of a settlement class notice disseminated under authority of the Court. *See*

17  Conte, Newberg on Class Actions, §§ 8.21 and 8.39 (3rd Ed. 1992); Manual for Complex

18  Litigation, *Certification Notice,* § 21.311; *Settlement Notice,* § 21.312 (4th ed. 2004).

19         Likewise, the Collective Notice informs Collective members of the details of the litigation,

20  the Settlement, and their awards. Cottrell Decl. at ¶ 49. It makes clear that in order to participate in

21  the Settlement, they must timely cash their settlement checks. *Id.*

22         Furthermore, reasonable steps will be taken to ensure that all CMs receive the Notices.

23  Cottrell Decl. at ¶ 50. Before mailing, Defendant shall provide to Heffler a Database that contains

24  the last-known name, mailing address, and Social Security Number for all CMs along with their

25  qualifying workweeks for calculating their respective Class Settlement Shares and/or Collective

26  Settlement Shares. *Id.* The Settlement Administrator shall use one or more commercially-reasonable

27  skip tracing methods to update the contact information in the Database. Within 10 calendar days of

28  receipt of the Database from Defendant, Heffler will mail the Class Notice to each California Class

member. *Id.* With respect to Class Notices returned as undeliverable, Heffler will promptly attempt to obtain a valid mailing address by use of one or more skip trace databases such as the Equifax, National Change of Address ("NCOA") database search, and skip trace. *Id.* If another address is identified, Heffler will send the Class Notice to the new address. *Id.* Heffler may also send the Class Notice to Class members through email. *Id.* Class members will have 45 days from the mailing of the Class Notice to opt-out, object to the Settlement, or dispute the information shown on his or her Class Notice. *Id.* Any Class member who fails to submit a timely request to exclude themselves from the Settlement will be deemed a Class member whose rights and claims are determined by any order the Court enters granting final approval, and any judgment the Court ultimately enters in the case. *Id.* Administration of the Settlement as to the Collective will follow upon the occurrence of the Effective Date of the settlement for the California Class. *Id.* At least 5 business days before the Collective Notices are sent to the Collective Members, Heffler will provide counsel for the Parties with a final statement listing all Collective members as well as identifying the number of weeks worked by each Collective member and the approximate Settlement award to each Collective member. *Id.* Thereafter, the Collective Notice will be mailed to all Collective members with their settlement checks. *Id.*

Because the proposed Notices clearly and concisely describe the terms of the Settlement and the obligations of CMs who participate, and because the Notices will be disseminated in a way calculated to provide notice to as many CMs as possible, the Class Notice should be preliminarily approved, and the Collective Notice should be approved.

### H.  The Court Should Approve the Proposed Schedule.

The Settlement Agreement contains the following proposed schedule, which Plaintiffs respectfully request this Court approve:

| | |
|---|---|
| Date of preliminary approval of the Settlement as to Class and approval of the Settlement as to the Collective | |
| Defendant to provide to Heffler a database containing CMs' contact information | 10 days after entry of order granting preliminary approval of the Settlement as to Class and approval of the Settlement as to the Collective |

| | |
|---|---|
| Heffler shall provide all Counsel with a final statement listing all CMs and identifying the number of weeks worked and approximate settlement award to each | 5 business days before Class Notices are sent |
| Heffler mails Class Notice to CMs | 10 days after Heffler receives CM database |
| Deadline to postmark requests to opt-out, objections to Settlement, or dispute the information shown in Class Notice pursuant to the instructions set forth in the Class Notice | 45 days after Class Notice is mailed |
| Class Counsel to provide Defendant's counsel with 2 court days review of final approval motion and fees motion | |
| Filing Deadlines for Final Approval Motion and Fees Motion | At least 14 days before the deadline for objections to the Settlement Agreement |
| Heffler to provide all counsel with a declaration attesting to completion of the Notice process | 5 days before Final Approval Hearing |
| Class Counsel to file Heffler's verification that the Class Notice has been completed | On or before the date of the Final Approval Hearing |
| Final Approval Hearing | |
| Effective Date | (a) if no objections to the settlement are filed, then the Effective Date shall be 35 days after the Court enters its order granting final approval of the settlement; (b) if objections to the settlement are filed and overruled, and no appeal is taken of the final approval order, then the Effective Date shall be 35 days after the Court enters its order granting final approval of the settlement; or (c) if any appeal is taken from the Court's overruling of objections to the settlement, then the Effective Date shall be 20 days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final and the exhaustion of all possible further appellate review. |
| Defendant to receive wire transfer instructions from Heffler for the Qualified Settlement Fund's bank account and an IRS Form W-9 for the fund, and then Defendant shall wire the Gross Settlement Fund | 10 business days after Effective Date |
| Heffler will provide all counsel with a final statement listing all Collective members as well as identifying the number of weeks worked by and the approximate Settlement award to each Collective member | 5 days before Notices and settlement awards sent to Collective |
| Fees and costs, Class Representative awards, | No later than 15 calendar day after receipt |

| | |
|---|---|
| Class awards, Collective awards (to be accompanied by Collective Notices) to be paid by Heffler | of funds from Defendant following Effective Date |
| For any Collective settlement check returned as undeliverable, Heffler attempts to re-mail | (90 day issuance period to be extended for another 90 days) |
| Heffler to stop payment on checks for CMs that do not timely opt-out and receive a payment but do not cash settlement check and transmit funds to the State of California's Unclaimed Property Fund | 90 days after issuance of awards |
| Settlement Administrator will stop payment on check for Collective members and such settlement payments will become void | 90 days after issuance of awards |
| For Collective settlement checks deemed void, the Settlement Administrator will return payment to Defendant | 30 days after 90-day deadline |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement Agreement as to the California Class and approval of the Settlement Agreement as to the Collective in accordance with the schedule set forth herein.


Date: December 7, 2015                          Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP


*/s/ Nicole N. Coon*
CAROLYN HUNT COTTRELL
NICOLE N. COON

Attorneys for Plaintiffs, the Collective and Putative Class

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 7, 2015, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

Matthew Righetti
John Glugoski
Michael Righetti
Richard Hoyer
Ryan Hicks
Matthews Kane
Michael Mandel
Sabrina Beldner
John Van Hook
Joanne MacMillan

Date: December 7, 2015                                    Respectfully Submitted,


/s/ *Nicole N. Coon*
NICOLE N. COON (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105