Todd M. Schneider (SBN 158253)
Carolyn Hunt Cottrell (SBN 166977)
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
San Francisco, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
ncoon@schneiderwallace.com

Attorneys for Plaintiffs and the Settlement
Collective and Settlement Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OLIVIA GUILBAUD, MARQUES LILLY, AND MICHAEL WONG, and all others similarly situated,<br><br>            Plaintiffs,<br><br>      vs.<br><br>SPRINT NEXTEL CORPORATION AND SPRINT/UNITED MANAGEMENT CO., INC.,<br><br>            Defendants. | **Lead Case**<br>CASE NO. 3:13-CV-04357-VC<br><br>Hon. Vince Chhabria |
| MICHAEL SMITH, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>      vs.<br><br>SPRINT/UNITED MANAGEMENT COMPANY,<br><br>            Defendant. | *Consolidated with*<br><br>CASE NO. 3:14-CV-02642-VC<br><br>Hon. Vince Chhabria<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS**<br><br>Date:  April 14, 2016<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor |

[ADDITIONAL COUNSEL ON FOLLOWING PAGE]

1   Matthew Righetti (SBN 121012)
    John Glugoski (SBN 191551)
2   Michael Righetti (SBN 258541)
    RIGHETTI GLUGOSKI, P.C.
3   456 Montgomery Street, Suite 1400
    San Francisco, California 94101
4   Telephone: (415) 983-0900
    Facsimile:  (415) 397-9005
5   matt@righettilaw.com
    jglugoski@righettilaw.com
6   mike@righettilaw.com

7   Richard Hoyer (SBN 151931)
    Ryan L. Hicks (SBN 260284)
8   HOYER & HICKS
    Four Embarcadero Center, Suite 1400
9   San Francisco, California 94111
    Telephone: (415) 766-3536
10  Facsimile:  (415) 276-1738
    rhoyer@hoyerlaw.com
11  rhicks@hoyerlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Thursday April 14, 2016, at 10:00 a.m. in Courtroom 4 before Hon. Vince Chhabria of the United States District Court, Northern District of California, Plaintiffs Olivia Guilbaud, Marques Lilly, Michael Wong, and Michael Smith ("Plaintiffs") in the consolidated matters of lead case *Guilbaud, et al. v. Sprint Nextel Corporation, et al*., Case No. 3:13-CV-04357-VC, and *Smith, et al. v. Sprint/United Management Company*, Case No. 3:14-CV-02642-VC, move the Court for final approval of the Joint Stipulation for Class and Collective Action Settlement and Release of Claims (the "Settlement Agreement" or the "Settlement," previously filed with this Court at Dkt. No. 166-1) as to the California Class, which was already preliminarily approved by this Court on January 15, 2016. (Dkt. No. 170.) In particular, Plaintiffs move for an order:

(1) granting final approval of the Settlement Agreement as to the California Class;

(2) certifying the California Class;

(3) finally approving Schneider Wallace Cottrell Konecky Wotkyns LLP ("SWCKW"), Hoyer & Hicks ("HH"), and Righetti Glugoski, P.C. ("RG") as Class and Collective Counsel;

(4) finally approving the four Named Plaintiffs as Class and Collective Representatives;

(5) finally approving payment of $95,000.00 to Heffler as Settlement Administrator from the Settlement as compensation for administering the Settlement;

(6) finally approving the implementation schedule; and

(7) entering a final judgment with the terms of the Settlement.

This Motion is based on this notice, the following attached Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell ("Cottrell Decl."), and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion.  Accompanying this Motion is also Plaintiffs' Proposed Order Granting Final Approval of Settlement and Awarding Attorneys' Fees, Costs, and Service Awards and Proposed Judgment and Notice of Entry of Judgment.

1
2

# **TABLE OF CONTENTS**

3
I.      INTRODUCTION .................................................................................................. 1

4
II.     FACTUAL BACKGROUND .................................................................................. 1

5
III.    PROCEDURAL HISTORY .................................................................................... 2

6
        A.    Plaintiffs' Claims .......................................................................................... 2

7
        B.    FLSA Conditional Certification .................................................................... 2

8
        C.    Discovery ...................................................................................................... 3

9
        D.    Damages Analysis ......................................................................................... 3

10
        E.    Mediation ....................................................................................................... 5

11
        F.    Preliminary Approval of Settlement as to Class, Final Approval of

12
              Settlement as to Collective, and Settlement Administration .......................... 5

13
        G.    Final Approval of the Settlement .................................................................. 8

14
IV.     TERMS OF THE SETTLEMENT ........................................................................ 8

15
        A.    Basic Terms ................................................................................................... 8

16
        B.    Class and Collective Definitions .................................................................. 9

17
        C.    Allocation and Awards ................................................................................. 9

18
        D.    Scope of Release and Final Judgment .......................................................... 11

19
V.      ARGUMENT ........................................................................................................ 12

20
        A.    The Court Should Finally Approve the Settlement Pursuant to Ninth

21
              Circuit Precedent ......................................................................................... 12

22
        B.    The Court Should Finally Approve the Settlement ...................................... 13

23
              1.    The best practicable notice was provided to the California Class in

24
                    accordance with the process approved by the Court .......................... 14

25
              2.    The terms of the Settlement are fair, reasonable, and adequate ........... 15

26
              3.    The Parties have agreed to distribute settlement proceeds tailored to the
                    Class and Collective and their respective claims ............................... 17

27
              4.    The extensive informal discovery exchange between the parties enabled

28
                    them to make informed decisions regarding settlement ...................... 17

              5.    While Plaintiffs recognize the strength of their claims, there are risks in
                    proceeding with the litigation ........................................................... 18

i

6. Litigating this action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk ............................. 19

7. The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel ......................................... 20

8. Class Counsel are experienced class action litigators.................................... 20

9. Class Members approve of the settlement ...................................................... 21

C. The Class Representative Service Awards are Reasonable ................................. 22

D. The Requested Attorneys' Fees and Costs are Reasonable ................................ 23

VI. CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising*
   85 Cal.App.4th 1135 (2000) ...................................................................... 16

*Balderas v. Massage Envy Franchising, LLP*
   2014 WL 3610945 (N.D. Cal. July 21, 2014) ............................................ 15

*Bellinghausen v. Tractor Supply Co.*
   306 F.R.D. 245 (N.D. Cal. 2015) ........................................................ 16, 20

*Benton v. Telecom Network Specialists, Inc.*
   220 Cal.App.4th 701 (2014) ...................................................................... 18

*Boyd v. Bechtel Corp.*
   485 F.Supp. 610 (N.D. Cal. 1979) ............................................................ 17

*Bruner v. Sprint/United Mgmt. Co.*
   No. 07-2164 (D. Kan. filed Apr. 24, 2007) ................................................ 4

*Churchill Village, L.L.C. v. Gen. Elec.*
   361 F.3d 566 (9th Cir. 2004) ..................................................................... 14

*Cody v. Hillard*
   88 F.Supp.2d 1049 (D.S.D. 2000) ............................................................. 21

*Eddings v. Health Net, Inc.*
   No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ............................... 19

*Eng-Hatcher v. Sprint Nextel Corp.*
   No. 07 CV 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) ................................... 4

*Entin v. Barg*
   412 F.Supp. 508 (E.D. Pa. 1976) .............................................................. 15

*Franklin v. Kaypro Corp.*
   884 F.2d 1222 (9th Cir. 1989) ................................................................... 13

*Grunin v. Int'l House of Pancakes*
   513 F.2d 114 (8th Cir. 1975) ..................................................................... 14

iii

*Guifi Li v. A Perfect Day Franchise Inc.*
  2012 WL 2236752 (N.D. Cal. Jun. 15, 2012) ................................................................. 4

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ............................................................................. 12, 20

*Haro v. City of Los Angeles*
   745 F.3d 1249 (9th Cir. 2014) ................................................................................ 4

*Harris v. Vector Mktg. Corp.*
   No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ............................... 22

*Holmes v. Continental Can Co.*
  706 F.2d 1144 (11th Cir. 1983) ............................................................................ 17

*In re Am. Bank Note Holographics, Inc.*
  127 F.Supp.2d 418 (S.D.N.Y. 2001) ...................................................................... 21

*In Re Armored Car Antitrust Litig.*
  472 F.Supp. 1357 (N.D. 1979) .............................................................................. 15

*In re Art Materials Antitrust Litig.*
  100 F.R.D. 367 (N.D. Ohio 1983) .......................................................................... 21

*In re AT&T Mobility Wireless Data Services Sales Tax Litigation*
  789 F.Supp.2d 935 (N.D. Ill. 2011) ....................................................................... 17

*In re Dun & Bradstreet Credit Servs. Customer Litig.*
  130 F.R.D. 366 (S.D. Ohio 1990) .......................................................................... 21

*In Re Four Seasons Secs. Laws Litig.*
  58 F.R.D. 19 (W.D. Okla. 1972) ............................................................................ 15

*In re Mego Financial Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) ................................................................................ 15

*In re Omnivision Techs., Inc.*
  559 F.Supp.2d 1036 (N.D. Cal. 2008) .................................................................... 15

*In Re Sunrise Secs. Litig.*
  131 F.R.D. 450 (E.D. Pa. 1990) ............................................................................ 15

*In re Syncor ERISA Litig.*
  516 F.3d 1095 (9th Cir. 2008) ...................................................... 14

*In re Warfarin Sodium Antitrust Litig.*
  212 F.R.D. 231 (D. Del. 2002) ............................................... 15, 16

*Langford v. Devitt*
  127 F.R.D. 41 (S.D.N.Y. 1989) ................................................. 14

*Lazarin v. Pro Unlimited, Inc.*
  No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) ........................... 23

*Lewis v. Starbucks Corp.*
  No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ..................... 17

*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998) .................................................. 16

*Ma v. Covidien Holding, Inc.*
  2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ....................................... 15

*Mandujano v. Basic Vegetable Products, Inc.*
  541 F.2d 832 (9th Cir. 1976) ................................................ 14, 21

*Monterrubio v. Best Buy Stores, L.P.*
  291 F.R.D. 443 (E.D. Cal. 2013) ................................................ 17

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*
  688 F.2d 615 (9th Cir. 1982) ................................................passim

*Osorio, et al. v. Sprint/United Management Co.*
  No. 08-cv-03228 (N.D. Cal. Feb. 28, 2011) ........................................ 4

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*
  No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) ........................... 23

*Rodriguez v. West Publ'g Corp.*
  2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ..................................... 15

*Rulli, et al. v. Nielsen Co. (U.S.) LLC*
  No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) ................................... 13

*Sibley v. Sprint Nextel Corp., et al.*
   Case No. 08-cv-2063 KHV/JPO (D. Kan. filed Feb. 7, 2008) ........................................ 4

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ............................................................................... 13, 22

*Stovall-Gusman v. W.W. Granger, Inc.*
   2015 WL 3776765 (N.D. Cal. June 17, 2015) ........................................................ 15

*Thurman v. Bayshore Transit Management, Inc.*
   203 Cal.App.4th 1112 (2012). ................................................................................ 4

*Torrisi v. Tucson Elec. Power Co.*
   8 F.3d 1370 (9th Cir. 1993) .................................................................................. 14

*Van Vranken v. Atl. Richfield Co.*
   901 F.Supp. 294 (N.D. Cal. 1995) ......................................................................... 22

*Webster, et al. v. Sprint PCS, Inc., et al.*
   Case No. 06-cv-04623-GW-FMO (C.D. Cal. June 12, 2008) ....................................... 4

*Wren v. RGIS Inventory Specialists*
   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .......................... 14, 20

*Yokoyama v. Midland Nat. Life Ins. Co.*
   594 F.3d 1087 (9th Cir. 2010) ............................................................................... 18

**Statutes**

29 United States Code Section 201 ............................................................................ 2

29 United States Code Section 216(b) ........................................................................ 4

29 United States Code Section 255(a) ......................................................................... 4

Business and Professions Code Section 17200 ............................................................ 2

California Labor Code Section 1194.2 ........................................................................ 4

California Labor Code Section 203 ............................................................................. 4

California Labor Code Section 226 ............................................................................. 4

California Labor Code Section 2699 .................................................................... 2, 4, 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Other Authorities**

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*,

Section 21.61 (4th ed. 2004) .......................................................................................... 12

**Rules**

Federal Rule of Civil Procedure 23 ..................................................................... 5, 9, 12, 13

## I.   INTRODUCTION

This class and collective action is pursued on behalf of Retail Consultants, Lead Retail Consultants, and Assistant Store Managers working at Sprint retail stores throughout the United States, including in California. It is based on Sprint's alleged violations of federal and California labor laws. Following extensive discovery, a mediation with Hon. Edward A. Infante (Ret.), and extensive arm's-length negotiations between counsel, the Parties have reached a Settlement of this dispute. Plaintiffs now seek final approval of the Settlement. The Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions, and in doing so provide substantial benefit to the Class and Collective Members ("CMs"). Specifically, the Parties have resolved the claims of approximately 2,035 Sprint employees, 718[1] of whom worked in California, for a total settlement of $3,370,000.00. Cottrell Decl. at ¶ 10. This favorable Settlement is fair, reasonable, and adequate in all respects. The Court granted preliminary approval of this Settlement as to the California Class and approval of the Settlement as to the Collective on January 15, 2016. (Dkt. No. 170.) Following the Court's approval, notice of the Settlement was sent to the California Class on February 19, 2016. (Dkt. No. 175.) Cottrell Decl. at ¶ 11.The exclusion and objection period will expire on April 4, 2016. *Id.* To date, CMs have responded favorably. *Id.* No objections haves been filed, and no CM has opted out of the Settlement. *Id.* Accordingly, for the reasons set forth herein, the Court should grant final approval of the Settlement as to the California Class.[2]

## II.   FACTUAL BACKGROUND

Sprint is a nationwide retailer of cellular telephone services and devices, operating

---

[1] In their preliminary approval motion, Plaintiffs listed the total number of employees as 1,947. (Dkt. No. 166.) In order to provide notice of the Settlement to CMs, Defendant conducted a final review of its employee records to provide the Settlement Administrator with workweek and contact information for all CMs. Cottrell Decl. at ¶ 10. The CM numbers included in this brief are the most recent, accurate data. *Id.*

[2] In a separate motion filed concurrently with this final approval motion on March 21, 2016, Plaintiffs seek approval of an award of attorneys' fees, costs, and service awards for the Named Plaintiffs. Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, this brief does not repeat that request and corresponding background information set forth in the fee, cost, and service award motion.

1

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

approximately 1,000 retail stores throughout the U.S. Plaintiffs and CMs are former and current non-exempt, hourly employees of Sprint. Plaintiffs allege that each Sprint store performs similar services and is subject to the same policies and procedures. Plaintiffs further allege that Sprint's compensation practices and break policies violated federal and California law. In particular, Plaintiffs allege that Sprint requires employees to work off-the-clock, during meal and rest breaks, all without proper compensation including payment of the minimum wage, overtime compensation and premium pay. Plaintiffs also allege that Sprint fails to reimburse employees for uniform expenses. Plaintiffs claim that these alleged violations cause derivative issues, including failing to pay premium pay for these missed breaks, failing to provide accurate, itemized wage statements, and failing to pay all wages owed after termination of employment.  Sprint has at all times denied, and continues to deny, all of these allegations.

## III.   PROCEDURAL HISTORY

### A.     Plaintiffs' Claims

Plaintiffs allege ten causes of action under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the California Labor Code, applicable Industrial Welfare Commission ("IWC") Wage Orders, and Business and Professions Code § 17200, *et seq.* ("UCL"). Cottrell Decl. at ¶ 12. Plaintiffs assert the first cause of action under the FLSA on behalf of themselves and the Collective for Sprint's alleged failure to compensate for all hours worked, including legally mandated overtime premiums and/or minimum wages. *Id.* Plaintiffs assert their nine other causes of action under California law on behalf of themselves and the California class: (1) failure to authorize, permit, and/or make available meal and rest periods; (2) failure to compensate for all hours worked; (3) failure to pay overtime wages; (4) failure to reimburse for necessary business expenditures (namely, the distinctive uniforms that Defendant requires); (5) waiting time penalties; (6) failure to provide itemized wage statements; (7) violation of the UCL for unlawful, unfair, and/or fraudulent business acts or practices; (8) penalties pursuant to § 2699(a) of the California Private Attorney General Act ("PAGA"); and (9) penalties pursuant to § 2699(f) of the PAGA.  *Id.*

### B.  FLSA Conditional Certification

On October 3, 2014, the Court conditionally certified a Collective of certain of Sprint's hourly-paid retail store employees. Cottrell Decl. at ¶ 13. The Administrator disseminated the

1    Notice to the Collective Members on December 17, 2014, with an opt-in deadline of March 17,

2    2015. *Id.* More than 1,900 Sprint employees opted into the Collective, over 700 of whom worked in

3    California. *Id.* Following the opt-in deadline, the Parties agreed to participate in mediation to try to

4    settle the claims of these employees. *Id.*

5            **C.  Discovery**

6            The Parties engaged in extensive discovery and exchanged over 2,000 pages of documents,

7    including policies and procedures regarding timekeeping, overtime, compensation, and meal and

8    rest breaks, payroll documents, and personnel files. Cottrell Decl. at ¶ 14.  Defendant also produced

9    18 excel files with payroll and timekeeping data of the Opt-in and named Plaintiffs. *Id.* Class

10   Counsel interviewed over 300 CMs and collected declarations from the named Plaintiffs, several

11   Opt-in Plaintiffs, and Sprint District Managers. *Id.* Class Counsel also made a thorough study of the

12   legal principles applicable to the claims asserted against Defendant. *Id.*

13           **D.  Damages Analysis**

14           Class Counsel based their damages analysis and settlement negotiations on formal and

15   informal discovery, interviews and declarations discussed above, including the payroll and

16   timekeeping data of approximately 2,000 Opt-in Plaintiffs (about 700 of whom make up the

17   California Class) produced by Defendant. Cottrell Decl. at ¶ 15. Class Counsel made several

18   assumptions while conducting this analysis and were thus able to derive averages from the

19   discovery as follows: the average wage reported was $12.74; the average number of days worked

20   each week was 5.04; the average number of hours worked each day was 8.11; the average number

21   of hours worked each week was 41.31. *Id.* Plaintiffs also assumed that no employee worked more

22   than 12 hours per day or 60 hours per week. *Id.* In reviewing the discovery, Plaintiffs' recognized

23   that some alleged violations were not corroborated by all CMs. *Id.* Only a percentage of CMs

24   corroborate working off-the-clock. *Id.* Likewise, for the California Class Members, the estimated

25   missed rest breaks and meals breaks varied. *Id.*

26           Using these averages and assumptions and further assuming that all of the claims of

27   Plaintiffs and the CMs would be certified and prevail at trial, Class Counsel calculated total

28

1  damages, including all penalties[3], to be $14,464,382.15[4]. Cottrell Decl. at ¶ 16. The total amount of

2  damages is further broken down as follows: the amount owing to CMs for their uncompensated,

3  off-the-clock work is $6,117,457.35; the amount owing in premium pay for missed meal and rest

4  breaks to the Class is $1,132,722.95; the amount owing for unreimbursed uniform costs to the Class

5  is $166,000.00. Cottrell Decl. at ¶ 17. As derivative damages, Class Counsel assumed maximum

6  statutory penalties of $4,000.00 for every California employees for improper wage statements,

7  which totaled $2,440,000.00. *Id.* Class Counsel also included derivative damages for waiting time

8  penalties for 30 days for Defendant's 529 former employees in the amount of $1,777,898.00. *Id.*

9       The net amount being disbursed to CMs is $1,979,166.67, which is approximately 14% of

10  the total damages and penalties estimated by Plaintiffs. Cottrell Decl. at ¶ 18. The settlement

11  amount is fair, reasonable, and adequate. Cottrell Decl. at ¶ 19. The settlement amount takes into

12  account the substantial risks inherent in any class and collective action wage and hour case

13  (including that certification of off-the-clock work is complicated by the lack of documentary

14  evidence and reliance on employee testimony), the status of the litigation (including the pendency

15

16

17

18  [3] The damages figures included Sprint's additional exposure to PAGA penalties. But note, because

19  Labor Code §§ 1194.2, 203, and 226 already incorporate their own penalty provisions, an award of additional PAGA penalties – or an award of the maximum penalty amount provided by PAGA – is

20  uncertain. *See* Cal. Lab. Code § 2699(f); *see also Guifi Li v. A Perfect Day Franchise Inc.*, 2012 WL 2236752, at *17 (N.D. Cal. Jun. 15, 2012). Moreover, even assuming Plaintiffs' remaining

21  claims qualify for PAGA penalties, such an award is not automatic. Cal. Lab. Code § 2699(e)(2); *see* also *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135-36 (Cal. App. Ct.

22  2012).

23  [4] This figure does not include liquidated damages for unpaid overtime under the FLSA, which would increase Defendant's total exposure (assuming 100% liability) to $20,581,839.00. 29 U.S.C.

24  § 216(b) (Liquidated damages for unpaid overtime is in an amount equal to the unpaid overtime.); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014). If an employer's conduct

25  constitutes a "knowing violation" of the statute, the FLSA's standard two-year statute of limitations may be extended to three years. 29 U.S.C. § 255(a). Plaintiffs would argue that Sprint was on notice

26  of these wage and hour issues in light of previous litigation. *See Osorio, et al. v. Sprint/United Mgmt. Co.*, No. 08-cv-03228 (N.D. Cal. Feb. 28, 2011); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07

27  CV 7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009); *Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164 (D. Kan. filed Apr. 24, 2007); *Webster, et al. v. Sprint PCS, Inc., et al.*, Case No. 06-cv-

28  04623-GW-FMO (C.D. Cal. June 12, 2008); *Sibley v. Sprint Nextel Corp., et al.*, Case No. 08-cv-2063 KHV/JPO (D. Kan. filed Feb. 7, 2008).

of *Bui*[5]), and the specific defenses asserted by Sprint. *Id.*

### E.  Mediation

The Parties mediated this dispute on July 27, 2015 before Judge Infante, a respected and experienced wage and hour mediator. Cottrell Decl. at ¶ 21. The Parties engaged in arm's-length negotiations, culminated by the execution of a memorandum of understanding which set forth settlement terms resolving the matter. *Id.* After the mediation, counsel for the Parties worked to finalize the settlement for the CMs and corresponding notice documents, subject to the Court's approval. *Id.* The Settlement Agreement was fully executed on November 30, 2015. *Id.*

### F.  Preliminary Approval of Settlement as to Class, Final Approval of Settlement as to Collective, and Settlement Administration

On December 7, 2015, Plaintiffs filed a Motion for Preliminary Approval of Settlement as to California Class and Approval of Settlement as to Collective. (Dkt. No. 166.) On January 15, 2016, the Court issued an Order Granting Preliminary Approval of Settlement as to California Class and Approval of Settlement as to Collective. (Dkt. No. 170.)

With respect to the California Class, the Court (1) preliminarily found "that the terms of the Settlement appear to be within the range of possible approval, pursuant to Federal Rule of Civil Procedure 23 and applicable law;" (2) held that "the settlement amount is fair and reasonable to the California Class Members;"  (3) "grant[ed] conditional certification of the provisional California Class;" (4) "conditionally appoint[ed] Schneider Wallace Cottrell Konecky Wotkyns LLP, Hoyer & Associates, and Righetti Glugoski, P.C. as Counsel for the Class, and Plaintiffs as class

---

[5] On July 10, 2014, Plaintiff Viet Bui filed the action *Bui v. Sprint Corporation, et al.* in California Superior Court, Sacramento County. Cottrell Decl. at ¶ 20. Defendant removed *Bui* to the Eastern District of California on October 17, 2014, and the case is assigned to District Judge Nunley as Case No. 2:14-cv-02461-TLN-AC. *Id.* Bui asserts claims under California law similar to those in this action. *Id.* On March 9, 2015, the *Bui* parties filed a notice of settlement and a subsequent motion for preliminary approval of the class action settlement. *Id.* The Court granted the motion on February 24, 2016. (*Bui* Dkt. No. 60.) Cottrell Decl. at ¶ 20. Two points are important here: (1) the California Class Members in this action will be receiving a greater settlement award than the class members in *Bui*; and (2) the pendency of *Bui* impacts and significantly narrows the size of the California Class in this action. Cottrell Decl. at ¶ 20. The *Bui* parties state that 5,021 individuals fall within their proposed putative class – 1,650 current and 3,371 former employees. *Id.* As a result, the Parties in this case agreed to limit the California Class Members to those Opt-in Plaintiffs who worked in California and are excluded from the proposed *Bui* settlement class. *Id.*

5

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

representatives for the Class;" (5) approved the Class notice (*see* Dkt. No. 169-2); (6) approved the settlement produced for the California Class; and (7) preliminarily approved Class Counsel's ability to request attorneys' fees of up to one-third of the Gross Settlement Amount ($1,123.333.33), and costs not to exceed $125,000.00, in a separate fee motion. *Id.* With respect to the Collective, the Court (1) granted final approval of the terms and conditions in the Settlement as to the Collective; (2) held that "the Settlement amount is fair and reasonable to the Collective Members;" (3) confirmed its October 3, 2014 order certifying the Collective; (4) "appoint[ed] Schneider Wallace Cottrell Konecky Wotkyns LLP, Hoyer & Associates, and Righetti Glugoski, P.C. as Counsel for the Collective, and Plaintiffs as Collective representatives for the Collective;" (5) approved the Collective Notice (*see* Dkt. No. 169-3); and (6) approved the Settlement procedure for Collective Members. *Id.* The Court also "authorize[d] the retention of Heffler Claims Group as Settlement Administrator for the purpose of the Settlement with reasonable administration costs estimated not to exceed $95,000.00." *Id.*

Heffler is responsible for distributing the Class Notice and the Collective Notice (which shall accompany the Collective Members' settlement checks), calculating individual settlement payments, calculating all applicable payroll taxes, withholdings and deductions, preparing and issuing all disbursements to be paid to Class Members, Collective Members, the Class Representatives, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities, and handling inquiries and/or disputes from CMs. Cottrell Decl. at ¶ 25. Heffler is also responsible for the timely preparation and filing of all tax returns, and making the timely and accurate payment of any and all necessary taxes and withholdings. *Id.* Heffler also established a mailing address and toll-free telephone number to direct inquiries regarding the Notices and determination of individual settlement payments. *Id.*

Following the Court's order, Heffler received CM data from Defendant. Cottrell Decl. at ¶ 26.  The data contained the names, addresses, workweeks, and other personal information for 2,035 Sprint employees. *Id.* Heffler identified 718 records in the data received as having weeks worked listed as a California Class Member or residing in California. *Id.* These 718 individuals were considered part of the California Class. *Id.* Notice was supposed to be mailed by Heffler to California Class Members on February 4, 2016. *Id.* However, this timeline could not be met despite

6

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

the Parties' best efforts due to issues regarding the proper calculation of workweeks for each CM. *Id.* It took longer than anticipated for the Parties to resolve those issues, and as a result, to prepare and provide the necessary CM information for notice and administration of the settlement to the Settlement Administrator. *Id.* Once the CM information was prepared, additional issues were raised by the Settlement Administrator that needed to be reexamined. *Id.* As a result, Heffler was unable to mail the notices to the California Class Members by the initial February 4, 2016 deadline. *Id.* Instead, notice was mailed on February 19, 2016. *Id.* On February 24, 2016, the Parties filed a Stipulation to Amend Deadline in January 15, 2016 Order Granting Preliminary Approval of Settlement as to California Class and Approval of Settlement as to Collective to reflect the operative schedule in the case. (Dkt. No. 174.) The Court granted this stipulation on February 25, 2016. (Dkt. No. 175.) Despite this amendment to the initial schedule, the final approval hearing date of April 16, 2016 remained the same, and California Class Members were still provided with a 45-day time period to respect to the Notice. Cottrell Decl. at ¶ 26.

In order to mail notices to California Class Members, Heffler first calculated the individual settlement award for every CM after receipt of the CM list from Defendant in order to include such information on the notices. Cottrell Decl. at ¶ 27.  After calculating the CM awards, Heffler sent 718 Court-approved Settlement Notices to the California Class Members on February 19, 2016. *Id.* The Notice informed the California Class of: the Settlement terms; their expected share; the April 4, 2016 deadline to submit objections, requests for exclusions, or disputes; the April 14, 2016 final approval hearing; and that Plaintiffs would seek attorneys' fees, costs, and service awards and the corresponding amounts. *Id.* (*See also* Dkt. No. 169-2.) Heffler also included a toll free number in the Settlement Notice, which California Class Members could call for information about the Settlement. Cottrell Decl. at ¶ 27.  Likewise, contact information for Class Counsel in the case was provided. *Id.* As of March 21, 2016, Heffler received a total of 18 incoming calls and responded to all of them. *Id.* Class Counsel also communicated with several CMs to ensure that they will receive their shares of the Settlement. *Id.* As of March 21, 2016, the Settlement Administrator has mailed notice packets to all California Class Members. *Id.* 16 have been returned as undeliverable. *Id.* Heffler is working with Class Counsel as well as conducting tracing to locate updated addresses for these 16 California Class Members. *Id.* Notices were re-mailed and/or emailed on March 18, 2016

to those CMs for whom updated contact information has been located. *Id.* The deadline for California Class Members to opt-out, object, and dispute their awards expires April 4, 2016. Cottrell Decl. at ¶ 28.  To date, not a single objection has been filed, and not a single California Class Member has opted out of the Settlement. *Id.*[6] Following final approval of the Settlement as to the Class, Heffler will issue checks to the Class Members and also provide notice to the Collective Members with their settlement checks. *Id.*  All 2,035 records in the data provided are considered part of the Collective and will receive the Collective Notice accordingly. *Id.*

### G.  Final Approval of the Settlement

The Final Approval Hearing for the Court to approve the Settlement as to the California Class is currently scheduled for April 14, 2016. Cottrell Decl. at ¶ 29.  With this Motion, Plaintiffs ask the Court to grant final approval of this Settlement as to the California Class. *Id.* Following an order by the Court on this Motion, the Parties and the Settlement Administrator will execute the final steps of the settlement process, including sending individual checks to all participating CMs for their Settlement award. *Id.*[7]

### IV.     TERMS OF THE SETTLEMENT

#### A.    Basic Terms

Sprint has agreed to pay a total of $3,370,000.00 to settle all aspects of the case.  Cottrell Decl. at ¶ 31. The "Net Settlement Amount," which is the amount available to pay settlement awards to the CMs, is defined as the Gross Settlement Amount less: any attorneys' fees and costs awarded to Class Counsel (fees of up to one-third of the Gross Settlement Amount, $1,123.333.33, plus costs  not to exceed $125,000.00), any enhancement payment awarded to the Class Representatives (up to $10,000.00 each),[8] the payment made to the California Labor & Workforce

---

[6] Plaintiffs will provide a further update to the Court after the opt-out, objection, and deadline passes. *Id.* Specifically, the Court's January 15, 2016 order as amended by the February 24, 2016 stipulation provides that "Class Counsel [is] to file Heffler's verification that the Class Notice has been completed" by "April 14, 2016." (Dkt. No. 175.)
[7] The Settlement awards to the Collective Members will be accompanied by the Collective Notice already approved by the Court on January 15, 2016. (Dkt. No. 170.)
[8] *See supra* footnote 2 regarding Plaintiffs' fee motion.

Development Agency ("LWDA") pursuant to PAGA ($7,500.00)[9], and the Settlement

Administrator's fees and costs (up to $95,000.00[10]). *Id.*

### B.  Class and Collective Definitions

An individual is a member of the Collective or Class if he or she belongs to one or both of

the following:

▪ The "**California Class**" is a certified class for settlement purposes only under Federal Rule of

Civil Procedure 23, which includes the Class Representatives and all Opt-in Plaintiffs who are or

were employed by Defendant in California at any time from and including September 19, 2009

through and including the date of preliminary approval, and who do not properly exclude

themselves from this settlement. The Court conditionally certified this Class for purposes of

settlement on January 15, 2015. (Dkt. No. 170.)

▪ The "**Collective**" is a certified collective action for settlement purposes only pursuant to 29

U.S.C. § 216(b), which includes all Opt-in Plaintiffs who are or were employed by Defendant

inside and outside of California at any time from and including September 19, 2010 through and

including the date of preliminary approval. The Court certified the Collective on October 3, 2014,

and confirmed this certification order on January 15, 2016. (Dkt. No. 170.)

### C.  Allocation and Awards

The Net Settlement Amount to be paid to CMs is $1,979,166.67. Cottrell Decl. at ¶ 33. 27%

of the Net Settlement Amount is allocated to the California Class, and 73% is allocated to the

Collective. *Id.* Only those Class Members who do not opt-out of the Settlement will receive

---

[9] The LWDA has requested that it be provided a copy of the settlement agreement, once it is approved by the Court. Cottrell Decl. at ¶ 31, fn. 3. The Parties will comply with the LWDA's request once the settlement agreement is approved. *Id.* The Parties also agree to allocate $10,000.00 of the Gross Settlement Fund to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. *Id.* The Settlement Administrator shall pay 75%, or $7,500.00, of this amount to the LWDA, and allocate 25%, or $2,500.00, of this amount to the California Class Net Settlement Fund. *Id.*

[10] The Settlement Administrator's estimate is $87,377.00. Cottrell Decl. at ¶ 31, fn. 4. The estimate of $95,000.00 includes possible, but unanticipated additional costs. *Id.* If these unanticipated costs are not incurred, the costs reserved for the Settlement Administrator will return to the Net Settlement Fund and be distributed to the CMs. *Id.*

9

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

payment from the California Class Net Settlement Fund. *Id.* Each CM's settlement share will be

determined based on the total number of weeks that the respective CM worked for Defendant from

September 19, 2009 through the date of preliminary approval of this Settlement Agreement,

January 15, 2016. *Id.* Class Settlement Awards will be paid to CMs by the Settlement

Administrator 15 days after the occurrence of the "Effective Date".[11] *Id.* The amount of the Class

Settlement Award to be paid to California Class Members will be paid in a check separate from a

check for the amount to be paid to the California Class Members for their membership in the

Collective. *Id.* All eligibility and Class Settlement Award determinations shall be based on

employee workweek information that Defendant will provide to the Settlement Administrator. *Id.*

CMs will have the opportunity should they disagree with Defendant's records, to provide

documentation and/or an explanation to show a contrary number of weeks worked.  *Id.* For any

CM that does not timely opt out of the Settlement and receives a payment, but does not timely cash

his or her settlement check within 90 days after its issuance by the Settlement Administrator, the

Settlement Administrator will immediately stop payment on the check and such funds from the

California Class Net Settlement Fund for each such CM will be transmitted by the Settlement

Administrator to the State of California's Unclaimed Property Fund pursuant to governing law to

be held there for the benefit of such CMs under California's escheatment laws. *Id.*

Collective Members' settlement shares will be calculated and awarded in a similar fashion

to the process described above with respect to CMs. Cottrell Decl. at ¶ 34. There are two

distinctions. *Id.* First, each Collective Member's settlement share will be determined based on the

total number of weeks that the respective Collective Member worked for Defendant during the

FLSA collective action period, from September 19, 2010 through the date of approval of this

Settlement Agreement as to the Collective, January 15, 2016. *Id.* Second, the settlement shares will

---

[11] The " Effective Date" is defined as: "(a) if no objections to the settlement are filed, then the Effective Date shall be 35 days after the Court enters its order granting final approval of the settlement; (b) If objections to the settlement are filed and overruled, and no appeal is taken of the final approval order, then the Effective Date shall be 35 days after the Court enters its order granting final approval of the settlement; or (c) If any appeal is taken from the Court's overruling of objections to the settlement, then the Effective Date shall be 20 days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final and the exhaustion of all possible further appellate review." (Dkt. No. 166-1, Settlement, ¶ 25(b)(5).)

be distributed to Collective Members without challenge to the number of workweeks worked.[12] *Id.*
For any Collective Member that does not cash their settlement check within 90 days after issuance
by the Settlement Administrator, the Settlement Administrator will immediately stop payment on
the check and such settlement payment shall become void, and the gross amount of such payment
(before deductions and withholdings for any employee-paid payroll taxes) plus any associated
employer-paid payroll taxes shall remain the property of and be returned by the Settlement
Administrator to Defendant within 30 days after the stop payment order is made. *Id.*

The following information is a summary of the awards. Cottrell Decl. at ¶ 35. The average
individual settlement awards for CMs are estimated to be as follows. With respect to California
Class Members: the average award is $775.98; with respect to Collective Members: the average
award is $744.18; and for those CMs, who are members of both the Class and Collective: the
highest combined award is $3,603.92 and the average combined award is $1,531.11.[13] *Id.*

**D.  Scope of Release and Final Judgment**

The release contemplated by the Settlement will release all claims in connection with the
lawsuit, that have been filed in any of the consolidated and/or related actions and all violations
asserted in any notice sent to the LWDA, as well as the same or any similar claims that could have
been alleged in the pleadings under the laws of any state outside California where Opt-in Plaintiffs
worked for Sprint, from the beginning of any applicable statute of limitations period through the
date of final approval of this Settlement. Cottrell Decl. at ¶ 36. Only those Collective Members who
cash their settlement checks will release their FLSA claims; and only those Class Members who do
not opt out will release their California Claims. *Id.*

In addition, upon final approval by the Court of this Settlement, in consideration of the
payment of the Class Representative enhancement payments to the Class Representatives for

---

[12] Collective Members have already had the opportunity to confirm their workweeks when filing
out the dates of their employment on their opt-in consent forms filed with the Court.

[13] There are 88 individuals who are not receiving an award. They have zero qualifying workweeks
in the Class and Collective periods according to Sprint's data. All CMs (including those with zero
workweeks) were given notice and the opportunity to dispute their workweek figures to ensure
proper settlement awards.

1  services performed on behalf of the Class and Collective, the Class Representatives will fully

2  release and discharge Sprint from any and all actions, causes of action, grievances, obligations,

3  costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including

4  attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or

5  unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever,

6  based on any act, omission, event, occurrence, or nonoccurrence from the beginning of time

7  through the Effective Date, including but not limited to any claims or causes of action arising out of

8  or in any way relating to the Class Representatives' employment relationship with Defendant or any

9  other Releasees. (Dkt. No. 166-1, Settlement, Release of Claims, ¶5.) Cottrell Decl. at ¶ 37.

10      **V.      ARGUMENT**

11          **A.      The Court Should Finally Approve the Settlement Pursuant to Ninth Circuit
12                    Precedent.**

13          A certified class action may not be settled without Court approval. *See* FED.R.CIV.P. 23(e).

14  Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed

15  settlement upon a written motion; (2) dissemination of notice of the settlement to all class members;

16  and (3) a final settlement approval hearing at which objecting class members may be heard, and at

17  which evidence and argument concerning the fairness, adequacy, and reasonableness of the

18  settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed*

19  *Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed

20  settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150

21  F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two

22  primary prerequisites before a court may grant certification for purposes of preliminary approval:

23  (1) that the settlement class meets the requirements for class certification if it has not yet been

24  certified (FED.R.CIV.P. 23(a),(b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair,

25  reasonable, and adequate (FED.R.CIV.P. 23(e)(2)).

26          Federal law strongly favors and encourages settlements, especially in class actions. *See*

27  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public

28  interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover,

    when reviewing a motion for approval of a class settlement, the Court should give due regard to

"what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely overturn approval of a class action settlement unless "the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations and that the district court was wrong in concluding otherwise." *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003).

Applying this standard of review to other federal and California wage and hour class actions, this Court has previously approved settlements similar to that reached in this case. *See Rulli, et al. v. Nielsen Co. (U.S.) LLC*, No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) (This Court granted final approval of a class action settlement in a case involving FLSA and California wage and hour claims.). Likewise, in its January 15, 2016 order, the Court already finally approved the Settlement with respect the Collective Members. (Dkt. No. 170.) This Court also conditionally certified the California Class and preliminarily approved the Settlement with respect to these CMs. *Id.* Accordingly, the only step that remains is final approval of the Settlement as to the California Class. Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should be finally approved.

### B.  The Court Should Finally Approve the Settlement.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." FED.R.CIV.P. 23(e)(2); *Officers for Justice*, 688 F.2d at 625. Included in this analysis are considerations of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

1    Importantly, courts apply a presumption of fairness "if the settlement is recommended by class

2    counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS,

3    2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors

4    settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA*

5    *Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the Court should find that the

6    Settlement is fair, reasonable, and adequate, and finally approve it as to the California Class.

### 1.  The best practicable notice was provided to the California Class in accordance with the process approved by the Court.

9        Pursuant to the Court's January 15, 2016 order granting preliminary approval of the

10   Settlement as to the California Class, Heffler sent the Court-approved Class Notice to the California

11   Class Members in accordance with the terms of the Settlement Agreement.  Cottrell Decl. at ¶ 40.

12       Notice of a class action settlement is adequate where the notice is given in a "form and

13   manner that does not systematically leave an identifiable group without notice." *Mandujano v.*

14   *Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).  The notice should be the best

15   "practicable under the circumstances including individual notice to all members who can be

16   identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th

17   Cir. 1993).  Sending individual notices to settlement class members' last-known addresses

18   constitutes the requisite effort.  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir.

19   1975).  "[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a

20   proposed settlement." *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989).

21       The Settlement Administrator followed all of the procedures set forth in the Court-approved

22   notice plan. Reasonable steps have been taken to ensure that all California Class Members receive

23   the Notice. *See supra* Section III.F. Ultimately, of the 718 notices distributed, 16 have been

24   returned as undeliverable. Cottrell Decl. at ¶ 41. Heffler is working with Class Counsel as well as

25   conducting tracing to locate updated addresses for these 16 California Class Members. *Id.* Notices

26   were re-mailed and/or emailed on March 18, 2016 to those CMs for whom updated contact

27   information has been located. *Id.* Accordingly, the notice process satisfies the "best practicable

28   notice" standard.

### 2.   The terms of the Settlement are fair, reasonable, and adequate.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice*, 688 F.2d at 623; *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("[T]he Court finds that the 10% gross and 7.3% net figures are 'within the range of reasonableness' in light of the risks and costs of litigation."); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (despite fact that gross settlement amount of 8% of maximum recovery and net settlement amount of 5% is on the "low end of the spectrum," the Court found it "falls within the range of possible initial approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness given that defendant would have argument that "employees were given the opportunity to take breaks and employees were not improperly pressured to forego them."); *In re Omnivision Techs., Inc.,* 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages); *Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving a settlement of $49 million, where experts valued total damages at $158 to $168 million); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving a recovery of 20%); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages).

"Even a small percentage of the maximum possible recovery can be a reasonable settlement. Dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D at 258. "Notably, [a court must consider whether] a substantial

15

portion of Defendant's total potential liability exposure would not translate into awards to class members at all. . . . [For example, where] the estimated potential liability is comprised of PAGA penalties, [] these large penalties do not necessarily translate into take-home awards for members of the class for two reasons." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015). "First, the penalties themselves, and their amount, are discretionary." *Id.* (referencing Cal. Lab. Code § 2699(e)(2)). "Moreover, even if the full amount were awarded, by law only 25 percent of such penalties can revert to class members, while the remaining 75 percent would be appropriated to the state Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights under state law." *Id.* (citing Cal. Lab.Code § 2699(i)).  It is equally well-settled that a proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved.  *See, e.g.*, *7-Eleven Owners for Fair Franchising*, 85 Cal.App.4th 1135, 1150 (2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) with approval).

A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. Cottrell Decl. at ¶ 42.  The Net Settlement Amount of $1,979,166.67, derived from a Gross Settlement Amount of $3,370,000.00, will result in fair and just relief to CMs. *Id.* Payments to the CMs are roughly 14% of the maximum total damages, penalties and interest attainable in this case. *Id.* There are approximately 2,035 CMs, about 718 California Class Members and 1,317 Collective Members. *Id.* The average individual settlement awards for CMs are estimated to be as follows. With respect to California Class Members: the average award is $775.98; with respect to Collective Members: the average award is $744.18; and for those CMs, who are members of both the Class and Collective, the highest combined award is $3,603.92 and the average combined award is $1,531.11.[14] *Id.* These results are well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id.* Furthermore, the final settlement amount takes into account the substantial risks inherent in any class action wage and hour case, as well as the specific defenses asserted by Defendant, many of which were supported by declarations

---

[14] *See supra* footnote 13.

16

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

gathered and produced by Defendant. *Id.; See Officers for Justice*, 688 F.2d at 623.[15]

### 3. The Parties have agreed to distribute settlement proceeds tailored to the Class and Collective and their respective claims.

In an effort to further ensure fairness for the employees, the Parties have agreed to allocate the settlement proceeds amongst CMs to track each of the substantive violations and some of the penalty claims, including the limitations period for each claims. Cottrell Decl. at ¶ 43. The allocation was made based on Class Counsel's assessment of the risk of continued litigation and risk on certification and merits. *Id.* The Parties further agreed on distribution formulas specifically tailored to each claim, and each claims limitations period, to further ensure that employees are compensated accordingly and in the most equitable manner. *Id.*

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir.1983); *In re AT&T Mobility Wireless Data Serv. Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT&T,* 789 F.Supp.2d at 979–80.

### 4. The extensive informal discovery exchange between the parties enabled them to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D. Cal. 1979). Informal discovery is a strong factor in favor of settlement approval so long as the Parties had an opportunity to "form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in an extensive informal information exchange and formal discovery to

---

[15] In addition, the CMs in this action will receive a greater settlement award that the class members in *Bui*. The settlement award in that action is less than that here. The net settlement amount to the approximately 5,012 class members is $3,159,745.00. Cottrell Decl. at ¶ 41.

17

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

enable both sides to assess the claims and potential defenses in this action. Cottrell Decl. at ¶¶ 14, 44. The Parties were able to accurately assess the legal and factual issues that would arise if the case proceeded to trial. Cottrell Decl. at ¶ 44. In addition, in reaching this settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. Cottrell Decl. at ¶¶ 4-6, 44. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on CMs' pay. Cottrell Decl. at ¶¶ 15-18, 44. Ultimately, facilitated by Judge Infante, the Parties used this information and discovery to fairly resolve the litigation. Cottrell Decl. at ¶¶ 21, 44.

### 5. While Plaintiffs recognize the strength of their claims, there are risks in proceeding with the litigation.

Plaintiffs contend the common questions raised in this action predominate over any individualized questions concerning the CMs. Cottrell Decl. at ¶ 45. Plaintiffs believe that the Class and Collective is entirely cohesive because resolution of Plaintiffs' claims all hinge on the uniform policies and practices of Sprint, rather than any treatment the CMs experienced on an individual level. *Id.* As a result, Plaintiffs contend that the resolution of these alleged class and collective claims will be resolved through the use of common forms of proof, such as Sprint's uniform policies, and will not require inquiries specific to individual class members.[16] *Id.* Moreover, the Court has already conditionally certified a collective under § 216(b) for Plaintiffs' FLSA claims. *Id.* While Class Counsel is confident that Plaintiffs would succeed on liability, continued litigation would be costly, time-consuming, and not certain in outcome.   *Id.*

Sprint has legal and factual grounds available to defend this action.  In fact, Sprint has continually taken the position that this case is not suitable for class treatment and that it fully complied with its obligations regarding payment of wages and provision of meal and rest breaks. Cottrell Decl. at ¶ 46. Sprint asserted numerous complete liability defenses against Plaintiffs'

---

[16] Although the amount of time worked off-the-clock and number of missed meal and rest periods may vary, these are damages questions that should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). That individual inquiries might be necessary to determine whether individual employees were able to take breaks despite the defendant's allegedly unlawful policy is not a proper basis for denying certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (2014).

claims, many of which were supported by declarations gathered and produced by Defendant. For example, Sprint raised several defenses to Plaintiffs' off-the-clock claims, including that (1) CMs did not in fact perform work off-the-clock before, during, and/or after their scheduled shifts; (2) any off-the-clock work was *de minimis*; (3) Sprint properly provided CMs with legally compliant meal and rest breaks; (4) Sprint paid CMs for all hours worked, including overtime and bonus/commission pay; (5) Sprint properly reimbursed CMs for any business expenses, including uniforms; and (6) Sprint provided CMs with proper wage statements. *Id.* Sprint also raised several defenses against conditional certification, which would be echoed in a possible decertification motion as well as in response to Plaintiffs' motion to certify the California Class, including that (1) that individualized determinations regarding the type and amount of off-the-clock work, if any, completed by CMs would overwhelm common issues;  (2) that individualized determinations regarding the amount of wages owing (including bonus/commission pay), if any, would overwhelm common issues; and (3) whether CMs actually took meal and rest breaks would overwhelm any common issues.  *Id.* If Sprint succeeded on any of these or other defenses to class and collective certification, Plaintiffs would be left with only their individual claims and the Class and Collective would potentially recover nothing. *Id.* Weighing all of these considerations, resolution of the litigation by way of Settlement is reasonable. *Id.*

### 6.   Litigating this action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

"Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *3 (C.D. Cal. June 13, 2013). The monetary value of the proposed Settlement represents a fair compromise given the litigation risks and uncertainties posed by continued litigation. Cottrell Decl. at ¶ 47. If this case were to go to trial as a class and collective action (which Defendant would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that fees and costs would exceed $2,000,000.00. *Id.* Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of

voluminous documentary evidence and the preparation and analysis of expert reports. *Id.* Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiff's claims, a questionable feat in light of recent developments in wage and hour and class and collective action law as well as the legal and factual grounds that Sprint has asserted to defend this action. *Id.* In contrast, resolving this case by means of an early settlement will yield a prompt, certain, and very substantial recovery for the CMs. *Id.* Such a result will benefit the Parties and the court system. *Id.*

### 7.   The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter*, 2010 WL 1946784, at *8 ("Counsel's opinion is accorded considerable weight."). Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl. at ¶ 48. The Parties participated in a full-day mediation before Judge Infante, who is a skilled mediator with many years of experience mediating employment matters. *Id.* In addition, the adversarial mediation resulted in a written memorandum of understanding that memorialized the core terms of the proposed settlement. *Id.* Subsequently, the Parties spent months negotiating the long form settlement agreement, with several rounds of correspondence related to the details of the settlement. *Id.*

### 8.   Class Counsel are experienced class action litigators.

Where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Bellinghausen*, 2015 WL 1289342, at *8 ("Given counsel's experience in this field, his assertion that the settlement is fair, adequate, and reasonable support[s] final approval of the settlement.").

20

1   Class Counsel are experienced and respected class action litigators.  *See* Cottrell Decl. at ¶¶ 3-8, 48;

2   Declaration of Richard Hoyer in Support of Plaintiffs' Unopposed Motion for Attorneys' Fee,

3   Costs, and Service Awards at ¶¶ 1-8, 19-25; Declaration of Matthew Righetti in Support of

4   Plaintiffs' Unopposed Motion for Attorneys' Fee, Costs, and Service Awards at ¶ 2-7, the latter two

5   declarations were also filed today in support of Plaintiffs' fee motion as **Exhibits HH01 and**

6   **RG01**, respectively. Based on Class Counsel's knowledge and expertise in this area of law, Class

7   Counsel believes this Settlement will provide a substantial benefit to the CMs.  *See* Cottrell Decl. at

8   ¶ 49.

9
                            **9.   Class Members approve of the settlement.**
10

11          The Ninth Circuit and other federal courts have made clear that the number or percentage of

12   class members who object to or opt out of the settlement is a factor of great significance. *See*

13   *Mandujano*, 541 F.2d at 837; *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418,

14   425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps

15   the most significant factor to be weighed in considering its adequacy."). Courts have found that a

16   relatively low percentage of objectors or opt outs is a very strong sign of fairness that factors

17   heavily in favor of approval. *See Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D. 2000)

18   (approving the settlement in large part because only 3% of the apparent class had objected to the

19   settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio

20   1990) (approving the settlement and affording "substantial weight" to the fact that fewer than 5%

21   of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100

22   F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of

23   the class members had objected and a small percentage opted out of the settlement was "entitled to

24   nearly dispositive weight").

25          To date, ***not a single Settlement Class Member has objected to the Settlement, and not a***

26   ***single Settlement Class Member has opted out of the Settlement***.  *See* Cottrell Decl. at ¶ 50. In

27   addition, all four Class Representatives support the terms of the Settlement. *Id.*; *see also*

28   Declaration of Michael Smith in Support of Plaintiffs' Unopposed Motion for Attorneys' Fee,

     Costs, and Service Awards, Declaration of Olivia Guilbaud in Support of Plaintiffs' Unopposed

                                                   21

1    Motion for Attorneys' Fee, Costs, and Service Awards, Declaration of Marques Lilly in Support of

2    Plaintiffs' Unopposed Motion for Attorneys' Fee, Costs, and Service Awards, and Declaration of

3    Michael Wong in Support of Plaintiffs' Unopposed Motion for Attorneys' Fee, Costs, and Service

4    Awards – all filed today in support of the fee motion as **Exhibits P01-P04** . This shows

5    widespread support for the settlement among California Class Members, and gives rise to a

6    presumption of fairness.

7            **C.  The Class Representative Service Awards are Reasonable.**

8

9           As noted above, in approving the Settlement, the Court must determine whether "the

10   settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*,

11   688 F.2d at 625. In addition to the terms and details of the Settlement discussed above, the

12   Settlement also establishes service awards in the amount of $10,000.00 to be paid to each Named

13   Plaintiff.

14          Named plaintiffs in class action litigation are eligible for reasonable service awards. *See*

15   *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Courts routinely approve incentive

16   awards to compensate named plaintiffs for the services they provided and the risks they incurred

17   during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294,

18   300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action). The enhancement

19   payments of $10,000.00 for each of the four Plaintiffs are intended to compensate Plaintiffs for the

20   critical role they played in this case, and the time, effort, and risks undertaken in helping secure the

21   result obtained on behalf of the CMs. Cottrell Decl. at ¶ 51; *see also* Declaration of Michael Smith

22   in Support of Plaintiffs' Unopposed Motion for Attorneys' Fee, Costs, and Service Awards,

23   Declaration of Olivia Guilbaud in Support of Plaintiffs' Unopposed Motion for Attorneys' Fee,

24   Costs, and Service Awards, Declaration of Marques Lilly in Support of Plaintiffs' Unopposed

25   Motion for Attorneys' Fee, Costs, and Service Awards, and Declaration of Michael Wong in

26   Support of Plaintiffs' Unopposed Motion for Attorneys' Fee, Costs, and Service Awards. In

27   agreeing to serve as Class Representatives, Plaintiffs formally agreed to accept the responsibilities

28   of representing the interests of all CMs. *Id.* Sprint does not oppose payment of up to $10,000.00 per

Plaintiff as reasonable service awards. *Id.* Moreover, the service awards are fair when compared to

1  the payments approved in similar cases. *See, e.g.*, *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC,

2  2012 WL 381202, at *8 (N.D. Cal. Feb. 6, 2012) (awarding service payment of $12,500); *Lazarin v. Pro*

3  *Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *10 (N.D. Cal. July 11, 2013) (approving

4  three $25,000 enhancement awards in FLSA settlement). Ultimately, the Court should approve the

5  requested service awards as reasonable. Plaintiffs set forth their arguments in support of the service

6  awards in their accompanying Unopposed Motion for Attorneys' Fees, Costs, and Service. Plaintiffs

7  do not repeat those arguments here.

8  **D.  The Requested Attorneys' Fees and Costs are Reasonable.**

9

10  Likewise in evaluating the Settlement, the Court should evaluate Plaintiffs' request for

11  attorneys' fees and costs pursuant to the terms of the Settlement.

12  In their concurrently filed fee motion, Class Counsel request up to one-third (33 1/3%) of

13  the Gross Settlement Amount, for a total of $1,123.333.33, plus reimbursement of costs not to

14  exceed $125,000.00. Cottrell Decl. at ¶ 53. In California, federal and state courts customarily

15  approve payments of attorneys' fees amounting to one-third of the common fund in comparable

16  wage and hour class actions. *See Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*,

17  No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award

18  equal to 45% of the settlement fund).  In this case, given the results achieved, the effort expended

19  litigating the case, and the difficulties attendant to litigating this case, the fee and cost award is

20  warranted. Cottrell Decl. at ¶ 53. Plaintiffs present their arguments in support of their fee and cost

21  request in their Unopposed Motion for Attorneys' Fees, Costs, and Service also filed today.

22  Plaintiffs direct the Court to the fee motion for their supporting points; they do not repeat those

23  arguments here.

24  **VI.  CONCLUSION**

25

26  For the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion for

27  final approval and enter an order:

28  (1) granting final approval of the Settlement Agreement as to the California Class;

(2) certifying the California Class;

---

23

(3) finally approving Schneider Wallace Cottrell Konecky Wotkyns LLP, Hoyer & Hicks, and Righetti Glugoski, P.C. as Class and Collective Counsel;

(4) finally approving the four Named Plaintiffs as Class and Collective Representatives;

(5) finally approving payment of $95,000.00 to Heffler as Settlement Administrator from the Settlement as compensation for administering the Settlement;

(6) finally approving the implementation schedule:

| Final Approval Hearing | April 14, 2016 at 10:00 a.m. |
| --- | --- |
| Effective Date | (a) if no objections to the settlement are filed, then the Effective Date shall be 35 days after the Court enters its order granting final approval of the settlement; (b) if objections to the settlement are filed and overruled, and no appeal is taken of the final approval order, then the Effective Date shall be 35 days after the Court enters its order granting final approval of the settlement; or (c) if any appeal is taken from the Court's overruling of objections to the settlement, then the Effective Date shall be 20 days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final and the exhaustion of all possible further appellate review. |
| Defendant to receive wire transfer instructions from Heffler for the Qualified Settlement Fund's bank account and an IRS Form W-9 for the fund, and then Defendant shall wire the Gross Settlement Fund | 10 business days after Effective Date |
| Heffler will provide all counsel with a final statement listing all Collective Members as well as identifying the number of weeks worked by and the approximate Settlement award to each Collective Member | 5 days before Notices and settlement awards sent to Collective |
| Fees and costs, Class Representative awards, Class awards, Collective awards (to be accompanied by Collective Notices) to be paid by Heffler | No later than 15 calendar day after receipt of funds from Defendant following Effective Date |
| For any Collective settlement check returned as undeliverable, Heffler attempts to re-mail | 90 day issuance period to be extended for another 90 days |
| Heffler to stop payment on checks for Class Members that do not timely opt-out and receive a payment but do not cash settlement check and transmit funds to the State of California's Unclaimed Property Fund | 90 days after issuance of awards |

24

| Settlement Administrator will stop payment on check for Collective Members and such settlement payments will become void | 90 days after issuance of awards |
|---|---|
| For Collective settlement checks deemed void, the Settlement Administrator will return payment to Defendant | 30 days after 90-day deadline |

and

(7) entering a final judgment with the terms of the Settlement.

Date: March 21, 2016                    Respectfully submitted,

                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY WOTKYNS LLP


                                        */s/ Nicole N. Coon*
                                        CAROLYN HUNT COTTRELL
                                        NICOLE N. COON

                                        Attorneys for Plaintiffs and the Settlement Collective and Settlement Class

1

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2016, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

Matthew Righetti
John Glugoski
Michael Righetti
Richard Hoyer
Ryan Hicks
Matthews Kane
Michael Mandel
Sabrina Beldner
John Van Hook
Joanne MacMillan

Date: March 21, 2016                    Respectfully Submitted,

/s/ *Nicole N. Coon*
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105