Todd M. Schneider (SBN 158253)
Carolyn Hunt Cottrell (SBN 166977)
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
ncoon@schneiderwallace.com

Attorneys for Plaintiffs and the Settlement
Collective and Settlement Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OLIVIA GUILBAUD, MARQUES LILLY, AND MICHAEL WONG, and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>SPRINT NEXTEL CORPORATION AND SPRINT/UNITED MANAGEMENT CO., INC.,<br><br>   Defendants. | **Lead Case**<br>CASE NO. 3:13-CV-04357-VC<br><br>Hon. Vince Chhabria |
| MICHAEL SMITH, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>SPRINT/UNITED MANAGEMENT COMPANY,<br><br>   Defendant. | *Consolidated with*<br><br>CASE NO. 3:14-CV-02642-VC<br><br>Hon. Vince Chhabria<br><br>**DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS** |

[ADDITIONAL PLAINTIFFS' COUNSEL ON FOLLOWING PAGE]

1  Matthew Righetti (SBN 121012)
   John Glugoski (SBN 191551)
2  Michael Righetti (SBN 258541)
   RIGHETTI GLUGOSKI, P.C.
3  456 Montgomery Street, Suite 1400
   San Francisco, California 94101
4  Telephone: (415) 983-0900
   Facsimile: (415) 397-9005
5  matt@righettilaw.com
   jglugoski@righettilaw.com
6  mike@righettilaw.com

7  Richard Hoyer (SBN 151931)
   Ryan L. Hicks (SBN 260284)
8  HOYER & HICKS
   Four Embarcadero Center, Suite 1400
9  San Francisco, California 94111
   Telephone: (415) 766-3536
10 Facsimile: (415) 276-1738
   rhoyer@hoyerlaw.com
11 rhicks@hoyerlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DECLARATION OF CAROLYN HUNT COTTRELL**

2

I, Carolyn Hunt Cottrell, declare:

3

1.  I have personal knowledge of the facts set forth in this Declaration and, if called upon as a

4

witness, I could and would testify competently as to these facts.

5

2.  This Declaration is submitted in support of Plaintiffs' Unopposed Motion for Final

6

Approval of Settlement as to California Class.

7

**<u>QUALIFICATIONS, EXPERIENCE, AND EXPERTISE</u>**

8

3.  I am an attorney duly licensed to practice law in the State of California (State Bar No.

9

166977).  I am a member in good standing of the State Bar of California. I am admitted to the

10

United States District Courts for the Northern, Eastern, Central, and Southern Districts of

11

California.  I am admitted to the Ninth Circuit Court of Appeals. I am a member of the Bar of the

12

United States Supreme Court.

13

4.  I am a partner at Schneider Wallace Cottrell Konecky Wotkyns LLP ("SWCKW").

14

SWCKW specializes in class action litigation in state and federal court.

15

5.  SWCKW is regarded as one of the leading private plaintiff's firms in wage and hour class

16

actions and employment class actions.

17

6.  SWCKW has acted or is acting as class counsel in numerous cases.  A partial list of cases

18

which have been certified and/or settled as class actions includes: *Allen, et al. v. County of

19

Monterey, et al.*, (Case No. 5:13-cv-01659) (Northern District of California) (settlement between

20

FLSA Plaintiffs and Defendant to provide relief to affected employees); *Barrera v. Radix Cable

21

Holdings, Inc., et al.*, (Case No. CIV 1100505) (Marin County Superior Court) (final approval of

22

class action settlement for failure to provide meal and rest breaks to, off-the-clock work by, failure

23

to provide overtime compensation to, failure to reimburse business expenditures to, failure to pay

24

full wages upon termination to, and failure to provide accurate itemized wage statements to

25

retention specialists working for cable companies); *Glass Dimensions, Inc., et al. v. State Street

26

Corp. et al.*, (Case No. 1:10-cv-10588) (District of Massachusetts) (final approval of class action

27

settlement for claims of breach of fiduciary duty and self-dealing in violation of ERISA); *Friend, et

28

al. v. The Hertz Corporation*, (Case No. 3:07-052222) (Northern District of California) (settlement

of claims that rental car company misclassified non-exempt employees, failed to pay wages, failed

to pay premium pay, and failed to provide meal periods and rest periods); *Hollands v. Lincare, Inc., et al.*, (Case No. CGC-07-465052) (San Francisco County Superior Court) (final approval of class action settlement for overtime pay, off-the-clock work, unreimbursed expenses, and other wage and hour claims on behalf of a class of center managers); *Jantz, et al. v. Colvin*, (Case No. 531-2006-00276X) (In the Equal Employment Opportunity Commission Baltimore Field Office) (final approval of class action settlement for the denial of promotions based on targeted disabilities); *Shemaria v. County of Marin*, (Case No. CV 082718) (Marin County Superior Court) (final approval of class action settlement on behalf of a class of individuals with mobility disabilities denied access to various facilities owned, operated, and/or maintained by the County of Marin); *Perez, et al. v. First American Title Ins. Co.*, (Case No. 2:08-cv-01184) (District of Arizona) (final approval of class action settlement in action challenging unfair discrimination by title insurance company); *Perez v. Rue21, Inc., et al.*, (Case No. CISCV167815) (Santa Cruz County Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to, and for off-the-clock work performed by, a class of retail employees); *Sosa, et al. v. Dreyer's Grand Ice Cream, Inc., et al.*, (Case No. RG 08424366) (Alameda County Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to, and for off-the-clock work performed by, a class of ice cream manufacturing employees); *Villalpando v. Exel Direct Inc., et al.* (Case Nos. 3:12-cv-04137 and 4:13-cv-03091) (Northern District of California) (certified class action on behalf of delivery drivers allegedly misclassified as independent contractors); *Choul, et al. v. Nebraska Beef, Ltd.* (Case Nos. 8:08-cv-90, 8:08-cv-99) (District of Nebraska) (final approval of class action settlement for off-the-clock work by, and failure to provide overtime compensation to, production-line employees of meat-packing plant); *Morales v. Farmland Foods, Inc.* (Case No. 8:08-cv-504) (District of Nebraska) (FLSA certification for off-the-clock work by, and failure to provide overtime compensation to, production-line employees of meat-packing plant); *Barlow, et al. v. PRN Ambulance Inc.* (Case No. BC396728) (Los Angeles County Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to and for off-the-clock work by certified emergency medical technicians); *Espinosa, et al. v. National Beef, et al.* (Case No. ECU0467) (Imperial Superior Court) (final approval of class action settlement for off-the-clock work by, and failure to provide overtime compensation to, production-line employees of

meat-packing plant); *Wolfe, et al. v. California Check Cashing Stores, LLC, et al.* (Case Nos. CGC-08-479518 and CGC-09-489635) (San Francisco Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to, and for off-the-clock work by, employees at check cashing stores); *Carlson v. eHarmony* (Case No. BC371958) (Los Angeles County Superior Court) (final approval of class action settlement on behalf of gays and lesbians who were denied use of eHarmony); *Salcido v. Cargill* (Case Nos. 1:07-CV-01347-LJO-GSA,1:08-CV-00605-LJO-GSA) (Eastern District of California) (final approval of class action settlement for off-the-clock work by production-line employees of meat-packing plant); *Elkin v. Six Flags* (Case No. BC342633) (Los Angeles County Superior Court) (final approval of class action settlement for missed meal and rest periods on behalf of hourly workers at Six Flags amusement parks); *Jimenez v. Perot Systems Corp.* (Case No. RG07335321) (Alameda County Superior Court) (final approval of class action settlement for misclassification of hospital clerical workers); *Chau v. CVS RX Services, Inc.* (Case No. BC349224) (Los Angeles County Superior Court) (final approval of class action settlement for failure to pay overtime to CVS pharmacists); *Reed v. CALSTAR* (Case No. RG04155105) (Alameda County Superior Court) (certified class action on behalf of flight nurses); *National Federation of the Blind v. Target* (Case No. C 06-01802 MHP) (N.D. Cal.) (certified class action on behalf of all legally blind individuals in the United States who have tried to access Target.com); *Bates v. United Parcel Service, Inc.* (2004 WL 2370633) (N.D. Cal.) (certified national class action on behalf of deaf employees of UPS); *Satchell v. FedEx Express, Inc.* (Case No. 03-02659 SI) (N.D. Cal.) (certified regional class action alleging widespread discrimination within FedEx); *Siddiqi v. Regents of the University of California* (Case No. C-99-0790 SI) (N.D. Cal.) (certified class action in favor of deaf plaintiffs alleging disability access violations at the University of California); *Lopez v. San Francisco Unified School District* (Case No. C-99-03260 SI) (N.D. Cal.) (certified class action in favor of plaintiffs in class action against school district for widespread disability access violations); *Campos v. San Francisco State University* (Case No. C-97-02326 MCC) (N.D. Cal.) (certified class action in favor of disabled plaintiffs for widespread disability access violations); *Singleton v. Regents of the University of California* (Case No. 807233-1) (Alameda County Superior Court) (class settlement for women alleging gender discrimination at Lawrence Livermore National Laboratory); *McMaster v. BCI Coca-Cola Bottling Co.* (Case No.

RG04173735) (Alameda County Superior Court) (final approval of class action settlement for drive-time required of Coca-Cola account managers); *Portugal v. Macy's West, Inc.* (Case No. BC324247) (Los Angeles County Superior Court) (California statewide wage and hour "misclassification" class action resulting in a class-wide $3.25 million settlement); *Taormina v. Siebel Systems, Inc.* (Case No. RG05219031) (Alameda County Superior Court) (final approval of class action settlement for misclassification of Siebel's inside sales employees); *Joseph v. The Limited, Inc.* (Case No. CGC-04-437118) (San Francisco County Superior Court) (final approval of class action settlement for failure to provide meal and rest periods to employees of The Limited stores); *Rios v. Siemens Corp.* (Case No. C05-04697 PJH) (N.D. Cal.) (final approval of class action settlement for failure to pay accrued vacation pay upon end of employment); *DeSoto v. Sears, Roebuck & Co.* (Case No. RG0309669) (Alameda County Superior Court) and *Lenahan v. Sears, Roebuck & Co.* (Case No. 3-02-CV-000045 (SRC) (TJB)) (final approval of class action settlement for failure to pay Sears drivers for all hours worked); among many others.

7.  I have been a member of this firm since 1996.  Nearly my entire legal career has been devoted to advocating for the rights of individuals who have been subjected to illegal pay policies, discrimination, harassment and retaliation and representing employees in wage and hour and discrimination class actions.  I have litigated hundreds of wage and hour, employment discrimination and civil-rights actions, and I manage many of the firm's current cases in these areas. I am a member of the State Bar of California, and have had memberships with Public Justice, the National Employment Lawyers Association, the California Employment Lawyers Association and the Consumer Attorneys of California.  I served on the Board of Directors for the San Francisco Trial Lawyers Association and co-chaired its Women's Caucus.  I was named one of the "Top Women Litigators for 2010" by the Daily Journal.  In 2012 I was nominated for Woman Trial Lawyer of the Year by the Consumer Attorneys of California.  I earned my Bachelor's degree from the University of California, and I am a graduate of the University of the Pacific, McGeorge School of Law.

## CLASS COUNSEL

8.  Plaintiffs' Counsel in this case is comprised of SWCKW, Righetti Glugoski, PC ("RG"), and Hoyer & Hicks ("HH"). The firms are highly-regarded members of the wage and hour and

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

employment class and collective action bar, with extensive experience in this highly-specialized type of litigation.

9.   Declarations and supporting exhibits outlining Plaintiffs' Counsel's extensive work on this matter, as well as fees and costs, have been submitted in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards, filed on the same day as this motion and all supporting documents. I refer the Court to these additional declarations for a detailed overview of Class Counsel's work on the matter as well as our fees and costs.

## INTRODUCTION

10. The Parties have resolved the claims of approximately 2,035 Sprint employees, 718 of whom worked in California, for a total settlement of $3,370,000.00. In their preliminary approval motion, Plaintiffs listed the total number of employees as 1,947. In order to provide notice of the Settlement to CMs, Defendant conducted a final review of its employee records to provide the Settlement Administrator with workweek and contact information for all CMs. The CM numbers included in this brief are the most recent, accurate data.

11. The Court granted preliminary approval of this Settlement as to the California Class and approval of the Settlement as to the Collective on January 15, 2016. Following the Court's approval, notice of the Settlement was sent to the California Class on February 19, 2016. The exclusion and objection period will expire on April 4, 2016. To date, CMs have responded favorably. No objections haves been filed, and no CM has opted out of the Settlement.

## PROCEDURAL HISTORY

12. Plaintiffs allege ten causes of action under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), the California Labor Code, applicable Industrial Welfare Commission ("IWC") Wage Orders, and Business and Professions Code §§ 17200, et seq. ("UCL"). Plaintiffs assert the first cause of action under the FLSA on behalf of themselves and the Collective for Sprint's alleged failure to compensate for all hours worked, including legally mandated overtime premiums and/or minimum wages. Plaintiffs assert their nine other causes of action under California law on behalf of themselves and the California class: (1) failure to authorize, permit, and/or make available meal and rest periods; (2) failure to compensate for all hours worked; (3) failure to pay overtime wages; (4) failure to reimburse for necessary business expenditures (namely,

the distinctive uniforms that Defendant requires); (5) waiting time penalties; (6) failure to provide itemized wage statements; (7) violation of the UCL for unlawful, unfair, and/or fraudulent business acts or practices; (8) penalties pursuant to § 2699(a) of the California Private Attorney General Act ("PAGA"); and (9) penalties pursuant to § 2699(f) of the PAGA. On October 3, 2014, the Court conditionally certified a Collective of certain of Sprint's hourly-paid retail store employees.

13. On October 3, 2014, the Court conditionally certified a Collective of certain of Sprint's hourly-paid retail store employees. The Administrator disseminated the Notice to the Collective Members on December 17, 2014, with an opt-in deadline of March 17, 2015. More than 1,900 Sprint employees opted into the Collective, over 700 of whom worked in California. Following the lapse of the opt-in deadline, the Parties agreed to participate in mediation to try to settle the claims of these employees.

14. The Parties engaged in extensive discovery and exchanged over 2,000 pages of documents, including policies and procedures regarding timekeeping, overtime, compensation, meal and rest breaks, payroll documents, and personnel files. Defendant also produced 18 excel files with payroll and timekeeping data for the Opt-in and named Plaintiffs. Class Counsel interviewed over 300 CMs and collected declarations from the named Plaintiffs, several Opt-in Plaintiffs, and Sprint District Managers. Class Counsel also made a thorough study of the legal principles applicable to the claims asserted against Defendant.

15. Class Counsel based their damages analysis and settlement negotiations on formal and informal discovery, the interviews and declarations discussed above, and the payroll and timekeeping data of approximately 2,000 Opt-in Plaintiffs (about 700 of whom make up the California Class) produced by Defendant. Class Counsel made several assumptions while conducting this analysis and were thus able to derive averages from the discovery as follows: the average wage reported was $12.74; the average number of days worked each week was 5.04; the average number of hours worked each day was 8.11; the average number of hours worked each week was 41.31. Plaintiffs also assumed that no employee worked more than 12 hours per day or 60 hours per week. In reviewing the discovery, Plaintiffs' recognized that some alleged violations were not corroborated by all CMs. Only a percentage of CMs corroborate working off-the-clock. Likewise, for the California Class Members, the estimated missed rest breaks and meals breaks

varied.

16. Using these averages and assumptions and further assuming that all of the claims of Plaintiffs and the CMs would be certified and prevail at trial, Class Counsel calculated total damages, including all penalties, to be $14,464,382.15.

17. The total amount of damages is further broken down as follows: the amount owing to CMs for their uncompensated, off-the-clock work is $6,117,457.35; the amount owing in premium pay for missed meal and rest breaks to the Class is $1,132,722.95; the amount owing for unreimbursed uniform costs to the Class is $166,000.00. As derivative damages, Class Counsel assumed maximum statutory penalties of $4,000.00 for every California employees for improper wage statements, which totaled $2,440,000.00. Class Counsel also included derivative damages for waiting time penalties for 30 days for Defendant's 529 former employees in the amount of $1,777,898.00.

18. The net amount being disbursed to CMs is $1,979,166.67, which is approximately 14% of the total damages and penalties estimated by Plaintiffs.

19. The settlement amount is fair, reasonable, and adequate. The settlement amount takes into account the substantial risks inherent in any class and collective action wage and hour case (including that certification of off-the-clock work is complicated by the lack of documentary evidence and reliance on employee testimony), the status of the litigation (including the pendency of *Bui*), and the specific defenses asserted by Sprint.

20. On July 10, 2014, Plaintiff Viet Bui filed the action *Bui v. Sprint Corporation, et al.* in California Superior Court, Sacramento County. Defendant removed *Bui* to the Eastern District of California on October 17, 2014, and the case is assigned to District Judge Nunley as Case No. 2:14-cv-02461-TLN-AC. Bui asserts claims under California law similar to those in this action. *Id*. On March 9, 2015, the *Bui* parties filed a notice of settlement and a subsequent motion for preliminary approval of the class action settlement. The Court granted the motion on February 24, 2016. Two points are important here: (1) the California Class Members in this action will be receiving a greater settlement award than the class members in *Bui*; and (2) the pendency of *Bui* impacts and significantly narrows the size of the California Class in this action. The *Bui* parties state that 5,021 individuals fall within their proposed putative class – 1,650 current and 3,371 former employees. *Id*.

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS

Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

As a result, the Parties in this case agreed to limit the California Class Members to those Opt-in Plaintiffs who worked in California and are excluded from the proposed *Bui* settlement class.

21. The Parties mediated this dispute on July 27, 2015 before Judge Infante, a respected and experienced wage and hour mediator. The Parties engaged in arm's-length negotiations, culminated by the execution of a memorandum of understanding which set forth settlement terms resolving the matter. After the mediation, counsel for the Parties worked to finalize the Settlement and corresponding notice documents, subject to the Court's approval. The Settlement Agreement was fully executed on November 30, 2015.

22. On December 7, 2015, Plaintiffs filed a Motion for Preliminary Approval of Settlement as to California Class and Approval of Settlement as to Collective. On January 15, 2016, the Court issued an Order Granting Preliminary Approval of Settlement as to California Class and Approval of Settlement as to Collective.

23. With respect to the California Class, the Court (1) preliminarily found "that the terms of the Settlement appear to be within the range of possible approval, pursuant to Federal Rule of Civil Procedure 23 and applicable law;" (2) preliminarily held that "the settlement amount is fair and reasonable to the California Class Members;" (3) "grant[ed] conditional certification of the provisional California Class;" (4) "conditionally appoint[ed] Schneider Wallace Cottrell Konecky Wotkyns LLP, Hoyer & Associates, and Righetti Glugoski, P.C. as Counsel for the Class, and Plaintiffs as class representatives for the Class;" (5) approved the Class notice (*see* Dkt. No. 169-2); (6) preliminarily approved the settlement produced for the California Class; and (7) preliminarily approved Class Counsel's ability to request attorneys' fees of up to one-third of the Gross Settlement Amount ($1,123.333.33), and costs not to exceed $125,000.00, in a separate fee motion. *Id.*

24. With respect to the Collective, the Court (1) granted final approval of the terms and conditions in the Settlement as to the Collective; (2) held that "the Settlement amount is fair and reasonable to the Collective Members;" (3) confirmed its October 3, 2014 order certifying the Collective; (4) "appoint[ed] Schneider Wallace Cottrell Konecky Wotkyns LLP, Hoyer & Associates, and Righetti Glugoski, P.C. as Counsel for the Collective, and Plaintiffs as Collective representatives for the Collective;" (5) approved the Collective Notice (*see* Dkt. No. 169-3); and (6)

approved the Settlement procedure for Collective Members. *Id.* The Court also "authorize[d] the retention of Heffler Claims Group as Settlement Administrator for the purpose of the Settlement with reasonable administration costs estimated not to exceed $95,000.00." *Id.*

25. Heffler is responsible for distributing the Class Notice and the Collective Notice (which shall accompany the Collective Members' settlement checks), calculating individual settlement payments, calculating all applicable payroll taxes, withholdings and deductions, preparing and issuing all disbursements to be paid to Class Members, Collective Members, the Class Representatives, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities, and handling inquiries and/or disputes from CMs. Heffler is also responsible for the timely preparation and filing of all tax returns, and making the timely and accurate payment of any and all necessary taxes and withholdings. Heffler also established a mailing address and toll-free telephone number to direct inquiries regarding the Notices and determination of individual settlement payments.

26. Following the Court's order, Heffler received CM data from Defendant. The data contained the names, addresses, workweeks, and other personal information for 2,035 Sprint employees. Heffler identified 718 records in the data received as having weeks worked listed as a California Class Member or residing in California. These 718 individuals were considered part of the California Class. Notice was supposed to be mailed by Heffler to California Class Members on February 4, 2016. However, this timeline could not be met despite the Parties' best efforts due to issues regarding the proper calculation of workweeks for each CM. It took longer than anticipated for the Parties to resolve those issues, and as a result, to prepare and provide the necessary CM information for notice and administration of the settlement to the Settlement Administrator. Once the CM information was prepared, additional issues were raised by the Settlement Administrator that needed to be reexamined. As a result, Heffler was unable to mail the notices to the California Class Members by the initial February 4, 2016 deadline. Instead, notice was mailed on February 19, 2016. On February 24, 2016,  the Parties filed a Stipulation to Amend Deadline in January 15, 2016 Order Granting Preliminary Approval of Settlement as to California Class and Approval of Settlement as to Collective to reflect the operative schedule in the case. (Dkt. No. 174.) The Court granted this stipulation on February 25, 2016. (Dkt. No. 175.) Despite this amendment to the initial

9

schedule, the final approval hearing date of April 16, 2016 remained the same, and California Class Members were still provided with a 45-day time period to respond to the Notice.

27. In order to mail notices to California Class Members, Heffler first calculated the individual settlement award for every CM after receipt of the CM list from Defendant in order to include such information on the notices. After calculating the CM awards, Heffler sent 718 court-approved Settlement Notices to the California Class Members on February 19, 2016. The Notice informed the California Class of: the Settlement terms; their expected share; the April 4, 2016 deadline to submit objections, requests for exclusions, or disputes; the April 14, 2016 final approval hearing; and that Plaintiffs would seek attorneys' fees, costs, and service awards in the stated amounts. (*See also* Dkt. No. 169-2.) Heffler also included a toll free number in the Settlement Notice, which California Class Members could call for information about the Settlement. Likewise, contact information for Class Counsel in the case was provided. As of March 21, 2016, Heffler received a total of 22 incoming calls and responded to all of them. Class Counsel also communicated with several CMs to ensure that they will receive their shares of the Settlement. As of March 21, 2016, the Settlement Administrator has mailed notice packets to all California Class Members. 16 have been returned as undeliverable. Heffler is working with Class Counsel as well as conducting tracing to locate updated addresses for these 16 California Class Members. Notices were re-mailed and/or emailed on March 18, 2016 to those CMs for whom updated contact information has been located.

28. The deadline for California Class Members to opt-out, object, and dispute their awards expires April 4, 2016. To date, not a single objection has been filed, and not a single California Class Member has opted out of the Settlement.[1] Following final approval of the Settlement as to the Class, Heffler will issue checks to the Class Members and also provide notice to the Collective Members with their settlement checks.  All 2,035 records in the data provided are considered part of the Collective and will receive the Collective Notice accordingly.

---

[1] Plaintiffs will provide a further update to the Court after the opt-out, objection, and deadline passes. Specifically, the Court's January 15, 2016 order as amended by the February 24, 2016 stipulation provides that "Class Counsel [is] to file Heffler's verification that the Class Notice has been completed" by "April 14, 2016."

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

**FINAL APPROVAL OF THE SETTLEMENT**

29. The Final Approval Hearing for the Court to approve the Settlement as to the California Class is currently scheduled for April 14, 2016. With this Motion, Plaintiffs ask the Court to grant final approval of this Settlement as to the California Class. Following an order by the Court on this motion, the Parties and the Settlement Administrator will execute the final steps of the settlement process, including sending individual checks to all participating CMs for their Settlement award.[2]

**THE SETTLEMENT**

30. The Parties have resolved this matter in a Joint Stipulation for Class and Collective Action Settlement and Release of Claims (the "Settlement Agreement" or the "Settlement") (previously filed with this Court at Dkt. No. 166-1).

31. Sprint has agreed to pay a total of $3,370,000.00 to settle all aspects of the case. The "Net Settlement Amount," which is the amount available to pay settlement awards to the CMs, is defined as the Gross Settlement Amount less: any attorneys' fees and costs awarded to Class Counsel (fees of up to one-third of the Gross Settlement Amount, $1,123.333.33, plus costs not to exceed $125,000.00), any enhancement payment awarded to the Class Representatives (up to $10,000.00 each), the payment made to the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA ($7,500.00)[3], and the Settlement Administrator's fees and costs (up to $95,000.00[4]).

32. An individual is a member of the Collective or Class if he or she belongs to one or both of the following:

---

[2] The Settlement awards to the Collective Members will be accompanied by the Collective Notice already approved by the Court on January 15, 2016.

[3] The LWDA has requested that it be provided a copy of the settlement agreement, once it is approved by the Court. The Parties will comply with the LWDA's request once the settlement agreement is approved. The Parties also agree to allocate $10,000.00 of the Gross Settlement Fund to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. The Settlement Administrator shall pay 75%, or $7,500.00, of this amount to the LWDA, and allocate 25%, or $2,500.00, of this amount to the California Class Net Settlement Fund.

[4] The Settlement Administrator's estimate is $87,377.00. The estimate of $95,000.00 includes possible, but unanticipated additional costs. If these unanticipated costs are not incurred, the costs reserved for the Settlement Administrator will return to the Net Settlement Fund and be distributed to the CMs.

a. The "**California Class**" is a certified class for settlement purposes only under Federal Rule of Civil Procedure 23, which includes the Class Representatives and all Opt-in Plaintiffs who are or were employed by Defendant in California at any time from and including September 19, 2009 through and including the date of preliminary approval, and who do not properly exclude themselves from this settlement. The Court conditionally certified this Class for purposes of settlement on January 15, 2015.

b. The "**Collective**" is a certified collective action for settlement purposes only pursuant to 29 U.S.C. § 216(b), which includes all Opt-in Plaintiffs who are or were employed by Defendant inside and outside of California at any time from and including September 19, 2010 through and including the date of preliminary approval. The Court certified the Collective on October 3, 2014, and confirmed this certification order on January 15, 2016. (Dkt. No. 170.)

33. The Net Settlement Amount to be paid to CMs is $1,979,166.67. 27% of the Net Settlement Amount is allocated to the California Class, and 73% is allocated to the Collective. Only those CMs who do not opt-out of the Settlement will receive payment from the California Class Net Settlement Fund. Each CM's settlement share will be determined based on the total number of weeks that the respective CM worked for Defendant from September 19, 2009 through the date of preliminary approval of this Settlement Agreement, January 15, 2016. Class Settlement Awards will be paid to CMs by the Settlement Administrator 15 days after the occurrence of the "Effective Date".[5] The amount of the Class Settlement Award to be paid to California Class Members will be paid in a check separate from a check for the amount to be paid to the California Class Members for their membership in the Collective (as discussed below). All eligibility and Class Settlement Award determinations shall be based on employee workweek information that Defendant will provide to

---

[5] The " Effective Date" is defined as: "(a) if no objections to the settlement are filed, then the Effective Date shall be 35 days after the Court enters its order granting final approval of the settlement; (b) If objections to the settlement are filed and overruled, and no appeal is taken of the final approval order, then the Effective Date shall be 35 days after the Court enters its order granting final approval of the settlement; or (c) If any appeal is taken from the Court's overruling of objections to the settlement, then the Effective Date shall be 20 days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final and the exhaustion of all possible further appellate review."

the Settlement Administrator. CMs will have the opportunity should they disagree with Defendant's records, to provide documentation and/or an explanation to show a contrary number of weeks worked.  For any CM that does not timely opt out of the Settlement and receives a payment, but does not timely cash his or her settlement check within 90 days after its issuance by the Settlement Administrator, the Settlement Administrator will immediately stop payment on the check and such funds from the California Class Net Settlement Fund for each such CM will be transmitted by the Settlement Administrator to the State of California's Unclaimed Property Fund pursuant to governing law to be held there for the benefit of such CMs under California's escheatment laws.

34. Collective Members' settlement shares will be calculated and awarded in a similar fashion to the process described above with respect to C. There are two distinctions. First, each Collective Member's settlement share will be determined based on the total number of weeks that the respective Collective Member worked for Defendant during the FLSA collective action period, from September 19, 2010 through the date of approval of this Settlement Agreement as to the Collective, January 15, 2016. Second, the settlement shares will be distributed to Collective Members without challenge to the number of workweeks worked.[6] For any Collective member that does not cash a settlement check within 90 days after issuance by the Settlement Administrator, the Settlement Administrator will immediately stop payment on the check and such settlement payment shall become void, and the gross amount of such payment (before deductions and withholdings for any employee-paid payroll taxes) plus any associated employer-paid payroll taxes shall remain the property of and be returned by the Settlement Administrator to Defendant within 30 days after the stop payment order is made.

35. The average individual settlement awards for CMs are estimated to be as follows. With respect to California Class Members: the average award is $775.98; with respect to Collective Members: the average award is $744.18; and for those CMs, who are members of both the Class and Collective: the highest combined award is $3,603.92 and the average combined award is $1,531.11. There are 88 individuals who are not receiving an award. They have zero qualifying

---

[6] Collective Members have already had the opportunity to confirm their workweeks when filing out the dates of their employment on their opt-in consent forms filed with the Court.

workweeks in the Class and Collective periods according to Sprint's data. All CMs (including those with zero workweeks) were given notice and the opportunity to dispute their workweek figures to ensure proper settlement awards. As AN example, Named Plaintiff Smith will received the following awards: Class award $265.53 and Collective award $339.13, for a total of $604.66.

36. The release contemplated by the Settlement will release all claims in connection with the lawsuit that have been filed in any of the consolidated and/or related actions and all violations asserted in any notice sent to the LWDA, as well as the same or any similar claims that could have been alleged in the pleadings under the laws of any state outside California where Opt-in Plaintiffs worked for Sprint, from the beginning of any applicable statute of limitations period through the date of final approval of this Settlement. Only those Collective Members who cash their settlement checks will release their FLSA claims; and only those Class Members who do not opt out will release their California Claims.

37. In addition, upon final approval by the Court of this Settlement, in consideration of the payment of the Class Representative enhancement payments to the Class Representatives for services performed on behalf of the Class and Collective, the Class Representatives[7] will fully release and discharge Sprint from any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever, based on any act, omission, event, occurrence, or nonoccurrence from the beginning of time through the Effective Date, including but not limited to any claims or causes of action arising out of or in any way relating to the Class Representatives' employment relationship with Defendant or any other Releasees.

## **FINAL APPROVAL**

38. In its January 15, 2016 order, the Court already approved the Settlement with respect the Collective Members. The Court also conditionally certified the California Class and preliminarily

---

[7] This includes their respective heirs, representatives, attorneys, administrators, executors, successors and assigns.

approved the Settlement with respect to these CMs. Accordingly, the only step that remains is final approval of the Settlement as to the California Class. Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should be finally approved.

39. The Court should find that the Settlement is fair, reasonable, and adequate, and finally approve it with respect to the California Class.

40. Pursuant to the Court's January 15, 2016 order granting preliminary approval of the Settlement as to the California Class, Heffler sent the Court-approved Class Notice to the California Class Members in accordance with the terms of the Settlement Agreement.

41. The Settlement Administrator followed all of the procedures set forth in the Court-approved notice plan. Reasonable steps have been taken to ensure that all California Class Members receive the Notice. Ultimately, of the 718 notices distributed, 16 have been returned as undeliverable. Heffler is working with Class Counsel as well as conducting tracing to locate updated addresses for these 16 California Class Members. Notices were re-mailed on March 18, 2016 to those CMs for whom updated contact information has been located. Accordingly, the notice process satisfies the "best practicable notice" standard.

42. A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. The Net Settlement Amount of $1,979,166.67, derived from a Gross Settlement Amount of $3,370,000.00, will result in fair and just relief to CMs. *Id.* Payments to the CMs are roughly 14% of the maximum total damages, penalties and interest attainable in this case. *Id.* There are approximately 2,035 CMs, about 718 California Class Members and 1,317 Collective Members. The average individual settlement awards for CMs are estimated to be as follows. With respect to California Class Members: the average award is $775.98; with respect to Collective Members: the average award is $744.18; and for those CMs, who are members of both the Class and Collective: the highest combined award is $3,603.92 and the average combined award is $1,531.11. These results are well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. In addition, the CMs in this action will receive a greater settlement award that the class members in *Bui*. The settlement award in that action is less than that here. The net settlement amount to the approximately 5,012 class members is $3,159,745.00.

43. In an effort to further ensure fairness for the employees, the Parties have agreed to allocate

the settlement proceeds amongst CMs that track each of the substantive violations and some of the penalty claims, including the limitations period for each claims. The allocation was made based on Class Counsel's assessment of the risk of continued litigation and risk on certification and merits. Once allocating the proceeds, the Parties further agreed on distribution formulas specifically tailored to each claim, and each claims limitations period, to further ensure that employees are compensated accordingly and in the most equitable manner.

44. The Parties engaged in an extensive informal information exchange and formal discovery to enable both sides to assess the claims and potential defenses in this action. The Parties were able to accurately assess the legal and factual issues that would arise if the case proceeded to trial. In addition, in reaching this settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendant's compensation policies and practices on CMs' pay. Ultimately, facilitated by Judge Infante, the Parties used this information and discovery to fairly resolve the litigation.

45. Plaintiffs contend the common questions raised in this action predominate over any individualized questions concerning the CMs. Plaintiffs believe that the Class and Collective is entirely cohesive because resolution of Plaintiffs' claims all hinge on the uniform policies and practices of Sprint, rather than any treatment the CMs experienced on an individual level. As a result, Plaintiffs contend that the resolution of these alleged class and collective claims will be resolved through the use of common forms of proof, such as Sprint's uniform policies, and will not require inquiries specific to individual class members. Moreover, the Court has already conditionally certified a collective under § 216(b) for Plaintiffs' FLSA claims. While Class Counsel is confident that Plaintiffs would succeed on liability, continued litigation would be costly, time-consuming, and not certain in outcome.

46. Sprint has legal and factual grounds available to defend this action. In fact, Sprint has taken the position all along that this case is not suitable for class treatment and that it fully complied with its obligations regarding payment of wages and provision of meal and rest breaks. Sprint asserted numerous complete liability defenses against Plaintiffs' claims, many of which were supported by the declarations gathered and produced by Defendant. For example, Sprint raised several defenses

16

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

to Plaintiffs' off-the-clock claims, including that (1) CMs did not in fact perform work off-the-clock before, during, and/or after their scheduled shifts; (2) any off-the-clock work was *de minimis*; (3) Sprint properly provided CMs with legally compliant meal and rest breaks; (4) Sprint paid CMs for all hours worked, including overtime and bonus/commission pay; (5) Sprint properly reimbursed CMs for any business expenses, including uniforms; and (6) Sprint provided CMs with proper wage statements. Sprint also raised several defenses against conditional certification, which would be echoed in a possible decertification motion as well as in response to Plaintiffs' motion to certify the California Class, including that (1) that individualized determinations regarding the type and amount of off-the-clock work, if any, completed by CMs would overwhelm common issues;  (2) that individualized determinations regarding the amount of wages owing (including bonus/commission pay), if any, would overwhelm common issues; and (3) whether CMs actually took meal and rest breaks would overwhelm any common issues. If Sprint succeeded on any of these or other defenses to class and collective certification, Plaintiffs would be left with only their individual claims and the Class and Collective would potentially recover nothing. Weighing all of these considerations, resolution of the litigation by way of Settlement is reasonable.

47. The monetary value of the proposed Settlement represents a fair compromise given the litigation risks and uncertainties posed by continued litigation. If this case were to go to trial as a class and collective action (which Defendant would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that fees and costs would exceed $2,000,000.00. Litigating the class and collective action claims would require substantial additional preparation and discovery. It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiff's claims, a questionable feat in light of recent developments in wage and hour and class and collective action law as well as the legal and factual grounds that Sprint has asserted to defend this action. In contrast, resolving this case by means of an early settlement will yield a prompt, certain, and very substantial recovery for the CMs. Such a result will benefit the Parties and the court system.

48. The settlement was a product of non-collusive, arm's-length negotiations. The Parties participated in a full-day mediation before Judge Infante, who is a skilled mediator with many years of experience mediating employment matters. In addition, the adversarial mediation resulted in a written memorandum of understanding that memorialized the core terms of the proposed settlement. Subsequently, the Parties spent months negotiating the long form settlement agreement, with several rounds of correspondence related to the details of the settlement.

49. Class Counsel are experienced and respected class action litigators. Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believes this Settlement will provide a substantial benefit to the Classes.

50. To date, not a single Settlement Class Member has objected to the Settlement, and not a single Settlement Class Member has opted out of the Settlement. In addition, all four Class Representatives support the terms of the Settlement. This shows widespread support for the settlement among California Class Members, and gives rise to a presumption of fairness.

### PLAINTIFFS' SERVICE AWARD

51. The enhancement payments of $10,000.00 for each of the four Plaintiffs are intended to compensate Plaintiffs for the critical role they played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class and Collective. In agreeing to serve as Class and Collective representatives, Plaintiffs formally agreed to accept the responsibilities of representing the interests of all Class and Collective Members. Sprint does not oppose payment of up to $10,000.00 per Plaintiff as reasonable service awards. Moreover, the service awards are fair when compared to the payments approved in similar cases.

52. Declarations and supporting exhibits outlining Plaintiffs' extensive work on this matter have been submitted in support Plaintiffs' Unopposed Motion for Attorneys' Fees, Cost, and Service Awards filed on the same day as this motion and all supporting documents. I refer the Court to these additional declarations for a detailed overview of Plaintiffs' work on the matter.

### REASONABLE ATTORNEYS' FEES AND COSTS

53. In their fee motion, Class Counsel request up to thirty-three percent (33 1/3%) of the Gross Settlement Amount, $1,123.333.33) plus reimbursement of costs not to exceed $125,000.00. In this case, given the results achieved, the effort expended litigating the case, and the difficulties attendant

to litigating this case, such an upward adjustment is warranted. There was no guarantee of compensation or reimbursement. Rather, counsel undertook all the risks of this litigation on a completely contingent fee basis. These risks were front and center. Defendant's vigorous and skillful defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and pressing Plaintiffs' legal claims to enforce the employees' rights and maximize the class and collective recovery. The challenges that Class Counsel had to confront and the risks they had to fully absorb on behalf of the class and collective here are precisely the reasons for multipliers in contingency fee cases.

54. The requested attorneys' fees and expense award is also reasonable when compared to Class Counsel's lodestar amount.

55. Declarations and supporting exhibits outlining Plaintiffs' Counsel extensive work on this matter as well as fees and costs have been submitted in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards filed on the same day as this motion and all supporting documents. I refer the Court to these additional declarations for a detailed overview of Class Counsel's work on the matter as well as our fees and costs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my own personal knowledge. Executed in Emeryville, California on March 21, 2016.

/s/ *Carolyn Hunt Cottrell*
CAROLYN HUNT COTTRELL

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AS TO CALIFORNIA CLASS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC