Todd M. Schneider (SBN 158253)
Carolyn Hunt Cottrell (SBN 166977)
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
ncoon@schneiderwallace.com

Attorneys for Plaintiffs and the Settlement
Collective and Settlement Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVIA GUILBAUD, MARQUES LILLY, AND MICHAEL WONG, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SPRINT NEXTEL CORPORATION AND SPRINT/UNITED MANAGEMENT CO., INC.,<br><br>Defendants. | **Lead Case**<br>CASE NO. 3:13-CV-04357-VC<br><br>Hon. Vince Chhabria |
| MICHAEL SMITH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SPRINT/UNITED MANAGEMENT COMPANY,<br><br>Defendant. | *Consolidated with*<br><br>CASE NO. 3:14-CV-02642-VC<br><br>Hon. Vince Chhabria<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date:  April 14, 2016<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor |

[ADDITIONAL COUNSEL ON FOLLOWING PAGE]

1    Matthew Righetti (SBN 121012)
     John Glugoski (SBN 191551)
2    Michael Righetti (SBN 258541)
     RIGHETTI GLUGOSKI, P.C.
3    456 Montgomery Street, Suite 1400
     San Francisco, California 94101
4    Telephone: (415) 983-0900
     Facsimile:  (415) 397-9005
5    matt@righettilaw.com
     jglugoski@righettilaw.com
6    mike@righettilaw.com

7    Richard Hoyer (SBN 151931)
     Ryan L. Hicks (SBN 260284)
8    HOYER & HICKS
     Four Embarcadero Center, Suite 1400
9    San Francisco, California 94111
     Telephone: (415) 766-3536
10   Facsimile:  (415) 276-1738
     rhoyer@hoyerlaw.com
11   rhicks@hoyerlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO ALL PARTIES AND ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Thursday April 14, 2016, at 10:00 a.m. in Courtroom 4 before Hon. Vince Chhabria of the United States District Court, Northern District of California, Plaintiffs Olivia Guilbaud, Marques Lilly, Michael Wong, and Michael Smith ("Plaintiffs") in the consolidated matters of lead case *Guilbaud, et al. v. Sprint Nextel Corporation, et al.*, Case No. 3:13-CV-04357-VC, and *Smith, et al. v. Sprint/United Management Company*, Case No. 3:14-CV-02642-VC, move the Court for an award of attorneys' fees, costs, and service awards. Specifically, Plaintiffs seek an order for:

(1) an award to Class and Collective Counsel Schneider Wallace Cottrell Konecky Wotkyns LLP ("SWCKW"), Righetti Glugoski, PC ("RG"), and Hoyer & Hicks ("HH") ("Class Counsel") of $1,123,333.33 (one-third (33 1/3%) of the Settlement) in attorneys' fees under a common fund approach;

(2) an award to Class Counsel of $93,032.38 in costs; and

(3) service awards of $10,000.00 for each of the Named Plaintiffs for their service as Class and Collective Representatives ("Class Representatives").

Pursuant to the Parties' Joint Stipulation for Class and Collective Action Settlement and Release of Claims (the "Settlement Agreement" or "Settlement") (Dkt. No. 166-1), and under Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and California wage and hour law, including but not limited to California Labor Code §§226(e), 1194(a), 2802, 2699 and California Code of Civil Procedure § 1021.5, Plaintiffs are authorized to apply for an award of reasonably attorneys' fees and costs.  Defendant Sprint/United Management Co., Inc. ("Defendant" or "Sprint") does not oppose Class Counsel's requested amount of fees and costs nor the service awards.

This Motion is based on this notice, the following attached Memorandum of Points and Authorities, the Declarations of Carolyn Hunt Cottrell ("Cottrell Decl.") (**Exhibit SW01**), Richard Hoyer ("Hoyer Decl.") (**Exhibit HH01**), and Matthew Righetti ("Righetti Decl.") (**Exhibit RG01**), the Declarations of Plaintiff Michael Smith ("Smith Decl.") (**Exhibit P04**), Plaintiff Olivia Guilbaud ("Guilbaud Decl.") (**Exhibit P01**), Plaintiff Marques Lilly ("Lilly Decl.") (**Exhibit P02**), and Plaintiff Michael Wong ("Wong Decl.") (**Exhibit P03**)  and all other records, pleadings, and

papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion.  To assist the Court in its review of the evidence submitted in support of this Motion, **Plaintiffs also include an Index of Evidence in Support of Plaintiffs' Unopposed Motion For Attorneys' Fees, Costs, and Service Awards, which provides an outline of the exhibits by exhibit number and title.**

# **TABLE OF CONTENTS**

I.      INTRODUCTION...............................................................................................1

II.     PROCEDURAL HISTORY AND WORK PERFORMED BY CLASS COUNSEL..........2

        A.  Class Counsel .............................................................................2

        B.  Pleadings ....................................................................................2

                1.   The *Guilbaud* Complaints Prior to Consolidation .................2

                2.   The *Smith* Complaint..........................................................3

                3.   Coordination of *Smith* and *Guilbaud* and the Consolidated Complaint.................3

                4.   Sprint's Counterclaims and Affirmative Defenses ....................3

        C.  Case Management and Status Conferences ..................................4

        D.  Discovery ....................................................................................4

        E.  Collective Action Certification ....................................................6

        F.  Class Outreach............................................................................7

        G.  Related Cases: *Bui, Esquivel, Salamanca*..................................8

        H.  Mediation, Settlement Negotiations, and Settlement Approval Motions .....................9

        I.  Communicating with the Administrator .......................................11

III.    ARGUMENT...................................................................................................11

        A.  33 1/3% of the Common Fund is a Reasonable Attorneys' Fees Award. ...................11

                1.   The Court should apply the common fund doctrine to award attorneys' fees......11

                2.   Ninth Circuit precedent supports an increased attorneys' fee award from the 25% benchmark to 33 1/3% in wage and hour class actions. ....................................13

                3.   Class Counsel's fee award is reasonable under the circumstances of this case....14

        B.  The Lodestar Cross-Check Confirms the Reasonableness of the Fee Award. ............17

                1.   The Ninth Circuit confirms fee awards with a lodestar cross-check...................17

                2.   Class Counsel's hourly rates are reasonable.....................................18

                3.   The number of hours claimed is reasonable. ....................................19

        C.  Class Counsel's Costs are Reasonable and Compensable from the Settlement..........20

1

D.  The Service Awards to the Class Representatives Are Reasonable. ........................... 22

2

IV.      CONCLUSION ............................................................................................................. 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

3

*Allende v.Unitech Design, Inc.*

4

   783 F.Supp.2d 509 (S.D.N.Y. 2011) ........................................................................18

5

*Asare v. Change Grp. of N.Y., Inc.*

6

   No. 12 Civ. 3371(CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)......................23

7

*B&F System Inc. v. LeBlanc*

8

   No. 7:07-cv-192, 2012 WL 2529191 (M.D. Ga. June 29, 2012)................................21

9

*Barbosa v. Cargill Meat Sols. Corp.*

10

   297 F.R.D. 431 (E.D. Cal. 2013)...............................................................................13

11

*Barrentine v. Arkansas-Best Freight Sys., Inc.*

12

   450 U.S. 728 (1981) ..................................................................................................24

13

*Birch v. Office Depot, Inc.*

14

   Case No. 06cv1690 DMS (S.D. Cal. Sept. 28, 2007) ................................................14

15

*Bleimehl v. Eastman Kodak Co. Clinical Diagnostic Div.*

16

   1997 WL 33322218 (S.D. Iowa Jan. 27, 1997) ........................................................21

17

*Boeing Co. v. Van Gemert*

18

   444 U.S. 472 (1980) ..................................................................................................11

19

*Bonnette v. Cal. Health & Welfare*

20

   704 F.2d 1465 (9th Cir. 1983).....................................................................................18

21

*Camacho v. Bridgeport Fin., Inc.*

22

   523 F.3d 973 (9th Cir. 2008).......................................................................................18

23

*Chalmers v. City of L.A.*

24

   796 F.2d 1205 (9th Cir. 1986).....................................................................................20

25

*Cho v. Koam Med. Servs. P.C.*

26

   524 F.Supp.2d 202 (E.D.N.Y. 2007)..........................................................................21

27

28

*Cicero v. DirectTV, Inc.*

  2010 WL 2991486 (C.D. Cal. July 27, 2010) ........................................................... 14

*Cook v. Niedert*

  142 F.3d 1004 (7th Cir. 1998) .................................................................................. 22

*DeWitt v. Darlington Cnty., S.C.*

  4:11-cv-00740-RSH, 2013 WL 6408371 (D.S.C. Dec. 6, 2013) .............................. 23

*Dyer v. Wells Fargo Bank, N.A.*

  303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................. 25

*Ellmore v. Ditech Funding Corp.*

  No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) ..................................................... 14

*Fegley v. Higgins*

  19 F.3d 1126 (6th Cir. 1994) .................................................................................... 18

*Ferland v. Conrad Credit Corp.*

  244 F.3d 1145 (9th Cir. 2001) .................................................................................. 18

*Fischel v. Equitable Life Assurance Soc'y of U.S.*

  307 F.3d 997 (9th Cir. 2002) ............................................................................. 17, 18

*Garner v. State Farm Mut. Auto. Ins. Co.*

  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................ 25

*Glass v. UBS Fin. Servs., Inc.*

  No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ....................... 25

*Harris v. Vector Mktg. Corp.*

  No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .......................... 25

*Hensley v. Eckerhart*

  461 U.S. 424 (1983) ................................................................................................. 18

*Hilton v. Exec. Self Storage Assocs., Inc.*

  2009 WL 1750121 (S.D. Tex. June 18, 2009) ........................................................ 21

*Holyfield v. F.P. Quinn & Co.*

No. 90 C 507, 1991 WL 65928 (N.D. Ill. Apr. 22, 1991) ...........................................18

*Howe v. Hoffman-Curtis Partners Ltd., LLP*

215 Fed. Appx. 341 (5th Cir. 2007) .......................................................................18

*In re Activision Sec. Litig.*

723 F.Supp. 1373 (N.D. Cal. 1989)........................................................................13

*In re Bluetooth v. Headset Prods. Liab. Litig.*

654 F.3d 935 (9th Cir. 2011).......................................................................... 11, 18

*In re Heritage Bond Litig.*

2005 WL 1594389 (C.D. Cal. June 10, 2005) .......................................................17

*In re Online DVD-Rental Antitrust Litig.*

No. 12-15705, 2015 WL 846008 (9th Cir. Feb. 27, 2015) ......................................24

*In Re Pacific Enter. Sec. Litig.*

47 F.3d 373 (9th Cir. 1995) ...................................................................................13

*Ingalls v. Hallmark Mktg. Corp.*

Case No. 08cv4342 (C.D. Cal. Oct. 16, 2009)........................................................14

*Ingram v. The Coca-Cola Co.*

200 F.R.D. 685 (N.D. Ga. 2001)............................................................................22

*James v. Wash. Depot. Holdings, Inc.*

489 F.Supp.2d 1341 (S.D. Fl. 2007)......................................................................18

*Jordan v. Multnomah Cnty.*

799 F.2d 1262 (9th Cir. 1986)...............................................................................19

*Knight v. Red Door Salons, Inc.*

No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...............................13

*Lazarin v. Pro Unlimited, Inc.*

No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) .........................25

*Levinson v. About.com Inc.*

   No. 02-cv-2222, 2010 WL 4159490 (S.D.N.Y. Oct. 7, 2010)....................................................21

*Lucio-Cantu v. Vela*

   239 Fed. Appx. 866 (5th Cir. 2007) ..........................................................................................18

*Martin v. FedEx Ground Package Sys., Inc.*

   No. C 06-6883 VRW, 2008 WL 5478576 (N.D. Cal. Dec. 31, 2008) .......................................13

*Moore v. James H. Matthews & Co.*

   682 F.2d 830 (9th Cir. 1982)......................................................................................................19

*Mousai v. E-Loan, Inc.*

   No. C 06-01993 SI (N.D. Cal. May 30, 2007)...........................................................................25

*Murillo v. Pac. Gas & Elec. Co.*

   2010 WL 2889728 (E.D. Cal. July 21, 2010) ...........................................................................21

*Nwabueze v. AT&T Inc.*

   Civ. No. 3:09-1529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) .....................................13

*Paul, Johnson, Alston & Hunt v. Graulty*

   886 F.2d 268 (9th Cir. 1989)......................................................................................................12

*Quezada v. Con-Way Freight, Inc.*

   No. 09-cv-3670 (N.D. Cal. Jan. 15, 2015)............................................................................ 13, 15

*Radcliffe v. Experian Info. Solutions, Inc.*

   715 F.3d 1157 (9th Cir. 2013).....................................................................................................24

*Razilov v. Nationwide Mut. Ins. Co.*

   2006 WL 3312024 (D. Or. Nov. 13, 2006).................................................................................25

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*

   No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) .........................................14

*Roberts v. Texaco*

   979 F.Supp. 185 (S.D.N.Y. 1997)...............................................................................................22

*Rodriguez v. W. Publ'g Corp.*

    563 F.3d 948 (9th Cir. 2009)...................................................................................22

*Romero v. Producers Dairy Foods, Inc.*

    No. 1:05cv0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007).......................14

*Rulli, et al. v. Nielsen Co. (U.S.) LLC*

    No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) .............................................20, 21

*Rutti v. Lojack Corp.*

    No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ......................20, 21

*Sandoval v. Tharaldson Employee Mgmt., Inc.*

    No. EDCV 08-482-VAP(OP), 2010 WL 2486346 (C.D. Cal. June 15, 2010)...........................24

*Singer v. Becton Dickinson & Co.*

    2009 WL 4809646 (S.D. Cal. Dec. 9, 2009)............................................................25

*Singer v. Becton Dickinson & Co.*

    2010 WL 2196104 (S.D. Cal. June 1, 2010).............................................................14

*Six (6) Mexican Workers v. Ariz. Citrus Growers*

    904 F.2d 1301 (9th Cir. 1990)...................................................................................13

*Staton v. Boeing Co.*

    327 F.3d 938 (9th Cir. 2003)....................................................................................12

*Stuart v. Radioshack Corp.*

    No. c-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010)...................13, 15

*Van Vranken v. Atl. Richfield Co.*

    901 F. Supp. 294 (N.D. Cal. 1995)......................................................................13, 22

*Vasquez v. Coast Valley Roofing*

    266 F.R.D. 482 (E.D. Cal. 2010)..............................................................................13

*Vizcaino v. Microsoft Corp.*

    142 F.Supp.2d 1299 (W.D. Wash. 2001) .............................................................12, 18

*Williams v. MGMPathe Commc'n Co.*

    129 F.3d 1026 (9th Cir. 1997)..........................................................................13

*Wooldridge v. Marlene Indus. Corp.*

    898 F.2d 1169 (6th Cir. 1990)..........................................................................19

*Wren v. RGIS Inventory Specialists*

    No. C-06-05778, JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011).............................13

**State Cases**

*Amaral v. Cintas Corp. No. 2*

    163 Cal. App. 4th 1157 (2008)..........................................................................17

*Barela v. Ralph's Grocery Co.*

    No. BC070061 (Los Angeles Super. Ct., June 5, 1998)..........................................14

*Big Lots Overtime Cases*

    JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004)...........................14

*Castellanos v. The Pepsi Bottling Group*

    No. RG07332684 (Alameda Super Ct., Mar. 11, 2010)..........................................25

*Contreras v. Bank of America*

    No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010).................................25

*Davis v. The Money Store, Inc.*

    No. 99AS01716 (Sacramento Super. Ct., Dec. 26, 2000).......................................14

*Hasty v. Elec. Arts, Inc.*

    No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006).......................................25

*In re Vitamin Cases*

    110 Cal.App.4th 1041 (2003)..........................................................................18

*Meewes v. ICI Dulux Paints*

    No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003).......................................25

*Miskell v. Auto. Club of S. Cal.*

    No. 01CC09035 (Orange County Super. Ct., May 27, 2003)...................................14

*Novak v. Retail Brand Alliance, Inc.*

    No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) ...........................................25

*Sconce/Lamb Cremation Cases*

    JCC Proceeding No. 2085 (Los Angeles Super. Ct., Mar. 24, 1992)............................14

**Statutes**

28 U.S.C. § 1920...............................................................................................................20

Cal. Lab. Code § 90.5........................................................................................................24

Cal. Civ. Code § 1542 .......................................................................................................24

**Rules**

Fed. R. Civ. P. 54(d)..........................................................................................................20

Northern District of California, Local Rule 54, Costs ......................................................20

**Other Authorities**

Alba Conte, *Attorney Fee Awards § 2:8* (3rd ed. 2013)....................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

Plaintiffs seek an award of attorneys' fees pursuant to the common fund doctrine in the amount of $1,123,333.33 (one-third (33 1/3%) of the $3,370,000.00 Settlement), an award of $93,032.38 for litigation costs, and $10,000.00 service awards to each Plaintiff.

This Settlement is an excellent result for the Class and Collective Members ("CMs"), benefiting approximately 2,035 Sprint employees. An order awarding Plaintiffs' requested attorneys' fees ensures that benefiting CMs equitably contribute a *pro-rata* share towards the fees; it mimics the marketplace had the CMs each individually retained Class Counsel; and it encourages competent counsel to take on complex contingency cases such as this.  In addition, this is a reasonable award because it is commensurate with the awards approved by this and other courts in comparable class actions. Courts routinely award attorneys' fees that exceed the plaintiffs' recovery because such awards encourage the vindication of important employee rights. Additionally, Plaintiffs recognize that the "benchmark" rate for attorneys' fees in class actions in the Ninth Circuit is 25%; however, the facts in this case support an upward adjustment to 33 1/3%. Class Counsel have obtained a superb result for the CMs; (2) Class Counsel faced considerable risks in prosecuting this litigation; (3) they displayed skillful representation and high quality work in litigation against a well-capitalized defendant represented by experienced counsel who vigorously defended the case, (4) the work  resulted in this Settlement benefiting over 2,000 employees; (4) Class Counsel carried the heavy financial burden of representing CMs on a contingency basis; and (5) not one CM has objected to the requested award. Moreover, Class Counsel are actually seeking a downward adjustment of Class Counsel's lodestar, $1,901,010.00, to $1,123,333.33.   Likewise, Plaintiffs' request for reimbursement of costs of $93,032.38 should be approved. Class Counsel have incurred $93,032.38  in actual costs to date, which will only increase with the additional costs necessary to finalize this Settlement. Finally, service awards of $10,000.00 for the Named Plaintiffs are appropriate because they assumed the financial and reputational risk serving as the Class Representatives in this action, and they spent considerable time assisting with the prosecution and resolution of this case. Critically, Plaintiffs have agreed to a general release of all potential claims against CMs, beyond the more narrow Class release. These requested service awards also fall well within the range of service awards routinely granted by courts.

Based on the foregoing, Plaintiffs respectfully request that the Court grant their motion. Notably, neither Sprint nor the CMs oppose these awards.

## II. PROCEDURAL HISTORY AND WORK PERFORMED BY CLASS COUNSEL[1]

### A. Class Counsel

Class Counsel are highly-regarded members of the wage and hour and employment class and collective action bar, with extensive experience in this highly-specialized type of litigation. Cottrell Decl. at ¶¶ 3-12, 48-63;  Hoyer Decl. at  ¶¶ 3-8, 17-23; Righetti Decl. at ¶¶ 2-8.

### B. Pleadings

#### 1. The *Guilbaud* Complaints Prior to Consolidation

Plaintiffs Guilbaud, Lilly, and Wong filed *Guilbaud* in the Northern District on September 19, 2013. (Dkt. No.1) Hoyer Decl. at ¶ 10. *Guilbaud* Plaintiffs subsequently filed a First Amended Complaint ("FAC") on October 30, 2013 that added a cause of action for civil penalties pursuant to the Private Attorneys' General Act. (Dkt. No. 8) Class Counsel conferred with Defense Counsel regarding Sprint's response to the FAC. Hoyer Decl. at ¶ 10. The Parties agreed to provide Sprint with an extension to file its response to the FAC, memorialized in a stipulation filed with the Court. (Dkt. No. 15.) On November 22, 2013, Sprint filed a motion to dismiss the FAC. (Dkt. No. 16.) The Parties continued their negotiations, and agreed that Plaintiffs would file a Second Amended Complaint ("SAC"). Hoyer Decl. at ¶ 10. This agreement was set forth in the stipulation filed with the Court on December 5, 2015. (Dkt. No. 18.) Plaintiffs filed their SAC on December 6, 2013. *Id.* (Dkt. No. 20.) On December 27, 2013, Defendant filed another motion to dismiss in response to the SAC. (Dkt. No. 29.) The Parties worked to identify the proper parties in the case, ultimately dismissing Sprint Nextel Corporation by stipulation. (Dkt. Nos. 30-31.) The Plaintiffs then moved for leave to file a Third Amended Complaint ("TAC"). (Dkt. No. 32.) The Court granted this request, and Plaintiffs filed their TAC on February 21, 2014. (Dkt. Nos. 33-34.)

---

[1] Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, this brief does not repeat the case background set forth in the Plaintiff's Motion for Final Approval of Settlement, concurrently filed on March 21, 2016.

2

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

### 2. The *Smith* Complaint

Plaintiff Smith filed his class action in the Eastern District on January 31, 2014, under the original case number of 2:14-CV-00327-LKK-AC. (*Smith* Dkt. No. 1.) The Parties conferred regarding Defendant's response, and agreed to provide Sprint with additional time to respond. Cottrell Decl. at ¶ 16. This agreement was extended several times and set forth in the three stipulations filed with the Court on February 27, 2014, March 25, 2014, and April 14, 2014. (*Smith* Dkt. Nos. 8, 10, 13.) Ultimately, on April 25, 2014, Defendant filed a motion to dismiss and as well as a notice of the pendency of the *Guilbaud* matter. (Dkt. Nos. 18-19.)

### 3. Coordination of *Smith* and *Guilbaud* and the Consolidated Complaint

The Parties agreed in the interest of avoiding conflicts, conserving resources, and promoting an efficient determination of the actions to transfer *Smith* to the Northern District and relate and consolidate the actions before Judge Chhabria. Cottrell Decl. at ¶ 17. To facilitate this decision, numerous procedural steps needed to be executed. *Id.* First, on June 3, 2014, the *Smith* Parties filed a stipulation to transfer the action to the Northern District, which was granted on June 5, 2014. (*Smith* Dkt. Nos. 28-29.) The *Smith* case was formally processed by the Northern District and assigned a case number on June 9, 2014. (*Smith* Dkt.) On July 1, 2014, the *Guilbaud* Parties alerted this Court to the transfer of *Smith* and plan for coordination and consolidation in their Joint Case Management Statement. (Dkt. No. 45.) On June 7, 2014, Plaintiffs then filed a motion to relate and consolidate the cases by stipulation. (Dkt. No. 47.) Counsel for all Parties then appeared at the Case Management Conference ("CMC") scheduled before this Court on July 8, 2014. (Dkt. No. 49.) The Court granted the motion to relate and consolidate the cases on that date and set the case schedule. (Dkt. Nos. 49-49.) Class Counsel conferred with each other to draft and file a Consolidated Collective and Class Action Complaint ("Consolidated Complaint"). After diligently researching and writing this complaint, Plaintiffs filed it on July 30, 2014. (Dkt. Nos. 50.)

### 4. Sprint's Counterclaims and Affirmative Defenses

On August 18, 2014, Sprint filed it Answer the Consolidated Complaint. (Dkt. No. 51.) Several weeks later, on September 8, 2014, Defendant filed an Amended Answer. (Dkt. No. 56.) Although Defendant had already filed responses to both the *Guilbaud* and *Smith* actions, for

3

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

the first time it asserted six counterclaims against Plaintiffs. (Dkt. No. 56.)  Sprint accused Plaintiffs and CMs of improperly recording their time and deliberately transmitting false data through Sprint's timekeeping system. (Dkt. Nos. 56, 71-72.) Class Counsel conferred and investigated these counterclaims. It is Plaintiffs' position that they were false, retaliatory claims against the Plaintiffs and CMs. Cottrell Decl. at ¶ 19. Accordingly, Class Counsel challenged these counterclaims by filing a motion to dismiss on September 29, 2014. *Id.* (Dkt. Nos.71-72.)

Pursuant to the Court's notice requirements, this motion was set for hearing on November 6, 2014. (Dkt. No. 72.) Prior to this hearing, the Court was scheduled to hear Plaintiffs' motion for conditional certification on October 2, 2014. (Dkt. No. 61.) At the October 2, 2014, however, the Court also addressed Defendant's counterclaims. (Dkt. No. 89.) The Court explained that it perceived the counterclaims to be an intimidation tactic used by Defendant to quell the litigation urged Defendant to drop the counterclaims. (Dkt. No. 89.) Four days later, on October 6, 2014, Sprint withdrew its counterclaims. (Dkt. No. 80.)

Although Sprint withdrew its counterclaims, it continued to pursue 32 affirmative defenses. Cottrell Decl. at ¶ 21. Finding them lacking factual support and/or legal authority, Plaintiffs filed a motion to dismiss. (Dkt. Nos.71-72.) This motion was fully briefed. (*See* Dkt. Nos.71-72, 91, 94.) Plaintiffs' attacks on Defendant's affirmative defenses were well-taken by the Court, resulting in the Court granting Plaintiffs' motion to strike on November 7, 2014. (Dkt. No. 100.)

The total lodestar for Class Counsel on these pleading matters is $176,465.50.  Cottrell Decl. at ¶ 22.

**C. Case Management and Status Conferences**

In light of the complexity of the matter and the numerous issues that arose during litigation, the Parties prepared several case management statements for the Court. (*See Smith* Dkt. Nos. 12, 14; Dkt Nos. 23, 36, 45, 121, 159, 164.) The Parties also appeared before the Court on many occasions to address the status of the case and scheduling.  (Dkt. No. 26, 38, 48, 125.) The total lodestar for Class Counsel on these matters is $63,139.50.  Cottrell Decl. at ¶ 23.

**D. Discovery**

The Parties jointly filed their Rule 26(f) Report on May 6, 2014. (Dkt. No. 36.)  Class Counsel's work on this report included: conferring regarding the itemized issues at issue in the

4

report; holding a Rule 26(f) conference with Defense Counsel to discuss the same itemized matters; drafting and inserting Plaintiffs' position on each of these matters; and reviewing Defendant's position on each of these matters. Hoyer Decl. at ¶ 11.

Plaintiffs served their Initial Disclosures pursuant to Rule 26(a) on January 3, 2013. Hoyer Decl. at ¶ 12. Class Counsel strategized regarding what to include in the document, including discussions regarding potential witnesses and persons with information regarding Plaintiffs' claims. *Id.* In addition, Class Counsel compiled documents relevant to Plaintiffs' claims. *Id.* With respect to Plaintiffs Guilbaud, Lilly and Wong, on February 28, 2014, Defendant served special interrogatories and requests for production of documents. Hoyer Decl. at ¶ 13. Plaintiffs served responses to Defendant's discovery requests on April 29, 2014. *Id.* On May 5, 2014, Plaintiffs served formal discovery requests on Defendant. Hoyer Decl. at ¶ 14. These requests included: (1) Plaintiff's Special Interrogatories, Set One, which set forth 4 requests; and (2) Plaintiff's Request for Production of Documents, Set One, which set forth 28 requests. *Id.* Defendant served responses on June 30, 2014. *Id.* Plaintiffs served Amended Disclosures on September 8, 2014 to update their witness list. Cottrell Decl. at ¶ 24. Thereafter, the Parties engaged in meet and confer efforts, including conferences and letter exchanges. Hoyer Decl. at ¶ 14. To facilitate discovery, the Parties negotiated and agreed to a Stipulated Protective Order, which was entered by the Court on January 2, 2015. (Dkt. Nos. 116-117.) Class Counsel carefully reviewed and revised this document before it was filed. Cottrell Decl. at ¶ 25. Plaintiffs served another set of formal discovery on March 2, 2015. *Id.* These requests included: (1) Plaintiffs' Special Interrogatories, Set Two, which contained an additional 21 interrogatories; and (2) Plaintiffs' Request for Production of Documents, Set Two, which brought the total requests to 74. *Id.* Defendant served responses on April 13, 2015. *Id.* Many of the responses contained objections without substantive responses, necessitating further meet and confer efforts. *Id.* The discovery exchange remained contentious. *Id.*

To facilitate case resolution, the Parties agreed to focus on an informal exchange of discovery for purposes of mediation. Cottrell Decl. at ¶ 26. In the end, the Parties engaged in extensive discovery, including written discovery and exchanging over 2,000 pages of documents including: policies and procedures regarding timekeeping, overtime, compensation, and meal and rest breaks, payroll documents, and personnel files. *Id.* Defendant also produced 18 excel files with payroll and

timekeeping data of the Opt-in and Named Plaintiffs. *Id.* As discussed in detail below, Class Counsel also engaged in significant outreach efforts. Class Counsel also made a thorough study of the legal principles applicable to the claims asserted against Defendant. *Id.* The total lodestar for Class Counsel on these matters is $159,911.00. Cottrell Decl. at ¶ 27.

### E.  Collective Action Certification

On August 21, 2014, Plaintiffs filed their motion for conditional certification. (Dkt. No. 53.) This motion was supported by a memorandum of law, researched and drafted by Class Counsel. Cottrell Decl. at ¶ 28. In addition, Class Counsel interviewed and prepared declarations for Sprint employees, who provided declarations in support of the motion. *Id.* The briefing for this motion was contentious. *Id.* Defendant formally moved to strike Plaintiffs' reply brief and supporting evidence. *Id.* (Dkt. Nos. 62, 64.) Defendant's objections required formal, written responses from Plaintiffs. Cottrell Decl. at ¶ 21. Class Counsel worked quickly and effectively to present these matters to the Court. *Id.* (Dkt. No. 66-67, 70.) The Court properly considered all submissions from Plaintiffs. (Dkt. No. 73.) On October 3, 2014, the Court granted Plaintiffs' motion. (Dkt. No. 79.)

Class Counsel were concerned that Defendant would attempt to improperly communicate with potential CMs. Cottrell Decl. at ¶ 29. These concerns arose from Defendant's vehement opposition to the litigation as well as the counterclaims Sprint filed against its workers involved in the litigation. *Id.* Accordingly, on October 8, 2014, Plaintiffs filed a Motion for Protective Order to Prevent Defendant From Communicating with Employees During the Notice and Opt-in Period. (Dkt. No. 83.) The Parties fully briefed this motion. (Dkt. Nos. 95, 97.)

Additional issues arose with respect to the Parties attempts to finalize the notice and opt-in forms to be circulated to potential CMs. Cottrell Decl. at ¶ 30. The Parties reached an impasse on the language of these forms, which required Court assistance. Class Counsel drafted and submitted a letter to the Court outlining the issues as well as proposed forms. (Dkt. No. 86.) At a hearing before the Court on November 20, 2014, the Court reviewed the notice and opt-in forms with the Parties to confirm the final language. (Dkt. Nos. 104, 110.)

There were other problems as well, which required additional attention, research, and work

on the part of Class Counsel. Cottrell Decl. at ¶ 31. Specifically, Defendant failed to produce the CM information for purposes of notification of the lawsuit pursuant to the Court's October 3, 2014 order. *Id.* To ensure that the litigation continued to progress pursuant to this order and that notice was provided to CMs of the case, Plaintiffs were forced on November 13, 2014 to present the Court with a Request for Civil Contempt Order Holding Defendant in Contempt for Failing to Produce Proposed Collective Members' Information. (Dkt. No. 102.)

The Class Administrator finally disseminated notice to CMs on December 17, 2014, with an opt-in deadline of March 17, 2015. Cottrell Decl. at ¶ 32. Class Counsel began the process of obtaining executed opt-in consent forms from CMs and filing those forms with the Court. *Id.* This process required Class Counsel to conduct outreach efforts with CMs and also respond to calls from CMs seeking information about the lawsuit. *Id.* During these three months, Class Counsel obtained and filed over 2,000 opt-in forms. *Id.* Prior to filing these documents to the Court, Class Counsel reviewed them to ensure that they were properly executed and to redact certain private information, such as addresses and birthdates. *Id.* Class Counsel's review and submission of these documents was significant to this case, as the statute of limitations on opt-in Plaintiffs' respective FLSA claims continued to run until they affirmatively opted-in to the action. *Id.* Ultimately, approximately 2,000 Sprint employees opted into this case as Collective members. *Id.* The total lodestar for Class Counsel on these matters is $438,419.00. Cottrell Decl. at ¶ 33.

**F.   Class Outreach**

Class Counsel spent extensive time communicating with the Named Plaintiffs and CMs in this case. Cottrell Decl. at ¶ 34. A large portion of these communications occurred during the initial phases of the case, when Class Counsel was conducting fact investigations to determine the scope of Plaintiffs' class and collective allegations. *Id.* These communications generally involved interviewing Plaintiffs and CMs regarding their respective work experiences while employed by Defendant. *Id.* After Plaintiffs' FLSA claims were conditionally certified and notice was distributed to the Class, Class Counsel also fielded calls from opt-in Plaintiffs requesting information about this case. *Id.* After opt-in Plaintiffs submitted their opt-in consent forms, Class Counsel regularly provided them with telephonic status updates regarding this lawsuit. *Id.* Following preliminary

7

approval of the Settlement as to the Class and final approval of the Settlement as to the Collective, Class Counsel provided status updates to CMs who contacted them regarding the progress of settlement administration. *Id.* Class Counsel also recorded updated contact information for these individuals to ensure their checks were sent to the proper address. *Id.*

Following conditional certification and Court-approved notice to CMs, Class Counsel engaged in significant outreach efforts. Cottrell Decl. at ¶ 35. Specifically, Class Counsel interviewed over 300 CMs. *Id.* This was an extremely time-consuming, intensive, and critical aspect of the litigation. *Id.* Class Counsel spent several hours speaking with each individual CM to learn about their employment experiences at Sprint and assess the wage and hour violations at issue in this case. *Id.*   Class Counsel also collected declarations from the Named Plaintiffs, several Opt-in Plaintiffs, and Sprint District Managers. *Id.* Ultimately, this information was instrumental in negotiating a Settlement of this action. *Id.* Moreover, this information would have been used in support of a certification motion as well as in response to a possible decertification motion filed by Defendant. *Id.* The total lodestar for Class Counsel on these matters is $311,053.00. Cottrell Decl. at ¶ 36.

### G.  Related Cases: *Bui, Esquivel, Salamanca*

There have been several pending wage and hour cases against Sprint to which Plaintiffs have had to respond and which required significant time and effort on the part of Class Counsel. The total lodestar for Class Counsel on these matters is $164,685.00.  Cottrell Decl. at ¶ 36.

*Bui*: Class Counsel learned of *Bui* on January 13, 2015. *Id.* That same day, Sprint filed a Notice of Related Case. (Dkt. No. 120.) Plaintiffs filed a response on January 19, 2015. (Dkt. No. 123.) Class Counsel also engaged in meet and confer efforts with the *Bui* Parties and Sprint in attempts to coordinate *Bui* with the above-captioned matter. Cottrell Decl. at ¶ 38. The *Bui* Parties refused to transfer and coordinate *Bui* with *Guilbaud*. *Id.* As a result, on January 29, 2015, Plaintiffs filed a motion to intervene and dismiss, stay, and/or transfer *Bui*. (*Bui* Dkt. No. 15.) The *Bui* Parties scheduled a mediation for March 9, 2015, which they precluded Plaintiffs from attending. Cottrell Decl. at ¶ 38. As a result, Plaintiffs filed an *ex parte* motion to stay the mediation. (*Bui* Dkt. No. 28.) The *Bui* parties went forward with the March 9, 2015 mediation, and filed a notice of settlement that day. (*Bui* Dkt. No. 33.) On May 18, 2015, Bui filed a motion for preliminary

approval of the settlement. (*Bui* Dkt. No. 39.) Plaintiffs filed an opposition to the motion challenging, among other things, the scope of the proposed settlement class, the value of the settlement in the absence of supporting evidence, the amount requested for attorneys' fees and service awards and the adequacy of the Named Plaintiffs. (*Bui* Dkt. No. 48.) Ultimately, the Parties met and conferred and reached an agreement. Plaintiffs therefore withdrew their opposition to the *Bui* settlement on December 16, 2015. (*Bui* Dkt. No. 58.)

*Esquivel:* Class Counsel learned of another pending matter, *Esquivel v. Sprint*. Plaintiff Esquivel filed a joinder to Plaintiffs' opposition to the *Bui* settlement. (*Bui* Dkt. No. 51.) Class Counsel researched this case and considered possible response strategies, including filing a motion to intervene. Cottrell Decl. at ¶ 39. Class Counsel concurrently prepared a draft of the motion and also engaged in meet and confer efforts with Sprint's attorneys. *Id.* Class Counsel decided not to intervene, and ultimately *Esquivel* reached a settlement. (*Esquivel* Dkt. No. 44.)

*Salamanca:* Sprint alerted this Court to the *Salamanca* case when it filed an Administrative Motion to Consider Whether Cases Should Be Related. (Dkt. No. 171.) Class Counsel reviewed this motion, researched *Salamanca*, and filed a response to the motion. (Dkt. No. 172.) Class Counsel and Sprint agreed that the matters should not be related at this time, to which this Court concurred and issued an order keeping the matters separate. (Dkt. No. 173.)

**H.  Mediation, Settlement Negotiations, and Settlement Approval Motions**

The Parties agreed to mediate this case on behalf of the over 2,000 individuals, who opted in to this case with respect to both their FLSA and California claims. Cottrell Decl. at ¶ 41. The Parties mediated this dispute on July 27, 2015 before Judge Infante. *Id.* The Parties engaged in arm's-length negotiations, culminated by the execution of a memorandum of understanding which set forth settlement terms resolving the matter. *Id.* After the mediation, counsel for the Parties worked to finalize the settlement for the CMs and corresponding notice documents, subject to the Court's approval. *Id.* The Settlement Agreement was fully-executed on November 30, 2015. *Id.*

Class Counsel was required to present the Settlement to the Court for preliminary approval as to the Class and final approval as to the Collective. Cottrell Decl. at ¶ 42. Accordingly, Class Counsel drafted and prepared the appropriate papers and submitted them on December 7, 2015.

(Dkt. No. 166.)  Class Counsel researched applicable case law defining the standard for approval of FLSA collective and California wage and hour class action settlements. Cottrell Decl. at ¶ 42. Class Counsel also researched case law approving service awards similar to the ones distributed to the Named Plaintiffs under the Settlement. *Id.* Finally, Class Counsel drafted and revised the approval papers to ensure compliance with applicable case law and also the Settlement. *Id.* After preparing drafts of the approval papers, Class Counsel sent them to Defendant's Counsel to review and revise. *Id.* Counsel for the Parties thereafter conferred regarding revisions to the approval papers before ultimately reaching agreement. *Id.* The Court granted preliminary approval of the Settlement as to the California Class and final approval of the Settlement as to the Collective on January 14, 2016. (Dkt. Nos. 168, 170.)

Class Counsel was likewise obligated to request that the Court finally approve the Settlement following the administration process detailed in the settlement agreement. Cottrell Decl. at ¶ 43. Class Counsel drafted and prepared final approval papers that have been submitted to the Court concurrently with this fee motion. *Id.* The work Class Counsel performed on the final approval papers is substantially similar to work the Class Counsel performed on the preliminary approval papers described above. *Id.* Class Counsel also spent significant time preparing this motion. *Id.* Beyond drafting this motion and researching applicable case law, Class Counsel also conferred with each other regarding the arguments to include herein and the most effective way to present Class Counsel's fees and costs to the Court. *Id.* In addition, Class Counsel undertook the time-consuming project of reviewing each individual bill, or time entry, for this case and determining whether each entry warranted a request for recovery. *Id.* This project resulted in Class Counsel excising a large portion of the fees they incurred during this case. *Id.* Finally, rather than present a large, disorganized file of time entries to the Court, Class Counsel reasoned that the most effective way for the Court to review Plaintiffs' Counsel's attorneys' fees is on a project-by-project basis. *Id.* Accordingly, Class Counsel assigned each time entry a "project code," which allowed them to filter from all of the time entries only those assigned to a particular project. *Id.* For example, based on their coding system, Class Counsel was able to filter all the time entries associated with pleadings or conditional certification. *Id.* The total lodestar for Class Counsel on these matters is $212,510.00. Cottrell Decl. at ¶ 44.

10

### I. Communicating with the Administrator

Class Counsel's communications with the Administrator in this case can generally be divided into two categories: non-settlement and settlement. Cottrell Decl. at ¶ 45. With respect to non-settlement communications, after the Court granted Plaintiffs' motion for conditional certification, Class Counsel communicated with the Administrator regarding distribution of the class notice to opt-in CMs. *Id.* Class Counsel also regularly communicated with the Administrator to provide updated contacted information for CMs. *Id.* As to settlement communications, Class Counsel generally communicated with the Administrator regarding the administration of the settlement. *Id.* Class Counsel, for example, communicated with the Administrator regarding distributing notice packets to CMs. *Id.* Class Counsel also communicated with the Administrator regarding pending deadlines called for in the settlement agreement. *Id.* In addition, Class Counsel communicated with the Administrator regarding preparing a declaration in support of the final approval of the settlement. *Id.*[2] The total lodestar for Class Counsel on these matters is $12,152.50. *Id.*

## III.   ARGUMENT

### A.  33 1/3% of the Common Fund is a Reasonable Attorneys' Fees Award.

#### 1.   The Court should apply the common fund doctrine to award attorneys' fees.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fees from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Ninth Circuit routinely awards attorneys' fees under the common fund approach "[b]ecause the benefit to the class is easily quantified in common-fund settlements" and avoids the "often more time-consuming task of calculating the lodestar." *In re Bluetooth v. Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The common fund approach is an appropriate method for awarding attorneys' fees because it "ensures that each

---

[2] Plaintiffs will provide a further update to the Court after the opt-out, objection, and deadline passes. *Id.* Specifically, the Court's January 15, 2016 order as amended by the February 24, 2016 stipulation provides that "Class Counsel [is] to file Heffler's verification that the Class Notice has been completed" by "April 14, 2016." (Dkt. No. 175.)

11

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). This approach ensures that class members, who have accepted the benefits from a common fund recovery, also accept their fair *pro-rata* responsibility to contribute towards the attorneys' fees and costs that created the fund in the first place. *Id.*

The equity of the common fund approach is confirmed by the fact that it mirrors the legal marketplace. The typical contingency fee contract ranges from 33 1/3 to 40% of the total recovery. *See* Alba Conte, *Attorney Fee Awards § 2:8* (3rd ed. 2013). Thus, common fund fee awards of 33 1/3% are more than a reasonable charge to a class. *See Vizcaino v. Microsoft Corp.*, 142 F.Supp.2d 1299, 1304 (W.D. Wash. 2001) *aff''d* 290 F.3d 1043 (9th Cir. 2002). Specifically, "the common fund doctrine is properly applied if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These requirements are met where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf." *Id.*

A common fund award of attorneys' fees and costs is appropriate here because Plaintiffs have created an ascertainable common fund from which reasonable attorneys' fees can be recovered. Cottrell Decl. at ¶ 63. The proposed Settlement creates a common fund of $3,370,000.00 that will substantially benefit approximately 2,035 (718 California and 1,317 Collective Members) Sprint employees. *Id.* Each participating CM will receive an ascertainable, *pro-rata* share of the Settlement. *Id.* Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude." *Paul*, 886 F.2d at 271. In addition, Plaintiffs' requested fee award constitutes a fair charge to the CMs for excellent result obtained by the Settlement. Cottrell Decl. at ¶ 63. Because each participating CM will receive a portion of the fixed Settlement fund based on its distribution formula, equity requires that they also contribute a *pro-rata* share to the attorneys' fees that netted them this positive result. *Id.* Moreover, the requested one-third of the fund is actually equal to the fee that Class Counsel would have expected if they had negotiated individual retainer agreements with each CM, which is typical in order to attract competent counsel in the marketplace

12

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

for representation in wage and hour class actions of this nature. *Id.* Thus, the award ensures that Class Counsel receive an appropriate fee award for the actual benefit conferred to the Class. *Id.*

### 2. Ninth Circuit precedent supports an increased attorneys' fee award from the 25% benchmark to 33 1/3% in wage and hour class actions.

Class Counsel's request for 33 1/3% of the Settlement Amount is well within the range approved by courts in comparable class actions. In the Ninth Circuit, a 25% award is the "benchmark" amount of attorneys' fees, but courts adjust this figure upwards if the record shows "'special circumstances' justifying a departure." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). When deciding if a departure from the 25% benchmark is appropriate, courts may consider "the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck." *Nwabueze v. AT&T Inc.*, Civ. No. 3:09-1529 SI, 2013 WL 6199596, at *10 (N.D. Cal. Nov. 27, 2013). Ultimately, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010); *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%")).

In California, federal and state courts customarily approve payments of attorneys' fees amounting to one-third of the common fund in comparable class actions. *See Williams v. MGMPathe Commc'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (33% awarded); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (citation to 73 district court opinions in which fees awareded ranged from 30 to 50%).[3]

---

[3] *See also In Re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% fee award); *Quezada v. Con-Way Freight, Inc.*, No. 09-cv-3670 (N.D. Cal. Jan. 15, 2015), Order Granting Final Approval ¶ 9, ECF No. 214 (one-third); *Wren v. RGIS Inventory Specialists*, No. C-06-05778, JCS, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (42%); *Stuart v. Radioshack Corp.*, No. c-07-4499 EMC, at *5-*7, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (one-third); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009) (30%); *Martin v. FedEx Ground Package Sys., Inc.*, No. C 06-6883 VRW, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (one-third); *In Re Activision Sec. Litig.*, 723 F.Supp. 1373, 1375 (N.D.Cal. 1989) (noting that fee awards in common fund cases "almost always hover[] around 30%"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (one-third); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104 at

---

### 3.   Class Counsel's fee award is reasonable under the circumstances of this case.

### i.   The fee request is justified by the excellent monetary results.

The ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Here, Plaintiffs, through Class Counsel, achieved a high level of success through the monetary results of the Settlement, which justifies the requested fee award. The Settlement provides $3,370,000.00 to the CMs. Cottrell Decl. at ¶ 64. The average CM, who belongs to both the Class and Collective, will receive a net award of approximately $1,531.11 and the maximum expected net award of approximately $3,603.92.[4] *Id.*[5] Using the average award of approximately $1,531.11 as

---

*8 (S.D. Cal. June 1, 2010) (33 1/3%); *Ingalls v. Hallmark Mktg. Corp.*, Case No. 08cv4342, Doc. No. 77 (C.D. Cal. Oct. 16, 2009) (33 1/3%). *Cicero v. DirectTV, Inc.*, 2010 WL 2991486, at *7 (C.D. Cal. July 27, 2010) (case survey of class action settlements demonstrate that "50% [of settlement fund] is the upper limit, with 30-50% commonly awarded in cases in which the common fund is relatively small."); *Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (45%); *Birch v. Office Depot, Inc.*, Case No. 06cv1690 DMS (S.D. Cal. Sept. 28, 2007), Order Granting Final Approval ¶ 13, ECF No. 48 (40% fee); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (noting that "fee awards in class actions average around one-third of the recovery"). *See also Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004) (33%); *Barela v. Ralph's Grocery Co.*, No. BC070061 (Los Angeles Super. Ct., June 5, 1998) (same); *Davis v. The Money Store, Inc.*, No. 99AS01716 (Sacramento Super. Ct., Dec. 26, 2000) (same); *Ellmore v. Ditech Funding Corp.*, No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) (same); *Miskell v. Auto. Club of S. Cal.* (Orange County Super. Ct., No. 01CC09035, May 27, 2003) (same); *Sconce/Lamb Cremation Cases*, JCC Proceeding No. 2085, (Los Angeles Super. Ct., Mar. 24, 1992) (same).

[4] There are 88 individuals who are not receiving an award. 21 individuals have no workweeks in either the Class or Collective. The other 67 individuals are part of the Collective; however, they have no workweeks logged with Sprint. Defendant has explained to Class Counsel that there are a number of reasons why CMs may have zero qualifying workweeks according to Sprint's data, including that some individuals self-identified as CMs even though they did not actually work for Sprint (CMs were able to log onto the website for this case and electively submit an opt-in form). In addition, there are likely a number of people that were hired to work (and therefore appeared on Sprint's employee database), but never actually started working. While errors in workweek records are possible, all CMs (including those with zero workweeks) were given notice and the opportunity to dispute their workweek figures to ensure proper settlement awards.

[5] On March 9, 2015, the *Bui* parties filed a notice of settlement and a subsequent motion for preliminary approval of the class action settlement. Cottrell Decl. at ¶ 64, fn. 3. The Court granted the motion on February 24, 2016. (*Bui* Dkt. No. 60.) The CMs in this action will receive a greater settlement award that the class members in *Bui*. Cottrell Decl. at ¶ 64, fn. 3. This is in large part to the significant, exceptional work conducted by Class Counsel. *Id.* The settlement award in that action is less than that here. The net settlement amount to the approximately 5,012 class members is $3,159,745.00. *Id.*

14

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

well as the other averages derived by Class Counsel in their damages analysis (including an average hourly wage of $12.74 and average weekly hours worked of 41.31), the average award for CM, who belongs to both the Class and Collective, is approximately 3 full weeks of wages. *Id.* In addition, the gross recovery represents approximately 14% of Plaintiffs' reasonable estimate of the likely recovery at trial if they were to prevail, which they have calculated totals about $14 million. *Id.* Moreover, because this is a non-reversionary settlement with respect to the California Class, the Court is assured that the entire net settlement amount will be distributed to the CMs. *Id.*[6] Even compared against other larger settlements, this degree of recovery is consistent with amounts routinely found to be commensurate with a 33 1/3% fee award. *Id. See supra* Section III.A.2. In fact, courts have granted fees in the amount of 33 1/3% of the common fund that have resulted in lesser awards to settlement class members than in this case. *See Quezada*, No. 09-cv-3670 (N.D. Cal. Jan. 15, 2015) (awarding one-third of $2 million settlement fund as fees); *Stuart*, 2010 WL 3155645, at *5-*7 (awarding one-third of $4.5 million settlement fund).

### ii.   The risks associated with this litigation justified the fee request.

Class Counsel have taken considerable risk in litigating this case not just because it has been done on a wholly contingent basis, but also because Sprint had several considerable defenses to Plaintiffs' claims that made success far from certain.

First, Sprint asserted numerous complete liability defenses against Plaintiffs' claims, many of which were supported by the declarations gathered and produced by Defendant. For example, Sprint raised several defenses to Plaintiffs' off-the-clock claims, including that (1) CMs did not perform work off-the-clock before, during, and/or after their scheduled shifts; (2) any off-the-clock work was *de minimis*; (3) Sprint properly provided CMs with legally compliant meal and rest breaks; (4) Sprint paid CMs for all hours worked, including overtime and bonus/commission pay; (5) Sprint properly reimbursed CMs for any business expenses, including uniforms; and (6) Sprint provided CMs with proper wage statements. Cottrell Decl. at ¶ 66. Sprint also intended to raise several defenses against class certification, including that (1) that individualized determinations regarding the type and amount of off-the-clock work, if any, completed by CMs would overwhelm

---

[6] Defendant will only release the FLSA claims of those Collective Members who cash their checks. *Id.*

15

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

common issues; (2) that individualized determinations regarding the amount of wages owing (including bonus/commission pay), if any, would overwhelm common issues; and (3) whether CMs actually took meal and rest breaks would overwhelm any common issues. *Id.* If Sprint succeeded on any of these or other defenses to class certification, Plaintiffs would be left with only their individual claims and the Class and Collective would potentially recover nothing. *Id.*

If this case were to go to trial as a class and collective action, Class Counsel estimates that fees and costs would exceed $2,000,000.00. Cottrell Decl. at ¶ 67. Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.* Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiffs' claims, a questionable feat in light of recent developments in wage and hour and class and collective action law as well as the legal and factual grounds that Sprint has asserted to defend this action. *Id.*

Finally, because this case was pursued as a collective action, Class Counsel also faced the risk of decertification or of failing to establish a class-wide pattern or practice of off-the-clock violations at trial. Cottrell Decl. at ¶ 68. These risks were particularly prominent given Defendant's position that it has observed at all relevant times its obligations under the law. *Id.*

Despite all of these risks, Class Counsel persevered, on a contingency basis, and brought this case to a fast, efficient, and valuable resolution for the CMs, justifying the award.

### iii.   Class Counsel's skill and quality work justify the fee request.

As discussed in this brief and supporting documentation, Class Counsel have demonstrated substantial skill, diligence, and high quality of work in achieving the proposed Settlement and its creation of a common fund of $3,370,000.00. Moreover, Class Counsel are highly-regarded members of the bar. Cottrell Decl. at ¶¶ 3-12, 48-63;  Hoyer Decl. at  ¶¶ 3-8, 17-23; Righetti Decl. at ¶¶ 2-7.

### iv.   The contingency nature of the fee and financial burden carried by Class Counsel justifies the fee request.

The risks associated with the contingent nature of this action further justify the requested

16

fee. Indeed, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). By undertaking a class action on a contingency fee basis, counsel not only must turn away other income-generating opportunities but must take on a substantial risk of "never receiving compensation *at all*." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217-18 (2008). In the present case, Class Counsel has worked on this case since before September 2013, and in effect has loaned their legal services to the CMs since that time. Cottrell Decl. at ¶ 71.  Class Counsel has prosecuted this case on a wholly contingent basis, and done so at great risk of never receiving any compensation due to the risky nature of class action litigation in general, and due to the developing law in this Circuit with respect to "off-the-clock" and missed break claims, particularly in the class action context. *Id.* In addition to the contingent risk of this case, Class Counsel's representation of Plaintiffs and the CMs in this action forced them to forego other cases, including matters paid on a traditional hourly basis. *Id.*

> **v.   CMs' positive reaction to the requested fee award supports its approval.**

The reaction of CMs to the requested fee should also be considered in determining the reasonableness of a requested fee award. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005). Thus, the absence of disapproval constitutes strong evidence in support of the reasonableness of the requested fee and cost award. Here, over 30 days after Notice of the Settlement was mailed to the Class, no CM has objected to the Settlement despite being informed of Plaintiffs' requested attorneys' fees and costs award. Cottrell Decl. at ¶ 72.[7] This positive reaction further underscores its reasonableness. *Id.*

**B.   The Lodestar Cross-Check Confirms the Reasonableness of the Fee Award.**

**1.   The Ninth Circuit confirms fee awards with a lodestar cross-check.**

The Ninth Circuit has approved two methods of determining attorneys' fees in class action cases where, as here, the amount of the attorneys' fee award is taken from the common fund set

---

[7] The deadline to postmark opt-outs, objections, or disputes is April 4, 2016. *Id.*; *see also* footnote 2.

aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino*, 290 F.3d at 1047. Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). In contrast to the common fund method, determining the lodestar amount is "often more timeconsuming[.]" *Bluetooth*, 654 F.3d at 942. However, when plaintiffs bring various state law claims and under California law – as is the case here – "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal.App.4th 1041, 1053 (2003).[8] Under the lodestar method, the Court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The Ninth Circuit recommends that district courts apply one method but cross-check the appropriateness of the amount by employing the other, as well. *See Bluetooth*, 654 F.3d at 944.

### 2.  Class Counsel's hourly rates are reasonable.

Class Counsel are actually seeking a downward adjustment of their lodestar, $1,901,010.00, to $1,123,333.33. Class Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similarly complex federal litigation. *Camacho v. Bridgeport*

---

[8] The Supreme Court has plainly rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Hensley v. Eckerhart,* 461 U.S. 424, 435 n. 11 (1983). This reasoning is particularly applicable to FLSA cases: ***"[i]n FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights."*** *Allende v.Unitech Design, Inc.*, 783 F.Supp.2d 509, 511-12 (S.D.N.Y. 2011) (emphasis added). Indeed, courts in FLSA cases routinely award attorneys' fees that exceed the plaintiffs' recovery by five, and even ten times. *See, e.g., Bonnette v. Cal. Health & Welfare,* 704 F.2d 1465, 1473 (9th Cir. 1983) (judgment of $18,455 and $100,000 in attorneys' fees); *Holyfield v. F.P. Quinn & Co.,* No. 90 C 507, 1991 WL 65928, at *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in fees and costs where the plaintiff obtained a judgment for $921.50); *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994) (award of $1,181 and $9,250 in attorneys' fees); *James v. Wash. Depot. Holdings, Inc.,* 489 F.Supp.2d 1341, 1353 (S.D. Fl. 2007) ($114,021 in attorneys' fees and $3,493.62 award for plaintiff); *Lucio-Cantu v. Vela*, 239 Fed. Appx. 866 (5th Cir. 2007) (awarding $51,750 in attorneys' fees and plaintiffs $3,349.29, $52.50, and $1,296.00, respectively); *Howe v. Hoffman-Curtis Partners Ltd., LLP,* 215 Fed. Appx. 341, 342 (5th Cir. 2007) ($23,357.30 in damages and $129,805.50 in attorneys' fees).

*Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("the established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation'"); *Jordan v. Multnomah Cnty.*, 799 F.2d 1262, 1266-1267 (9th Cir. 1986) ("'judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases . . . .'"). Here, Class Counsel's hourly rates are reasonable in light of their significant experience, expertise, and skill. Cottrell Decl. at ¶¶ 3-12, 48-63; Hoyer Decl. at ¶¶ 17-27; Righetti Decl. at ¶¶ 8-19. SWCKW's rates have been approved by several courts over the past several years, including the Northern District of California. *See* Cottrell Decl. at ¶ 75. Similarly, RG has had its hourly rates approved by numerous courts in the past several years. Righetti Decl. at ¶¶ 10-13. Likewise HH's hourly rates have been approved by numerous courts, and have clients that pay these rates on an hourly, non-contingent basis. Hoyer Decl. at ¶ 25. Even without accounting for contingent risk, Class Counsel's rates are well within the range of rates charged by similarly experienced and qualified attorneys practicing in this area. Cottrell Decl. at ¶ 77; Hoyer Decl. at ¶¶ 22-27; Righetti Decl. at ¶¶ 8-19.

### 3. The number of hours claimed is reasonable.

Under fee-shifting statutes like FLSA and the California wage and hour laws at issue in this case, plaintiffs' attorneys are entitled to be compensated for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest . . . ." *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). Here, Class Counsel, to date, have expended 4,780.00 hours of attorney and paralegal time to reach this Settlement and monitor the Settlement process (3,222.5 hours by SWCKW, 933.3 hours by RG and 624.2 hours by HH). Cottrell Decl. at ¶ 84;  Hoyer Decl. at ¶ 31; Righetti Decl. at ¶ 20. These hours reflect reasonably spent time litigating this case, which Class Counsel sought to efficiently manage, staff, assign, and divide the work between the three co-counsel firms and amongst lower and higher-level attorneys and to avoid duplication of effort. Cottrell Decl. at ¶¶ 46, 78-79. Although not required to

19

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

substantiate Class Counsel's respective lodestars, detailed billing records have been prepared for *in camera* review in the event the Court requests copies. Cottrell Decl. at ¶ 83.  It should also be emphasized that Class Counsel's lodestar does not include all of the time they will spend moving for final approval of settlement, attending the final approval hearing, supervising settlement administration, and communicating with settlement CMs in the future about the settlement. *Id.*

### C.  Class Counsel's Costs are Reasonable and Compensable from the Settlement.

Class Counsel request the Court to grant their request for taxable costs and other litigation-related expenses reasonably incurred in this litigation in the amount of $93,032.38. Cottrell Decl. at ¶¶ 86-87. Any unclaimed costs will be reallocated to the Settlement and distributed to CMs. *Id.*

Reasonable litigation expenses are ordinarily included in an award of attorneys' fees pursuant to the FLSA and California wage and hour law. *See Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012). Federal law – including 28 U.S.C. § 1920, Federal Rule of Civil Procedure 54, and the FLSA – directs the reimbursement of Class Counsel's costs and expenses. Rule 54(d)(2)(A) contemplates a court award of nontaxable expenses "[where] [s]tatutory authority to award reasonable attorney's fees includes the authority to award reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services." *See Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), *amended by* 808 F.2d 1373 (9th Cir. 1987).  Recoverable "cost" items under Rule 54(d) are defined generally by 28 U.S.C § 1920. In addition, under the FLSA, "costs include reasonable out-of-pocket expenses . . . beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920." "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti*, 2012 WL 3151077, at *12; *see also Rulli, et al. v. Nielsen Co. (U.S.) LLC*, No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) (This Court granted the reasonably incurred costs of Class Counsel in a wage and hour case similar to this matter.); Northern District of California, Local Rule 54, Costs.

Here, as set forth in the accompanying Declarations, Plaintiffs' reimbursable out-of-pocket

20

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

expenses include the following: (1) travel and transportation[9]; (2) postage[10]; (3) overnight mail and bulk mail; (4) messenger services; (5) filing fees; (6) copying and printing[11]; (7) legal research[12]; (8) mediation expenses[13]; (9) claims administration[14]; (10) court hearing transcripts; (11) teleconferencing services; (12) database administration; (13) investigation; and (14) experts/consultants.  Cottrell Decl. at ¶¶ 88-95;  Hoyer Decl. at  ¶¶ 33-35; Righetti Decl. at ¶ 24.The total reimbursable costs incurred by Class Counsel in this case amount to $93,032.38, and this total is broken down in detail as follows:

| Category | Costs (SWCKW/HH/RG) |
|---|---|
| Filing Fees | $1,436.15/  $154.70/  $1,420.50 |
| Travel Expenses | $16.50/  N/A/  $497.50 |
| Postage | $238.39/  N/A/  $449.65 |
| Overnight Mail & Bulk Mail | $1,556.59/  $1,640.00/  $436.81 |
| Court Hearing Transcripts | $225.05/  N/A/  N/A |
| Copying/Printing | $7,054.25/  N/A/  $963.25 |
| Legal Research | $4,592.62/  N/A/  $2,886.63 |
| Mediation | $3,350.00/  N/A/  $3,350.00 |
| Claims Administration | $57,105.24/ N/A/  N/A |
| Messenger Services | $393.00/  $515.00 /  N/A |
| Teleconferencing Services | N/A/  N/A/  $275.00 |
| Database Administration | N/A/  N/A/  $2,156.75 |
| Investigation | N/A/  N/A/  $1,838.80 |
| Experts/Consultants | N/A/  N/A/  $480.00 |
| **Firm Totals** | **$75,967.79/  $2,309.70/  $14,754.89** |

Cottrell Decl. at ¶ 88. All of the expenses set forth above were reasonable, were necessary to the prosecution of the case, and are customarily billed to fee-paying clients, and each of these

[9] *See, e.g.*, *Rutti*, 2012 WL 3151077, at *12; *Rulli*, No. 3:14-cv-01835-VC; *Murillo v. Pac. Gas & Elec. Co.*, 2010 WL 2889728, at *12 (E.D. Cal. July 21, 2010).
[10] *See Rutti*, 2012 WL 3151077, at *12; *Rulli*, No. 3:14-cv-01835-VC; *B&F System Inc. v. LeBlanc*, No. 7:07-cv-192, 2012 WL 2529191, at *14 (M.D. Ga. June 29, 2012).
[11] *See Rutti*, 2012 WL 3151077, at *12; *Rulli*, No. 3:14-cv-01835-VC; *Hilton v. Exec. Self Storage Assocs., Inc.*, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009); *Cho v. Koam Med. Servs. P.C.*, 524 F.Supp.2d 202, 212 (E.D.N.Y. 2007); *Bleimehl v. Eastman Kodak Co. Clinical Diagnostic Div.*, 1997 WL 33322218, at *21 (S.D. Iowa Jan. 27, 1997).
[12] *See Rutti*, 2012 WL 3151077, at *12; *Rulli*, No. 3:14-cv-01835-VC.
[13] *See, e.g.*,  *Rulli*, No. 3:14-cv-01835-VC*;Murillo*, 2010 WL 2889728, at *12; *Levinson v. About.com Inc.*, No. 02-cv-2222, 2010 WL 4159490, at *3 (S.D.N.Y. Oct. 7, 2010).
[14] *See, e.g.*, *Levinson*, 2010 WL 4159490, at *3.

categories of costs were approved by this Court in the recent fee award in *Rulli. Id.*

### D.   The Service Awards to the Class Representatives Are Reasonable.

The Court should approve the requested $10,000.00 service awards to the four Named Plaintiffs because these awards are just, fair, and reasonable.

Service awards are common in class action cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken*, 901 F.Supp. at 300 (named plaintiff received $50,000 for work in class action). These service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Thus, a service award is an appropriate incentive to encourage and reward named plaintiffs for participating in the lawsuits. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The factors courts use in determining service awards include: (1) time and effort that representatives put into the litigation; *see Van Vranken*, 901 F.Supp. at 299; (2) risks of retaliation, *see Cook*; 142 F.3d at 1016; (3) whether the litigation will further the public policy underlying the statutory scheme, *see Roberts v. Texaco*, 979 F.Supp. 185, 201 n.25 (S.D.N.Y. 1997); and (4) a comparison between the service awards and the range of monetary recovery available to the class; *see Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001).

Each of these factors supports Plaintiffs' requested service awards herein. First, the Class Representatives spent a considerable amount of time assisting this investigation or actively prosecuting this action. Their efforts included: providing extensive intake interviews regarding their individual and class and collective claims and allegations; looking for and reviewing relevant company documents; reviewing and approving the pleadings; drafting, reviewing, and approving declarations in support of conditional certification; communicating with Class Counsel regarding mediation; participating in mediation preparation and strategy; reviewing and signing the Settlement and related documents; and supporting Plaintiffs' motions for preliminary approval and the instant motion. *See generally* Smith Decl.; Guilbaud Decl.; Lilly Decl.; Wong Decl. In addition, as the face of the lawsuit, the Class Representatives spent numerous hours communicating with

22

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

other potential witnesses and CMs to aid in the investigation of the case as well as to field questions from the CMs once the Settlement was reached and Notice of the Settlement was distributed. *See id*. Altogether, the Class Representatives estimate that they spent the following hours serving as the Class Representative of this action, which ultimately resulted in the instant Settlement: (1) Smith 100 hours; (2) Guilbaud 115 hours; (3) Lilly 95 hours; and (4) Wong 130 hours. *See* Smith Decl. at ¶ 27; Guilbaud Decl. at ¶ 26; Lilly Decl. at ¶ 26; Wong Decl. at ¶ 26. The requested service awards are fair reimbursement for these efforts.

Second, the Class Representatives took on substantial risk in bringing this class and collective action and exposed themselves to notoriety and personal difficulties from serving as the Named Plaintiffs in this lawsuit. It is well established that plaintiffs in the employment context "face[] the risk that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *15 (S.D.N.Y. Nov. 18, 2013); *DeWitt v. Darlington Cnty., S.C.*, 4:11-cv-00740-RSH, 2013 WL 6408371, at *14 (D.S.C. Dec. 6, 2013) (noting that incentive payments are especially warranted "where the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."). Those still working for Sprint at the time the Complaint was filed faced the risk of retaliation by their current employer – a reality brought home after Plaintiff Wong joined this litigation. *See* Wong Decl. at ¶ 33. He was transferred to a poor performing store and then terminated while on leave caring for an ailing family member. *Id.* The Class Representatives also bore the significant financial risk of Sprint's costs in the event they lost at trial. *See* Smith Decl. at ¶¶ 32-33; Guilbaud Decl. at ¶ 31; Lilly Decl. at ¶¶31-32; Wong Decl. at ¶¶31, 34. This financial risk, if the case were ultimately tried, could easily total tens, if not hundreds, of thousands of dollars. Cottrell Decl. at ¶ 98.

Third, the requested service award will promote the underlying purpose of a service award in wage and hour class actions: to incentivize employees to enforce state and federal labor laws on behalf of their fellow workers. Cottrell Decl. at ¶ 99. In providing a financial incentive to accept those burdens, a service award promotes the important public policies underlying the wage and hour

laws at issue herein. *Ingram*, 200 F.R.D. at 694. The FLSA was enacted to protect workers from substandard wages and oppressive working conditions detrimental to the maintenance of a minimal standard of living. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Similarly, California labor laws are supported by a strong public policy in favor of enforcing minimum labor standards for workers and to prevent work under substandard unlawful conditions. Cal. Lab. Code § 90.5. As example, Plaintiff Smith will receive the following awards:  Class award $265.53 and Collective award $339.13, for a total of $604.66.  Cottrell Decl. at ¶ 99. These are below average awards, further supporting the need for an incentive award.

Fourth, the service award amounts of $10,000.00 are commensurate with the recoveries expected for the CMs. Cottrell Decl. at ¶ 100. Here, the average CM, who belongs to both the Class and Collective, will receive a net award of approximately $1,531.11 and the maximum expected net award of approximately $3,603.92.[15] *Id.* at ¶ 101.  This is a far cry from the cases where the requested service awards unreasonably constitute 30 or 40 times the average class award. *In re Online DVD-Rental Antitrust Litig.*, No. 12-15705, 2015 WL 846008, at *8 (9th Cir. Feb. 27, 2015). In addition, each requested service award amounts to just 0.89% of the total $1,123,333.33 fund, which further underscores their reasonableness. *See Sandoval v. Tharaldson Employee Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (awarding $7,500.00 service award that represented 1% of the gross settlement). The reasonableness of the requested service awards is further supported by the fact that the Class Representatives had to execute a general release, not required of the other Class Members, thus Class Representatives are releasing any and all claims, whether known or unknown and waiving their rights afforded by California Civil Code § 1542.[16]  Critically, not one Class Member has objected to these requested services award despite receiving Notice of it 31 days ago and Sprint does not oppose them either. Cottrell Decl. at ¶ 101. In addition, these requested service awards are consistent with the awards

---

[15] *See supra* footnote 4.
[16] The concerns raised by *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013) regarding incentive awards destroying the adequacy of class representatives are not present here because Plaintiffs, as employees of Sprint, have executed a general release to resolve their individual claims in exchange for the additional fair amount of the enhancement award as opposed to a collusive arrangement of receiving an enhancement award only if they support the settlement.

approved by Courts in this District as well as through the State in similar cases. *See, e.g., Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335-36 (N.D. Cal. 2014) (approving $10,000 service award in wage and hour settlement).[17]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and award Class Counsel fees of $1,123,333.33 and costs of $125,000.00 as well as $10,000.00 services awards to each the Named Plaintiff.


Date: March 21, 2016                           Respectfully submitted,

                                               SCHNEIDER WALLACE
                                               COTTRELL KONECKY WOTKYNS LLP


                                               */s/ Nicole N. Coon*
                                               CAROLYN HUNT COTTRELL
                                               NICOLE N. COON

                                               Attorneys for Plaintiffs, the Settlement Collective and Settlement Class

---

[17] *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *8 (N.D. Cal. Feb. 6, 2012) (awarding service payment of $12,500); *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217, at *10 (N.D. Cal. July 11, 2013) (approving three $25,000 enhancement awards in FLSA settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010) (approving $20,000 service award); *Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 WL 3186971, at *3 (N.D. Cal. Aug. 9, 2010) (awarding $10,000 incentive award to both named plaintiffs); *Singer v. Becton Dickinson & Co.*, 2009 WL 4809646, at *9 (S.D. Cal. Dec. 9, 2009) (approving $25,000 service award in California wage and hour case); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024 (D. Or. Nov. 13, 2006) (approving $10,000 service awards); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *16-17 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (approving $25,000 enhancement to each of four named plaintiffs in wage and hour case); *Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) (approving $10,000 service payment for each class representative); *Castellanos* v. *The Pepsi Bottling Group*, No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) (approving award of $12,500; *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) (approving award of $12,500); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006) (approving award of $30,000); *Meewes v. ICI Dulux Paints*, No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30, 2007) (approving service award of $20,000).