# EXHIBIT P01

Todd M. Schneider (SBN 158253)
Carolyn Hunt Cottrell (SBN 166977)
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
ncoon@schneiderwallace.com

Attorneys for Plaintiffs and the Settlement
Collective and Settlement Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OLIVIA GUILBAUD, MARQUES LILLY, AND MICHAEL WONG, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SPRINT NEXTEL CORPORATION AND SPRINT/UNITED MANAGEMENT CO., INC.,<br><br>Defendants. | **Lead Case**<br>CASE NO. 3:13-CV-04357-VC<br><br>Hon. Vince Chhabria |
| MICHAEL SMITH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SPRINT/UNITED MANAGEMENT COMPANY,<br><br>Defendant. | *Consolidated with*<br><br>CASE NO. 3:14-CV-02642-VC<br><br>Hon. Vince Chhabria<br><br>**DECLARATION OF OLIVIA GUILBAUD IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date:  April 14, 2016<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor |

[ADDITIONAL COUNSEL ON FOLLOWING PAGE]

1

2  Matthew Righetti (SBN 121012)
   John Glugoski (SBN 191551)
3  Michael Righetti (SBN 258541)
   RIGHETTI GLUGOSKI, P.C.
4  456 Montgomery Street, Suite 1400
   San Francisco, California 94101
5  Telephone: (415) 983-0900
   Facsimile: (415) 397-9005
6  matt@righettilaw.com
   jglugoski@righettilaw.com
7  mike@righettilaw.com

8  Richard Hoyer (SBN 151931)
   Ryan L. Hicks (SBN 260284)
9  HOYER & HICKS
   Four Embarcadero Center, Suite 1400
10 San Francisco, California 94111
   Telephone: (415) 766-3536
11 Facsimile: (415) 276-1738
   rhoyer@hoyerlaw.com
12 rhicks@hoyerlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF OLIVIA GUILBAUD IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

I, Olivia Guilbaud, declare as follows:

1. I have personal knowledge of the facts stated in this declaration, and could and would testify to those facts if called upon to do so.

2. I submit this declaration in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards.

3. I am a Named Plaintiff in this case.

4. I, by and through my attorneys, filed this lawsuit on September 19, 2013. I have been closely involved and attentive to this litigation since the beginning.

5. I was employed by Sprint from approximately April 2005 to August 2013. During my employment, I held the position of Retail Consultant, Lead Retail Consultant, and Assistant Store manager and worked at Sprint's retail stores in San Francisco, California.

6. As a Retail Consultant, Lead Retail Consultant, and Assistant Store Manager, I was responsible for assisting customers with customer service related issues, billing issues, and purchases of Sprint's merchandise and products carried in their retail stores.

7. I was typically required to work more than 40 hours in a week, and more than 8 hours in a day. I was paid between $13.00 and $18.30 per hour plus commission.

8. Although I was scheduled to begin and end my shifts at particular times, I was instructed to complete job duties before my scheduled shifts, after my scheduled shifts, and during breaks which was not reflected in my wage statements. The extra time I worked would not always get recorded. Instead, my clock-in time would sometimes reflect only my scheduled time. As a result, I was not always compensated for this extra time.

9. My scheduled and actual hours worked triggered meal and rest breaks. However, I did not always receive my rest breaks. I also sometimes did not receive my meal breaks or was required to work through them. Although I, at times, had to work through my meal breaks, I do not believe that I was always properly compensated for this time.

10. As a result of some of the issues with my hours and pay, Sprint also failed to provide me with proper wage statements. Often, the wage statements did not accurately reflect my actual hours worked or actual wages earned.

11. I believe my issues with Sprint were the same as other hourly employees, including my co-plaintiffs, since we all worked in a number of different stores. I observed that my co-workers at the San Francisco stores at which I worked had similar employment experiences to me. I also believe that Sprint's policies and practices have been similar for other non-exempt, hourly workers regardless of store location within California and the United States because Sprint has standardized policies and practices.

12.  I have spent my own personal time working with my attorneys providing background information about my employment, about Sprint policies and practices, and about the allegations in this lawsuit – including but not limited to the details provided above, and specifically with respect to timekeeping practices, and what employees were supposed to do when they opened and/or closed a store.  My attorneys used this information to determine what claims to bring and to prepare the class action lawsuit.

13.  I actively participated in this litigation, and always did my best to keep abreast of what was going on, and find out if there was anything I could be doing to move the case forward.

14.  On numerous occasions, I searched through my personal files and emails and located and provided employment documents to my attorneys throughout the course of this litigation. The documents included: email correspondence between myself and my supervisors at Sprint, timesheets, schedules, tax forms, and wage statements, and documents that I had obtained while I was employed for Sprint, like opening and closing checklists. Locating, organizing, and sending this documentation took several hours over several days, probably well over 20 hours. I often had to drive to the Kinko's nearest my house and pay for parking so that I could scan and/or fax the documents to my attorneys, because I don't have a scanner or a fax machine at home. I also had to find a notary public and pay for them to notarize an authorization for the release of records to my attorneys, because Sprint would not accept a signed release that was not notarized.

15.  I also participated in interviews and meetings prior to the filing of the complaint with my counsel and co-plaintiffs.  I exchanged many emails with my attorneys and co-counsel, and responded to questions about the complaint during telephone calls. These initial interviews and follow up conversations and emails took about 16.5 hours.

16. With my attorneys, I also discussed, reviewed, and filled out an opt-in consent form.

17. After the complaint was filed, my attorneys sent me the Court's Alternative Dispute Resolution packet, which I read and discussed with them. I then went to Kinko's to transmit my signature page attesting that I had reviewed the documents to my attorneys.

18. I was also served with a set of twelve interrogatories, and seventy-seven (77) requests for production of documents. I exchanged many emails with my counsel regarding these discovery requests, and once again searched through my personal files and emails to gather up all of my responsive documents and then provide them to my counsel, if I had not previously done so in order to respond to those discovery requests. This took many hours.

19. At some point, my co-plaintiffs and I discussed with my attorneys the existence, and then later potential transfer and consolidation of our case with the *Smith* case. These discussions and review took several hours.

20. In addition to assisting with drafting the complaints, I also actively participated in helping to identify possible Class and Collective Members. I reached out to a number of co-workers and colleagues, putting my reputation on the line. Many of my co-workers were thankful that I had filed the lawsuit, but were afraid of participating because they thought that they would face retaliation.

21. I also worked with my attorneys to draft a declaration regarding my work experience to help with class certification. Drafting, reviewing, and approving my declaration took almost 10 hours.

22. After certification and throughout this case, I regularly communicated with my attorneys via email and telephone to discuss the status of the case. These communications concerned, but were not limited to: the conditional certification motion, notice of the case to employees, Sprint's counterclaims, and discovery (including initial disclosures and discovery requests to Sprint). Ultimately, I estimate that I spent approximately 20 hours reviewing and responding to emails. With respect to telephone conferences, I estimate that I spent at least 15 hours speaking with my attorneys.

23. We also scheduled mediation in the case to try to negotiate a settlement. I made sure to clear my schedule to be available to respond to settlement negotiations during the day of the mediation. I provided my attorneys with authority to negotiate a settlement. We spoke and strategized at length about possible, reasonable settlements.

24. Eventually, the Parties recently reached an agreement to settle the case. I reviewed and approved the proposed Class and Collective settlement agreement.

3
DECLARATION OF OLIVIA GUILBAUD IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

25. Including my review of the settlement agreement, I have reviewed hundreds of complex legal documents in this case. My review of these documents took well over 30 hours.

26. In total, I estimate that I have spent roughly close to 115 hours engaged in activities related to this litigation. This is in addition to having to request days off from my current employment to accommodate the case schedule.

27. As part of the settlement agreement, I have agreed to release any and all claims I have against Sprint.

28. I believe, based upon my participation, and also based upon my knowledge of the facts and the law, as explained to me by my attorneys, that the settlement is fair and reasonable, and that my hard work has led to a beneficial result for the Class and Collective.

29. I therefore respectfully request that the Court grant final approval of the service payment agreed to by the Parties of $10,000.00 in the settlement agreement.

30. All of the time I spent on this case was time that I could have been involved in other endeavors, or with my family and friends. I am a single mother of a foster child with special needs, and it was not easy to make myself available to my attorneys or make so many trips to Kinko's as necessary. I spent this time on the case because I felt that Sprint took advantage of us with its understaffing, and that someone needed to stand up for my co-workers and me. I was a loyal employee to Sprint for nine years, and I felt that Sprint violated the rights of my co-workers and myself. I was looking for a new job while this case was going on, and I feel like it probably hurt my ability to find new work because a link to a website that was tracking the case shows up whenever someone searches for my name on Google.

31. Making a decision to participate in this case as Class representative also placed me at substantial personal risk, including: (a) the risk of my reputation in the community as a result of stepping forward publicly in a class action, and the fear of retaliation against me as a result; (b) the risk to my reputation as it concerns my future employment opportunities; (c) the risk that I had to be subject to intrusive discovery by Sprint; (d) the risk that I would have to devote substantial resources, including my own time and expenses, in participating in the case; and (e) the risk that I might have to pay defense costs if I lost the case.

//

//

1  I willingly took on these risks and burdens because I felt strongly about serving as a Class
2  representative and representing the Class and Collective in this case.

3
4  I declare under penalty of perjury under the laws of the State of California and the United States
5  of America that the foregoing is true and correct and is based upon my personal knowledge. Executed
6  this 16th day of March, 2016 in California

_____
Olivia Guilbaud