# EXHIBIT P02

1  Todd M. Schneider (SBN 158253)
   Carolyn Hunt Cottrell (SBN 166977)
2  Nicole N. Coon (SBN 286283)
   SCHNEIDER WALLACE
3  COTTRELL KONECKY WOTKYNS LLP
   2000 Powell Street, Suite 1400
4  Emeryville, California 94608
   Telephone: (415) 421-7100
5  Facsimile: (415) 421-7105
   tschneider@schneiderwallace.com
6  ccottrell@schneiderwallace.com
   ncoon@schneiderwallace.com
7
   Attorneys for Plaintiffs and the Settlement
8  Collective and Settlement Class

9

10                    **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  OLIVIA GUILBAUD, MARQUES LILLY, AND MICHAEL WONG, and all others similarly situated, | **Lead Case** CASE NO. 3:13-CV-04357-VC |
| 13 | |
| 14              Plaintiffs, | Hon. Vince Chhabria |
| 15      vs. | |
| 16  SPRINT NEXTEL CORPORATION AND SPRINT/UNITED MANAGEMENT CO., INC., | |
| 17 | |
| 18              Defendants. | *Consolidated with* |
| 19  MICHAEL SMITH, on behalf of himself and all others similarly situated, | CASE NO. 3:14-CV-02642-VC |
| 20              Plaintiff, | Hon. Vince Chhabria |
| 21      vs. | **DECLARATION OF MARQUES LILLY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |
| 22  SPRINT/UNITED MANAGEMENT COMPANY, | |
| 23              Defendant. | Date:  April 14, 2016 Time:  10:00 a.m. Courtroom: 4, 17th Floor |
| 24 | |
| 25 | |

26                    [ADDITIONAL COUNSEL ON FOLLOWING PAGE]

27

28

DECLARATION OF MARQUES LILLY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

1  Matthew Righetti (SBN 121012)
   John Glugoski (SBN 191551)
2  Michael Righetti (SBN 258541)
   RIGHETTI GLUGOSKI, P.C.
3  456 Montgomery Street, Suite 1400
   San Francisco, California 94101
4  Telephone: (415) 983-0900
   Facsimile: (415) 397-9005
5  matt@righettilaw.com
   jglugoski@righettilaw.com
6  mike@righettilaw.com

7  Richard Hoyer (SBN 151931)
   Ryan L. Hicks (SBN 260284)
8  HOYER & HICKS
   Four Embarcadero Center, Suite 1400
9  San Francisco, California 94111
   Telephone: (415) 766-3536
10 Facsimile: (415) 276-1738
   rhoyer@hoyerlaw.com
11 rhicks@hoyerlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MARQUES LILLY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

I, Marques Lilly, Sr., declare as follows:

1. I have personal knowledge of the facts stated in this declaration, and could and would testify to those facts if called upon to do so.

2. I submit this declaration in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards.

3. I am a Named Plaintiff in this case.

4. I, by and through my attorneys, filed this lawsuit on September 19, 2013. I have been closely involved and attentive to this litigation since the beginning.

5. I was employed by Sprint from approximately November 2005 to May 2013. During my employment, I held the position of Retail Consultant, Lead Retail Consultant, and Assistant Store manager and worked at Sprint's retail stores in Emeryville, Daly City, and San Francisco, California.

6. As a Retail Consultant, Lead Retail Consultant, and Assistant Store Manager, I was responsible for assisting customers with customer service related issues, billing issues, and purchases of Sprint's merchandise and products carried in their retail stores.

7. I was typically required to work more than 40 hours in a week, and more than 8 hours in a day. I was paid between $12.00 and $19.00 per hour plus commission.

8. Although I was scheduled to begin and end my shifts at particular times, I was instructed to complete job duties before my scheduled shifts, after my scheduled shifts, and during breaks which was not reflected in my wage statements. The extra time I worked would not always get recorded. Instead, my clock-in time would sometimes reflect only my scheduled time. As a result, I was not always compensated for this extra time. In fact, every time that I or anyone else worked an opening shift, we were required to do work for around ten minutes before we could clock in.

9. My scheduled and actual hours worked triggered meal and rest breaks. However, I did not always receive my rest breaks. I also sometimes did not receive my meal breaks or was required to work through them. Although I, at times, had to work through my meal breaks, I do not believe that I was always properly compensated for this time.

10. As a result of some of the issues with my hours and pay, Sprint also failed to provide me with proper wage statements. Often, the wage statements did not accurately reflect my actual hours worked or actual wages earned.

11. I believe my issues with Sprint are the same as other hourly employees. I observed that my co-workers at the three stores at which I worked had similar employment experiences to me. I also believe that Sprint's policies and practices have been similar for other non-exempt, hourly workers regardless of store location within California and the United States because Sprint has standardized policies and practices.

12. I did a lot of work to provide all the information to my attorneys that I had in my possession about my work for Sprint, including my pay stubs that I could find, my paychecks, information about opening and closing the stores, and the commission structure, because of our claim that any overtime that we worked, whether paid or unpaid, was not taken into account when we were paid monthly bonuses. I also answered many questions regarding background information about my employment, about Sprint policies and practices as related to timekeeping, meal and rest breaks, and overtime. My attorneys used this information to identify the claims that could be alleged on a class-wide basis, to understand the inner-workings of Sprint, and to prepare this case for prosecution on behalf of the Class and Collective.

13. I helped to advance the interests of the Class and Collective by participating actively in this litigation. I always answered every question and completed every project as quickly as I could.

14. I also located and provided employment documents to my attorneys throughout the course of this litigation. The documents included: email correspondence, timesheets, schedules, tax forms, and wage statements, in addition to the types of documents and information I described above. Locating, organizing, and sending this documentation took several hours over several days, probably well over 15 hours.

15. My counsel also met with me in person and interviewed me later over the phone multiple times prior to the filing of the complaint with my counsel.  We discussed my experiences at Sprint, my obesrvations of my co-workers at Sprint at all of the stores at which I worked, and the legal requirements for wages, breaks, commissions, and bonuses with respect to overtime. I exchanged many emails with my attorneys, and responded to questions about the complaint during telephone calls. These initial interviews and follow up conversations and emails took about 13.5 hours.

16. With my attorneys, I also discussed, reviewed, and filled out an opt-in consent form.

17. After the complaint was filed, my attorneys sent me the Court's Alternative Dispute Resolution packet, which I read and discussed with them.

18. A few months after we filed our lawsuit, my attorneys made me aware that there was another similar case pending, the *Smith* case. We had a number of disucssions regarding the potential to merge the  Following the decision to join the cases, I participated in discussions regarding the consolidated complaint. I reviewed and approved the consolidated complaint. These discussions and review took several hours.

19. In addition to assisting with drafting the complaints, I also actively participated in helping to identify possible Class and Collective Members. I reached out to as many co-workers and colleagues that I believed would be interested in participating, putting my reputation on the line. Most of the people I communicated with that were still Sprint employees were afraid to participate, but hoped that my lawsuit would fix things at their stores.

20. After we filed the lawsuit, Sprint served a set of twelve interrogatories and seventy-seven (77) requests for documents. I had a number of communications with my attorneys via phone and email discussing my responses to these requests, and I went through my personal files and emails again to make sure that I provided to my attorneys all of the documents I had in my possession that were responsive to the seventy-seven requests. This took many hours.

21. I also worked with my attorneys to draft a declaration regarding my work experience to help with class certification. Drafting, reviewing, and approving my declaration took almost 10 hours.

22. As the case proceeded following certification, I regularly communicated with my attorneys via email and telephone to discuss the status of the case. These communications concerned, but were not limited to: the conditional certification motion, notice of the case to employees, Sprint's counterclaims, discovery, and inquiries about the case I received from my former colleagues. Ultimately, I estimate that I spent approximately 20 hours reviewing and responding to emails. With respect to telephone calls and conferences, I estimate that I spent about 15 hours speaking with my attorneys and co-plaintiffs.

23. We also scheduled a mediation in the case to try to negotiate a settlement, and I made sure that my schedule was clear and that I was available throughout that day to respond to settlement negotiations. I provided my attorneys with authority to negotiate a settlement. We spoke and strategized at length about possible, reasonable settlements.

24. Eventually, the Parties recently reached an agreement to settle the case. I reviewed and approved the proposed Class and Collective settlement agreement.

25. Including my review of the settlement agreement, I have reviewed several hundreds of complex legal documents in this case. My review of these documents took well over 20 hours.

26. In total, I estimate that I have spent roughly close to 95 hours engaged in activities related to this litigation.

27. As part of the settlement agreement, I have agreed to release any and all claims I have against Sprint.

28. I believe, based upon my participation, and also based upon my knowledge of the facts and the law, as explained to me by my attorneys, that the settlement is fair and reasonable, and that my hard work has led to a beneficial result for the Class and Collective.

29. I therefore respectfully request that the Court grant final approval of the service payment agreed to by the Parties of $10,000.00 in the settlement agreement.

30. All of the time I spent on this case was time that I could have been involved in other endeavors, or with my family and friends. I could have just given up on the claims and not filed a lawsuit. I spent the time on this case because my co-workers and I were treated poorly due to all the understaffing at our stores and because I thought that Sprint did not pay us all of the money that we were owed for all of our hard work. I felt that someone had to stand up and represent my co-workers in a lawsuit, since my colleagues who were still working for Sprint were afraid of speaking up about breaks and unpaid work out of fear of losing their jobs.

31. Participating in this case as Class representative also placed me at substantial personal risk, including: (a) the risk of my reputation in the community as a result of stepping forward publicly in a class action, and the fear of retaliation against me as a result; (b) the risk to my reputation as it concerns my future employment opportunities; (c) the risk that I had to be subject to intrusive further discovery by Sprint; (d) the risk that I would have to devote substantial resources, including my own time and expenses, in participating in the case; and (e) the risk that I might have to pay defense costs if I lost the case. If I lost, I would almost certainly have had to file for bankruptcy.

//

//

32. I willingly took on these risks and burdens because I felt strongly about serving as a Class representative and representing the Class and Collective in this case.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and is based upon my personal knowledge. Executed this __16__ day of March, 2016 in California

Marques Lilly, Sr.