# EXHIBIT P03

Todd M. Schneider (SBN 158253)
Carolyn Hunt Cottrell (SBN 166977)
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
ncoon@schneiderwallace.com

Attorneys for Plaintiffs and the Settlement
Collective and Settlement Class

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OLIVIA GUILBAUD, MARQUES LILLY, AND MICHAEL WONG, and all others similarly situated,<br><br>       Plaintiffs,<br><br>       vs.<br><br>SPRINT NEXTEL CORPORATION AND SPRINT/UNITED MANAGEMENT CO., INC.,<br><br>       Defendants. | **Lead Case**<br>CASE NO. 3:13-CV-04357-VC<br><br>Hon. Vince Chhabria |
| MICHAEL SMITH, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>       vs.<br><br>SPRINT/UNITED MANAGEMENT COMPANY,<br><br>       Defendant. | *Consolidated with*<br><br>CASE NO. 3:14-CV-02642-VC<br><br>Hon. Vince Chhabria<br><br>**DECLARATION OF MICHAEL WONG IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>Date:  April 14, 2016<br>Time: 10:00 a.m.<br>Courtroom: 4, 17th Floor |

[ADDITIONAL COUNSEL ON FOLLOWING PAGE]

1   Matthew Righetti (SBN 121012)
    John Glugoski (SBN 191551)
2   Michael Righetti (SBN 258541)
    RIGHETTI GLUGOSKI, P.C.
3   456 Montgomery Street, Suite 1400
    San Francisco, California 94101
4   Telephone: (415) 983-0900
    Facsimile: (415) 397-9005
5   matt@righettilaw.com
    jglugoski@righettilaw.com
6   mike@righettilaw.com

7   Richard Hoyer (SBN 151931)
    Ryan L. Hicks (SBN 260284)
8   HOYER & HICKS
    Four Embarcadero Center, Suite 1400
9   San Francisco, California 94111
    Telephone: (415) 766-3536
10  Facsimile: (415) 276-1738
    rhoyer@hoyerlaw.com
11  rhicks@hoyerlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF MICHAEL WONG IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

I, Michael Wong, declare as follows:

1. I have personal knowledge of the facts stated in this declaration, and could and would testify to those facts if called upon to do so.

2. I submit this declaration in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards.

3. I am a Named Plaintiff in this case.

4. I, by and through my attorneys, filed this lawsuit on September 19, 2013. I have been closely involved and attentive to this litigation since the beginning.

5. I was employed by Sprint from approximately April 2008 to February 2014. During my employment, I held the position of Retail Consultant, Lead Retail Consultant, and Assistant Store Manager and worked at Sprint's retail stores in San Bruno, Daly City, and San Francisco, California.

6. As a Retail Consultant, Lead Retail Consultant, and Assistant Store Manager, I was responsible for assisting customers with customer service related issues, billing issues, and purchases of Sprint's merchandise and products carried in their retail stores.

7. I was typically required to work more than 40 hours in a week, and more than 8 hours in a day. I was paid between $12.60 and $19.71 per hour plus commission.

8. Although I was scheduled to begin and end my shifts at particular times, I was instructed to complete job duties before my scheduled shifts, after my scheduled shifts, and during breaks which was not reflected in my wage statements. The extra time I worked would not always get recorded. Instead, my clock-in time would sometimes reflect only my scheduled time. As a result, I was not always compensated for this extra time. Especially when I worked opening and closing shifts, there was around ten minutes that I was working that I was not permitted or able to record as hours worked due to Sprint's opening and closing procedures.

9. My scheduled and actual hours worked triggered meal and rest breaks. However, I did not always receive my rest breaks. I also sometimes did not receive my meal breaks or had to work through them or I would get interrupted with work while trying to eat. Although I, at times, had to work through my meal breaks, I do not believe that I was always properly compensated for this time, or paid any premium wages to which I believe was entitled under the law.

10. As a result of some of the issues with my hours and pay, Sprint also failed to provide me with proper wage statements. Often, the wage statements did not accurately reflect my actual hours worked or actual wages earned.

11. My issues with Sprint were the same as the other hourly employees with whom I worked at the stores in the Bay Area. I observed that my co-workers at the stores at which I worked had similar experiences to me. I also believe that Sprint's policies and practices have been similar for other non-exempt, hourly workers regardless of store location within California and the United States because Sprint has standardized policies and practices.

12. I spent a lot of time working with my attorneys and co-plaintiffs providing background information about my employment, about Sprint policies and practices, and about the allegations in this lawsuit – including but not limited to the details provided above. I gathered my compensation history, other employment documents, and as many policies that were available to me as a Sprint employee to assist my counsel in assessing the potential claims for me and my co-workers. My attorneys used this information to identify the claims that could be alleged on a class-wide basis, to understand the inner-workings of Sprint, and to prosecute this case on behalf of the Class and Collective. Before the case was filed, I had to find a notary public and pay them to notarize an authorization for release of records, because Sprint refused to provide any of my personnel or employment documents to my counsel without a notarized release.

13. I actively tried to do everything in my power to assist my attorneys in prosecuting this case on behalf of my co-workers and me.

14. I also participated in extensive interviews prior to the filing of the complaint with my counsel. I exchanged several emails with my attorneys, and responded to questions about the complaint during telephone calls, and also spoke with my co-plaintiffs and some former colleagues. These initial interviews and follow up conversations and emails took about 15 hours.

15. Once the case was filed, I continued to work to locate and provide employment documents to my attorneys in throughout the course of this litigation. The documents included: email correspondence, timesheets, schedules, tax forms, opening and closing checklists, compensation statements and policies, and pay stubs. Locating, organizing, and sending this documentation took several hours over several days, probably well over 18 hours.

16. With my attorneys, I also discussed, reviewed, and filled out an opt-in consent form.

17. After the complaint was filed, my attorneys sent me the Court's Alternative Dispute Resolution packet, which I read and discussed with them.

18. A few months after we filed the lawsuit, Sprint served us with some discovery responses. I had to provide information to my attorneys to respond to twelve interrogatories, and again search through my personal documents and emails to respond to seventy-seven requests for production, and make sure that I had provided all of the responsive documents in my possession to my counsel. This took many hours.

19. At some point, my attorneys informed me that there was another similar class action against Sprint that had been filed, the *Smith* case. I discussed with my attorneys the potential transfer and consolidation of that case with our case. We ultimately decided it would be best to combine the two cases. These discussions took several hours.

20. I also actively participated in helping to identify possible Class and Collective Members. I reached out to any and all co-workers and colleagues who I thought would want to participate, but who would also not report me to management, since I was still employed for a few months after the lawsuit was filed. This took several hours.

21. I helped my attorneys prepare a declaration regarding my work experience to help with class certification. Drafting, reviewing, and approving my declaration took almost 10 hours.

22. As the litigation continued, I regularly communicated with my attorneys via email and telephone to discuss the status of the case and any recent developments. These communications concerned, but were not limited to: the conditional certification motion, notice of the case to employees, Sprint's counterclaims, and discovery, and whether my taking leave to care for ailing family members could affect the case. I estimate that I spent approximately 33 hours reviewing and responding to emails. With respect to telephone conferences, I estimate that I spent about 25 hours speaking with my attorneys.

23. We also scheduled mediation in the case to try to negotiate a settlement. I made sure to clear my schedule to be available to respond to settlement negotiations. I provided my attorneys with authority to negotiate a settlement. We spoke and strategized at length about the range of possible, reasonable settlements.

24. Eventually, the Parties recently reached an agreement to settle the case. I reviewed and approved the proposed Class and Collective settlement agreement.

25. Including my review of the settlement agreement, I have reviewed several hundreds of complex legal documents in this case, and asked my attorneys for help to understand of many of the documents. My review of these documents took well over 25 hours.

26. In total, I estimate that I have spent roughly close to 130 hours engaged in activities related to this litigation.

27. As part of the settlement agreement, I have agreed to release any and all claims I have against Sprint.

28. I believe that the settlement is fair and reasonable, and that my hard work has led to a beneficial result for the Class and Collective.

29. I therefore respectfully request that the Court grant final approval of the service payment agreed to by the Parties of $10,000.00 in the settlement agreement.

30. All of the time I spent on this case was time that I could have been involved in other endeavors, or with my family and friends. Even though I believe that my participation was somehow related to my termination, I still believe that it was time well spent because someone needed to serve as a Class representative and hopefully change Sprint's practices. I worked for Sprint for approximately six years and we were always understaffed and compelled to do work off the clock and I hoped that by filing this lawsuit we could make Sprint properly staff its stores and stop taking advantage of its workers like me.

31. Making a decision to participate in this case as Class representative also placed me at substantial personal risk, including: (a) the risk of my reputation in the community as a result of stepping forward publicly in a class action, and the fear of retaliation against me as a result; (b) the risk to my reputation as it concerns my future employment opportunities; (c) the risk that I had to be subject to intrusive further discovery by Sprint; (d) the risk that I would have to devote substantial resources, including my own time and expenses, in participating in the case; and (e) the risk that I might have to pay defense costs if I lost the case. If I was compelled to pay Sprint's costs had we lost the case at trial, I believe that I would have been ruined financially.

32. I was also very afraid that I had done something wrong and would be ruined when I learned that Sprint had filed a counterclaim of fraud against me and the other plaintiffs in the case. I spent some time discussing that fear with my attorneys.

33. I was still employed by Sprint when I filed this lawsuit. Once the lawsuit was filed, I was demoted from an Acting Store Manager position to an Assistant Store Manager position and transferred to the Daly City store, which was a poor performing store, and my schedule was changed to mostly night shifts and long weekends, which I did not want to work, and which were the most undesirable shifts to work. Finally, while I was taking some time off to care for an ailing family member, Sprint terminated me. When I tried to contact my managers to return to work, no one would return my calls.

34. I willingly took on these risks and burdens because I felt strongly about serving as a Class representative and representing the Class and Collective in this case.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and is based upon my personal knowledge. Executed this 17 day of March, 2016 in California

_____
Michael Wong