# EXHIBIT SW01

1
2
3
4
5
6
7

Todd M. Schneider (SBN 158253)
Carolyn Hunt Cottrell (SBN 166977)
Nicole N. Coon (SBN 286283)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
ncoon@schneiderwallace.com

8

Attorneys for Plaintiffs and the Settlement
Collective and Settlement Class

9
10
11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| OLIVIA GUILBAUD, MARQUES LILLY, AND MICHAEL WONG, and all others similarly situated, | **Lead Case** CASE NO. 3:13-CV-04357-VC |
| Plaintiffs, | Hon. Vince Chhabria |
| vs. | |
| SPRINT NEXTEL CORPORATION AND SPRINT/UNITED MANAGEMENT CO., INC., | |
| Defendants. | *Consolidated with* |
| MICHAEL SMITH, on behalf of himself and all others similarly situated, | CASE NO. 3:14-CV-02642-VC Hon. Vince Chhabria |
| Plaintiff, | |
| vs. | **DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |
| SPRINT/UNITED MANAGEMENT COMPANY, | |
| Defendant. | |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[ADDITIONAL PLAINTIFFS' COUNSEL ON FOLLOWING PAGE]

Matthew Righetti (SBN 121012)
John Glugoski (SBN 191551)
Michael Righetti (SBN 258541)
RIGHETTI GLUGOSKI, P.C.
456 Montgomery Street, Suite 1400
San Francisco, California 94101
Telephone: (415) 983-0900
Facsimile: (415) 397-9005
matt@righettilaw.com
jglugoski@righettilaw.com
mike@righettilaw.com

Richard Hoyer (SBN 151931)
Ryan L. Hicks (SBN 260284)
HOYER & HICKS
Four Embarcadero Center, Suite 1400
San Francisco, California 94111
Telephone: (415) 766-3536
Facsimile: (415) 276-1738
rhoyer@hoyerlaw.com
rhicks@hoyerlaw.com

## DECLARATION OF CAROLYN HUNT COTTRELL

I, Carolyn Hunt Cottrell, declare:

1.   I have personal knowledge of the facts set forth in this Declaration and, if called upon as a witness, I could and would testify competently as to these facts.

2.   This Declaration is submitted in support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Cost, and Service Awards.

## CONTENTS AND STRUCTURE OF THIS DECLARATION

3.   This declaration is organized into several parts.  In the first part, I provide my professional background. Next, I introduce Class Counsel. Then, I provide a general overview of the background and procedural history of the case in which I highlight Class Counsel's work on the case.

4.   I then address Class Counsel's fees and costs. I begin by providing a biographical summary of the attorneys and staff members from my firm who worked on the case. Next, I discuss the reasonableness of our fees. To confirm the reasonableness, I address the lodestar, focusing on both the reasonableness of hourly rates as well as the number of hours expended on this litigation.  I provide documentation and a discussion of counsel's billing rates showing that these billing rates are well within the market range of hourly rates charged by attorneys of comparable skill and experience, working on similar matters. I also provide a summary breakdown of the lodestar, with supporting documentation. I likewise address the reasonableness of the costs incurred in this litigation, and I provide documentation to account for these out-of-pocket costs.

5.   Lastly, I address the Named Plaintiffs' service awards.

## <u>QUALIFICATIONS, EXPERIENCE, AND EXPERTISE</u>

6.   I am an attorney duly licensed to practice law in the State of California (State Bar. No. 166977).  I am a member in good standing of the State Bar of California. I am admitted to the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.  I am admitted to the Ninth Circuit Court of Appeals. I am a member of the Bar of the United States Supreme Court.

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

7.   I am a partner at Schneider Wallace Cottrell Konecky Wotkyns LLP ("SWCKW"). SWCKW specializes in class action litigation in state and federal court.

8.   SWCKW is regarded as one of the leading private plaintiff's firms in wage and hour class actions and employment class actions.  A substantial number of my firm's class and collective action cases are wage and hour cases, including the instant case.

9.   SWCKW has acted or is acting as class counsel in numerous cases.  A partial list of cases which have been certified and/or settled as class actions includes: *Allen, et al. v. County of Monterey, et al.*, (Case No. 5:13-cv-01659) (Northern District of California) (settlement between FLSA Plaintiffs and Defendant to provide relief to affected employees); *Barrera v. Radix Cable Holdings, Inc., et al.*, (Case No. CIV 1100505) (Marin County Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to, off-the-clock work by, failure to provide overtime compensation to, failure to reimburse business expenditures to, failure to pay full wages upon termination to, and failure to provide accurate itemized wage statements to retention specialists working for cable companies); *Glass Dimensions, Inc., et al. v. State Street Corp. et al.*, (Case No. 1:10-cv-10588) (District of Massachusetts) (final approval of class action settlement for claims of breach of fiduciary duty and self-dealing in violation of ERISA); *Friend, et al. v. The Hertz Corporation*, (Case No. 3:07-052222) (Northern District of California) (settlement of claims that rental car company misclassified non-exempt employees, failed to pay wages, failed to pay premium pay, and failed to provide meal periods and rest periods); *Hollands v. Lincare, Inc., et al.*, (Case No. CGC-07-465052) (San Francisco County Superior Court) (final approval of class action settlement for overtime pay, off-the-clock work, unreimbursed expenses, and other wage and hour claims on behalf of a class of center managers); *Jantz, et al. v. Colvin*, (Case No. 531-2006-00276X) (In the Equal Employment Opportunity Commission Baltimore Field Office) (final approval of class action settlement for the denial of promotions based on targeted disabilities); *Shemaria v. County of Marin*, (Case No. CV 082718) (Marin County Superior Court) (final approval of class action settlement on behalf of a class of individuals with mobility disabilities denied access to various facilities owned, operated, and/or maintained by the County of Marin); *Perez, et al. v. First American Title Ins. Co.*, (Case No. 2:08-cv-01184) (District of Arizona) (final

approval of class action settlement in action challenging unfair discrimination by title insurance company); *Perez v. Rue21, Inc., et al.*, (Case No. CISCV167815) (Santa Cruz County Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to, and for off-the-clock work performed by, a class of retail employees); *Sosa, et al. v. Dreyer's Grand Ice Cream, Inc., et al.*, (Case No. RG 08424366) (Alameda County Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to, and for off-the-clock work performed by, a class of ice cream manufacturing employees); *Villalpando v. Exel Direct Inc., et al.* (Case Nos. 3:12-cv-04137 and 4:13-cv-03091) (Northern District of California) (certified class action on behalf of delivery drivers allegedly misclassified as independent contractors); *Choul, et al. v. Nebraska Beef, Ltd.* (Case Nos. 8:08-cv-90, 8:08-cv-99) (District of Nebraska) (final approval of class action settlement for off-the-clock work by, and failure to provide overtime compensation to, production-line employees of meat-packing plant); *Morales v. Farmland Foods, Inc.* (Case No. 8:08-cv-504) (District of Nebraska) (FLSA certification for off-the-clock work by, and failure to provide overtime compensation to, production-line employees of meat-packing plant); *Barlow, et al. v. PRN Ambulance Inc.* (Case No. BC396728) (Los Angeles County Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to and for off-the-clock work by certified emergency medical technicians); *Espinosa, et al. v. National Beef, et al.* (Case No. ECU0467) (Imperial Superior Court) (final approval of class action settlement for off-the-clock work by, and failure to provide overtime compensation to, production-line employees of meat-packing plant); *Wolfe, et al. v. California Check Cashing Stores, LLC, et al.* (Case Nos. CGC-08-479518 and CGC-09-489635) (San Francisco Superior Court) (final approval of class action settlement for failure to provide meal and rest breaks to, and for off-the-clock work by, employees at check cashing stores); *Carlson v. eHarmony* (Case No. BC371958) (Los Angeles County Superior Court) (final approval of class action settlement on behalf of gays and lesbians who were denied use of eHarmony); *Salcido v. Cargill* (Case Nos. 1:07-CV-01347-LJO-GSA,1:08-CV-00605-LJO-GSA) (Eastern District of California) (final approval of class action settlement for off-the-clock work by production-line employees of meat-packing plant); *Elkin v. Six Flags* (Case No. BC342633) (Los Angeles County Superior Court) (final approval of class action settlement for

missed meal and rest periods on behalf of hourly workers at Six Flags amusement parks); *Jimenez v. Perot Systems Corp.* (Case No. RG07335321) (Alameda County Superior Court) (final approval of class action settlement for misclassification of hospital clerical workers); *Chau v. CVS RX Services, Inc.* (Case No. BC349224) (Los Angeles County Superior Court) (final approval of class action settlement for failure to pay overtime to CVS pharmacists); *Reed v. CALSTAR* (Case No. RG04155105) (Alameda County Superior Court) (certified class action on behalf of flight nurses); *National Federation of the Blind v. Target* (Case No. C 06-01802 MHP) (N.D. Cal.) (certified class action on behalf of all legally blind individuals in the United States who have tried to access Target.com); *Bates v. United Parcel Service, Inc.* (2004 WL 2370633) (N.D. Cal.) (certified national class action on behalf of deaf employees of UPS); *Satchell v. FedEx Express, Inc.* (Case No. 03-02659 SI) (N.D. Cal.) (certified regional class action alleging widespread discrimination within FedEx); *Siddiqi v. Regents of the University of California* (Case No. C-99-0790 SI) (N.D. Cal.) (certified class action in favor of deaf plaintiffs alleging disability access violations at the University of California); *Lopez v. San Francisco Unified School District* (Case No. C-99-03260 SI) (N.D. Cal.) (certified class action in favor of plaintiffs in class action against school district for widespread disability access violations); *Campos v. San Francisco State University* (Case No. C-97-02326 MCC) (N.D. Cal.) (certified class action in favor of disabled plaintiffs for widespread disability access violations); *Singleton v. Regents of the University of California* (Case No. 807233-1) (Alameda County Superior Court) (class settlement for women alleging gender discrimination at Lawrence Livermore National Laboratory); *McMaster v. BCI Coca-Cola Bottling Co.* (Case No. RG04173735) (Alameda County Superior Court) (final approval of class action settlement for drive-time required of Coca-Cola account managers); *Portugal v. Macy's West, Inc.* (Case No. BC324247) (Los Angeles County Superior Court) (California statewide wage and hour "misclassification" class action resulting in a class-wide $3.25 million settlement); *Taormina v. Siebel Systems, Inc.* (Case No. RG05219031) (Alameda County Superior Court) (final approval of class action settlement for misclassification of Siebel's inside sales employees); *Joseph v. The Limited, Inc.* (Case No. CGC-04-437118) (San Francisco County Superior Court) (final approval of class action settlement for failure to provide meal and rest periods to employees of The Limited

stores); *Rios v. Siemens Corp.* (Case No. C05-04697 PJH) (N.D. Cal.) (final approval of class action settlement for failure to pay accrued vacation pay upon end of employment); *DeSoto v. Sears, Roebuck & Co.* (Case No. RG0309669) (Alameda County Superior Court) and *Lenahan v. Sears, Roebuck & Co.* (Case No. 3-02-CV-000045 (SRC) (TJB)) (final approval of class action settlement for failure to pay Sears drivers for all hours worked); among many others.

10. I have been a member of this firm since 1996.  Nearly my entire legal career has been devoted to advocating for the rights of individuals who have been subjected to illegal pay policies, discrimination, harassment and retaliation and representing employees in wage and hour and discrimination class actions.  I have litigated hundreds of wage and hour, employment discrimination and civil-rights actions, and I manage many of the firm's current cases in these areas. I am a member of the State Bar of California, and have had memberships with Public Justice, the National Employment Lawyers Association, the California Employment Lawyers Association and the Consumer Attorneys of California.  I served on the Board of Directors for the San Francisco Trial Lawyers Association and co-chaired its Women's Caucus.  I was named one of the "Top Women Litigators for 2010" by the Daily Journal.  In 2012, I was nominated for Woman Trial Lawyer of the Year by the Consumer Attorneys of California.  I earned my Bachelor's degree from the University of California, and I am a graduate of the University of the Pacific, McGeorge School of Law.

### CLASS COUNSEL

11. Plaintiffs' Counsel in this case is comprised of SWCKW, Righetti Glugoski, PC ("RG"), and Hoyer & Hicks ("HH"). The firms are highly-regarded members of the wage and hour and employment class and collective action bar, with extensive experience in this highly-specialized type of litigation.

12. The qualifications and experience of RG and HH as well as their firms' staff who worked on the cases, and their costs and fees are respectively set forth in the Declarations of Richard Hoyer (*see* **Exhibit HH01**) and Matthew Righetti (*see* **Exhibit RG01**) submitted in support of this motion.

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

## SUMMARY OF FEES AND COSTS SOUGHT

13. Class Counsel now seek, as their reasonable attorneys' fees, 33 1/3% the total Gross Settlement award, or $1,123,333.33, and $93,032.38 as reimbursement for the costs of bringing this suit.  As of March 21, 2016, **the total combined lodestar for the three firms prosecuting and resolving the class and collective claims in this action was approximately $1,901,010.00** *after* deductions were made for billing judgment.  A true and correct summary of Class Counsel's lodestar is attached as **Exhibit SW07.** The portion of this total lodestar attributable to SWCKW is approximately $1,278,876.50 and is documented more fully below.  The portion of the total lodestar attributable to RG is $433,775.00. This amount is documented in the declaration of Matthew Righetti. The portion of the total lodestar attributable to HH is $188,358.50.  This amount is documented by the declaration of Richard Hoyer.

14. **Class Counsel has together incurred actual, out-of-pocket costs of $93,032.38**.  *See* **Exhibit SW07.** The portion of the total costs attributable to the SWCKW is approximately $75,967.79 and is documented more fully below.  The portion of the total costs attributable to RG is $14,754.89. This amount is documented in the declaration of Matthew Righetti. The portion of the total costs attributable to HH is $2,309.70.  This amount is documented by the declaration of Richard Hoyer.

## PROCEDURAL HISTORY

15. The brief in support of this Motion contains a detailed section entitled "Procedural History and Work Performed by Class Counsel." As its title suggests, this section of the brief details the major billable projects that took place over the course of this lawsuit, and also provides a summary of the necessary work performed by Class Counsel with respect to each project. Class Counsel compiled this section of the brief by: (1) reviewing the documents entered into the Court's record, along with any discovery propounded by either Party, to determine the major billable events that took place in this case; and (2) reviewing any correspondence and billing related to a particular billable event to determine the specific work performed by Class Counsel. In my opinion, and in the opinion of Class Counsel, this section truly and correctly summarizes the major billable events in

1   this case for which (with a few exceptions) Plaintiffs seek recovery of their fees and costs, along

2   with the work performed by Class Counsel to warrant such an award.

3   **Pleadings**

4   **The *Smith* Complaint**

5       16. Plaintiff Smith filed his class action in the Eastern District on January 31, 2014, under the

6   original case number of 2:14-CV-00327-LKK-AC. The Parties conferred regarding Defendant's

7   response, and agreed to provide Sprint with additional time to respond. This agreement was

8   extended several times and set forth in the three stipulations filed with the Court on February 27,

9   2014, March 25, 2014, and April 14, 2014. Ultimately, on April 25, 2014, Defendant filed a motion

10  to dismiss and as well as a notice of the pendency of the *Guilbaud* matter.

11  **Coordination of *Smith* and *Guilbaud* and the Consolidated Complaint**

12      17. The Parties agreed in the interest of avoiding conflicts, conserving resources, and promoting

13  an efficient determination of the actions to transfer *Smith* to the Northern District and relate and

14  consolidate the actions before Judge Chhabria. To facilitate this decision, numerous procedural

15  steps needed to be executed. First, on June 3, 2014, the *Smith* Parties filed a stipulation to transfer

16  the action to the Northern District, which was granted on June 5, 2014. The *Smith* case was

17  formally processed by the Northern District and assigned a case number on June 9, 2014. On July 1,

18  2014, the *Guilbaud* Parties alerted this Court to the transfer of *Smith* and plan for coordination and

19  consolidation in their Joint Case Management Statement. On June 7, 2014, Plaintiffs then filed a

20  motion to relate and consolidate the cases by stipulation. Counsel for all Parties then appeared at the

21  Case Management Conference ("CMC") scheduled before this Court on July 8, 2014. The Court

22  granted the motion to relate and consolidate the cases on that date and set the case schedule. Class

23  Counsel conferred with each other to draft and file a Consolidated Collective and Class Action

24  Complaint ("Consolidated Complaint"). After diligently researching and writing this complaint,

25  Plaintiffs filed it on July 30, 2014.

26  **Sprint's Counterclaims and Affirmative Defenses**

27      18. On August 18, 2014, Sprint filed it Answer the Consolidated Complaint. Several weeks

28  later, on September 8, 2014, Defendant filed an Amended Answer.

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

19. Although Defendant had already filed responses to both the *Guilbaud* and *Smith* actions, for the first time it asserted six counterclaims against Plaintiffs. Sprint accused Plaintiffs and CMs of improperly recording their time and deliberately transmitting false data through Sprint's timekeeping system. Class Counsel conferred and investigated these counterclaims. It is Plaintiffs' position that they were false, retaliatory claims against the Plaintiffs and CMs. Accordingly, Class Counsel challenged these counterclaims by filing a motion to dismiss on September 29, 2014.

20. Pursuant to the Court's notice requirements, this motion was set for hearing on November 6, 2014. Prior to this hearing, the Court was scheduled to hear Plaintiffs' motion for conditional certification on October 2, 2014. At the October 2, 2014, however, the Court also addressed Defendant's counterclaims. The Court explained that it perceived the counterclaims to be an intimidation tactic used by Defendant to quell the litigation urged Defendant to drop the counterclaims. Four days later, on October 6, 2014, Sprint withdrew its counterclaims.

21. Although Sprint withdrew its counterclaims, it continued to pursue 32 affirmative defenses. Finding them lacking factual support and/or legal authority, Plaintiffs filed a motion to dismiss. This motion was fully briefed. (*See* Dkt. Nos.71-72, 91, 94.) Plaintiffs' attacks on Defendant's affirmative defenses were well-taken by the Court, resulting in the Court granting Plaintiffs' motion to strike on November 7, 2014. (Dkt. No. 100.)

22. **The total lodestar for Class Counsel on these pleading matters is $176,465.50.** A true and correct summary of all three firms' lodestars by project is attached as **Exhibit SW12.** To help illustrate the work that reasonably had to be done in order to achieve the excellent settlement result on behalf of the CMs, I now summarize Class Counsel's work:

| Project Description | SW | HH | RG |
|---|---|---|---|
| Pleadings | $6,520.00 | $492.50 | $11,550.00 |
| *Guilbaud* Complaint | | $5,079.50 | $22,355.00 |
| *Guilbaud* First Amended Complaint | $845.00 | $1,913.00 | $7,080.00 |
| *Guilbaud* Second Amended Complaint | $3,980.00 | $1,559.50 | $14,425.00 |
| *Smith* Complaint | $21,136.50 | $630.50 | |
| *Guilbaud* Third Amended Complaint | $47.50 | $1,975.50 | |
| Consolidated Collective and Class Action Complaint | $21,178.50 | $1,802.00 | |

| Project Description | | | |
|---|---|---|---|
| Counterclaims, Motion to Strike Defendant's Counterclaims | $34,874.00 | $5,286.50 | $13,735.00 |
| **TOTAL PER FIRM** | **$88,581.50** | **$18,739.00** | **$69,145.00** |
| **TOTAL COMBINED BILLING** | **$176,465.50** | | |

**Case Management and Status Conferences**

23. In light of the complexity of the matter and the numerous issues that arose during litigation, the Parties prepared several case management statements for the Court. The Parties also appeared before the Court on many occasions to address the status of the case and scheduling. **The total lodestar for Class Counsel on these matters is $63,139.50.** *See* **Exhibit SW14.** To help illustrate the work that reasonably had to be done in order to achieve the excellent settlement result on behalf of the CMs, I now summarize Class Counsel's work:

| Project Description | SW | HH | RG |
|---|---|---|---|
| Case Management/Conferences/ Status Reports | $2,924.00 | $472.00 | $20,300.00 |
| *Guilbaud* Joint Case Management Statement | $150.00 | $145.50 | $5,320.00 |
| *Smith* Status Report | $4,116.00 | | |
| *Smith* Stipulation and Proposed Order to Continue CMC | $1,276.50 | | |
| *Guilbaud* Joint Case Management Statement, 5/23/14 CMC | $2,122.50 | $921.50 | $3,550.00 |
| Joint Case Management Statement, 1/20/15 CMC | $6,773.50 | $48.50 | |
| Stipulation and Proposed Order to Continue Deadlines in 12/16/14 Order | $7,523.00 | $436.50 | |
| Stipulation and Proposed Order to Continue Deadlines in 5/20/15 Order | $7,060.00 | | |
| **TOTAL PER FIRM** | **$31,945.50** | **$2,024.00** | **$29,170.00** |
| **TOTAL COMBINED BILLING** | **$63,139.50** | | |

**Discovery**

24. Plaintiffs served Amended Disclosures on September 8, 2014 to update their witness list.

25. To facilitate discovery, the Parties negotiated and agreed to a Stipulated Protective Order, which was entered by the Court on January 2, 2015. Class Counsel carefully reviewed and revised this document before it was filed. Plaintiffs served another set of formal discovery on March 2, 2015. These requests included: (1) Plaintiffs' Special Interrogatories, Set Two, which contained an

9

additional 21 interrogatories; and (2) Plaintiffs' Request for Production of Documents, Set Two, which brought the request total to 74. Defendant served responses on April 13, 2015. Many of the responses contained objections without substantive responses, necessitating further meet and confer efforts. The discovery exchange remained contentious.

26. To facilitate case resolution, the Parties agreed to focus on an informal exchange of discovery for purposes of mediation. In the end, the Parties engaged in extensive discovery, including written discovery and exchanging over 2,000 pages of documents including: policies and procedures regarding timekeeping, overtime, compensation, and meal and rest breaks, payroll documents, and personnel files. Defendant also produced 18 excel files with payroll and timekeeping data of the Opt-in and Named Plaintiffs. Class Counsel also interviewed over 300 CMs and collected declarations from the Named Plaintiffs, several Opt-in Plaintiffs, and Sprint District Managers. Class Counsel also made a thorough study of the legal principles applicable to the claims asserted against Defendant.

27. **The total lodestar for Class Counsel on these matters is $159,911.00.** *See* **Exhibit SW15.** To help illustrate the work that reasonably had to be done in order to achieve the excellent settlement result on behalf of the CMs, I now summarize Class Counsel's work:

| Project Description | SW | HH | RG |
|---|---|---|---|
| Discovery | $22,707.00 | $4,413.50 | $31,560.00 |
| Formal Written Discovery | $48,175.00 | $7,880.50 | $31,925.00 |
| Stipulated Protective Order | $850.00 | | $12,400.00 |
| **TOTAL PER FIRM** | **$71,732.00** | **$12,294.00** | **$75,885.00** |
| **TOTAL COMBINED BILLING** | **$159,911.00** | | |

**Collective Action Certification**

28. On August 21, 2014, Plaintiffs filed their motion for conditional certification. This motion was supported by a memorandum of law, researched and drafted by Class Counsel. In addition, Class Counsel interviewed and prepared declarations for Sprint employees, who provided declarations in support of the motion. The briefing for this motion was contentious. Defendant formally moved to strike Plaintiffs' reply brief and supporting evidence. Defendant's objections

10

required formal, written responses from Plaintiffs. Class Counsel worked quickly and effectively to present these matters to the Court. The Court properly considered all submissions from Plaintiffs. On October 3, 2014, the Court granted Plaintiffs' motion.

29. Following the Court's order, Class Counsel were concerned that Defendant would attempt to improperly communicate with potential CMs. These concerns arose from Defendant's vehement opposition to the litigation as well as the counterclaims Sprint filed against its workers involved in the litigation. Accordingly, on October 8, 2014, Plaintiffs filed a Motion for Protective Order to Prevent Defendant From Communicating with Employees During the Notice and Opt-in Period. The Parties fully briefed this motion.

30. Additional issues arose with respect to the Parties' attempts to finalize the notice and opt-in forms to be circulated to potential CMs. The Parties reached an impasse on the language of these forms, which required Court assistance. Class Counsel drafted and submitted a letter to the Court outlining the issues, as well as proposed forms. At a hearing before the Court on November 20, 2014, the Court reviewed the notice and opt-in forms with the Parties to confirm the final language.

31. There were other problems as well, which required additional attention, research, and work on the part of Class Counsel. Specifically, Defendant failed to produce the CM information for purposes of notification of the lawsuit pursuant to the Court's October 3, 2014 order. To ensure that the litigation continued to progress pursuant to this order and that notice was provided to CMs of the case, Plaintiffs were forced on November 13, 2014 to present the Court with a Request for Civil Contempt Order Holding Defendant in Contempt for Failing to Produce Proposed Collective Members' Information.

32. The Class Administrator finally disseminated the notice to CMs on December 17, 2014, with an opt-in deadline of March 17, 2015. Class Counsel began the ongoing process of obtaining executed opt-in consent forms from CMs and filing those forms with the Court. This process required Class Counsel to conduct outreach efforts with CMs and also respond to calls from CMs seeking information about the lawsuit. During these three months, Class Counsel obtained and filed over 2,000 opt-in forms. Prior to filing these documents to the Court, Class Counsel reviewed them to ensure that they were properly executed and to redact certain private information, such as

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

1  addresses and birthdates. Class Counsel's review and submission of these documents was

2  significant to this case, as the statute of limitations on opt-in Plaintiffs' respective FLSA claims

3  continued to run until they affirmatively opted-in to the action. Ultimately, approximately 2,000

4  Sprint employees opted into this case as Collective members.

5      33. **The total lodestar for Class Counsel on these matters is $438,419.00.** *See* **Exhibit**

6  **SW17.** To help illustrate the work that reasonably had to be done in order to achieve the excellent

7  settlement result on behalf of the CMs, I now summarize Class Counsel's work:

| Project Description | SW | HH | RG |
|---|---|---|---|
| Collective Action Certification | $111,412.00 | $4,000.50 | $29,115.00 |
| Notices of Consents to Join Collective Action | $47,812.50 | $944.50 | $22,115.00 |
| Motion for Conditional Certification | $140,345.00 | $15,526.50 | $29,115.00 |
| Motion for Protective Order | $6,277.00 | $2,764.50 | |
| Request for Civil Contempt Order | $8,589.00 | $582.00 | $1,315.00 |
| Notice to Collective Members | $16,565.50 | $1,940.00 | |
| **TOTAL PER FIRM** | **$331,001.00** | **$25,758.00** | **$81,660.00** |
| **TOTAL COMBINED BILLING** | **$438,419.00** | | |

**Class Outreach and Communications**

34. Class Counsel spent extensive time communicating with the Named Plaintiffs and CMs in this case. A large portion of these communications occurred during the initial phases of the case, when Class Counsel was conducting fact investigations to determine the scope of Plaintiffs' class and collective allegations. These communications generally involved interviewing Plaintiffs and CMs regarding their respective work experiences while employed by Defendant. After Plaintiffs' FLSA claims were conditionally certified and notice was distributed to the Class, Class Counsel also fielded calls from opt-in Plaintiffs requesting information about this case. After opt-in Plaintiffs submitted their opt-in consent forms, Class Counsel regularly provided them with telephonic status updates regarding this lawsuit. Following preliminary approval of the Settlement as to the Class and final approval of the Settlement as to the Collective, Class Counsel provided status updates to CMs who contacted them regarding the progress of settlement administration.

12

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

1   Class Counsel also recorded updated contact information for these individuals to ensure their

2   checks were sent to the proper address.

3       35. Following conditional certification and Court-approved notice to CMs, Class Counsel

4   engaged in significant outreach efforts. Specifically, Class Counsel interviewed over 300 CMs. This

5   was an extremely time-consuming, intensive, and critical aspect of the litigation. Class Counsel

6   spent several hours speaking with each individual CM to learn about their employment experiences

7   at Sprint and assess the wage and hour violations at issue in this case. Class Counsel also collected

8   declarations from the Named Plaintiffs, several Opt-in Plaintiffs, and Sprint District Managers.

9   Ultimately, this information was instrumental in negotiating a Settlement of this action. Moreover,

10  this information would have been used in support of a certification motion as well as in response to

11  a possible decertification motion filed by Defendant.

12      36. **The total lodestar for Class Counsel on these matters is $311,053.00.** *See* **Exhibit**

13  **SW16.** To help illustrate the work that reasonably had to be done in order to achieve the excellent

14  settlement result on behalf of the CMs, I now summarize Class Counsel's work:

| Project Description | SW | HH | RG |
|---|---|---|---|
| Communicating/Coordinating Communications with Opt-in Plaintiffs | $243,587.50 | $58,960.50 | $8,505.00 |
| **TOTAL PER FIRM** | **$243,587.50** | **$58,960.50** | **$8,505.00** |
| **TOTAL COMBINED BILLING** | **$311,053.00** | | |

19  **Related Cases: _Bui, Esquivel, Salamanca_**

20      37. There have been several similar pending wage and hour cases against Sprint to which

21  Plaintiffs have had to respond and which required significant time and effort on the part of Class

22  Counsel. **The total lodestar for Class Counsel on these matters is $164,685.00.** *See* **Exhibits**

23  **SW20-SW22.**

24      38. ***Bui***: Class Counsel learned of *Bui* on January 13, 2015. That same day, Sprint filed a Notice

25  of Related Case. Plaintiffs filed a response to this notice on January 19, 2015. Class Counsel also

26  engaged in meet and confer efforts with the *Bui* Parties and Sprint in attempts to coordinate *Bui*

27  with the above-captioned matter. The *Bui* Parties refused to transfer and coordinate *Bui* with

28

*Guilbaud.* As a result, on January 29, 2015, Plaintiffs filed a motion to intervene and dismiss, stay, and/or transfer *Bui*. The *Bui* Parties scheduled a mediation for March 9, 2015, which they precluded Plaintiffs from attending. As a result, Plaintiffs filed an *ex parte* motion to stay the mediation. The *Bui* parties went forward with the March 9, 2015 mediation, and filed a notice of settlement that day. On May 18, 2015, Bui filed a motion for preliminary approval of the settlement. Plaintiffs filed an opposition to the motion challenging, among other things, the scope of the proposed settlement class, the value of the settlement in the absence of supporting evidence, the amount requested for attorneys' fees and service awards and the adequacy of the Named Plaintiffs. Ultimately, the Parties in both actions met and conferred and reached an agreement. Plaintiffs therefore filed a withdrawal of their opposition to the *Bui* settlement on December 16, 2015. To help illustrate the work that reasonably had to be done in order to achieve the excellent settlement result on behalf of the CMs, I now summarize Class Counsel's work:

| Project Description | SW | HH | RG |
|---|---|---|---|
| *Bui* Action | $13,244.50 | $7,581.00 | $7,350.00 |
| Response to Notice of Pendency of *Bui* | $3,253.50 | $630.50 | $3,375.00 |
| Motion to Intervene/Opposition to Preliminary Approval/Withdrawal | $77,957.50 | $19,070.00 | $2,775.00 |
| Ex Parte Application to Stay *Bui* Mediation | $6,301.00 | $1,365.50 | $1,050.00 |
| **TOTAL PER FIRM** | **$100,756.50** | **$28,647.00** | **$14,550.00** |
| **TOTAL COMBINED BILLING** | **$143,953.50** | | |

39. **Esquivel:** Class Counsel learned of another pending matter, *Esquivel v. Sprint*. Plaintiff Esquivel filed a joinder to Plaintiffs' opposition to the *Bui* settlement.[1] Class Counsel researched this case and considered possible response strategies, including filing a motion to intervene. Class Counsel concurrently prepared a draft of the motion and also engaged in meet and confer efforts with Sprint's attorneys. Class Counsel decided not to intervene, and ultimately *Esquivel* reached a

---

[1] *Esquivel* was filed in California Superior Court, County of Marin on April 23, 2015 and was removed to the Northern District of California June 29, 20150. The case is assigned to Magistrate Judge Laurel Beeler as Case No. 3:15-cv-03022-LB.

1  settlement. To help illustrate the work that reasonably had to be done in order to achieve the

2  excellent settlement result on behalf of the CMs, I now summarize Class Counsel's work:

3

4

| Project Description | SW | HH | RG |
|---|---|---|---|
| *Esquivel* Action | $15,153.50 | $242.50 | |
| | | | |
| **TOTAL PER FIRM** | **$15,153.50** | **$242.50** | **$0.00** |
| **TOTAL COMBINED BILLING** | **$15,396.00** | | |

5

6

7

8  40. ***Salamanca:*** Sprint alerted this Court to the *Salamanca* case when it filed an Administrative

9  Motion to Consider Whether Cases Should Be Related. Class Counsel reviewed this motion,

10  researched *Salamanca*, and filed a response to the motion. Class Counsel and Sprint agreed that the

11  matters should not be related at this time, to which this Court concurred and issued an order keeping

12  the matters separate. To help illustrate the work that reasonably had to be done in order to achieve

13  the excellent settlement result on behalf of the CMs, I now summarize Class Counsel's work:

14

| Project Description | SW | HH | RG |
|---|---|---|---|
| *Salamanca* Action | $309.00 | | $280.00 |
| Response to Defendant's Motion of Whether to Relate Salamanca | $4,111.00 | $145.50 | $490.00 |
| **TOTAL PER FIRM** | **$4,420.00** | **$145.50** | **$770.00** |
| **TOTAL COMBINED BILLING** | **$5,335.50** | | |

15

16

17

18

19  **Mediation, Settlement Negotiations, and Settlement Approval Motions**

20  41. The Parties agreed to mediate this case on behalf of the over 2,000 individuals, who opted in

21  The Parties agreed to mediate this case on behalf of the over 2,000 individuals, who opted in to this

22  case with respect to both their FLSA and California claims. The Parties mediated this dispute on

23  July 27, 2015 before Judge Infante. The Parties engaged in arm's-length negotiations, culminated

24  by the execution of a memorandum of understanding which set forth settlement terms resolving the

25  matter. *Id.* After the mediation, counsel for the Parties worked to finalize the settlement for the CMs

26  and corresponding notice documents, subject to the Court's approval. The Settlement Agreement

27  was fully-executed on November 30, 2015.

28

42. Class Counsel was required to present the Settlement to the Court for preliminary approval as to the Class and final approval as to the Collective. Accordingly, Class Counsel drafted and prepared the appropriate papers and submitted them on December 7, 2015. Class Counsel researched applicable case law defining the standard for approval of FLSA collective and California wage and hour class action settlements. Class Counsel also researched case law approving service awards similar to the ones distributed to the Named Plaintiffs under the Settlement. Finally, Class Counsel drafted and revised the approval papers to ensure compliance with applicable case law and also the Settlement. After preparing drafts of the approval papers, Class Counsel sent them to Defendant's Counsel to review and revise. Counsel for the Parties thereafter conferred regarding revisions to the approval papers before ultimately reaching agreement. The Court granted preliminary approval of the Settlement as to the California Class and final approval of the Settlement as to the Collective on January 14, 2016.

43. Class Counsel was likewise obligated to request that the Court finally approve the Settlement following the administration process detailed in the settlement agreement. Class Counsel drafted and prepared final approval papers that have been submitted to the Court concurrently with this fee motion. The work Class Counsel performed on the final approval papers is substantially similar to work the Class Counsel performed on the preliminary approval papers described above. Class Counsel also spent significant time preparing this motion. Beyond drafting this motion and researching applicable case law, Class Counsel also conferred with each other regarding the arguments to include herein and the most effective way to present Class Counsel's fees and costs to the Court. In addition, Class Counsel undertook the time-consuming project of reviewing each individual bill, or time entry, for this case and determining whether each entry warranted a request for recovery. This project resulted in Class Counsel excising a large portion of the fees they incurred during this case. Finally, rather than present a large, disorganized file of time entries to the Court, Class Counsel reasoned that the most effective way for the Court to review Plaintiffs' Counsel's attorneys' fees is on a project-by-project basis. Accordingly, Class Counsel assigned each time entry a "project code," which allowed them to filter from all of the time entries only those

1   assigned to a particular project. For example, based on their coding system, Class Counsel was able

2   to filter all the time entries associated with pleadings or conditional certification.

3      44. **The total lodestar for Class Counsel on these matters is $212,510.00.** *See* **Exhibit**

4   **SW19.** To help illustrate the work that reasonably had to be done in order to achieve the excellent

5   settlement result on behalf of the CMs, I now summarize Class Counsel's work:

| Project Description | SW | HH | RG |
|---|---|---|---|
| Settlement Negotiations and Mediation | $1,315.50 | | $8,270.00 |
| Settlement Negotiations | $27,883.00 | $2,301.00 | $7,800.00 |
| Mediation | $154,678.50 | $8,582.00 | $1,680.00 |
| **TOTAL PER FIRM** | **$183,877.00** | **$10,883.00** | **$17,750.00** |
| **TOTAL COMBINED BILLING** | **$212,510.00** | | |

**Communicating with the Administrator**

45. Class Counsel's communications with the Administrator in this case can generally be

divided into two categories: non-settlement and settlement. With respect to non-settlement

communications, after the Court granted Plaintiffs' motion for conditional certification, Class

Counsel communicated with the Administrator regarding distribution of the class notice to opt-in

CMs. Class Counsel also regularly communicated with the Administrator to provide updated

contacted information for CMs. As to settlement communications, Class Counsel generally

communicated with the Administrator regarding the administration of the settlement. Class

Counsel, for example, communicated with the Administrator regarding distributing notice packets

to CMs. Class Counsel also communicated with the Administrator regarding pending deadlines

called for in the settlement agreement. In addition, Class Counsel communicated with the

Administrator regarding preparing a declaration in support of the final approval of the settlement.[2]

---

[2] Plaintiffs will provide a further update to the Court after the opt-out, objection, and deadline passes. Specifically, the Court's January 15, 2016 order as amended by the February 24, 2016 stipulation provides that "Class Counsel [is] to file Heffler's verification that the Class Notice has been completed" by "April 14, 2016."

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

1    **The total lodestar for Class Counsel on these matters is $12,152.50.**   *See* **Exhibit SW23.** To

2    help illustrate the work that reasonably had to be done in order to achieve the excellent

3    settlement result on behalf of the CMs, I now summarize Class Counsel's work:

4

| Project Description | SW | HH | RG |
|---|---|---|---|
| Communicating with Notice/Settlement Administrator | $11,958.50 | $194.00 | |
| **TOTAL PER FIRM** | **$11,958.50** | **$194.00** | **$0** |
| **TOTAL COMBINED BILLING** | **$12,152.50** | | |

8

9                              **ATTORNEYS' FEES AND COSTS**

10   46. This case was difficult to litigate and was work-intensive not only because of the scope of

11   issues in dispute, but also because of Defendant's stalwart defense. This section discusses efforts by

12   Class Counsel to minimize duplication of efforts and to assign attorneys to discrete tasks. In

13   addition, I address litigation costs, attorney rates, and the efforts I have made to exercise billing

14   judgment in connection with this fee application.

15   **SWCKW firm partners and their role in the case**

16   47. I was the lead partner on this case for SWCKW. I directed and supervised the work of the

17   associates at my firm, conducted legal analysis of the facts presented by this case, and assisted in

18   presenting legal arguments to opposing counsel. I was significantly involved in all aspects of the

19   case, dictating the litigation strategy. I reviewed and revised all pleadings, submissions, and

20   correspondence in this action, including the complaint, the motions (including conditional

21   certification, motion to strike Defendant's counterclaims, motion to dismiss Defendant's affirmative

22   defenses, the *Bui* motions, and the settlement motions); managed the damages analysis to value the

23   claims in the case and to facilitate certification as well as settlement negotiations; spearheaded

24   mediation and settlement negotiation efforts, including taking lead on drafting all settlement

25   documents; and attended and participated in all hearings and conferences before the Court. I also

26   oversaw the CM outreach/interview process and reviewed the results of the interviews. Below is a

27   partial list of the biographies and descriptions of the work performed by those attorneys and

28   paralegals from my firm, who worked on the case.

48. Todd Schneider is the founding partner of SWCKW. Mr. Schneider received his Juris Doctor in December 1990 from the University of Denver, Sturm College of Law. In June 1992, he was licensed to practice law in California. Mr. Schneider has an extensive background in both employment and consumer-rights litigation, and has represented plaintiffs at all levels including the federal and state trial courts, the California Court of Appeal, the California Supreme Court, the Ninth Circuit Court of Appeals, and the United States Supreme Court. The litigation of wage and hour class action matters under both state and federal law are a significant part of Mr. Schneider's day-to-day practice. He has been lead counsel in hundreds of employment cases filed under various statutes, including the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the California Labor Code, the California Fair Employment and Housing Act, and other analogous statutes. Several of these cases raised issues of first impression. Mr. Schneider was the President of The San Francisco Trial Lawyers Association. He also served on the Board of Governors of the Consumer Attorneys of California (including as former Vice President) and the Judicial Council Advisory Committee On Civil Jury Instructions. He is a frequent lecturer and regularly appears as a panelist at MCLE seminars regarding civil rights, wage and hour class actions and employment matters. He won the San Francisco Trial Lawyers Association's 2005 Trial Lawyer of the Year award and was a finalist for the Consumer Attorneys of California's Consumer Attorney of the Year award for 1996. He has been named a Super Lawyer in the area of class actions and mass torts by San Francisco Magazine. Mr. Schneider's hourly rate is $795.00 per hour, which is within the market range charged by attorneys of comparable experience, expertise and reputation. Mr. Schneider appeared at the mediation and led the subsequent negotiations that resulted in the settlement of this case. He also appeared at hearings and status conferences and analyzed Defendant's confidential financial records.

**SWCKW firm associates and their role in the case**

49. Nicole N. Coon is a fifth-year associate at SWCKW. Ms. Coon's practices focuses on employment and civil rights individual and class actions, including wage and hour class actions. Ms. Coon is admitted to practice law in the states of California, Illinois, and Wisconsin and before the United States District Court of Northern District of California and the United States District

Court of the Central District of California. Ms. Coon is a member of the Lawyers' Club of San Francisco - Inns of Court, where she serves as MCLE Program Co-Chair. She is also a member of and Queen's Bench Bar Association and serves as the Amicus Briefs Committee Co-Chair. Ms. Coon also holds memberships with the San Francisco Trial Lawyers Association and the American Bar Association. She serves as a mentor for adolescent girls in Juvenile Hall. Ms. Coon also regularly volunteers as a Moot Court Judge and Coach at local Bay Area law schools. Ms. Coon graduated with Pro Bono Honors from the University of Iowa College of Law in 2010. She received her Bachelor of Arts in English and Legal Studies, with Comprehensive Honors, from the University of Wisconsin-Madison in 2006. Prior to joining Schneider Wallace Cottrell Konecky Wotkyns LLP, Ms. Coon was a judicial law clerk for the Honorable Maxine A. White, Milwaukee County Circuit Court. She also was a judicial law clerk for the San Francisco Superior Court in the Civil, Probate, and Appellate Divisions for Superior Court Presiding Judges Katherine Feinstein and Cynthia Ming-mei Lee and Appellate Division Presiding Judges Curtis E.A. Karnow and Anne-Christine Massullo. Ms. Coon's rate is $500.00 per hour, which is line with that of attorneys with similar qualifications and experience. Ms. Coon was the primary associate who researched and drafted pleadings and motions, drafted and responded to discovery (including meet and confer efforts), communicated with CMs regarding the status of the case as well as to prepare for certification and settlement negotiations, and attended conferences, hearings, and mediation.

50. A. Chowning Poppler was formerly an associate at SWCKW. Ms. Poppler's practice focused on wage and hour class actions. Ms. Poppler received her B.A. from University of Southern California. In 2010, she received her Juris Doctor from University of San Diego School of Law. Ms. Poppler's rate was $475.00 per hour, which is in line with that of attorneys with similar qualifications and experience. Ms. Poppler assisted with early stage investigations and research. She also interviewed Plaintiffs and CMs and assisted with drafting the complaint.

51. Vincent Fisher was formerly as associate at SWCKW. Mr. Fisher's practice focused on wage and hour class actions. Mr. Fisher received his B.A. from San Francisco State University. In 2010, he received his Juris Doctor from John F. Kennedy School of Law. In 2014, Mr. Fisher also earned an LLM from Santa Clara University School of Law. Mr. Fisher's rate was $450.00 per

1    hour, which is in line which that of attorneys with similar qualifications and experience. Mr. Fisher

2    assisted with research and writing relating to responding to the pendency of the *Bui* action.

3        52. Jacob Gould was formerly an associate at SWCKW. Mr. Gould's practice focused on wage

4    and hour class actions. Mr. Gould received his B.A. from Wheaton College. In 2013, he received

5    his Juris Doctor from University of Pacific, McGeorge School of Law. Mr. Gould's rate was

6    $350.00 per hour, which is in line with that of attorneys with similar qualifications and experience.

7    Mr. Gould assisted with class outreach, including interviews and declaration drafting.

8        53. Sintia Saenz is a staff attorney/paralegal at SWCKW. She graduated from St. Thomas

9    University School of Law, and obtained her Florida Bar license in 2008. She has been a staff

10   attorney/paralegal at our firm for two years, and has assisted in document review and has prepared

11   declarations and pleadings in numerous class action matters, including several wage and hour cases.

12   Our firm seeks the rate of $350.00 per hour for her work. In this matter, Ms. Saenz conducted class

13   outreach and interviews, conducted research, and drafted pleadings.

14       54. Christine Knowles is a contract attorney at SWCKW. She graduated from Santa Clara

15   University School of Law in 2013, and obtained her California Bar license the same year. She has

16   been a contract attorney at our firm for one year, and has assisted in document review and

17   conducted class outreach. Our firm seeks the rate of $350.00 for her work. In this matter, Ms.

18   Knowles reviewed and analysis class member interviews to prepare for mediation and certification

19   efforts.

**SWCKW firm paralegals and their role in the case**

20       55. John Hwang is the Office Manager at SWCKW. He is a 1994 graduate of the State

21   University of New York at Binghamton. Mr. Hwang previously worked as a paralegal for eighteen

22   years. Mr. Hwang has experience in all aspects of class actions, including document review, class

23   outreach, declaration preparation, opt-in consent form processing, damages analysis, and mediation

24   preparation – among other experience. Mr. Hwang also speaks fluent Spanish, is conversant in

25   Korean, and assists with Spanish translations for the firm's Spanish-speaking clients. Mr. Hwang

26   also has extensive experience with data management, IT, and with project management.  Our firm

27   seeks the rate of $250.00 per hour for his work. In this matter, Mr. Hwang assisted with and

28

oversaw class outreach, helped process and file opt-in forms, and assisted with preparing data for mediation and settlement negotiations.

56. Rebecca Rosales is a paralegal at SWCKW. She attended City of College of San Francisco. Prior to working for SWCKW, she worked as a legal assistant for two years at another San Francisco law firm. Ms. Rosales has worked at SWCKW for nearly seven years. She has assisted with document review, conducted outreach, and prepared declarations in numerous class action matters, including several wage and hour cases. Ms. Rosales is also fluent in Spanish and assists with Spanish translations for the firm's Spanish-speaking clients. Our firm seeks the rate of $250.00 per hour for her work. In this matter, Ms. Rosales assisted with class outreach and processing of opt-in forms.

57. Scott Gordon is a paralegal at SWCKW. He earned his B.S from the University of Colorado, Boulder in 2000. He is a 2010 graduate of Temple University Beasley School of Law. He has worked at SWCKW for two years, and has assisted in document review and has prepared declarations in numerous class action matters, including several wage and hour cases. Our firm seeks the rate of $250.00 per hour for his work in this matter. Mr. Gordon assisted with legal research, document review, class outreach, and processing of opt-in forms.

58. Charles Greenlee was formerly a paralegal at SWCKW. He is a 2007 graduate of University of California, Santa Cruz. Mr. Greenlee also possesses an ABA approved Paralegal Certificate from San Francisco State University, which he obtained in 2009. He was a paralegal at our firm for five years, and has assisted in document review and prepared declarations in numerous class action matters, including several wage and hour cases. Our firm seeks the rate of $200.00 per hour for his work. In this matter, Mr. Greenlee assisted with processing and filing CM opt-in forms.

59. Tracey McClain was formerly a law clerk at SWCKW.  She graduated from Golden Gate University School of Law.  Our firm seeks the rate of $250.00 per hour for her work.  Ms. McClain conducted significant class outreach efforts in this case.

60. Sam Marks is a law clerk at SWCKW. Our firm seeks the rate of $200.00 per hour for his work. In this matter, Mr. Marks conducted class outreach.

61. Rob Shaw was a former paralegal/legal assistant at SWCKW. He earned his B.A. from the

University of California, Berkeley and has two years of law school experience at Benjamin N. Cardozo School of Law. He has worked as a paralegal for seven years. Our firm seeks the rate of $150.00 for his work. Mr. Shaw conducted class outreach.

62. Tracy Eastman is a law clerk at SWCKW. Our firm seeks the rate of $150.00 per hour for her work. In this matter, Ms. Eastman conducted class outreach.

**The Court should apply the common fund doctrine to award attorneys' fees.**

63. A common fund award of attorneys' fees and costs is appropriate here because Plaintiffs have created an ascertainable common fund from which reasonable attorneys' fees can be recovered. The proposed Settlement creates a common fund of $3,370,000.00 that will substantially benefit approximately 2,035 (718 California and 1,317 Collective Members) Sprint employees. Each participating CM will receive an ascertainable, *pro-rata* share of the Settlement. In addition, Plaintiffs' requested fee award constitutes a fair charge to the CMs for excellent result obtained by the Settlement. Because each participating CM will receive a portion of the fixed Settlement fund based on its distribution formula, equity requires that they also contribute a *pro-rata* share to the attorneys' fees that netted them this positive result. Moreover, the requested one-third of the fund is actually equal to the fee that Class Counsel would have expected if they had negotiated individual retainer agreements with each CM, which is typical in order to attract competent counsel in the marketplace for representation in wage and hour class actions of this nature. Thus, the award ensures that Class Counsel receive an appropriate fee award for the actual benefit conferred to the Class.

**Class Counsel's fee award is reasonable under the circumstances of this case.**

**The fee request is justified by the excellent monetary results.**

64. Here, Plaintiffs, through Class Counsel, achieved a high level of success through the monetary results of the Settlement, which justifies the requested fee award. The Settlement provides $3,370,000.00 to the CMs. The average CM, who belongs to both the Class and Collective, will receive a net award of approximately $1,531.11 and the maximum expected net award of

approximately $3,603.9.[3] Using the average award of 1,531.11 as well as the other averages derived by Class Counsel in their damages analysis (including an average hourly wage of $12.74 and average weekly hours worked of 41.31), the average award for CM, who belongs to both the Class and Collective, is approximately 3 full weeks of wages.[4] In addition, the gross recovery represents approximately 14% of Plaintiffs' reasonable estimate of the likely recovery at trial if they were to prevail, which they have calculated totals about $14 million. Moreover, because this is a non-reversionary settlement with respect to the California Class, the Court is assured that the entire net settlement amount will be distributed to the CMs.[5] Even compared against other larger settlements, this degree of recovery is consistent with amounts routinely found to be commensurate with a 33 1/3% fee award.

**The risks associated with this litigation justified the fee request.**

65. Class Counsel were subjected to the risk of litigating against a company with abundant financial resources: Defendant Sprint which is one of the largest wireless network operators in the United States. Class Counsel knew when they accepted this case that Defendant had the resources to hire aggressive and skilled attorneys who would provide zealous representation. Indeed, Defendant has been represented by a national law firm in this action – McGuire Woods LLP – which advertises itself as having over 1,000 attorneys in 21 offices nationwide.

66. Sprint asserted numerous complete liability defenses against Plaintiffs' claims, many of which were supported by the declarations gathered and produced by Defendant. For example, Sprint raised several defenses to Plaintiffs' off-the-clock claims, including that (1) CMs did not perform work off-the-clock before, during, and/or after their scheduled shifts; (2) any off-the-clock work

---

[3] On March 9, 2015, the *Bui* parties filed a notice of settlement and a subsequent motion for preliminary approval of the class action settlement. The Court granted the motion on February 24, 2016. The CMs in this action will receive a greater settlement award that the class members in *Bui*. This is in large part to the significant, exceptional work conducted by Class Counsel. The settlement award in that action is less than that here. The net settlement amount to the approximately 5,012 class members is $3,159,745.00.

[4] There are 88 individuals who are not receiving an award. They have zero qualifying workweeks in the Class and Collective periods according to Sprint's data. All CMs (including those with zero workweeks) were given notice and the opportunity to dispute their workweek figures to ensure proper settlement awards.

[5] Defendant will only release the FLSA claims of those Collective Members who case their checks. *Id.*

was *de minimis*; (3) Sprint properly provided CMs with legally compliant meal and rest breaks; (4) Sprint paid CMs for all hours worked, including overtime and bonus/commission pay; (5) Sprint properly reimbursed CMs for any business expenses, including uniforms; and (6) Sprint provided CMs with proper wage statements. Sprint also intended to raise several defenses against class certification, including that (1) that individualized determinations regarding the type and amount of off-the-clock work, if any, completed by CMs would overwhelm common issues; (2) that individualized determinations regarding the amount of wages owing (including bonus/commission pay), if any, would overwhelm common issues; and (3) whether CMs actually took meal and rest breaks would overwhelm any common issues. If Sprint succeeded on any of these or other defenses to class certification, Plaintiffs would be left with only their individual claims and the Class and Collective would potentially recover nothing.

67. If this case were to go to trial as a class and collective action, Class Counsel estimates that fees and costs would exceed $2,000,000.00. Litigating the class and collective action claims would require substantial additional preparation and discovery. It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiffs' claims, a questionable feat in light of recent developments in wage and hour and class and collective action law as well as the legal and factual grounds that Sprint has asserted to defend this action.

68. Finally, because this case was pursued as a collective action, Class Counsel also faced the risk of decertification or of failing to establish a class-wide pattern or practice of off-the-clock violations at trial. These risks were particularly prominent given Defendant's staunch position that it has observed at all relevant times its obligations under the law.

**Class Counsel's skill and quality work justify the fee request.**

69. Class Counsel have demonstrated substantial skill, diligence, and high quality of work in achieving the proposed Settlement and its creation of a common fund of $3,370,000.00. Moreover, Class Counsel are highly-regarded members of the bar.

**The contingency nature of the fee and financial burden carried by Class Counsel justifies the fee request.**

70. From the outset of this case, Class Counsel have been aware of the risks involved in litigating this case against Defendant. Perhaps chief among these risks was Class Counsel's agreement to prosecute the claims of Plaintiffs and the CMs on a contingent fee basis. In so doing, Class Counsel assumed the responsibility of representing Plaintiffs and the CMs without any assurance of compensation or reimbursement for attorneys' fees and costs expended.

71. Class Counsel has worked on this case since before September 2013, and in effect has loaned their legal services to the CMs since that time. Class Counsel has prosecuted this case on a wholly contingent basis, and done so at great risk of never receiving any compensation due to the risky nature of class action litigation in general, and due to the developing law in this Circuit with respect to "off-the-clock" and missed break claims, particularly in the class action context. In addition to the contingent risk of this case, Class Counsel's representation of Plaintiffs and the CMs in this action forced them to forego other cases, including matters paid on a traditional hourly basis.

**CMs' positive reaction to the requested fee award supports its approval.**

72. Here, over 30 days after Notice of the Settlement was mailed to the Class, no CM has objected to the Settlement despite being informed of Plaintiffs' requested attorneys' fees and costs award.[6] This positive reaction further underscores its reasonableness.

**The Lodestar Cross-Check Confirms the Reasonableness of the Fee Award.**

**Class Counsel's hourly rates are reasonable.**

73. The hourly rate my law firm seeks for my own legal services in this case is $795.00. Having reviewed the market, my firm has determined that my rate is within the market range charged by attorneys of comparable experience, expertise, and reputation for similar services in the San Francisco Bay Area.

74. The 2013-2016 rates that are sought herein for the work of SWCKW attorneys represent

---

[6] The deadline for California Class Members to postmark requests to opt-out, objections to the Settlement, or dispute the information in the Notice is April 4, 2016. Plaintiffs will provide a further update to the Court after the opt-out, objection, and deadline passes.

DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

only a modest increase over the rates that were approved by other courts as being reasonable in 2016, 2013, 2012, 2011, and 2010.

75. The federal and state courts in California have consistently approved the rates charged by the attorneys in this case, including the hourly rates of SWCK. For example, on January 11, 2016 in *Winans v. Emeritus Corporation,* the Northern District of California approved the $750.00 hourly rate of one of SWCKW's partners. A true and correct copy of the order is attached as **Exhibit SW02**. On March 22, 2013, the California Superior Court, County of Santa Cruz, approved our firm's 2013 hourly rates as within the prevailing range of rates charged by attorneys providing similar services in class action, wage-and-hour cases in California. That Order was issued in the case of *Perez, et al., v. rue21, inc.,* Case No. CISCV167815. A true and correct copy of the order is attached as **Exhibit SW03.** Attached as **Exhibit SW04** is a true and correct copy of an order from the Hon. Robert B. Freedman, California Superior Court, County of Alameda, filed November 8, 2012, approving our 2012 hourly rates in an overtime class action under California law. The case is known as *Williams, et al. v. H&R Block Enterprises, Inc.,* Case No. RG08366506. Attached as **Exhibit SW05** is a true and correct copy of an order from the Hon. Lucy H. Koh, Northern District of California, filed February 2, 2012, approving our 2011 hourly rates in an employment class action under the Americans with Disabilities Act. The case is known as: *Ortiz, et al., v. Home Depot U.S.A., Inc.,* Case No.: 5:09-cv-03485-LHK (N.D. Cal.). In *Holloway v. Best Buy Co.*, Inc., the Northern District of California approved the $675 hourly rate of one of SWCKW's partners. A true and correct copy of the order is attached as **Exhibit SW06**.

76. Class Counsel's hourly rates are reasonable in light of their significant experience, expertise, and skill.

77. Even without accounting for contingent risk, Class Counsel's rates are well within the range of rates charged by similarly experienced and qualified attorneys practicing in this area.

**The number of hours claimed is reasonable.**

78. Class Counsel, to date, have expended 4,780.00 hours of attorney and paralegal time to reach this Settlement and monitor the Settlement process (3,222.5 hours by SWCKW, 933.3 hours by RG and 624.2 by HH). These hours reflect reasonably spent time litigating this case, which Class

Counsel sought to efficiently manage, staff, assign, and divide the work between the three co-counsel firms and amongst lower and higher-level attorneys and to avoid duplication of effort.

79. In the prosecution of this case, my firm and my co-counsel efficiently prosecuted this litigation and conducted relevant discovery.  Our firms worked together to divide assignments, avoid duplication of efforts, and accomplish all tasks in the most efficient manner possible.

80. Work was also performed efficiently within SWCKW. I managed this case from within SWCKW and personally oversaw and supervised the SWCKW attorneys, paralegal, and staff members who worked on this case. Generally speaking, legal theories, model pleadings, and case strategy were developed by me as the handling partner and then circulated to our associate attorneys for adaption or further development. Time-intensive projects such as written discovery, communicating with CMs, and developing the factual record was performed most be associates and paralegals. This internal allocation of work ensured that litigation tasks were performed at the appropriate billing rate.

81. My personal practice, and the practice at my firm, is to record time in tenth-of-an hour-increments, and to do so as contemporaneously as possible with the expenditure of the time by the attorney. This method of recording time is generally followed in the legal community in the San Francisco Bay Area, and is more accurate than recording time by quarter-hour increments, which tends to inflate the amount of time billed for short telephone conferences and other short tasks.

82. It should also be emphasized that Class Counsel's lodestar does not include all of the time they will spend moving for final approval of settlement, attending the final approval hearing, supervising settlement administration, and communicating with settlement CMs in the future about the settlement. These identified hours have been reasonably expended by Class Counsel.

**Class Counsel's claim for attorneys' fees is fully documented.**

83. Plaintiffs' claim for attorneys' fees is fully documented by detailed time records that show when and how each hour was spent. Class Counsel's time was carefully recorded in tenth-of-an-hour increments, which is the most precise means of capturing the time expended. These time records are the best evidence of the time that this case has required. As shown in the declarations of Class Counsel submitted herewith, and as documented in billing records that have been prepared for

*in camera* review should the Court so request, Class Counsel's hours are fully justified by the tremendous burden of nearly three years of intense, bitterly-contested litigation. Defendant's hyper-aggressive defense, Class Counsel's discovery/investigation burden, the time required to obtain and maintain FLSA collective action status in the face of adamant opposition  as well as the demands of opposing numerous other motions, all demonstrate that Class Counsel's hours are reasonable.

**The lodestar**

84. The cumulative lodestar of Class Counsel is $1,901,010.00, which is the result of expending approximately 4,780 hours (3,222.5 hours by SWCKW, 933.3 hours by RG and 624.2 by HH) on this litigation. *See* **Exhibits SW07, SW08, SW10.** However, that is not the amount being sought in this motion. Class Counsel seek recovery for only approximately 59.09 % of this amount. This is a reduction of $777,676.67 of Class Counsel's total lodestar.

**Breakdown of lodestar**

85. SWCKW's current lodestar is $1,278,876.50 based on 3,222.5 hours of work. A true and correct summary of the time attorneys, paralegals, and staff members at SWCKW spent on this case, along with their respective hourly billing rates is attached as **Exhibit SW10.**  This summary reflects the time billed *after* exercising billing judgment.  The detailed records have not been provided here, but can be provided for the Court's *in camera* review should the Court wish to review them. To help illustrate the work that reasonably had to be done in order to achieve the excellent settlement result on behalf of the CMs, I now summarize our firm's work:

|  | YEAR ADMITTED | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| *Attorneys* |  |  |  |  |
| Carolyn H. Cottrell, Partner | 1996 | 279.2 | $795.00 | $221,964.00 |
| Todd Schneider, Partner | 1992 | 79.5 | $795.00 | $63,202.50 |
| Nicole Coon, Associate | 2010 | 942.7 | $500.00 | $471,350.00 |
| A. Chowning Poppler, Associate | 2010 IL/2011 WI/2012 CA | 57.6 | $475.00 | $27,360.00 |
| Kyle Bates | 2014 | 10.7 | $450.00 | $4,815.00 |
| Vincent Fisher, Associate | 2011 | 98.3 | $450.00 | $44,235.00 |

| Jacob Gould, Associate | 2014 | 99.3 | $350.00 | $34,755.00 |
| Sintia Saenz, Attorney/Paralegal | 2008 FL | 378 | $350.00 | $132,300.00 |
| Christine Knowles, Contract Attorney | 2013 | 33.9 | $350.00 | $11,865.00 |
| Chris Terril, Contract Attorney | 2015 | 17.9 | $350.00 | $6,265.00 |
| David Whitehead, Contract Attorney | 2013 | 22.2 | $350.00 | $7,770.00 |
| James Costello, Contract Attorney | 2013 | 17.3 | $350.00 | $6,055.00 |
| *Office Manager, Paralegals & Law Clerks* | | | | |
| John Hwang, Office Manager/Paralegal | N/A | 41.1 | $250.00 | $10,275.00 |
| Rebecca Rosales, Paralegal | N/A | 165.4 | $250.00 | $41,350.00 |
| Scott Gordon, Paralegal Legal Assistant | N/A | 116.6 | $250.00 | $29,150.00 |
| Tracey McClain, Law Clerk | N/A | 223.3 | $250.00 | $55,825.00 |
| Charles Greenlee, Paralegal | N/A | 103.8 | $200.00 | $20,760.00 |
| Sam Marks, Law Clerk | N/A | 54.9 | $200.00 | $10,980.00 |
| Tracy Eastman, Law Clerk | N/A | 188.8 | $150.00 | $28,320.00 |
| Robert Shaw, Paralegal/Legal Assistant | N/A | 182.4 | $150.00 | $27,360.00 |
| Other staff | N/A | 96.7 | Various | $19,050.00 |
| ***TOTAL HOURS & LODESTAR:*** | | **3,222.5** | | **$1,279,091.50** |

**Class Counsel's Costs are Reasonable and Compensable from the Settlement.**

86. A true and correct summary of the reasonable and necessary costs and expenses incurred by SWCKW in this matter is attached as **Exhibit SW09**. Invoices supporting these costs are also included.

87. Class Counsel request the Court to grant their request for taxable costs and other litigation-related expenses reasonably and necessarily incurred in this litigation in the amount of $93,032.38. Any unclaimed costs will be reallocated to the Settlement and distributed to the CMs.

88. Here, as Plaintiffs' reimbursable out-of-pocket expenses include the following: (1) travel and transportation; (2) postage; (3) overnight mail and bulk mail; (4) messenger services; (5) filing fees; (6) copying and printing; (7) legal research; (8) mediation expenses; (9) claims administration; (10) court hearing transcripts; (11) teleconferencing services; (12) database administration; (13)

1    investigation; and (14) experts/consultants. The total reimbursable costs incurred by Class Counsel

2    in this case amount to $93,032.38, and this total is broken down in detail as follows:

3

| Category | Costs<br>(SWCKW/HH/RG) |
|---|---|
| Filing Fees | $1,436.15/  $154.70/  $1,420.50 |
| Travel Expenses | $16.50/  N/A/  $497.50 |
| Postage | $238.39/  N/A/  $449.65 |
| Overnight Mail & Bulk Mail | $1,556.59/  $1,640.00/  $436.81 |
| Court Hearing Transcripts | $225.05/  N/A/  N/A |
| Copying/Printing | $7,054.25/  N/A/  $963.25 |
| Legal Research | $4,592.62/  N/A/  $2,886.63 |
| Mediation | $3,350.00/  N/A/  $3,350.00 |
| Claims Administration | $57,105.24/  N/A/  N/A |
| Messenger Services | $393.00/  $515.00 /  N/A |
| Teleconferencing Services | N/A/  N/A/  $275.00 |
| Database Administration | N/A/  N/A/  $2,156.75 |
| Investigation | N/A/  N/A/  $1,838.80 |
| Experts/Consultants | N/A/  N/A/  $480.00 |
| **Firm Totals** | **$75,967.79/  $2,309.70/  $14,754.89** |

15        89. **Travel Expenses.** Because Class Counsel's presence was required for court hearings and

16    other necessary events (*e.g.*, client meetings, mediations), travel expenses were necessarily

17    incurred. Class Counsel's travel are reasonable and were necessary to the prosecution of the case.

18    Such expenses are typically billed to fee-paying clients as incident to the representation and,

19    therefore, should be reimbursed.

20        90. **Printing and Reproduction Costs.** Printing and copying costs are reasonable and necessary

21    costs that are typically billed to a fee-paying client. Plaintiffs' copying and printing costs include

22    printing drafts of briefs, memoranda, and court filings for review and editing. These out-of-pocket

23    expenses are reimbursable nontaxable expenses under the FLSA.

24        91. **Postage, Overnight & Bulk Mail.** Prosecution of this case required significant postage.

25    Plaintiffs' documents and exchanges between the Parties required use of the mail and other freight

26    services. Therefore, postage and freight delivery services are necessary and appropriate expenses

27    that are customarily billed to fee-paying clients.

28
DECLARATION OF CAROLYN HUNT COTTRELL IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES,
COSTS, AND SERVICE AWARDS
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

92. **Computer Legal Research.** Class Counsel's request for reimbursement of out-of-pocket costs for computer legal research is reasonable. This computer legal research, which was utilized to support legal briefs and memoranda and to guide Plaintiffs' legal strategy, was necessary to the effective representation of Plaintiffs. Such costs are not accounted for in Class Counsel's hourly rate and are customarily billed to fee-paying clients. Therefore, Plaintiffs' requested reimbursement of these expenses is appropriate.

93. **Mediation Costs.** Plaintiffs' mediation costs consist of amounts paid to the mediator as part of the mediations that led to the settlements of this action. These costs are recoverable under the FLSA because they are reasonable and are customarily billed to a fee paying client.

94. **Claims Administration.** The payment of the costs of the facilitating notice to CMs to inform them of their right to opt-in to this action was a necessary and reasonable cost of the suit. Such costs are included within the "costs of the action" to be awarded prevailing plaintiffs under Section 216(b). As such, Plaintiffs' costs of facilitating notice through a third-party administrator are reasonable and reimbursable nontaxable expenses.

95. In summary, Plaintiffs are entitled to an award of all of the above-listed and described costs. These expenses are reasonable and were necessary to the representation of Plaintiffs in these actions. Such expenses should be reimbursed to Class Counsel.

## CLASS REPRESENTATIVE SERVICE AWARDS

96. The Court should approve the requested $10,000.00 service awards to the four Named Plaintiffs and Class Representatives because these awards are just, fair, and reasonable.

97. The Class Representatives spent a considerable amount of time assisting this investigation or actively prosecuting this action. Their efforts included: providing extensive intake interviews regarding their individual and class and collective claims and allegations; looking for and reviewing relevant company documents; reviewing and approving the pleadings; drafting, reviewing, and approving declarations in support of conditional certification; communicating with Class Counsel regarding mediation; participating in mediation preparation and strategy; reviewing and signing the Settlement and related documents; and supporting Plaintiffs' motions for preliminary approval and the instant motion. In addition, as the face of the lawsuit, the Class Representatives spent numerous

1  hours communicating with other potential witnesses and CMs to aid in the investigation of the case

2  as well as to field questions from the CMs once the Settlement was reached and Notice of the

3  Settlement was distributed. Altogether, the Class Representatives estimate that they spent the

4  following hours serving as the Class Representative of this action, which ultimately resulted in the

5  instant Settlement: (1) Smith 100 hours; (2) Guilbaud 115 hours; (3) Lilly 95 hours; and (4) Wong

6  130 hours.

7  98. Second, the Class Representatives took on substantial risk in bringing this class and

8  collective action and exposed themselves to notoriety and personal difficulties from serving as the

9  Named Plaintiffs in this lawsuit. Those still working for Sprint at the time the Complaint was filed

10  faced the risk of retaliation by their current employer. The Class Representatives also bore the

11  significant financial risk of Sprint's costs in the event they lost at trial. This financial risk, if the

12  case were ultimately tried, could easily total tens, if not hundreds, of thousands of dollars.

13  99. The requested service award will promote the underlying purpose of a service award in

14  wage and hour class actions: to incentivize employees to enforce state and federal labor laws on

15  behalf of their fellow workers.  As an _example, Plaintiff Smith will receive the following awards:

16  Class award $265.53 and Collective award $339.13, for a total of $604.66. This award is below

17  average the awards, further supporting the need for an incentive award.

18  100.      The service award amounts of $10,000.00 are commensurate with the recoveries

19  expected for the CMs.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

Declaration of Carolyn Hunt Cottrell In Support Of Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Service Awards
Lead case *Guilbaud, et al. v. Sprint*, 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint*, 3:14-CV-02642-VC

101.     Here, the average CM, who belongs to both the Class and Collective, will receive a net award of approximately $1,531.11 and the maximum expected net award of approximately $3,603.92 .This is a far cry from the cases where the requested service awards unreasonably constitute 30 or 40 times the average class award. In addition, each requested service award amounts to just 0.89% of the total $1,123,333.33 fund, which further underscores their reasonableness. The reasonableness of the requested service awards is further supported by the fact that the Class Representatives had to execute a general release, not required of the other Class Members, thus Class Representatives are releasing any and all claims, whether known or unknown and waiving their rights afforded by California Civil Code § 1542. Critically, not one Class Member has objected to these requested services award despite receiving Notice of it 31 days ago and Sprint does not oppose them either.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based upon my own personal knowledge. Executed in Emeryville, California on March 21, 2016

/s/ *Carolyn Hunt Cottrell*
CAROLYN HUNT COTTRELL