# EXHIBIT SW02

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ARVILLE WINANS,

        Plaintiff,

   v.

EMERITUS CORPORATION,

        Defendant.

Case No. 13-cv-03962-HSG

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Re: Dkt. Nos. 102, 103

Pending before the Court are two motions filed by Plaintiffs Arville Winans, by and through his guardian ad litem, and Ruby Richardson, in her capacity as trustee to the Wilma F. Fritz Trust. Plaintiffs move for (1) final approval of the parties' proposed class action settlement, Dkt. No. 102, and (2) an award of attorneys' fees, costs, and named plaintiff incentive payments, Dkt. No. 103. The Court held a final fairness hearing on both motions on December 17, 2015. Dkt. No. 127. For the reasons stated below and at the hearing, the Court GRANTS both motions.

## I.    BACKGROUND

### A.    Litigation History

Plaintiffs filed this action in Alameda County Superior Court on July 29, 2013. Dkt. No. 1-1. Defendant Emeritus Corp.[1] removed the action to federal court on August 27, 2013. Dkt. No. 1. Plaintiffs filed the operative Second Amended Class Action Complaint ("SAC") on April 15, 2015. Dkt. No. 93.

The following allegations are taken from the SAC. Defendant owns and operates assisted living facilities. *Id.* ¶ 13. Plaintiffs are current and former residents of Defendant's assisted living

---

[1] After the case was filed, Emeritus was acquired through merger by Brookdale Senior Living, Inc. Dkt. No. 93 ¶ 12.

*United States District Court*
*Northern District of California*

facilities. *Id.* ¶¶ 9-10. When residents move in, and periodically thereafter, Defendant conducts "wE Care" assessments to determine the care needs of residents. *Id.* ¶ 3. Defendant represented to potential residents, their family members, and the general public that the wE Care assessments were used to assign each resident a "Level of Care"—which impacted the price charged to residents for the promised care—and to determine facility staffing. *Id.* ¶¶ 3-4. Plaintiffs allege that such representations were misleading because, in actuality, staffing—and therefore the level of resident care—was based on labor budgets and profit objectives. *Id.* ¶ 5. Plaintiffs further allege that they would not have agreed to live at Defendant's facilities, and would not have paid new resident fees and monthly charges to Defendant, if they had known the truth about the staffing procedures. *Id.* ¶ 7. On the basis of these factual allegations, Plaintiffs assert claims under the California Consumers Legal Remedies Act and the California Financial Elder Abuse statute. *Id.* ¶¶ 85-114.

The parties settled the case on March 11, 2015 after participating in mediation. Dkt. No. 102 at 5. On June 5, 2015, the Court granted preliminary approval of the settlement, provisionally certified a settlement class, and directed notice to class members through mail, media publication, and website posting. Dkt. No. 99. Notice was completed on June 30, 2015. Dkt. No. 108 ¶¶ 4-6.

Based on an objection dated July 31, 2015, the parties determined that residents whose move-in dates preceded the date Defendant took over operations of their facility ("Carry Over Residents") should be included in the settlement. Dkt. No. 116-2, Minnick Decl. ¶¶ 4-5. The parties further agreed to slight modifications to the amount of the overall settlement fund and the request for attorneys' fees, so that the average minimum payment to class members would not be affected by the expansion of the class. Dkt. No. 116-2, Healey Decl. ¶¶ 3-4. At a hearing on September 25, 2015, the Court directed further notice to the Carry Over Residents, Dkt. No. 117, which notice was completed on October 9, 2015, Dkt. No. 122-1 ¶ 3.

Notice was mailed to a total of 21,277 class members. *See* Dkt. No. 122-1 ¶ 2; Dkt. No. 116-2, Wyatt Decl. ¶ 3. 25 of those class members—or 0.12%—opted out of the settlement. Additionally, two substantive objections, including the objection regarding the Carry Over Residents, were submitted. Dkt. Nos. 114, 115.

United States District Court
Northern District of California

2

**B.    Settlement Agreement**

The proposed settlement will dispose of all of Plaintiffs' claims against Defendant.  Dkt. No. 104, Ex. 1 ("Settlement Agreement").  The Settlement Agreement defines the class as:

> Plaintiffs and all similarly situated persons who resided at one of the California assisted living facilities owned and/or operated by Defendants under the Emeritus name from July 29, 2009 through and including May 15, 2015 (the "Class Period"), and who contracted with Emeritus for services for which Emeritus was paid money.

*Id.* at 5.  Under the terms of the Settlement Agreement, Defendant will (1) pay $13,500,000;[2] (2) completely phase out the wE Care assessment system by December 31, 2015; and (3) issue a written directive to each assisted living community it owns or operates in California to not make affirmative representations to prospective residents that the wE Care system is used to determine facility staffing.  *Id.* at 21-25.  In exchange, settlement class members will release all claims "arising out of or relating to statements, representations, or failures to disclose made prior to May 15, 2015 . . . regarding the . . . advertising, marketing, promotion, or use of wE Care . . . in connection with evaluating residents and setting facility staffing."  *Id.* at 19.  The Settlement Agreement further clarifies that the released claims "shall not include any claims for personal injuries, emotional distress or bodily harm."  *Id.*

Settlement class members are not required to submit a claim; rather, they will be entitled to a pro rata payment based on the amount of move-in fees and initial monthly rent they paid.[3]  *Id.* at 24.  A class member, or his/her legal successor, may make a distribution request if the settlement administrator is unable to locate his/her current address.  *Id.* at 7.  If the settlement administrator is unable to locate a class member, his/her payment will be allocated back into the settlement fund.  *Id.* at 24.  A reserve fund of $45,000 will be carved out of the settlement fund for the payment of

---

[2] The Settlement Agreement filed on the docket reflects a total payment amount of $13,000,000. *See* Settlement Agreement at 10.  After the parties agreed to include the Carry Over Residents in the settlement class, the parties further agreed to increase the gross settlement payment to $13,500,000. Dkt. No. 116-2, Healey Decl. ¶ 3.

[3] Specifically, the "Settlement Payment Percentage" is calculated by adding the move-in fee paid and the initial monthly rent paid, and dividing that amount by the total move-in fees and initial rent payments made by all settlement class members.  Settlement Agreement at 24.

United States District Court
Northern District of California

late-submitted distribution requests. *Id.* at 9. Any portion of the reserve fund that is not claimed, and any settlement checks that are not timely cashed, will be paid to the *cy pres* recipient, the Institute on Aging. Dkt. No. 129 ("Supp. Brief") at 1.

### C. Objections To The Settlement

Two substantive objections to the proposed class action settlement were timely filed.[4] First, William Finch submitted a notice of objection dated July 31, 2015. Dkt. No. 114. Mr. Finch "object[s] to the settlement to the extent it excludes me, and others like me." *Id.* Based on Mr. Finch's objection, the parties revised the settlement to expand the class and increase the total cash settlement amount. *See* Dkt. No. 116 ("Final Approval Reply") at 9-10. At the hearing on September 25, 2015, the Court ordered additional notice and time for objections based on the revised settlement agreement. *See* Dkt. No. 117.

Second, Kate Wilkins submitted an objection dated August 4, 2015. Dkt. No. 115. Ms. Wilkins objects to several aspects of the proposed settlement agreement, including the adequacy of notice, amount of the settlement, appropriateness for class action treatment, *cy pres* payment, and amount of requested attorneys' fees. *Id.* The merits of Ms. Wilkins' objection are addressed below.

## II. DISCUSSION

### A. Motion for Final Approval of Class Action Settlement

#### 1. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess whether a proposed settlement comports with Rule 23(e), a district court must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v.*

---

[4] As noted at the hearing, the Court finds that the objection letter submitted by David H. Brands is without substance because it does not address the merits of this particular settlement. *See* Dkt. No. 125. Additionally, the parties confirmed at the hearing that the letter submitted to the Court by Brian P. Klinker is a distribution request, and that the parties forwarded Mr. Klinker's letter to the settlement administrator to ensure that he would be included in the settlement. *See* Dkt. No. 121.

United States District Court
Northern District of California

*Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Id.* When making this decision, courts consider the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.* at 1025.

### 2. Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, the class claims, class members' right to exclude themselves from the class, and the binding effect of any class judgment. Fed. R. Civ. P. 23(c)(2)(B). Additionally, before granting final approval of a proposed class settlement, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* 23(e)(1). While Rule 23 requires that "reasonable effort" be made to reach all class members, it does not require that each individual actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

The Court previously approved the notice and notice plan proposed by the parties. Dkt. No. 99 ¶ 14. Additionally, the Court directed notice to the Carry Over Residents after the expansion of the settlement class based on Mr. Finch's objection. *See* Dkt. No. 117. In accordance with the Court's orders, the settlement administrator mailed the approved notice to 21,277 individuals, published the notice in USA Today, and posted the notice online. Of the 3,070 notice packets returned as undeliverable, 1,511 were re-mailed to updated addresses located by the settlement administrator. Dkt. No. 122-1 ¶ 4.

In her objection, Ms. Wilkins argues that the class notice was misleading because it failed

United States District Court
Northern District of California

United States District Court
Northern District of California

1   to inform recipients that Defendant is now owned by Brookdale Senior Living, Inc. Dkt. No. 115

2   at 2. The Court finds that such information was not necessary to provide adequate notice.

3   Moreover, Brookdale's acquisition of Emeritus is public knowledge. *See* SAC ¶ 12.

4        Ms. Wilkins also appears to argue that the class notice was deficient because it did not

5   identify the proposed *cy pres* recipient. Dkt. No. 115 at 4-5. While Ninth Circuit authority makes

6   clear that the parties must identify the proposed *cy pres* recipient for the Court to evaluate, *see*

7   *infra*, no such authority establishes that a specific *cy pres* recipient must be identified in the class

8   notice. In the absence of Ninth Circuit case law directly on point, the Court finds persuasive the

9   Third Circuit's holding that the "failure to identify the *cy pres* recipients [to class members in the

10  class notice] is not a due process violation." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180

11  (3d Cir. 2013); *see also Zeisel v. Diamond Foods, Inc.*, No. 10-cv-01192-JSW, 2012 WL

12  4902970, at *2 (N.D. Cal. Oct. 16, 2012) (approving settlement where parties did not identify *cy*

13  *pres* recipient in class notice).

14        In light of the above, the Court finds that the notice and notice procedures used here

15  complied with the requirements of Rule 23(e).

16           **3.**     **Fairness, Adequacy, and Reasonableness of Settlement**

17        Having found the notice procedures adequate, the Court next considers whether the

18  settlement as a whole comports with Rule 23(e).

19           **a.**     **Strength of Plaintiff's Case and Risk of Continued Litigation**

20        Approval of a class settlement is appropriate when plaintiffs must overcome "significant

21  barriers" to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D.

22  Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator

23  arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

24  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D.

25  Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a

26  class settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally,

27  unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

28  and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-

United States District Court
Northern District of California

MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotation marks omitted).

While Plaintiffs maintain that they would be likely to prevail on the merits of their case, they face substantial challenges in continued litigation. First, it is not clear that Plaintiffs could successfully maintain class certification throughout the litigation. Defendant argues that Plaintiffs' claims require individualized consideration of care services provided to each resident. If individualized issues pervade the factual analysis such that no common questions of law or fact exist, class certification cannot be maintained. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556-57 (2011).

Second, even if Plaintiffs successfully certified a class, they would face obstacles to prove both liability and damages. As to liability, Defendant argues that Plaintiffs cannot show reliance because the decision to live at Defendant's facilities was impacted by a variety of factors aside from the wE Care assessments. As to damages, Defendant argues that any recovery by Plaintiffs must be reduced by the value of the care actually received. The Court agrees that Plaintiffs faced substantial risks to succeeding on the merits of their claims.

Finally, even if Plaintiffs prevailed, this litigation likely would have taken years to complete. Given the advanced age of many of the class members, any delay to recovery presents heightened concerns.

The Court finds that these factors weigh in favor of settlement.

### b.    Settlement Amount

This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. 13-cv-02376-EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks omitted).

Plaintiffs calculate that the gross settlement amount represents approximately 33.2% of the "maximum projected 'hard damages' at trial," which in turn means that the net settlement amount

United States District Court
Northern District of California

1  represents approximately 21.7% of the maximum recovery. Dkt. No. 102 ("Mot.") at 12.[5]

2  Additionally, Plaintiffs estimate that the individual payments will range from 20-40% of each

3  class member's maximum damages, *id.* at 13, and the projected average payment will be over

4  $500, Final Approval Reply at 3. "It is well-settled law that a cash settlement amounting to only a

5  fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re*

6  *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Based on the facts in the record

7  and the parties' arguments at the final fairness hearing, the Court finds that the settlement is within

8  the range of reasonableness in light of the risks and costs of litigation. *See Gaudin v. Saxon*

9  *Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015)

10 (granting final approval of a net settlement amount representing 13.6% of the plaintiffs' estimated

11 maximum recovery at trial); *Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL

12 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount

13 representing 7.3% of the plaintiffs' estimated maximum recovery at trial).

14      Additionally, only a small portion—if any—of the gross settlement amount will be paid to

15 the parties' proposed *cy pres* recipient, the Institute on Aging. The organizational mission of the

16 Institute on Aging is to "enhance the quality of life for adults as they age by enabling them to

17 maintain their health, well-being, independence, and participation in the community." Dkt. No.

18 129-1 ¶ 9. The Institute runs an Elder Abuse Prevention Program aimed at protecting elders from

19 potential financial abuse and consumer protection violations in Northern California. *Id.* The

20 Court finds that the required "driving nexus between the plaintiff class and the *cy pres*

21 beneficiaries" exists here. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011).

22      Accordingly, this factor weighs in favor of approval.

23            c.      **Stage of Proceedings**

24      "This factor evaluates whether the parties have sufficient information to make an informed

25 decision about settlement." *Larsen v. Trader Joe's Co.*, No 11-cv-05188-WHO, 2014 WL

26

27 ──────────────
[5] These percentages are based on the original gross settlement amount of $13 million and the class
exclusive of the Carry Over Residents. The parties confirmed at the final fairness hearing on
December 17, 2015 that the revised settlement amount and class scope maintained these rough

28 percentages.

3404531, at *5 (N.D. Cal. July 11, 2014) (internal quotation marks omitted). "In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (internal quotation marks omitted). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.* (internal quotation marks omitted).

Here, prior to reaching a settlement, Plaintiffs engaged in extensive motion practice, substantial investigation, and informal and formal discovery. Dkt. No. 104, Healey Decl. ¶¶ 12-13. Plaintiffs reviewed tens of thousands of pages of documents related to the action, conducted interviews, responded to formal discovery requests, and defended a deposition of Plaintiff Winans' guardian ad litem. *Id.*

The Court finds that Plaintiffs had an adequate understanding of the merits of their case before settlement negotiations began. Accordingly, this factor weighs in favor of approval.

### d.     Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the class' interests in this action. Dkt. No. 99 ¶ 5. The Court notes, however, that courts have taken divergent views as to the weight to accord counsel's opinions. *Compare Carter v. Anderson Merchandisers, LP*, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class actions and their counsel often have pecuniary interests in seeing the settlement approved."). The Court finds that this factor tilts in favor of approval, even though the Court affords only modest weight to the views of counsel.

United States District Court
Northern District of California

### e. Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). A small number of objections to and opt-outs from a settlement "presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027.

Here, the overwhelming majority of settlement class members reacted favorably to the proposed settlement. Of the 21,277 class members who were mailed notice, only 25 opted out of the settlement. Dkt. No. 122-1 ¶ 4. Moreover, only two substantive objections were filed, one of which—Mr. Finch's objection regarding the inclusion of Carry Over Residents in the settlement class—has been fully resolved. The remaining objection submitted by Ms. Wilkins asserts three arguments against approval of the settlement.

First, Ms. Wilkins contends that that the allegations in the complaint "trigger minimum penalties of $1,000 or $5,000," and protests that the average settlement payment of $450 is therefore "paltry." Dkt. No. 115 at 1. However, only $1,000 in statutory damages is available as a matter of right to prevailing parties, and some courts have construed that amount to be shared amongst all class members. *See Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 593 (C.D. Cal. 2011). A court may award up to $5,000 per class member in additional damages under the CLRA, but any such award is purely discretionary. Cal. Civ. Code § 1780(b). Additionally, Ms. Wilkins does not appear to have taken into account the above-described risks of protracted litigation when she assessed the reasonableness of the average settlement payment.

Second, Ms. Wilkins contends that the Court should not certify a class for settlement purposes because "[t]he principal wrongs identified in the lawsuit relate to the companies' failure to provide individualized care to residents; instead staffing levels were devised to make a profit rather than based on individual residents' care needs." Dkt. No. 115 at 2. As a result, she argues, individual issues predominate. Plaintiffs argue in their reply brief that Ms. Wilkins misunderstands the "primary damage relief sought" in this case, which is "the recovery of initial rent payments and rental deposits . . . that residents would not have paid but for Defendants'

United States District Court
Northern District of California

actionable conduct." Dkt. No. 116 at 3. In other words, the damages stem from class members' reliance on Defendant's uniform misrepresentations, not individualized deviations from promised levels of care. Plaintiffs further contend that the Settlement Agreement preserves class members' ability to bring claims based on individualized issues, such as neglect or abuse. *Id.* at 2-3. The Court finds that the settlement class is properly certified here.

Third, Ms. Wilkins argues that the parties must identify the *cy pres* recipient. Dkt. No. 115 at 4-5. Ms. Wilkins correctly notes that the Ninth Circuit has directed courts to carefully review pre-certification settlements to ensure that *cy pres* distributions are "tethered to the nature of the lawsuit and the interests of the silent class members." *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (internal quotation marks omitted). To enable the Court to conduct this review, the parties must identify the *cy pres* recipient. *Id.* While the Court agrees with Ms. Wilkins on this point, the parties have mooted this objection by identifying the Institute on Aging as the *cy pres* recipient in the supplemental briefing submitted to the Court. *See* Dkt. No. 129.

The Court finds that this factor weighs in favor of approval. Although Ms. Wilkins makes reasoned arguments in her objection, they ultimately fail. Additionally, the overwhelming majority of the class did not object to or opt out of the settlement.

\*      \*      \*

After considering and weighing all of the above factors, the Court finds that the proposed class action settlement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is granted.

**B.      Attorneys' Fees and Costs**

**1.      Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Because California law governed the claim here, it also governs the award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under California law, "the award of attorney fees is proper . . . if (1) plaintiffs' action has

United States District Court
Northern District of California

United States District Court
Northern District of California

1  resulted in the enforcement of an important right affecting the public interest, (2) a significant

2  benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large

3  class of persons and (3) the necessity and financial burden of private enforcement are such as to

4  make the award appropriate." *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 317-18 (1983) (internal

5  quotation marks omitted). Moreover, certain provisions of the CLRA mandate payment of

6  attorneys' fees to successful plaintiffs. *See* Cal. Civ. Code § 1780(e). Based on these criteria, and

7  the parties' agreement, the Court finds that class counsel is entitled to attorneys' fees.

8      Additionally, class counsel is entitled to "recover as part of the award of attorney's fees

9  those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v.*

10  *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).

11      **2.    Class Counsel's Request for Fees**

12      Under California law, courts have the power to award reasonable attorneys' fees and costs

13  where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for

14  a class of persons. *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977). The two primary methods for

15  determining reasonable fees in the class action settlement context are the "lodestar/multiplier"

16  method and the "percentage of recovery" method. *See Wershba v. Apple Comput., Inc.*, 91 Cal.

17  App. 4th 224, 254 (2001); *accord Hanlon*, 150 F.3d at 1029.

18      The Court first considers the lodestar method. The first step in the lodestar analysis is to

19  multiply the number of hours counsel reasonably expended on the litigation by a reasonable

20  hourly billing rate. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004); *Hanlon*,

21  150 F.3d at 1029. Once this raw lodestar figure is determined, the Court may apply a multiplier to

22  the lodestar if warranted after the consideration of certain enhancement factors like (1) the results

23  obtained; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill

24  necessary to litigate the case; (4) the preclusion of other employment due to acceptance of the

25  case; and (5) whether the fee is fixed or contingent. *See Serrano*, 20 Cal. 3d at 48.

26      Here, class counsel calculated total lodestar fees of $2,686,519.75 based on 5,106.9 total

27  hours worked as of September 18, 2015. Dkt. No. 116-1 at 1. The Court has reviewed class

28  counsel's time records and billing reports, and finds that the number of hours devoted to this case

United States District Court
Northern District of California

was reasonable. The Court further finds that the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation.

Furthermore, the Court finds that the *Serrano* enhancement factors support the requested 1.36 lodestar multiplier. Class counsel achieved significant benefits for the settlement class members. As detailed above, the amount of the settlement is substantial in light of the risks of continued litigation. Moreover, class counsel secured important nonmonetary benefits for the class members. *See Vizcaino*, 290 F.3d at 1049 ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance [in determining fee awards]."). Defendant has agreed to completely phase out the wE Care assessment program and cease all alleged misrepresentations concerning its use. The Court finds that the injunctive relief encompassed in the Settlement Agreement carries a substantial value above and beyond the value of the cash class members will be paid.

As described above, this case involved complex issues of both fact and law that presented significant risks. Despite those risks, class counsel prosecuted this case on a contingent basis, agreeing to advance all necessary expenses and knowing that they would only receive a fee if there were a recovery. Dkt. No. 104, Stebner Decl. ¶ 13. Moreover, class counsel had to forego other work in order to devote the requisite amount of time, resources, and energy to handle this demanding matter. *See id.* ¶ 10. Given Defendant's vigorous opposition, class counsel's skills and experience were essential to obtaining a settlement.

Finally, the Court finds that the reasonableness and propriety of the requested fee award are confirmed by a cross-check based on the percentage of the gross settlement amount obtained. The agreed-upon fee here represents approximately 27.2% of the cash value of the settlement. While this percentage is slightly above the "benchmark" percentage of 25% applied in the Ninth Circuit, the Court finds that it is reasonable in light of the additional nonmonetary benefits secured by class counsel and the other enhancement factors considered above.

The Court finds that the requested attorneys' fees of $3,667,065.82 are fair, reasonable, and justified. Accordingly, the Court grants Plaintiffs' motion for attorneys' fees.

United States District Court
Northern District of California

### 3.    Class Counsel's Request for Costs

Class counsel originally sought reimbursement of $121,243.09 in "litigation expenses necessary for the investigation, prosecution, and settlement of this action." Dkt. No. 103 at 20. After being prompted by the Court at the December 17, 2015 final fairness hearing, class counsel submitted itemized cost records. *See* Dkt. Nos. 128-128-4. The Court has thoroughly reviewed the submitted records, which evidence reasonable costs incurred as follows: $3,807.15 by Denton US; $18,809.59 by Janssen Malloy; $3,465.40 by the Law Offices of Michael D. Thamer; $37,948.56 by Stebner & Associates; and $23,617.55 by the Arns Law Firm. *Id.* Because Schneider Wallace Cottrell Konecky Wotkyns did not submit supplemental cost records, the Court assumes that it maintains its original request for $35,074.16 in costs. *See* Dkt. No. 104, Wallace Decl. ¶¶ 32-36 & Exs. D-E. The Court finds these itemized costs to be reasonable and accordingly awards class counsel total costs of $122,722.41.

### 4.    Plaintiffs' Incentive Award

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The district court must evaluate a plaintiff's incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977 (internal quotation marks omitted). In the Ninth Circuit, a $5,000 incentive award is "consistent with the amount courts typically award as incentive payments." *In re Toys-R-Us Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.").

Plaintiffs request a service award of $7,500 to Plaintiff Winans, by and through his guardian ad litem, Renee Moulton, and a service award of $3,500 to Plaintiff Ruby Richardson as trustee of the Wilma F. Fritz Trust. Dkt. No. 103 at 20. These awards represent 0.05% and 0.03% of the gross settlement value, respectively. Plaintiffs subjected themselves to public attention and

potential retaliation by acting as named plaintiffs. Moreover, they assisted in drafting the complaint and responding to discovery. *See* Dkt. No. 104, Stebner Decl. ¶ 31. Finally, Ms. Moulton, acting as guardian ad litem, prepared and appeared for deposition, and participated in settlement discussions. *Id.* In light of Plaintiffs' service to the class, the Court finds that the requested service awards are fair and reasonable.

## III.    CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.  The Court grants final approval of the proposed settlement and plan of administration.

2.  The Court awards class counsel $3,667,065.82 in attorneys' fees.

3.  The Court awards class counsel $122,722.41 in costs.

4.  The Court grants service awards of $7,500 to Plaintiff Winans, by and through his guardian ad litem, Renee Moulton, and $3,500 to Plaintiff Richardson, as trustee of the Wilma F. Fritz Trust.

5.  The class members who requested to opt out of the settlement are excluded from the class.

6.  This action is hereby dismissed with prejudice, with each side to bear its own attorneys' fees and costs, except as provided in the Settlement Agreement.

7.  The parties shall file a proposed judgment within three days of the date of this Order.

**IT IS SO ORDERED.**

Dated: 1/11/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

15

# EXHIBIT SW03



F I L E D

MAR 22 2013

ALEX CALVO, CLERK
BY DEBORAH ROJAS
DEPUTY, SANTA CRUZ COUNTY

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CRUZ

| | |
|---|---|
| ELVA PEREZ, on behalf of herself and all others similarly situated, | Case No. CISCV167815 |
| Plaintiff, | |
| vs. | [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS |
| RUE21, INC., and DOES 1 through 50, | |
| Defendants. | Date:      March 22, 2013 |
| | Time:      8:30 a.m. |
| | Dept.:      4 |
| | Judge:      Hon. Timothy Volkmann |

1       On March 22, 2013, this Court held a hearing on Plaintiff's motions for final approval of

2  the parties' proposed class action settlement and for attorneys' fees and costs. Joshua Konecky of

3  Schneider Wallace Cottrell Konecky LLP appeared for Plaintiff and the Certified Class; and

4  _____of Littler Mendelson PC appeared for Defendant rue21, inc.

5       The Court has ruled on the motion for final approval of the class action settlement

6  agreement by separate order.

7       Having received and considered the settlement agreement, the supporting papers filed by

8  class counsel and the evidence and argument received by the Court, the Court HEREBY GRANTS

9  the motion for an award of attorneys' fees and costs, and issues the following FINDINGS AND

10  ORDERS:

11     1.    The settlement agreement provides that class counsel may seek $916,667.67 in

12  attorneys' fees plus actual out-of-pocket costs. Defendant does not object to these amounts.

13     2.    Plaintiff seeks fees in an amount of $916,667.67. The declaration of class counsel

14  documenting their lodestar shows that a fee award of this amount would result in a multiplier of

15  1.16 or less. Plaintiff also seek reimbursement of $81,956.70 in actual out-of-pocket costs, which

16  are documented in class counsel's declaration as well.

17     3.    Counsel's declaration submitted in support of the motion show that the attorneys

18  acting on behalf of the class from Schneider Wallace Cottrell Konecky LLP, have the experience

19  and qualifications necessary to represent the class. The Court finds that the hourly rates charged

20  by class counsel are within the prevailing range of rates charged by attorneys providing similar

21  services in class action, wage-and-hour cases in California, as shown by the Declarations of Joshua

22  Konecky, filed in support of the motion.

23     4.    The Court also finds that the total hours worked by class counsel are reasonable,

24  given the nature of the case and the defense presented; the projects class counsel had to undertake,

25  the manner in which class counsel allocated their work, the billing judgment exercised by class

26  counsel, and the results achieved.

27

28

1

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
*Perez, et al. v. Rue21, et al.*, Case No. CISCV167815

1        5.    The Court finds that the multiplier sought is reasonable and appropriate, given the

2    documented lodestar, contingent risk and complexity of the case, the preclusion of counsel from

3    other employment, and the favorable results achieved for class members.

4        6.    The Court further finds that class counsel's out-of-pocket costs and expenses are

5    documented, reasonable and necessary to the prosecution of this action.

6        7.    In accordance with the Court's Order granting preliminary approval of the proposed

7    class action settlement, the court-approved class notice was sent to approximately 2,370 class

8    members.  The class notice set forth the amounts of fees and costs that class counsel are seeking.

9    The Court finds that there were no objections to the fees and costs sought.

10       8.    The Court therefore awards class counsel 916,667.67 in attorneys' fees and

11   $81,956.70 in attorneys' costs to be paid from the settlement fund pursuant to the terms and

12   timeframe set forth in the settlement agreement.

 

IT IS SO ORDERED.

Dated:  ___MAR 22 2013___             SAMUEL S. STEVENS

                                     The Honorable Timothy Volkmann

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS
*Perez, et al. v. Rue21, et al.*, Case No. CISCV167815

# EXHIBIT SW04



**ENDORSED**
**FILED**
ALAMEDA COUNTY

**NOV 0 8 2012**

CLERK OF THE SUPERIOR COURT
BY _____
                              DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| ALICE WILLIAMS, on behalf of herself, and on behalf of all others similarly situated, | Case No. RG08366506 |
| Plaintiffs, | [proposed] ORDER OF FINAL APPROVAL AND JUDGMENT |
| vs. | |
| H&R BLOCK ENTERPRISES, INC. | Date: November 8, 2012 |
| Defendant. | Time: 2:00 p.m. |
| | Dept.: 20 |
| | Judge: Hon. Robert B. Freedman |
| | Reservation No. R-1338508 |

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1   PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

2   AND RESPONSE TO OBJECTION, MOTION FOR SERVICE AWARDS, and MOTION FOR

3   AN AWARD OF REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES came on for

4   hearing on November 8, 2012 at 2:00 p.m., in Department 20 of the Superior Court of California,

5   County of Alameda.

6   Having considered the proposed class Settlement Agreement, Plaintiffs' Motion for Final

7   Approval of Class Action Settlement and Response to Objection, Plaintiffs' Motion for Service

8   Awards, and Plaintiffs' Motion for an Award of Reasonable Attorneys' Fees, Costs and Expenses,

9   the Memoranda of Points and Authorities in support of those Motions, the Declarations of Guy B.

10  Wallace, David Borgen, Alexander Van Broek, Andrew P. Lee, Plaintiff Alice Williams, Plaintiff

11  Regina Bassett in support thereof, as well as the Declaration of Caroline Barazesh Regarding Due

12  Diligence and Proof of Mailing, the Court-approved notice and claim form, and the argument of

13  counsel at the hearing thereon, the Court hereby FINDS, ORDERS, ADJUDGES as follows:[1]

14  I.      FINAL CERTIFICATION OF THE SETTLEMENT CLASS

15  The Court granted class certification in this matter on March 24, 2011 of the following class:

16  All people employed by H&R Block Enterprises, Inc., or H&R Block Enterprises,
    LLC during the tax season as seasonal, exempt Office Managers at any time
17  between January 17, 2004 and the date of notice to the class that a class has been
18  certified.

19  The parties have presented no new facts or changed circumstances that would disturb the

20  Court's findings on class certification for purposes of certifying the Settling Class. Moreover,

21  H&R Block does not oppose class certification for purposes of settlement. Accordingly, the Court

22  finds that, consistent with its prior Order, the requirements of Code of Civil Procedure § 382 are

23  satisfied. The Court hereby FINALLY CERTIFIES the following settlement class:

24  All people employed by H&R Block Enterprises, Inc., or H&R Block Enterprises,
    LLC during the tax season as seasonal, exempt Office Managers at any time
25  between January 17, 2004 and April 30, 2012 in California.

26

27  [1] The Court, for purposes of this Order of Final Approval and Judgment, adopts and incorporate the
28  terms and definitions set forth in the Settlement Agreement.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

II.     APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

On March 24, 2011, the Court certified this matter as a class action, and appointed Named Plaintiff Alice Williams to represent the litigation class of California Office Managers.  Similarly, in its Order Granting Preliminary Approval of Settlement, the Court appointed Plaintiff Alice Williams as representative of the provisionally certified settlement class.  The parties have presented no new facts or changed circumstances that would disturb the Court's previous findings with respect to Ms. Williams' adequacy, and therefore APPOINTS Ms. Williams as class representative of the above-referenced Settling Class.

By Order dated June 13, 2012, the Court permitted Plaintiffs leave to file a Second Amended Complaint, which added a claim pursuant to the Private Attorney General Act of 2004 ("PAGA"), as well as an additional Named Plaintiff, Regina Bassett.  Plaintiffs propose that Ms. Bassett represent the settlement class with respect to the PAGA claim.  Ms. Bassett has worked for H&R Block in California as an Office Manager for the 2009, 2010, 2011, and 2012 tax seasons. Declaration of Regina Bassett in Support of Motion for Service Award ¶ 2.  Moreover, Ms. Bassett's claims are typical of those of the Settling Class, and she understands her duty to represent the best interests of the Settling Class Members. *Id.* at ¶¶ 9-12.  H&R Block does not oppose the appointment of Ms. Bassett as class representative for the purpose of settlement.  Accordingly, the Court APPOINTS Ms. Bassett as class representative of the above-referenced Settling Class, including with respect to Plaintiffs' PAGA claim.

The Court finds that Schneider Wallace Cottrell Brayton Konecky LLP, Goldstein, Demchak, Baller, Borgen & Dardarian, and the Law Offices of Alexander Van Broek, have extensive experience in prosecuting wage and hour class actions, and APPOINTS them as Class Counsel for the Settling Class.

III.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to this Court's Preliminary Approval Order, the Claims Administrator, BMC Group, distributed the approved Class Notice and Claim Form to the settlement class. Based on review of the Declaration of Caroline Barazesh ("Barazesh Decl.") of BMC Group, the Court is satisfied that compliance with the Court's preliminary approval Order was accomplished in all

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1    material respects. The form and manner of notice constituted the best practicable notice under the

2    circumstances, and fully met the requirements of procedural due process and California Rule of

3    Court 3.769(f).

4           The Court has carefully reviewed the terms of the proposed Settlement, as well as the

5    Declaration of Guy B. Wallace in Support of Preliminary Approval of Settlement describing

6    Plaintiffs' investigation into the claims and defenses in this matter, the discovery conducted by the

7    parties, and the settlement process. The Court finds that the Settlement is the product of informed,

8    non-collusive, and arm's-length negotiations. The Court further finds that the Settlement confers a

9    monetary benefit of approximately $3.8 million on the settlement class in exchange for their

10   release of claims, which is properly limited to any claims alleged in this matter, or could have been

11   alleged based on the facts contained in the pleadings. This is a good result for the Settling Class in

12   light of the significant risks and delay of further litigation. Based on the papers submitted by the

13   parties, the Court's familiarity with this matter, and the favorable response of the Settling Class,

14   the Court finds that the proposed Settlement is fair, reasonable, and adequate.

15          A.      Response of the Settling Class

16          The response of the Settling Class has been positive. 891 of the 1,529 Settling Class

17   Members filed timely and valid claim forms. Barazesh Decl. ¶ 17. These claims represent 65.72%

18   of the tax seasons worked by all Settling Class Members. Two individuals have excluded

19   themselves from the Settlement, and one Settling Class Member has objected. The high rate of

20   participation combined with the low number of opt outs (2) and objectors (1) further supports the

21   Court's conclusion that the Settlement is fair, reasonable, and adequate.

22          B.      The Single Objection

23          The lone objector, Lucila Cabrera, makes the following arguments in opposition to final

24   approval: 1) the claim form process may render the settlement benefits illusory; 2) the requested

25   attorneys' fees and costs may exceed the monetary damages going to the class; 3) the inclusion of a

26   "clear sailing" provision in the Settlement Agreement indicates that Class Council accepted an

27   unfair settlement on behalf of the Settling Class; 4) the claim form process, whereby unclaimed

28

1    settlement funds revert to H&R Block, is unjustified and designed to lower the amount of money

2    paid by H&R Block pursuant to the Settlement.

3          The Court is not persuaded by these arguments. As discussed above, the Settling Class will

4    receive $3.8 million in total compensation pursuant to the proposed settlement. This sum is not

5    illusory, nor is it exceeded by the amount of attorneys' fees, costs and expenses requested by Class

6    Counsel. Even if the attorneys' fees were to exceed the class recovery, Class Counsel seeks their

7    fees on a lodestar basis pursuant to the fee shifting provisions of the California Labor Code. It is

8    well-settled that an award of statutory attorneys' fees does not require proportionality between the

9    plaintiffs' recovery and the amount of the fee award. *Harman v. City & County of San Francisco*,

10   158 Cal.App.4th 407, 419 (2007); *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140,

11   164 (2006); *see also City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). These arguments are

12   without merit.

13         Ms. Cabrera also objects to the "clear sailing" provision that prohibits H&R Block from

14   opposing Class Counsel's application for an award of reasonable attorneys' fees, costs and

15   expenses so long as it does not exceed $2.6 million. California Courts, however, have consistently

16   upheld such "clear sailing" provisions where the terms of the settlement are otherwise fair,

17   reasonable, and adequate. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 554 (2009)

18   (collecting cases). Moreover, Ms. Cabrera has provided no evidence of any collusion or

19   misconduct on the part of Class Counsel, nor has she objected to the hourly rates or the amount of

20   hours claimed by Class Counsel. Similarly, Ms. Cabrera has not identified any specific hours

21   claimed by Class Counsel that are excessive or shown why those specific hours were not

22   reasonably expended. Ms. Cabrera's objection to the "clear sailing" provision is without merit.

23         Finally, Ms. Cabrera objects to the claims made aspect of the Settlement and the resulting

24   reversion to H&R Block. She argues that the claims process is unjustified and designed to reduce

25   H&R Block's liability pursuant to the Settlement. Ms. Cabrera, however, overlooks the fact that

26   the Settlement requires H&R Block to pay a guaranteed amount of $1.8 million that will be

27   distributed *pro rata* to all Settling Class Members irrespective of whether they file a valid claim

28   form. This amount is not subject to any reversion.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1    In addition, there is nothing inherently improper about the claims made process; rather, it is

2    the impact on the overall fairness, reasonableness, and adequacy that matters. *Harris v. Vector*

3    *Mktg. Corp.*, 2011 WL 1627973, at *13 (N.D. Cal. Apr. 29, 2011) (emphasis added); *see also*

4    *Lemus v. H&R Block Enters. LLC*, 2012 WL 3638550, at **3, 7-8; *Glass v. UBS Fin. Servs., Inc.*,

5    2007 WL 474936, at *8 (N.D. Cal. Jan. 17, 2007) affd. 331 F. App'x 452 (9th Cir. 2009).  Here,

6    the claims process has resulted in a monetary recover of $3.8 million and the submission of claim

7    forms representing 65.72% of the tax seasons worked by California Office Managers during the

8    limitations period.  As stated above, 891 members of the settlement class submitted valid and

9    timely claims forms, thus showing that the claims forms and process were comprehensible and

10   readily usable by the class members.  Taken as a whole, the claims process has resulted in a fair,

11   reasonable, and adequate settlement.

12        Finally, the parties implemented the claims made process because many class members

13   believed that they were not misclassified, and that they were exempt managers.  The Settlement

14   therefore takes these conflicting aspects of the record into account, permitting the Settling Class

15   Members to decide for themselves whether to accept the full benefits of the Settlement by making

16   a claim on the non-guaranteed settlement amount ("Non-Guaranteed NSV").  This was a fair and

17   reasonable compromise given the record evidence herein.

18        Accordingly, the Court FINALLY APPROVES the proposed Settlement, and OVERRULES

19   Ms. Cabrera's objection.

20   IV.   DISTRIBUTION OF THE SETTLEMENT FUND

21        A.   Appointment of the Claims Administrator

22        The Court APPROVES the appointment of BMC Group as the settlement Claims

23   Administrator, and directs payment of $25,846.50 for services rendered by BMC Group as Claims

24   Administrator. The Court finds this amount to be fair and reasonable.

25        B.   Service Awards to the Class Representatives

26        Plaintiffs seek service awards in the amount of $7,500 for Plaintiff Williams and $5,000 for

27   Plaintiff Bassett. Both Plaintiffs have submitted Declarations detailing the time and effort

28   expended by them in furtherance of the class claims, and the risks assumed by these individuals in

1   vindicating the rights of the settlement class.  Specifically, each Plaintiff expended considerable

2   time and effort reviewing pleadings, responding to written discovery, appearing for deposition,

3   advising Class Counsel regarding H&R Block's policies and practices, and reviewing the

4   settlement agreement herein.  *See* Declaration of Alice Williams and Declaration of Regina

5   Bassett in Support of Motion for Service Awards.  The requested service awards are also

6   supported by the risks associated with bringing this lawsuit, the protracted nature of this litigation,

7   and the important public policies underlying the Plaintiffs' claims.

8   The service awards of $7,500 for Plaintiff Williams, and $5,000 for Plaintiff Bassett, are

9   hereby APPROVED.

10          C.      William Kindred

11   William Kindred, who worked for H&R Block as a California Office Manager during the

12   applicable class period, chose to exclude himself from this matter pursuant to the class certification

13   notice distributed in July 2011.  Mr. Kindred contacted Class Counsel and requested to be included

14   in the settlement.  Based on the parties' non-opposition to this request, the Court APPROVES Mr.

15   Kindred's request to withdraw his opt out form and participate fully in the Settlement.

16          D.      Attorneys' Fees, Costs and Expenses

17   Class Counsel seek an award of $2,198,775.33 in attorneys' fees, and $401,224.67 in costs

18   and litigation expenses, for a total award of $2.6 Million in fees, costs and expenses. The Court

19   grants Class Counsel's request for reasonable attorneys' fees, costs and expenses. "In California,

20   the fee setting inquiry ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably

21   expended multiplied by the reasonable hourly rate." *Building a Better Redondo, Inc. v. City of*

22   *Redondo Beach*, 203 Cal.App.4th 852, 870 (2012).  A court may also "cross-check" the lodestar-

23   based award against the percentage-of-the-fund method for purposes of ensuring that the fee award

24   is reasonable. *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 253 (2001).

25   As an initial matter, the Court finds that the hourly rates claimed by Class Counsel are

26   reasonable. Given their knowledge, skill and expertise in complex class action cases such as this

27   one, Class Counsel's partner and associate rates fall within the range of rates charged by similarly

28   experienced and qualified attorneys practicing in this area. Further, Class Counsel have shown that

1  their hourly rates are comparable to and in-line with the hourly rates charged by numerous firms

2  practicing in the San Francisco Bay Area on a non-contingency basis and which do similar work.

3       Accordingly, the Court finds that the following 2012 hourly rates requested by Class

4  Counsel to be reasonable and to be in-line with market rates in the Bay Area for attorneys with

5  similar qualifications and experience who do similar work:

6            Schneider Wallace Cottrell Brayton Konecky LLP

7
8

| Attorney | Law School Grad. Date | 2012 Hourly Rate |
|---|---|---|
| Guy B. Wallace | 1993 | $700.00 |
| Clint J. Brayton | 1997 | $650.00 |
| Joshua Konecky | 1995 | $650.00 |
| Carolyn Cottrell | 1993 | $650.00 |
| Andrew Lee | 2006 | $475.00 |
| Megan Lewis | 2006 | $450.00 |
| Juliana Poindexter | 2008 | $400.00 |
| Kiran Prasad | 2007 | $450.00 |
| Monica Quivey | 2006 | $450.00 |
| Drew Teti | 2009 | $350.00 |
| Michael Thomas | 1997 | $500.00 |
| William Willson | 2004 | $500.00 |

17
18         Goldstein Demchak Baller Borgen Dardarian LLP

| Attorney | Law School Grad. Date | 2012 Hourly Rate |
|---|---|---|
| Teresa K. Demchak | 1976 | $775.00 |
| David A. Borgen | 1981 | $750.00 |
| Laura L. Ho | 1994 | $650.00 |
| Barry L. Goldstein | 1970 | $785.00 |
| James Kan | 2005 | $470.00 |
| Jason Tarricone | 2006 | $445.00 |

24
25            Law Offices of Alexander Van Broek

| Attorney | Law School Grad. Date | 2012 Hourly Rate |
|---|---|---|
| Alexander Van Broek | 1980 | $395.00 |

28

ORDER OF FINAL APPROVAL AND JUDGMENT
*Williams v. H&R Block, et al.*, Case No. RG08366506

1    The Court has reviewed the Declarations of Guy B. Wallace, David Borgen, and Alexander

2    Van Brock describing the work performed by Class Counsel on this case, as well as the time

3    records submitted in support of the application for an award of fees. The total hours claimed by

4    Class Counsel are approved based on evidence presented of the work performed and the results

5    achieved. Class Counsel has presented the Court with detailed billing records of their work

6    performed in this matter. These records are adequate and describe the nature of the work performed

7    by each firm and the attorneys therein. The Court is also satisfied that Class Counsel have

8    exercised appropriate and significant billing judgment by not requesting fees for unproductive or

9    duplicative work.

10   The Court concludes that Class Counsel's fees are justified under the statutory fee

11   methodology. Class Counsel seeks a fee award of $2,198,775.33, which amounts to approximately

12   85% of Class Counsel's actual lodestar of $2,590,296.84. As discussed above, Class Counsel's

13   hourly rates fall within the range of hourly rates charged by attorneys of comparable experience,

14   qualifications, and ability who do complex class action litigation in the Bay Area. Moreover,

15   considering the amount of discovery, motion practice, and trial preparation that occurred in this

16   matter, the difficulty and risks associated with the legal and factual claims that were litigated

17   herein, and the aggressive defense mounted by H&R Block, the number of hours claimed by Class

18   Counsel is reasonable as well and is amply supported by the record.

19   Cross-checking the lodestar amount of $2,198,775.33 against the total amount of funds to be

20   paid out pursuant to the settlement, which is $6,440,621.39 as stated in the Declaration of the

21   Claims Administrator Caroline Barazesh at ¶ 22, the Court finds that the amount of fees sought by

22   Class Counsel would amount to approximately 34% of the total funds to be distributed pursuant to

23   the Settlement. This percentage is reasonable, and is consistent with that approved in numerous

24   other wage and hour class action settlements in California. *See, e.g., Martin v. Ameripride Servs.,*

25   *Inc.*, 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) ("More particularly, courts may award

26   attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a

27   common fund under $10 million."); *Cicero v. DirectTV, Inc.*, 2010 WL 2991486, at * 6 (C.D. Cal.

28   July 27, 2010) ("[A] review of California cases in other districts reveals that courts usually award

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY ʟʟᴘ

1   attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a

2   common fund under $10 million.") (collecting authorities).

3       The Court also finds that the costs and expenses incurred by Class Counsel are reasonable

4   and necessary based on detailed evidence presented of costs and expenses incurred.

5       Accordingly, the Court APPROVES Class Counsel's requested fees in the amount of

6   $2,198,775.33, and costs and expenses in the amount of $401,224.67. Consistent with this Court's

7   practice, 5% of this fee award shall be held by the Claims Administrator in an interest bearing

8   account pending submission and approval of a final compliance status report after completion of

9   the distribution process.

10      A compliance hearing shall be scheduled for October 10, 2013 At 2:00 pm

    In Dept 20. STATUS REPORT TO BE FILED BY October 7, 2013

11  V.    JUDGMENT & CONTINUING JURISDICTION

12      The parties are otherwise directed to comply with the terms of the Settlement. Pursuant to

13  California Rule of Court 3.769(h), the Court HEREBY MAKES AND ENTERS JUDGMENT, and

14  shall retain jurisdiction and oversight of the settlement proceedings.

15

16

17  Dated: Nov 8, 2012

18                    ROBERT B. FREEDMAN
                  JUDGE OF THE SUPERIOR COURT

19

20

21

22

23

24

25

26

27

28

SCHNEIDER WALLACE
COTTRELL BRAXTON
KONECKY llp

# EXHIBIT SW05

1   Claudia Center, State Bar No. 158255
    Jinny Kim, State Bar No. 208953
2   Rachael Langston, State Bar No. 257950
    THE LEGAL AID SOCIETY-EMPLOYMENT LAW CENTER
3   180 Montgomery St., Suite 600
    San Francisco, CA  94104
4   Telephone:  (415) 864-8848
    Facsimile:  (415) 593-0096
5   Emails:  ccenter@las-elc.org; jkim@las-elc.org; rlangston@las-elc.org

6

7   Joshua Konecky, State Bar No. 182897
    SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY, LLP
8   180 Montgomery St., Suite 2000
    San Francisco, CA  94104
9   Telephone:  (415) 421-7100
    Facsimile:  (415) 421-7105
10  Email: jkonecky@schneiderwallace.com

11

12  Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16

17  GABRIEL ORTIZ, ANDREW GONZALES,     )   Case No.:  5:09-cv-03485-LHK
    LANDON MICKEY MILLER, AND JOE       )
18  HUYNH,                              )   [Proposed] ORDER GRANTING
                                        )   PLAINTIFFS' APPLICATION FOR AN
19          Plaintiffs,                 )   AWARD OF ATTORNEYS' FEES AND
                                        )   COSTS
20                                      )
        v.                              )
21                                      )   DATE: February 2, 2012
                                        )   TIME:  1:30 p.m.
22  HOME DEPOT U.S.A., INC.,            )   LOCATION:  Courtroom 8
                                        )   The Honorable Lucy H. Koh
23          Defendant.                  )
                                        )
24                                      )
                                        )
25                                      )
                                        )
26

27

28

29

---

[PROPOSED] ORDER GRANTING PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS FEES
AND COSTS
*Case No. 5:09-cv-03485-LHK*

The Court having considered Class Counsel's Motion for an Award of Attorneys' Fees and Costs, and the supporting declarations, and being familiar with this action, HEREBY FINDS AS FOLLOWS:

     1.    Notice of the requested award of attorneys' fees and costs was directed to Class Members in a reasonable manner, and complied with Rule 23(h)(1) of the Federal Rules of Civil Procedure;

     2.    Class Members and any party from whom payment is sought have been given the opportunity to object in compliance with Fed. R. Civ. P. 23(h)(2);

     3.    No Class Member has objected to the requested fees and expenses;

     4.    The attorneys' fees and costs in the Class Action Settlement Agreement were negotiated after the class injunctive relief and monetary relief were negotiated;

     5.    The time spent by Class Counsel on this case, as described in the Declarations of Jinny Kim and Joshua Konecky and documented by the billing records attached to those declarations, was reasonable;

     6.    The rates claimed by the Legal Aid Society – Employment Law Center and Schneider Wallace Cottrell Brayton Konecky LLP, as described in the Declarations of Jinny Kim and Joshua Konecky, are consistent with the prevailing market rates in the Bay Area legal community for attorneys and professional staff of comparable skill and experience doing comparable work, and are reasonable;

     7.    The equitable relief in the Class Action Settlement Agreement is meaningful and socially beneficial, and will greatly benefit Class Members;

     8.    The attorneys' fees requested are commensurate with Class Counsel's current lodestar. Moreover, Class Counsel's lodestar will most likely be less than the fees requested after they complete all their work in connection with this case over the 30-month settlement term;

1        9.    The costs and expenses incurred by Class Counsel are documented and

2    reasonable;

3        10.  .   The requested award of $500,000.00 for attorneys' fees and reimbursement of

4    costs and expenses is fair and reasonable.

5        Accordingly, IT IS HEREBY ORDERED as follows:

6        Class Counsel are hereby awarded attorneys' fees in the amount of $500,000.00 and costs

7    in the amount of $71,295.54 for work performed and costs and expenses incurred through the
     hearing on final approval, plus any future costs incurred in connection with monitoring the

8    Agreement up to a total maximum of $85,000.00 for costs.

9

10   Dated: February _2_, 2012                _Lucy H. Koh_

11                            The Hon. Lucy H. Koh
                              United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

# EXHIBIT SW06

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMEN HOLLOWAY, AMY GARCIA, CHERYL CHAPPEL, ERIC BLACKSHER, JESSICA TREAS, LAWRENCE SANTIAGO, JR., MUEMBO MUANZA, MAURICE CALHOUN, and NICHOLAS DIXON, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>BEST BUY CO., INC. and BEST BUY STORES, L.P.,<br><br>        Defendants. | Case No.  C-05-5056 PJH (MEJ)<br><br>CLASS ACTION<br><br>**[~~REVISED PROPOSED~~] ORDER GRANTING PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Date:  November 9, 2011<br>Time:  9:00 A.M.<br>Judge:  Hon. Phyllis J. Hamilton |

The Court having considered Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Costs and Expenses, and the supporting declarations, and being familiar with this action, HEREBY FINDS AS FOLLOWS:

1.  Notice of the requested award of attorneys' fees and reimbursement of costs and expenses was directed to Class Members in a reasonable manner, and complied with Rule 23(h)(1) of the Federal Rules of Civil Procedure;

2.  Class Members and any party from whom payment is sought have been given the opportunity to object in compliance with Fed. R. Civ. P. 23(h)(2);

3.  No Class Member has objected to the requested fees and expenses;

4.  The attorneys' fees and costs in the Consent Decree were negotiated after the class injunctive relief and individual monetary relief and service payments were negotiated;

5.  The time spent by Class Counsel on this case was reasonable;

6.  The rates used by Class Counsel are reasonable;

7.  The injunctive relief in the Consent Decree is meaningful and socially beneficial, and will greatly benefit Class Members;

8.  Having obtained injunctive relief, Plaintiffs are prevailing parties on the claims asserted;

9.  The reasonable lodestar of the firms serving as Class Counsel on matters on which the Class is a prevailing party exceeds $15 million;

10. The attorneys' fees requested, which are far less than Class Counsel's lodestar, are reasonable given the excellent result achieved for the Class;

11. The costs and expenses incurred by Class Counsel are reasonable;

12. The requested award of $9,999,999.00 for attorneys' fees and reimbursement of costs and expenses is fair and reasonable.

//

//

- 1 -

[REVISED PROPOSED] ORDER GRANTING APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS
CASE NO. C-05-5056 PJH (MEJ)

Accordingly, IT IS HEREBY ORDERED as follows:

Class Counsel are hereby awarded attorneys' fees and costs and expenses in the amount of $9,999,999 for work performed and costs and expenses incurred prior to the hearing on final approval.

Dated: __November 9, 2011__

_____
The Hon. Phyllis J. Hamilton
United States District Judge

[REVISED PROPOSED] ORDER GRANTING
APPLICATION FOR ATTORNEYS' FEES AND
REIMBURSEMENT OF COSTS
CASE NO. C-05-5056 PJH (MEJ)

# EXHIBIT SW07

# Billing and Costs Summary

| **Billing by Firm** | **Hours Billed** | **Total** |
| --- | --- | --- |
| Schneider Wallace Cottrell Konecky Wotkyns | 3222.5 | $1,278,876.50 |
| Hoyer & Hicks | 624.2 | $188,358.50 |
| Righetti Glugoski | 933.3 | $433,775.00 |
| **TOTAL BILLING** | **4780.0** | **$1,901,010.00** |

| **Costs by Firm** | | **Total** |
| --- | --- | --- |
| Schneider Wallace Cottrell Konecky Wotkyns | | $75,967.79 |
| Hoyer & Hicks | | $2,309.70 |
| Righetti Glugoski | | $14,754.89 |
| **TOTAL COSTS** | | **$93,032.38** |

| **TOTAL BILLING AND COSTS** | | **$1,994,042.38** |
| --- | --- | --- |

EXHIBIT SW08

## Summary of Billing By Project for All Firms

| | Project Description | Code | SW | HH | RG |
|---|---|---|---|---|---|
| I | Analysis/Strategy | 100 | $50,970.00 | $22,023.50 | $101,955.00 |
| II | Pleadings | 200 | $6,520.00 | $492.50 | $11,550.00 |
| | 1. | *Guilbaud* Complaint | 201 | | $5,079.50 | $22,355.00 |
| | 2. | *Guilbaud* First Amended Complaint | 202 | $845.00 | $1,913.00 | $7,080.00 |
| | 3. | *Guilbaud* Second Amended Complaint | 203 | $3,980.00 | $1,559.50 | $14,425.00 |
| | 4. | *Smith* Complaint | 204 | $21,136.50 | $630.50 | |
| | 5. | *Guilbaud* Third Amended Complaint | 205 | $47.50 | $1,975.50 | |
| | 6. | Consolidated Collective and Class Action Complaint | 206 | $21,178.50 | $1,802.00 | |
| | 7. | Counterclaims, Motion to Strike Defendant's Counterclaims | 207 | $34,874.00 | $5,286.50 | $13,735.00 |
| III | Coordination of *Smith* and *Guilbaud* | 300 | | $1,358.00 | $1,330.00 |
| | 1. | *Smith* Stipulation and Proposed Order to Transfer | 301 | $10,062.00 | | $975.00 |
| | 2. | *Guilbaud* Joint Case Management Statement, 7/8/14 CMC | 302 | $25,294.50 | | |
| IV | Case Management/Conferences/ Status Reports | 400 | $2,924.00 | $472.00 | $20,300.00 |
| | 1. | *Guilbaud* Joint Case Management Statement, 12/19/13 CMC | 401 | $150.00 | $145.50 | $5,320.00 |
| | 2. | *Smith* Status Report | 402 | $4,116.00 | | |
| | 3. | *Smith* Stipulation and Proposed Order to Continue CMC | 403 | $1,276.50 | | |
| | 4. | *Guilbaud* Joint Case Management Statement, 5/23/14 CMC | 404 | $2,122.50 | $921.50 | $3,550.00 |
| | 5. | Joint Case Management Statement, 1/20/15 CMC | 405 | $6,773.50 | $48.50 | |
| | 6. | Stipulation and Proposed Order to Continue Deadlines in 12/16/14 Order | 406 | $7,523.00 | $436.50 | |
| | 7. | Stipulation and Proposed Order to Continue Deadlines in 5/20/15 Order | 407 | $7,060.00 | | |
| V | Discovery | 500 | $22,707.00 | $4,413.50 | $31,560.00 |
| | 1. | Formal Written Discovery | 501 | $48,175.00 | $7,880.50 | $31,925.00 |
| | 2. | Stipulated Protective Order | 502 | $850.00 | | $12,400.00 |
| VI | Communicating/Coordinating Communications with Opt-in Plaintiffs | 1400 | $243,587.50 | $58,960.50 | $8,505.00 |
| VII | Collective Action Certification | 600 | $111,412.00 | $4,000.50 | $29,115.00 |
| | 1. | Notices of Consents to Join Collective Action | 601 | $47,812.50 | $944.50 | $22,115.00 |
| | 2. | Motion for Conditional Certification | 602 | $140,345.00 | $15,526.50 | $29,115.00 |
| | 3. | Motion for Protective Order | 603 | $6,277.00 | $2,764.50 | |

*Guilbaud, et al. v. Sprint* , 3:13-CV-04357-VC consolidated with *Smith, et al. v. Sprint* , 3:14-CV-02642-VC

| | | | | | |
|---|---|---|---|---|---|
| 4. | | Request for Civil Contempt Order | 604 | $8,589.00 | $582.00 | $1,315.00 |
| 5. | | Notice to Collective Members | 605 | $16,565.50 | $1,940.00 | |
| VIII | Settlement Approval Motions | | 700 | $8,215.50 | $339.50 | $1,165.00 |
| | 1. | Preliminary Approval Motion | 701 | $38,977.00 | $4,567.50 | |
| | 2. | Final Approval Motion | 702 | $1,435.00 | | |
| | 3. | Motion for Attorneys' Fees and Costs | 703 | $20,236.00 | | $6,590.00 |
| IX | Settlement Negotiations and Mediation | | 800 | $1,315.50 | | $8,270.00 |
| | 1. | Settlement Negotiations | 801 | $27,883.00 | $2,301.00 | $7,800.00 |
| | 2. | Mediation | 802 | $154,678.50 | $8,582.00 | $1,680.00 |
| X | *Bui* Action | | 900 | $13,244.50 | $7,581.00 | $7,350.00 |
| | 1. | Response to Notice of Pendency of *Bui* | 901 | $3,253.50 | $630.50 | $3,375.00 |
| | 2. | Motion to Intervene/Opposition to Preliminary Approval/Withdrawal | 902 | $77,957.50 | $19,070.00 | $2,775.00 |
| | 3. | Ex Parte Application to Stay *Bui* Mediation | 903 | $6,301.00 | $1,365.50 | $1,050.00 |
| XI | *Salamanca* Action | | 1000 | $309.00 | | $280.00 |
| | 1. | Response to Defendant's Motion of Whether to Relate Salamanca | 1001 | $4,111.00 | $145.50 | $490.00 |
| XII | *Esquivel* Action | | 1300 | $15,153.50 | $242.50 | |
| XIII | Miscellaneous | | 1100 | $22,181.00 | | $7,425.00 |
| | 1. | LWDA/PAGA Letters | 1101 | $834.00 | | $13,065.00 |
| | 3. | Communicating with Opposing Counsel | 1103 | $10,780.00 | $2,182.50 | $3,285.00 |
| | 4. | Communicating with Notice/Settlement Administrator | 1104 | $11,958.50 | $194.00 | |
| | 5. | Casemapping | 1105 | | | $550.00 |
| XIV | Travel | | 1200 | $6,878.50 | | |
| | **TOTAL PER FIRM** | | | **$1,278,876.50** | **$188,358.50** | **$442,280.00** |
| | **TOTAL COMBINED BILLING** | | | | **$1,909,515.00** | |