EXHIBIT RG02



RECEIVED

OCT 1 2 2001

F I L E D
STEPHEN THUNBERG
Clerk of the Superior Court

OCT 2 3 2001

By: S. WEAVER, Deputy

1
2
3
4
5
6
7
8          SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                       COUNTY OF SAN DIEGO
10

11  STEVE ALBRECHT, TIM WEISE,                Case No. 729219
12  VICTORIA BURDETTE, and ROBERT
    HARKNESS, as Individuals, and On          AMENDED [PROPOSED] ORDER
13  Behalf of All Other Individuals Similarly  GRANTING FINAL APPROVAL OF
    Situated,                                  CLASS ACTION SETTLEMENT
14                                             Date: October 11, 2001
                    Plaintiffs,                Time: 9:00 a.m.
15                                             Dept: 72
                    vs.                        Judge: J. Richard Haden
16  RITE AID CORPORATION, a Delaware
    Corporation, THRIFTY PAYLESS, INC.,        Date of Filing: September 25, 2001
17  a California Corporation, and DOES 1       Trial Date: August 31, 2001
    through 5,000, inclusive,
18
                    Defendants.
19

20
21

22      This matter having come before this Court and the Honorable J. Richard Haden on the

23  application of the parties to a Stipulation for Class Action Settlement, dated May 31, 2001,

24  lodged herein on May 31, 2001 (the "Stipulation") for approval of the settlement of the above

25  captioned action as set forth in the Stipulation (the "Settlement"); a hearing having been held

26  before the Court on October 11, 2001, and this Court having considered the Stipulation, all other

27  submissions, motions, objections and evidentiary materials filed, and arguments by counsel

28  and/or Class Members made in connection therewith, and the pleadings, files, records and

    I-LA/387039.1

       AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   proceedings and hearings in this action; and this Court otherwise being fully advised and

2   informed; this Court enters the Order as follows:

3                            **BACKGROUND**

4       1.     On or about March 23, 1999, Plaintiffs Steve Albrecht, James Dorsey, Victoria

5   Bardotte, Robert Harkness and Ross Crespy filed a proposed class action in the Superior Court of

6   the State of California, in and for the County of San Diego on behalf of themselves and other

7   current and former employees similarly situated against Defendants Rite Aid Corporation and

8   Thrifty PayLess, Inc. ("Rite Aid") (Plaintiffs and Rite Aid shall hereinafter be referred to

9   collectively as the "Settling Parties.").

10      2.     Plaintiffs sought damages for (a) failure to pay overtime wages (violation of

11   California Labor Code §§1194 and 1198; California Civil Code §287), (b) unfair trade practices

12   (violation of California Business & Professions Code §17000, et seq.), (c) unfair competition

13   (violation of California Business & Professions Code §17200, et seq.), (d) conversion, (e) theft of

14   labor (California Penal Code §484), (f) unjust enrichment, (g) breach of contract and (h) breach of

15   the covenant of good faith and fair dealing.

16      3.     The Plaintiffs purported to bring the action on behalf of the following sub-classes:

17      (a)  All persons who, at any time during the four years preceding the filing of the

18   Complaint to the present, were (1) employed and/or worked at any store in the State of California

19   owned by Rite Aid and/or Thrifty Payless as a Manager and (2) were classified as exempt

20   employees and were not paid overtime in accordance with the California Labor Code and its

21   implementing regulations; (b) All persons who, at any time from four years prior to the filing of

22   this complaint to the present, were (1) employed and/or worked at any store in the State of

23   California owned by Rite Aid and/or Thrifty Payless as an Assistant Manager and (2) were

24   classified as exempt employees and were not paid overtime in accordance with the California

25   Labor Code and it implementing regulations; (c) All persons who, at any time from four years

26   prior to the filing of this Complaint to the present, were (1) employed and/or worked at any store

27   in the State of California owned by Rite Aid and/or Thrifty Payless as a manager-in-training and

28   (2) were classified as exempt employees and were not paid overtime in accordance with the

1  California Labor Code and its implementing regulations.

2      4.     The Plaintiff Class consists of all those California based current and former Rite

3  aid, Thrifty Payless, and/or TPH, Inc. employees employed within four years from the filing of

4  this Complaint to the present, who were not paid overtime as required by the California Labor

5  Code and its implementing regulations.

6      5.     On or about July 15, 1999, Plaintiffs filed an Amended Complaint and substituted

7  Tim Weize as a named Plaintiff and class representative in place of James Dorsey and Ross

8  Crespy.

9      6.     On or about August 6, 1999, Plaintiffs filed for certification of the Class separated

10  into the following sub-classes:  (a)  California based store Managers employed by Rite Aid

11  between March 23, 1995 and the date of the filing of the lawsuit; (b) California based store

12  Assistant Managers employed by Rite Aid between March 23, 1995 and the date of the filing of

13  the lawsuit; and (c) California based Managers-In-Training employed by Rite between March 23,

14  1995 and the date of the filing of the lawsuit.

15      7.     On October 25, 1999, after all parties were given an opportunity to present

16  evidence and argument, and after oral argument, three sub-classes of current and former

17  California employees were certified:  "(1) store Managers employed by Defendants between

18  3/23/95 and the date of the filing of this Complaint, 3/25/99; (2) store Assistant Managers

19  employed by Defendants between 3/23/95 and 3/25/99; and (3) store Manager-in-Training

20  employed between 3/23/95 and 3/25/99.  In addition, the Plaintiffs dismissed a Seventh Cause of

21  Action for breach of contract and Eighth Cause of Action for breach of the implied covenant at

22  the time of the October 22, 1999 oral argument.  These causes were dismissed with prejudice.

23      8.     On December 3, 1999, a case management conference was held to consider the

24  publication of Class notice and other matters relating to the Class.  At that time, Settling Parties

25  agreed to amend the class certification order to provide that the initial date of the Class be

26  October 5, 1994, as opposed to March 23, 1995.  This was done to conform the Class to, and

27  because the time for the Class was tolled by, *Gospodnetich v. Rite Aid Corporation, et al.,* Marin

28  County Superior Court Case No. 175094.  Particulars with respect to the notice were addressed

1-LA/591859.1

3

1    and the proposed notice was to be mailed by the end of January from a list of Class Members that

2    Defendant was to generate from their payroll system by January 21, 2000.

3        9.    On January 24, 2000, the Notice of Pendency of Class Action was approved by the

4    Court. The Notice of Pendency of Class Action was sent to Class Members on February 25, 2000.

5    At the same time, the Notice was published throughout California.  The Notice, in addition to

6    allowing Class Members to opt out, included an option allowing Class Members to remain in the

7    case but with their own counsel (referred to as "Opt #2 Counsel").  This resulted in 109 Class

8    Members remaining in the Class, not as named Plaintiffs but as Opt #2 Plaintiffs, with their own

9    counsel.

10       10.    The Settling Parties first engaged in settlement discussion in December, January,

11   and February of 1999 and 2000.  On February 17, 2000, a formal mediation was held with the

12   Honorable J. Lawrence Irving (Ret.).  All parties were represented.  Included were all Opt #2

13   counsel.  Settlement discussions broke down and settlement was not achieved.

14       11.    A second formal mediation was held with the Honorable Anthony C. Joseph (Ret.)

15   on September 20, 2000.  This mediation involved only Class counsel and Rite Aid. It also was

16   unsuccessful.

17       12.    The Court is well aware of the substantial discovery that was conducted by the

18   parties.  The parties report that it involved:

19      • the production of in excess of one million documents which were review by Class
20        Counsel;

21      • eighty eight depositions involving approximately 122 days;

22      • the preparation, receipt, review of, and response to approximately 2,300 items of written
23        discovery;

24      • the interview of literally hundreds of material witnesses;

25      • The review and analysis by Plaintiffs of Rite Aid's public filings, annual reports and other
          public statements;

26      • the review and analysis of the complaints against Rite Aid at the Division of Labor
27        Standards Enforcement (hereinafter "DLSE");

28      • the generation of class-wide liability and damages studies;

AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   ♦   the analysis of Rite Aid financial information, including the involvement by Plaintiffs of a bankruptcy expert, regarding Rite Aid's ability to pay any judgment obtained.

2

3   13.   The depositions included, in addition to the Class Representative depositions, absent Class Member depositions, and many depositions of Persons Most Knowledgeable, depositions by Class Counsel of high-level management and corporate executives.

4

5   14.   On May 3, 2001, Rite Aid filed a motion to decertify the class. The Motion created a risk that the case could be decertified based, in part, on Rite Aid's contention that a significant percentage of the Class Members deposed had testified in their depositions that they spent more than 50% of their time doing exempt management duties. The motion was filed within weeks of another decision of the San Diego Superior Court where class certification was denied in a wage and hour overtime case.

6

7

8

9

10

11   15.   Rite Aid maintained all along that this case was not suited for class action treatment and would not be possible to try as a representative action. Likewise, Rite Aid believed it had a good chance of prevailing on the merits of the claims. This was based upon its contention that:

12

13

14

15   ♦   the burden was plaintiffs', not Rite Aid's, to prove the Class Members did not work 50% of their time doing exempt work;

16

17   ♦   an independent shadowing study undertaken by Rite Aid at out-of-state stores comparable to those in California established that Rite Aid's Managers were exempt;

18

19   ♦   that same study was inconclusive with respect to Assistant Managers, but established that the case was not appropriate for class treatment and

20   ♦   there was significant testimonial evidence that Managers and Assistant Managers were exempt, or if doing non-exempt work, they were not meeting the expectations of Rite Aid and were exempt pursuant to *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785 (1999).

21

22   16.   Rite Aid acknowledges, however, that there was evidence that Managers and Assistant Managers spent a good deal of their time engaged in non-management duties. There was evidence that some store managers exercised little discretion and/or independent judgment. Thus, Rite Aid points out that there was a significant risk that it could lose at trial. This risk and the prospect of lengthy and expensive litigation against experienced Class Counsel, made settlement attractive to Rite Aid.

23

24

25

26

27

28

1-LA/2471391

5

17. Class Counsel too expressed confidence in the merit of their position. There were, however, factors that made settlement attractive from Plaintiffs' point of view:

* they were confronted with a motion for decertification which could have been granted, and which created uncertainty if there was an appeal;

* Department 67 of this Court had just found that certification of a class in a wage and hour overtime case was inappropriate. *Sullenger v. Gap, Inc.*, San Diego Superior Court Case No. GIC 742603;; and

* Rite Aid was under significant financial stress, which created a great deal of concern for Class Counsel who were faced with the very real risk that Rite Aid could declare bankruptcy.

Faced with these credible risks, it was determined by Class Counsel that a settlement at this juncture was in the best interests of the Class Members.

18. The discussions that ultimately resulted in settlement began in April, 2001, consumed a 14-hour Saturday in May; and continued until the day before the June 1 hearing on the preliminary approval of the settlement. Between that mediation and negotiation of the Stipulation for Class Settlement, Class Counsel explained the terms of the proposed settlement to the Opt #2 attorneys. Input was received from the Opt #2 attorneys and, in some areas, their additional requested terms were agreed to by the parties and incorporated into the final settlement agreement.

19. On June 1, 2001 the Court granted preliminary approval to the class action settlement and ordered that notice be given to all Class Members via first class mail and via publication. At that hearing (attended by Opt #2 counsel) no objection was made as to the form or content of the proposed settlement notice.

20. The name, last known address, telephone number, and social security number of each Class Member contained in Rite Aid's payroll system was provided. Moreover, additional identifying information was provided by Defendant through a review of its personnel files. Class Counsel personally reviewed 36 pallets of boxes that Rite Aid searched in an effort to identify additional class members that could be contacted directly.

21. The parties, through their claims administrator, Rosenthal & Co., put into effect procedures to maximize Class Member participation. After publication, every person who called

LA6578393.1

6

AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT



1   requesting a Claim Form was promptly provided with one, including 78 individuals who were not

2   found in the original database. Further, the Notice and claim form were available for download

3   by Class Members from the informational website set up by Class Counsel,

4   www.riteaidlawsuit.com. The Claims Administrator re-mailed 80 Notices where the original

5   notices were returned with forwarding addresses, and completed 911 skip traces yielding

6   addresses for 750 additional Class Members. The final list of Class Members included 3,659

7   names. The claims administrator and Class Counsel processed hundreds of inquiries by phone

8   and e-mail. Two thousand two hundred thirty-two claims were received as of the claim cut-off

9   date of September 12. This represents 65% of the Class Members and 75% of the estimated total

10   work weeks for the entire class.

11       22.    There were no opt outs as a result of this mailing, even though some portion of the

12   class (i.e., those Class Members who did not previously receive notice) were given an opportunity

13   to opt out.

14       23.    The Court has received objections filed on behalf of 34 Class Members. Cotchett,

15   Pitre & Simon ("Cotchett") filed objections on behalf of the 18 Opt #2 Class Members they

16   represent. Gancedo & Nieves ("Gancedo") filed objections on behalf of their Opt #2 clients.

17   Arias, Ozzello & Gignac ("Arias") filed objections on behalf of their Opt #2 client; and

18   Wasserman, Comden & Casselman, ("Wasserman") representing one Opt #2 Class Member

19   joined in the Objections filed by Cotchett. Messers Caiafa and Morosoff ("Caiafa") filed

20   untimely objections on behalf of four class members. Class Counsel and Rite Aid argue that the

21   Caiafa objections should not be considered because they are late filed. Moreover, Class Counsel

22   argue that the Caiafa objections should not be considered because Morosoff is not qualified to

23   practice law in the State of California and it appears from the evidence that they do not represent

24   the Class Members they purport to represent. The Court finds that the Caiafa objections are

25   untimely, and overrules them on that basis. However, the Court further finds that, as discussed

26   herein, it would overrule the objections on the merits as well.

27       24.    The objecting Class Members represent approximately 1% of the class.

28

LA/1673393.1

7

AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

25.   For a class this size, covering an extended period of time (going back to 1994), and most importantly, taking into consideration the changes in ownership of Rite Aid (i.e., Thrift-Payless, TPI, Rite Aid), the rate of return of the claims is well within the range of reasonableness. In addition, the number of objections is extremely small, about 1%. This overwhelming acceptance of the settlement is testament to its fairness, reasonableness, and adequacy.

26.   Several of the objections are proffered by more than one plaintiff group. The Court will consider them seriatim.

27.   To prevent fraud, collusion or unfairness to the class, the settlement or dismissal of a class action requires court approval. California Code of Civil Procedure § 1781(f); Federal Rule of Civil Procedure 23(e); *Malibu Outrigger Bd of Governors v. Superior Court*, 103 Cal. App. 3d 573, 578-579 (1980). The purpose of the requirement is the protection of those Class Members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 624 (9th Cir. 1982).

28.   In deciding whether to grant final approval to the settlement of a class action under CCP § 382, the court's overriding concern is whether the proposed settlement is "fair, adequate, and reasonable." *Dunk v. Ford Motor Company*, 48 Cal. App. 4th 1794, 1801 (1996) (quoting *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied (1983) 459 U.S. 1217). Although the trial court has broad powers to determine whether a proposed settlement in a class action is fair, *Mallek v. Superior Court*, 89 Cal. App. 3d 434 (1979), the relevant factors that a court should consider include: the strength of plaintiffs' case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the Class Members to the proposed settlement. *Officers for Justice v. Civil Service Com.*, supra, 688 F.2d 624. Such factors "should be tailored to each case." *Dunk v. Ford Motor Company*, supra, 48 Cal. App. 4th 1801.

29.     "Due regard should be given to what is otherwise a private consensual agreement between the parties." *Id.* Indeed, "voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *7-Eleven Owners for Fair Franchising v. Southland Corporation,* 85 Cal. App. 4th 1135, 1151 (2000). For that reason, a presumption of fairness exists where: (1) The settlement is reached through arm's length bargaining; (2) Investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) Counsel is experienced in similar litigation; and (4) The percentage of objectors is small. *Dunk v. Ford Motor Company, supra,* 48 Cal. App. 4th at 1802.

30.     The stage of the proceedings and the amount of discovery completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Communications Sec. Litig.,* 619 F. Supp. 735, 741, (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 616-617 (N.D. Cal. 1979). One should consider whether "the parties ... have a clear view of the strengths and weaknesses of their cases." *Warner Communications Sec. Litig.,* 618 F. Supp. 745; *Ellis,* 87 F.R.D. 18; *Boyd,* 485 F. Supp. 616-617.

31.     Thus, the Court finds as follows:

(i)     It is clear that the parties have reached the stage of these proceedings where they have "a clear view of the strengths and weaknesses of their cases." *Warner Communications, supra.*

(ii)     Class Counsel have carefully assessed the relative merits of its position and have concluded that the substantial risk they confront, the expense of the litigation and the likelihood of protracted litigation, including appeals, militates toward settlement, and that, given those considerations, the terms of the Stipulation of Settlement are in the best interests of the Class Members. The Court concurs.

(iii)     Rite Aid has assessed the relative merits of its position, and have concluded that the terms of the Stipulation of Settlement are in its best interest and in the interest of its shareholders.

1-LA/3718301.1

9

AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1       (iv)    This settlement was reached through arm's length negotiations. This is

2  exemplified by the multiple and protracted settlement discussions among the parties over the

3  course of a two year period.

4       (v)    Class Counsel are experienced in the prosecution of class actions and in the

5  area of employment law. They have weighed all applicable factors and endorse the proposed

6  settlement. The view of the attorneys, is "entitled to significant weight". *Fisher Bros. v.*

7  *Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa 1985); *see also Ellis*, 87 F.R.D.

8  18; *Boyd*, 485 F. Supp. 616-617.

9     32.  Having read the pleadings, and having heard the evidence and arguments in

10  support of and against the objections. The Court finds:

11       (i)    Arias contends that the notice of settlement was inadequate or misleading.

12  Objecting parties, however, provide no evidence in support of their claim. Moreover, the notice,

13  informed each class member precisely how the settlement payment to that individual would be

14  calculated, and how to file a claim and/or object. There is no basis for the objection, and it is

15  rejected.

16       (ii)    Cotchett, Wasserman, Gancedo, and Caiafa complain that the settlement

17  improperly precluded those class members who received the original notice from opting out. The

18  evidence establishes that objecting parties were provided the opportunity to opt out of the class

19  actions when the Notice of Pendency of Class Action was published. Although being informed

20  that failing to opt out at that time would result in their being bound by any settlement, they chose

21  to remain members of the class. The Court assumes that they did this with the knowledge of their

22  counsel, as they all filed forms signed both by them and their counsel. Having made an informed

23  choice to remain in the class and partake of the benefit of any class settlement, they should not

24  now be given a second chance to opt out. To allow them to opt out at this time would discourage

25  settlement and nullify the significant efforts of the parties to reach a fair and reasonable

26  compromise. Due process does not require another conclusion. *Officers for Justice v. Civil*

27  *Service Commission of the City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982).

28

I-LA/3072631.1

10

AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1       (iii) Arias argues that the settlement should not have involved the use of a claim

2    form.  Claim forms are standard in class action settlements. 2 Newberg on Class Action § 11.37

3    (3d ed. 1992).  Objectors provide no evidence or rationale why claims forms should not be used

4    here.  This objection is rejected.

5       (iv) Arias complains that there exists an undisclosed side-agreement regarding

6    how to handle those class members who object and timely appeal.  Rite Aid points out that there

7    is no such agreement in the Stipulation of Settlement, which is an integrated contract.  Assuming

8    there is such an agreement, however, Rite Aid has simply agreed to consider something that is

9    contrary to its interests, allowing opt outs by persons who previously declined to opt out, if doing

10   so would benefit the class by avoiding delays in payment which would be caused by appeals.

11   There is no showing that this arrangement would inure to the detriment of the class, and the

12   objection is rejected.

13      (v) Arias suggests that payment to the class should be made on the basis of the

14   overtime they actually worked as opposed to the formula worked out between the parties.  The

15   settlement should not be judged, however, against what might have been recovered had Plaintiffs

16   prevailed at trial, nor does the settlement have to provide 100 percent of the damages sought in

17   order to be fair and reasonable.  *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 246, 250

18   (2001).  A compromise such as this is particularly appropriate where, as here, it would be

19   impossible to do what the objectors suggest.  It is not possible to allocate the settlement based

20   upon the overtime actually worked because there is no evidence of what those hours might be.  In

21   any event, settlement pay out on the basis of weeks worked is the standard in wage/hour

22   settlements.

23      (vi) All objectors claim that the amount of attorneys" fees sought by class

24   counsel are too high and were negotiated contemporaneously with the amount to be paid the

25   class, creating a conflict of interest.  Addressing the second part of the objection first, the only

26   evidence before the Court is that the amount of the settlement was negotiated first, before the

27   question of attorneys" fees was broached.  This is the preferred method for approaching

28   settlement.  As a practical matter, a defendant is not going to settle without knowing what the

  1:LA/874318.5      11

  AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    parameters of its liability is going to be. Class counsel have to deal with this in the real world,

2    which means that it must first maximize the amount that they can obtain on behalf of the class,

3    and then discuss their fees as part of the settlement. As Newberg writes:

> the prevailing approach to the settlement of class actions for damages is
> the agreement of the defendant to create a certain fund for the benefit of
> the class and for class counsel to look to the fund as the source for a court
> award of reasonable counsel fees. Once paying the [settlement] fund, the
> defendant no longer has any interest in how much is used to pay fees, and
> only the court has the authority to bind the class by charging the fund
> with reasonable counsel fees and costs.

8    3 Newberg on Class Actions § 15.31 (3d ed. 1992). This was the process followed by Settling

9    Parties, there is no conflict of interest in the manner in which the settlement was negotiated.

10         Also before the Court is the argument that the amount of attorneys' fees is too great. That

11    is, the parties should have agreed upon a number other than 35% of the $25 million settlement

12    fund. Thirty five percent of the fund is not an unreasonable figure. The litigation was hotly

13    contested. Class Counsel invested a great deal of time and money in its prosecution. The parties

14    give a number of examples of other cases where the same percentage or more has been approved.

15    In any event, objecting parties do not address the point argued by Class Counsel and to which

16    Rite Aid concedes, that substantial non monetary benefits were achieved for the class, and that

17    this should be taken into consideration by the Court in determining if the fees are fair and

18    reasonable. The percentage for attorneys fees set forth in the settlement agreement is not

19    unreasonable given the circumstances. Further, in any event, Class Counsel and Rite Aid

20    properly left the final determination of reasonable fees to the discretion of the Court.

21         (vii)    Arias and Caiafa contend that the settlement amount to be paid to the class

22    is too low, especially when compared to prior offers. They argue that a settlement offer received

23    from Rite Aid in the February, 2000, mediation was more beneficial to the class. The evidence

24    proffered belies their contention. First, the evidence demonstrates that the February, 2000, offer

25    was, in fact, less beneficial to the class. More importantly, that settlement involved a different

26    class and a different time frame. There were many changes between February, 2000, and May,

27    2001. There were many developments relating to the litigation that made settlement more

28    attractive from the point of view of the class. There is no support in the record for this objection.

1    (viii)   Arias argues that the rate of interest agreed to by the parties is too low.  The

2  objectors, however, give no rationale in support of their position other than they think the number

3  should be higher.  The Court is certain that most plaintiffs involved in the settlement of a case

4  think that they should have obtained more.  Most defendants think that they gave too much.  The

5  interest amount was reached in good faith negotiations between the parties and is reasonable

6  given the circumstances of the case.

7    (ix)   Cotchett and Wasserman claim that it is unfair to have a settlement where

8  the residual after claims are paid, if any, revert back to the defendant.  They provide no authority

9  for their position.  Their reference to California Code of Civil Procedure § 384 and *State of*

10  *California v. Levi Strauss & Co.*, 41 Cal. 3d 460 (1986) is misplaced.  Neither applies to the

11  instant case, as both require a finding of fault or liability on the part of the defendant.  There is no

12  such finding here.  The parties have voluntarily settled hard fought litigation, without conceding

13  the validity of their respective positions.  Under such circumstances they may structure the

14  settlement as they see fit, as long as it meets the criteria for the settlement of class actions.  In

15  addition, given the risks involved to the parties, and the financial condition of Rite Aid, such a

16  settlement is not only reasonable but logical.  It benefits the class to have Rite Aid remain a viable

17  business.  The settlement as structured maximizes the amount that will be paid to the class while

18  assuring the minimum damage to Rite Aid.

19    (x)   Arias contends that the settlement has no enforcement mechanism.  This

20  objection is rejected.  In fact, the Court maintains continuing jurisdiction to assure the terms of

21  the agreement are met.

22    33.   The issue of attorneys' fees does not impact this Court's ability to determine that

23  the settlement is fair to the class, *Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1143

24  (1990).

25    34.   Class Counsel vigorously prosecuted this class action.  Class Counsel pursued

26  extensive investigation and discovery and efficiently and expeditiously litigated this case with a

27  high degree of creativity and professionalism.  Moreover, Class Counsel frequently dealt with

28

13

AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    sophisticated legal issues in prosecuting this case. The results obtained by this settlement, both as

2    to the monetary relief and the significant non-monetary relief, are significant and have been

3    endorsed by the vast majority of Class Members. The settlement negotiations were protracted

4    and appear to have been at "arms length." The question of fees was properly left solely to the

5    discretion of this Court. Having observed the quality of Class Counsel's work, having noted the

6    response of Class Members to the settlement terms, and being familiar with fee awards in similar

7    cases, a fee of thirty-five percent (35%) of the monetary relief, based on the Common Fund

8    Doctrine, is fair and reasonable.

9        35.    For all of the foregoing reasons, and upon good cause shown, IT IS HEREBY

10   ORDERED

11        (i)    That the class action settlement is hereby given final approval, as the

12   settlement is fair, reasonable, and adequate.

13

14        (ii)    The objections, having been duly considered, are hereby rejected for the

15   reasons set forth herein.

16        (iii)    That attorneys fees in the amount of thirty-five percent (35%), or

17   $8,750,000, to be paid from the $25 million which Rite Aid will pay pursuant to the terms of the

18   Settlement Agreement, are approved

19

20        (iv)    That Class Counsels' costs, to date, totalling $311,266.18 are reasonable

21   and approved and that additional costs, if any, incurred after this date may be later submitted for

22   approval by this Court.

23        (v)    That the Agreement between Class Counsel and Opt #2 attorney James S.

24   Davis, Esq. regarding allocation of fees is fair and reasonable and hereby approved by the Court.

25

26        (vi)    That Rite Aid prepare a proposed judgment for the protection of Rite Aid

27   from the future litigation of claims resolved through this action. The proposed judgment should

28   be submitted to Class Counsel for approval as to form. Pursuant to the Stipulation of Class



1    Action Settlement, Class Members are hereby ordered to dismiss all claims arising out of this

2    litigation presently pending in any forum against Rite Aid.  This Court shall retain jurisdiction

3    over this action, only for the purposes of entry of judgment, determining additional fair and

4    reasonable allocations of attorneys fees and costs, and for those other purposes set forth in the

5    parties' Stipulation of Class Action Settlement.

6

7

8    Dated: _____Mar. 23_____ 2001

9                                                        _____
                                                          The Honorable J. Richard Haden
10                                                       San Diego County Superior Court Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA:878392.1                                    15

AMENDED [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# EXHIBIT RG03

**ORIGINAL FILED**

### SUPERIOR COURT OF CALIFORNIA JUL 1 6 2002

### COUNTY OF LOS ANGELES LOS ANGELES

### CENTRAL DISTRICT SUPERIOR COURT

| | |
|---|---|
| BEN GRAUBARD, BEN WALLACE and MICHAEL GRISEY, individually and on behalf of all others similarly situated, | CASE NO. BC230520 |
| Plaintiffs, | |
| v. | ORDER AWARDING ATTORNEYS FEES AND COSTS |
| THE GOODYEAR TIRE & RUBBER COMPANY, a corporation dba Goodyear Tire and Service Centers, and dba Just Tires; DOES 1-20; | Date:  July 16, 2002 Time:  2:00 pm |
| Defendants. | Judge:  Hon. Anthony J. Mohr Dept.:  309 |

The Court in this action is well acquainted with the efforts of class counsel over the two plus years that this case has been litigated.  Class counsel had the class of Goodyear store managers certified and moved expeditiously toward trial.  Class counsel, working with defense counsel, made constructive suggestions to the Court in order to devise a trial methodology.  This Court ultimately appointed as its expert a statistician, Dr. Philip Stark, and devised with the assistance of counsel and Professor Stark the mandatory claim form.  This claim form called for potential class members to indicate hours worked at different Goodyear locations and the percentages of managerial versus non-managerial work.  After reviewing the range of responses, Professor Stark was able to suggest to the Court that randomly selecting twenty (20) of the claimants would yield a representative cross section for purposes of eliciting trial testimony.

1    Class counsel thereafter continued to advance the case toward trial while at the same time
2  pursuing efforts at settlement.  Because of the representative nature of the trial, the parties provided
3  this Court, and this Court accepted as reasonable, a trial estimate of only five days.   The case,
4  however, settled little more than a week before the scheduled trial date.  The benefits to current and
5  former Goodyear managers is notable.  The current managers have been converted by Goodyear to
6  an hourly basis and now receive overtime.  The cash settlement is $4,500,000.  In terms of overtime
7  pay, the average award on a per claimant basis is approximately $60,800.  This is an exceptional
8  result obtained by class counsel by assuming all the risks of this type of litigation and taking the case
9  forward to the point of trial.  At all times, class counsel have been professional, creative and helpful
10  to the Court in devising a discovery and trial methodology.  Accordingly, this Court finds that
11  attorney fees in the amount of $33⅓% of $4,500,000 or $1.5 million are appropriate.
12
13    The Court further finds that the attorney costs of $13,592.23 and the administrative costs of
14  $8,000 have been reasonably and properly incurred in the prosecution of this action.  The Court
15  therefore orders Class Action Claims Company to cause the disbursement of those costs and the
16  aforesaid attorney fees from settlement funds on deposit with the Nevada State Bank, Meadowwood
17  Branch, Account No. 0762011032.
18
19
20  DATED:  7-16-02
21                                                                    ANTHONY J. MOHR
                                                                      _____
22                                                                    Anthony Mohr
                                                                      Judge of the Superior Court
23
24
25
26
27
28

# EXHIBIT RG04

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

CENTRAL DISTRICT

ORIGINAL FILED

AUG 17 2001

LOS ANGELES
SUPERIOR COURT

| | |
|---|---|
| WYATT CRANDALL, et al<br><br>Plaintiffs,<br><br>v.<br><br>U-HAUL INTERNATIONAL, INC., et al,<br><br>Defendants. | Case No. BC 178775<br><br>(Consolidated with Marin County Sup. Ct.<br>Case No. 171057)<br><br>CLASS ACTION<br><br>Assigned for all purposes to the Honorable<br>J. Stephen Czuleger, Department 50<br><br>[PROPOSED]<br>ORDER APPROVING CLASS COUNSEL<br>FEES<br><br>Date:     August 17, 2001<br>Time:     8:30 a.m.<br>Dep't:    50 |

The Court, having reviewed the application for attorney fees and costs, and having considered all relevant matters, finds as follows:

Class counsel, Righetti ✦ Wynne and Harris & Kaufman, vigorously prosecuted this class action. It appears that class counsel pursued extensive investigation and discovery and efficiently and expeditiously litigated this case with a high degree of creativity and professionalism. These factors are commendable. Moreover, Class Counsel frequently dealt with sophisticated legal issues in prosecuting this case where this appears to be the first class action to have proceeded through a liability trial under California's quantitative exemption standard. The results obtained by this settlement are commendable and have been endorsed by the Class Members. The settlement negotiations were protracted and appear to have been at "arms length." The question of fees was properly left solely to the discretion of this Court and there has been no objection by any interested party. Having observed the high quality of class counsel's work, having noted the response of class members to the settlement terms, and being familiar with fee awards in similar cases, a fee of forty percent based on the Common Fund Doctrine is reasonable.

1

It is hereby, ORDERED, that from the $7,500,000.00 which Defendants pay pursuant to the terms of the Settlement Agreement, forty percent (40%), or $3,000,000.00, shall be approved for delivery for attorney fees, to be allocated as follows:  (1) to Righetti + Wynne, Professional Corporation: $1,500,000.00, and (2) to Harris & Kaufman: $1,500,000.00.

DATED: AUG 1 7 2001

J. Stephen Czuleger
Judge of the Superior Court

2

ORDER APPROVING FEES

# EXHIBIT RG05

1  MATTHEW RIGH... ..., ESQ.        {121012}
   EDWARD J. WYNNE, ESQ.            {165819}
2  JOHN J. GLUGOSKI                 {191551}
   RIGHETTI ♦ WYNNE
3  456 Montgomery Street, Ste. 1400
   San Francisco, CA  94104
4  (415) 983-0900

5

6  Counsel for Plaintiff

7

8

9

SUPERIOR COURT OF CALIFORNIA

LOS ANGELES COUNTY, CENTRAL DISTRICT

10  SUZANNE COLLINS et al.,              No. BC 208856

11              Plaintiffs,             CLASS ACTION

12  vs.                                 ORDER AND JUDGMENT
                                        GRANTING FINAL APPROVAL
13                                      OF SETTLEMENT
    AARON BROTHERS, INC., et al.,
14

15  Defendants.

16  _____    Date:  June 12, 2002
                                        Time:  10:00 a.m.
17                                      Dept.: 309
                                               Judge: Anthony Mohr
18

19

20  This matter having come before the Court for hearing, pursuant to the Order of the Court, ("Preliminary

21  Approval Order"), on the joint application of Plaintiffs and Defendant for approval of the settlement set

22  forth in the Class Action Stipulation Regarding Settlement, attached as Exhibit A to the Joint Motion for

23  Preliminary Approval ("Stipulation"); due and adequate notice having been given to the Class as required

24  in said Preliminary Approval Order, the Court having considered all papers filed and proceedings had

25  herein and otherwise being fully informed in the matter, and good cause appearing therefore,

26

27

28

1

ORDER AND JUDGMENT GRANTING
FINAL APPROVAL OF SETTLEMENT

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.     This Order and Judgment Granting Final Approval of Settlement ("Final Judgment") incorporates by reference the definitions set forth in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation.

2.     This Court has jurisdiction over the subject matter of this litigation and over all parties to this litigation, including all members of the Class.

3.     The Court finds that the mailing of the Notice of Settlement to the 904 putative class members was properly administered by Class Action Claims Company pursuant to Court order and that in connection with the mailing of the notice the response was as follows: _603_ Class Members filed timely and valid claims; _5_ Class Members filed untimely claims; one (1) individual, Timothy Nurkiewicz, filed a timely and valid opt-out; and no objections were filed.

4.     This Court hereby approves the settlement set forth in the Stipulation and finds that said settlement is, in all respects, fair, reasonable, adequate and in the best interests of the Class. Consummation of the settlement in accordance with the terms and provisions of the Stipulation is approved. The settlement shall be binding upon all members of the Class, who did not timely elect to be excluded from the Class when an opportunity was provided by the Court. In this case, the settlement shall not be binding on Timothy Nurkiewicz, the only individual who filed a timely and valid opt-out.

5.     Defendant, Aaron Brothers, Inc., shall pay the total, gross sum of $4,700,000.00 to or for the benefit of the Class, or to the attorneys for the Class (the "Settlement Fund"), in the manner more fully set forth below, which sum shall not be increased or decreased in any respect and which shall represent the total consideration to be paid by Aaron Brothers, Inc. in connection with the settlement. Aaron Brothers, Inc. shall have no further liability for costs, expenses, interest, attorneys' fees, administrative or notice charges of any kind or nature, or for any other charge, expense, or liability, except as provided in Paragraph 8 hereof.

6.     Plaintiffs' counsel shall be awarded attorneys' fees and costs/expenses from (and not in addition to) the Settlement Fund referred to in Paragraph 5 above as follows: Righetti & Wynne, P.C. attorneys' fees in the amount of $1,566,510 and costs/expenses in the amount of $148,699.76.

2

7.    (a)   Entry of this Final Judgment shall further constitute a release by all such members of the Class on behalf of themselves and on behalf of all Class Members who do not Opt Out of this Settlement, as well as anyone claiming by or through them or in their stead, to hereby and forever release, acquit and discharge and covenant not to sue Aaron Brothers, Inc., Michaels Stores, Inc., and their respective attorneys, past, present and future divisions affiliates, predecessors, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, and privies, both individually and collectively (referred to as the "Releasees") for any and all actions, causes of actions, suits, claims, liens, demands, damages, controversies, attorneys' fees and liabilities (based upon any legal or equitable theory, whether contractual, common law, statutory, federal state or otherwise) whether known or unknown, suspected, anticipated or unanticipated, which the Class or any Participating Class Member has, or ever had, against Aaron Brothers, Inc. which were alleged, could have been alleged, or may be based in whole or part upon, or that may arise out of, or are, may be related to, or in any way connected with the claims, actions or causes of action which were alleged or stated, or could have been alleged or stated, or the facts matters, or transactions or occurrences referred to in the action brought by Plaintiff or the Ax Action, including:

Any and all claims, actions, or causes of action relating or arising from the alleged failure to pay overtime wage and hour violations under state or federal law, injunctive and declaratory relief, including any claims under California Labor Code §§ 203, 204, 216, 218, and/or 218.5; unfair business practices pursuant to California Business and Professions Code § 17200 et seq.; conversion; interest and costs pursuant to California Civil Code § 1032 and 3287, statutory or common law rights to attorneys' fees and costs including those pursuant to California Labor Code § 1194 et seq., and/or California Business and Professions Code § 17200 et seq.; and violation or breach of any other state or federal statue, rule and/or regulation, and similar causes of action, including but not limited to any claim for punitive and/or exemplary damages in connection with any of the foregoing (the "Released Claims").

(b)   In addition, all Participating Class Members waive the provisions of California Civil Code § 1542 as to the above Released Claims. Civil Code § 1542 statues as follows:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlements with the debtor.

3

ORDER AND JUDGMENT GRANTING
FINAL APPROVAL OF SETTLEMENT

(c)     Furthermore, upon occurrence of the Effective Settlement Date, the Court finds that each and every Participating Class Member, including the Class Representative, and all successors in interest shall be permanently enjoined and forever barred from prosecuting any and all Released Claims against the Releasees or any related entity or individual. Thus, subject to and in accordance with this Stipulation re Settlement, even if the Plaintiff and/or the Participating Class Members, or any of them, may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of Released Claims, the Plaintiff and each Participating Class Member, upon the Effective Settlement Date, shall be deemed to have and by operation of the Judgment shall have fully, finally, and forever settled and released any and all claims raised in the First Amended Complaint, the Ax Action, or any of the other Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, upon any theory of law or equity, including, but no limited to, conduct which is negligent, intentional with or with out malice, or a breach of any duty, law, or rule without regard to the subsequent discovery or existence of such different or additional facts.

8.     For purposes of these proceedings, the "Effective Settlement Date" is deemed by the Court to be *60 days from June 12, 2002.*

9.     Attorneys' fees and costs awarded in Paragraph 6 above shall be paid by Aaron Brothers, Inc., in the amounts, and to the parties directed by the Court as provided in the Stipulation and the Order Approving Fees and Costs in the following manner: No later than seven (7) days after the Effective Settlement Date, Aaron Brothers shall forward to the Claims Administrator a check made payable to "Class Action Claims Company In Trust For Collins v. Aaron Brothers Litigation."

With respect to the timely filed claims and the Plaintiff enhancements, no later than seven (7) days after the Effective Settlement Date

(a)     Aaron Brothers, Inc. shall forward to the Claims Administrator, the Plaintiff enhancements to Suzanne Collins and David Ax via check made payable to "Class Action Claims Company In Trust For Collins v. Aaron Brothers Litigation."

(b)     The net amount of the timely and valid claims, after deduction of allowed attorneys' fees, costs, and other deductions authorized in the Stipulation shall be delivered by Aaron Brothers, Inc. to the Claims Administrator via checks made payable directly to the Class Members who have filed timely and valid claims. Within five (5) days of the granting of final approval, the

4

ORDER AND JUDGMENT GRANTING
FINAL APPROVAL OF SETTLEMENT

1   Claims Administrator will provide to Aaron Brothers, Inc., a list of the Class Members who filed

2   timely and valid claims and the amount they are to receive.   Upon receipt of the checks from Aaron

3   Brothers, Inc., the Claims Administrator shall promptly mail the checks to those members of the Class

4   who submitted timely and valid claims.  Any checks returned as undeliverable, or un-cashed after 180

5   days shall be skip traced for new addresses.  If no new address is located then the Claims

6   Administrator shall donate the remaining portion to the charity Boys Hope/Girls Hope San Francisco.

7            In no event shall Aaron Brothers, Inc. have any responsibility and/or obligation whatsoever

8   with respect to the distribution of funds to the Class except as provided in the Stipulation or in this

9   Final Judgment.  Aaron Brothers, Inc. will provide its regular payroll services with respect to such

10  distributions (without charge to the Class) and will make all withholding and other deductions required

11  by law prior to disbursement in accordance with the Stipulation.  The employer's share of any payroll

12  taxes ordinarily paid by Aaron Brothers, Inc. will be paid by Aaron Brothers, Inc. directly to the

13  appropriate governmental authorities and shall not reduce the Settlement Fund.

14           10.     Pursuant to the terms of the Stipulation, Aaron Brothers, Inc. shall reclassify the

15  positions of Store Manager, Assistant Manager and Manager-in-Training to non-exempt status in

16  California.  Additionally, the Manager-in-Training position shall be reclassified to non-exempt status

17  nationwide.

18           11.     This litigation (and all claims asserted at any time herein) is hereby fully and finally

19  dismissed with prejudice, with each party to bear his/her/its own costs and attorneys' fees (except as

20  otherwise expressly provided herein).  Without limiting the generality and legal effect of the

21  foregoing, this dismissal with prejudice extends to all claims ever asserted or could have been asserted

22  in this litigation individually and/or on behalf of any group and/or purported or certified class and

23  extends to all of the Settled Claims described in paragraph 7 above.

24           12.     All members of the Class are barred and permanently enjoined from instituting,

25  asserting or prosecuting, directly, representatively, derivatively or in any other capacity, any Settled

26  Claims against Aaron Brothers, Inc.

27           13.     The notice given to the Class of the settlement as described in the Stipulation and

28  Preliminary Approval Order constituted the best notice practicable under the circumstances.  The notice

5

ORDER AND JUDGMENT GRANTING
FINAL APPROVAL OF SETTLEMENT

1   program provided due and adequate notice of these proceedings and of the matters set forth in the notice,

2   including the settlement set forth in the Stipulation, to all persons and entities entitled to such notice, and

3   said notice fully satisfied the requirements of due process and applicable law.

4        14.    There is no just reason for delay in entry of this Final Judgment, and therefore the Clerk of

5   the Court is hereby directed to enter this Final Judgment as the final Judgment of this Court in this case.

6        15.    Suzanne Collins is awarded an enhancement of $60,000.00 and David Ax is awarded an

7   enhancement of $5,000.00 for their efforts in prosecuting this and a related federal class action.  These

8   funds shall be made payable by Aaron Brothers pursuant to the provisions as set forth in paragraph 9.

9        16.    David Ax is hereby authorized and ordered to dismiss his action entitled <u>David Ax v.</u>

10  <u>Aaron Brothers</u>, Case No. 01-20535PVT presently pending in the US District Court, Northern District

11  of California.

12        17.    With respect to those   _Five_   Class Members who filed untimely claims, the

13  Court hereby finds that those claims shall be _allowed, yet no further late_

14  _claims shall be allowed._

15        18.    This Final Judgment is entered pursuant to Stipulation of the parties and is intended to

16  effectuate the settlement more fully described in the Stipulation.

18  DATED:  _6-12-02_            ANTHONY J. MOHR

19                                       Honorable Anthony J. Mohr

                                         Judge of the Superior Court

ORDER AND JUDGMENT GRANTING
FINAL APPROVAL OF SETTLEMENT

# EXHIBIT RG06

# Costs Summary
# Righetti Glugoski

| **Description** | **Amount** |
|---|---|
| Filing Fees | $1,420.50 |
| Mediation | $3,350.00 |
| Legal Research | $2,886.63 |
| Database Admin | $2,156.75 |
| Investigation | $1,838.80 |
| Experts/Consultants | $480.00 |
| Overnight Mail & Bulk Mail | $436.81 |
| Teleconferencing Services | $275.00 |
| Travel & Transportation | $497.50 |
| In House Copy Costs | $963.25 |
| Postage | $449.65 |
| **TOTAL** | **$14,754.89** |

# EXHIBIT RG07

## Righetti Glugoski PC
## Billing By Timekeeper

| Partners | | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| Matthew Righetti | MR | $750.00 | 391.6 | $293,700.00 |
| Michael Righetti | MCR | $350.00 | 294.1 | $102,935.00 |
| **Subtotal** | | | | **$396,635.00** |
| | | | | |
| **Paralegals/Legal Secretaries/Clerks** | | | | |
| | PL | $150.00 | 247.6 | $37,140.00 |
| **Subtotal** | | | | **$37,140.00** |
| | | | | |
| **TOTAL** | | | **933.3** | **$433,775.00** |